## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JING ZHANG, WEI FAN, MINGLIAN ZHANG, AND JUN ZHOU,** )<br><br>**PLAINTIFFS,** )<br><br>**v.** )<br><br>**XUEYUAN HAN, HANFOR HOLDINGS CO., LTD., HF HOLDINGS LIMITED., HANFOR CAPITAL MANAGEMENT CO., LTD., NUOYUAN CAPITAL MANAGEMENT COMPANY LTD, GEORGE XU, JUNJUN FENG, WENNAN AO, BZ INDUSTRIAL (CHINA), BZ INDUSTRIAL (VIRGIN ISLANDS), BZ INDUSTRIAL (CAYMAN ISLANDS), HANFOR (CAYMAN) LIMITED, HFRE LLC, HF CAPITAL MANAGEMENT CAY INC., HF COSMOPOLITAN BETA L.P., HENGTAI SECURITIES CO., LTD., JOHN DOES 1-10, JANE DOES 1-10, AND ABC-XYZ CORP. 1-10,** )<br><br>**DEFENDANTS.** )  | **CASE NO.: _____**<br><br>***Document Electronically Filed***<br><br>**COMPLAINT**<br><br><br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

1

Jing Zhang, Wei Fan, Minglian Zhang, and Jun Zhou (collectively, "Plaintiffs"), by and through their attorneys, Wong, Wong & Associates, P.C., allege the following against Xueyuan Han, Hanfor Holdings Co., Ltd., Hanfor Capital Management Co., Ltd., Nuoyuan Capital Management Company Ltd, George Xu, Junjun Feng, Wennan Ao, BZ Industrial (China), BZ Industrial (Virgin Islands), BZ Industrial (Cayman Islands), Hanfor (Cayman) Limited, HFRE LLC, HF Capital Management Cay Inc., HF Cosmopolitan Beta L.P., Hengtai Securities Co., Ltd., John Does 1-10, Jane Does 1-10, and ABC-XYZ-Corp. 1-10 (collectively, "Defendants"), upon personal knowledge and upon information and belief as to other matters, as follows:

## **PARTIES**

1. Plaintiff Jing Zhang (hereinafter "Ms. Zhang") is a citizen of the People's Republic of China ("China"), and a permanent resident of the United States, residing at 137 Working Ranch, Irvine, CA 92602.

2. Plaintiff Wei Fan (hereinafter "Mr. Fan") is a citizen of China, residing at 137 Working Ranch, Irvine, CA 92602. Mr. Fan is married to Ms. Zhang.

3. Plaintiff Minglian Zhang (hereinafter "Mr. Zhang") is a citizen and resident of China, and with a business address at No. 288 Ningxia Road, Building 1, Fl 26, Qingdao, Shandong, China. Mr. Zhang is the father of Ms. Zhang.

4. Plaintiff Jun Zhou (hereinafter "Mr. Zhou") is a citizen and resident of China, with a business address at No. 288 Ningxia Road, Building 1, Fl 26, Qingdao, Shandong, China. Mr. Zhou is a family relative of Ms. Zhang.

5. Defendant Xueyuan Han, a.k.a. Hank Han (hereinafter "Mr. Han"), is a citizen of China, with a U.S. address at 377 Rector Place, Unit PHB (a.k.a. Unit #27B), New York, NY 10280. Upon information and belief, Defendant Mr. Han possesses an O-1 visa.

6. Defendant BZ Industrial (China) (hereinafter "Defendant BZ China") is a company incorporated in China. The sole owner of BZ China is Defendant Mr. Han.

7. Defendant Hanfor Holdings Co., Ltd. (hereinafter "Defendant Hanfor Holdings") is an exempted company incorporated in the British Virgin Islands. The registered address of Hanfor Holdings is Start Chambers, Wickham's Cay II, P.O. Box 2221, Road Town, Tortola, British Virgin Islands. Hanfor Holdings is solely owned by Defendant Mr. Han, 95% through BZ China, and 5% directly, and Defendant Mr. Han is also the founder and principal of Hanfor Holdings.

8. Defendant Hanfor Capital Management Co. (hereinafter "Defendant Hanfor Capital") is an asset management company incorporated in China, with their last known business address at Room 2004, Qingyundangdai Plaza, Building 9, Qingyunli Mantingfang Residential Neighborhood, Haidian District, Beijing, China. Hanfor Capital is solely owned by Defendant Mr. Han, 90% directly and 10% by Hanfor Holdings, and Defendant Mr. Han is also the founder and principal of Hanfor Capital.

9. Defendant HF Holdings Limited (hereinafter "Defendant HF Holdings") is a British Virgin Islands corporation with a registered office address located in care of registered agent AMS Trustees Limited, at Sea Meadow House, P.O. Box 116, Road Town, Tortola, British Virgin Islands. HF Holdings is owned by Defendant Mr. Han either directly or through proxies.

10. Defendant Nuoyuan Capital Management Company Ltd. (hereinafter "Defendant Nuoyuan Capital") is an asset management company incorporated in China, with their last known business address at Suite 202 Room 2011 Building 1 Fl 2, Xiangjun Beili Garden 28, Chaoyang District, Beijing, China. Defendant Mr. Han is the majority shareholder of Nuoyuan Capital, with direct ownership of the majority of shares. Upon information and belief, Defendant Mr.

Han wholly owns Nuoyuan Capital, through shares owned directly and through various shell corporations.

11. Defendant Hengtai Securities Co., Ltd. (hereinafter "Defendant Hengtai Securities") is a Chinese company publicly traded in Hong Kong, with primary business address at Sunlight Tower No. 248 Queens' Road East, Wan Chai District, Hong Kong.

12. Defendant Junjun Feng (hereinafter "Ms. Feng") is a citizen of China, and the co-owner with Defendant Mr. Han of 554 Third Avenue, Unit PHA, New York, NY 10016, where she resides. Upon information and belief, Defendant Ms. Feng is involved in a romantic relationship with Defendant Mr. Han.

13. Defendant Wennan Ao (hereinafter "Ms. Ao") is a citizen of China and is Defendant Mr. Han's ex-wife. Defendant Ms. Ao resides in New York with Defendant Mr. Han at 377 Rector Place, Unit PHB (a.k.a. Unit #27B), New York, NY 10280.

14. Defendant George Xu (hereinafter "Mr. Xu") is an accountant employed by Defendant Mr. Han, residing in New York, with a place of business located at 39-07 Prince Street, Suite 4C, Flushing, NY 11354.

15. Defendant HFRE LLC (hereinafter "Defendant HFRE") is a New York limited liability company with an address listed at 39-07 Prince Street, Suite 4C, Flushing, New York 11354. HFRE is managed by Defendant Mr. Han, and upon information and belief, owned by him as well. HFRE is listed on the deed for 377 Rector Place, Unit PHB, New York, NY 10280, where Mr. Han resides.

16. Defendant BZ Industrial Limited (Virgin Islands) (hereinafter "Defendant BZ Virgin Islands") is a company incorporated in the British Virgin Islands, with a registered service address at 39-

07 Prince Street, Suite 4C, Flushing, NY 11354. The sole owner of BZ Virgin Islands is Defendant Mr. Han. Defendant Mr. Han is also the chief executive officer of BZ Virgin Islands.

17. Defendant BZ Industrial Limited (Cayman Islands) (hereinafter "Defendant BZ Cayman Islands") is a company incorporated in the Cayman Islands. The sole owner of BZ Cayman Islands is BZ Virgin Islands, which is directly and wholly owned by Defendant Mr. Han. Defendant Mr. Han is also the chief executive officer of BZ Cayman Islands.

18. Defendant Hanfor (Cayman) Limited (hereinafter "Defendant Hanfor Cayman") is a company incorporated in the Cayman Islands, with a registered office address located in care of Maples Corporate Services Limited, P.O. Box 309, Ugland House, South Church Street, George Town, Grand Cayman KY1-1104, Cayman Islands. The sole shareholder of Hanfor Cayman is BZ Virgin Islands, which is directly and wholly owned by Defendant Mr. Han.

19. Defendant HF Capital Management Cay Inc. (hereinafter "Defendant HF Capital") is a company incorporated in the Cayman Islands, with registered office address located in care of Maricorp Services Ltd., P.O. Box 2075, The Strand #31, 46 Canal Point Drive, Cayman Islands. Defendant Mr. Han is the president and director of HF Capital. HF Capital was registered to do business in New York, through an application for authority in New York in October 2020, which was executed by Defendant Mr. Han on behalf of the corporation.

20. Defendant HF Cosmopolitan Beta L.P. (hereinafter "Defendant HF Cosmopolitan") is a company incorporated in the Cayman Islands. The general partner of HF Cosmopolitan is HF Capital, of which Defendant Mr. Han is the owner and director. HF Cosmopolitan was registered to do business in New York in October 2020, through an application for authority in New York which was executed by Defendant Mr. Han on behalf of HF Capital, the general partner of HF Cosmopolitan.

21. John Does 1-10 and Jane Does 1-10, said names being fictitious, are believed to be possible partners and associates of Defendant Mr. Han and the other Defendants.

22. XYZ Corp. 1-10, said names being fictitious, are believed to be additional companies connected to Defendant Mr. Han and other Defendants.

## NATURE OF THE ACTION

23. This is a civil action, made against the above-listed individual and corporate Defendants, for fraud, breach of contract and of contractual obligations, conversion, statutory wire fraud, conspiracy to commit fraud, unjust enrichment, promissory estoppel, breach of fiduciary duties owed to Plaintiff investors, intentional misrepresentation, negligence, violations of the S.E.C. Act of 1934 and conspiracy to violate R.I.C.O.

24. As this Complaint will address, the individual and corporate Defendants conspired to defraud and to deceive Plaintiff investors through numerous falsities and misrepresentations, and through the creation of multiple shell companies, inducing Plaintiffs to invest in Defendant Mr. Han's companies and projects, and ultimately extracting substantial funds and holdings from Plaintiffs for Defendants' corporate and personal gains. The individual and corporate Defendants failed to adhere to and breached the obligations and duties required by various investment agreements with Plaintiffs and engaged in fraudulent financial transactions and illegal transfers of Plaintiffs' money to Defendants' bank accounts.

## SUBJECT MATTER JURISDICTION AND VENUE

25. The U.S. District Court, Southern District of New York, has jurisdiction over this matter because Plaintiffs allege that Defendants violated federal law. 28 U.S.C. § 1331.

26. Venue is proper in the Southern District of New York because Defendants Mr. Han, Ms. Ao and Ms. Feng reside in the County of New York. 28 U.S.C. § 1391.

## STATEMENT OF FACTS

27. Defendant Mr. Han is the sole owner of Defendants BZ China, BZ Virgin Islands, BZ Cayman Islands, Hanfor Holdings, Hanfor Capital, Hanfor Cayman, HF Capital, HF Cosmopolitan and other shell companies either directly or through proxies. Defendant Mr. Han is the manager of HFRE and, upon information and belief, owns and controls this corporation as well. Defendant Mr. Han is the majority shareholder of Defendant Nuoyuan Capital and, upon information and belief, the sole owner of Defendant Nuoyuan Capital, directly and through shell companies owned by Defendant Mr. Han.

28. Defendant Mr. Han created his first investment company in 2006, and up until around 2018, Defendants Mr. Han and Hanfor Capital were well-known in investment circles in China with a solid reputation for creating reliable, up-and-coming, and promising investment opportunities.

29. As late as October 2018, news media were reporting that Defendant Hanfor Capital was preparing to be listed on the New York Stock Exchange.

30. Beginning in 2016, Defendants Mr. Han and Hanfor Capital designed and created at least seven different private investment fund projects (collectively, "Projects") in which Plaintiffs invested. The stated purpose of each of the said projects was to raise funds from investors and to use the raised funds as cash capital to finance various property development projects and to purchase pre-IPO equity shares of targeted companies which were recommended and promoted by Defendants Mr. Han, Hanfor Capital, and Nuoyuan Capital. In the promotional materials for each of these projects, Defendant Mr. Han, directly or through his employees, falsely presented to investors that Defendants Hanfor Capital and Nuoyuan Capital could pledge the corporate

assets, in the form of cash, equity shares, or real estate properties, as collateral for the Projects, to secure the proceeds and refunds of investors' initial cash investments on the investors' behalf.

31. All investors were required to sign investment agreements associated with their investments, including partnership contracts, investment agreements or share purchase agreements (collectively, "Agreements") with companies directly or indirectly owned and dominated by Defendant Mr. Han, including Defendants Hanfor Capital, Nuoyuan Capital and Hanfor Holdings.

32. According to the Agreements, investors were requested to wire cash into either a custodian account held by Defendant Hengtai Securities, or bank accounts held or designated by Defendants Nuoyuan Capital, Hanfor Capital, or Hanfor Holdings. Defendants Hanfor Capital, Hanfor Holdings, and Nuoyuan Capital, corporations designated to act as asset managers to manage the investors' various cash investments.

33. As will be discussed in further detail below, the Defendants' obligations under these instruments included, but were not limited to, investing cash capital raised from investors to generate proceeds of a certain amount, timely distributing the proceeds to investors, timely disclosing to investors important information that could impact the investments, and refunding the cash capital to investors once the purposes of the projects were achieved.

34. Each of these Agreements further stated that Defendants Hanfor Capital, Hanfor Holdings, and Nuoyuan Capital, had a duty to manage investors' cash assets in an honest, transparent, proper and trustworthy manner, and that they had duty to timely disclose to investors information regarding their financial status and shareholder replacement.

35. Defendant Mr. Han and his proxies or representatives approached Plaintiffs through mutual contacts, and then pitched the seven Projects to Plaintiffs to raise cash funds.

36. Upon information and belief, Defendant Mr. Han's actual purpose in creating these Projects was to raise cash funds through Defendant Mr. Han's proxies and shell companies under his control, and to then transfer the cash funds to his personal bank account or the shell companies' corporate bank accounts, which were all controlled solely by Defendant Mr. Han, with no intent on his part to make the promised investments and generate proceeds on behalf of investors, or to provide investors the promised returns.

37. With this malicious purpose in mind, Defendant Mr. Han, together with and through his proxies and the companies under his control, created the said Projects, and reached out to hundreds of investors, including Plaintiffs.

38. From 2016 to 2018, Defendant Mr. Han, through Defendants Nuoyuan Capital, Hanfor Capital, Hanfor Holdings, and other shell companies controlled by him, recruited hundreds of investors, including Plaintiffs, and raised at least 2 billion RMB (about $285 million USD) cash from said investors.

39. Relying on the promises made in the Agreements, promotional materials provided by Defendants as well as the reputations of Defendants Mr. Han and Defendant corporations, Plaintiffs altogether signed eight different investment agreements, between December 2016 and December 2018, paying a total of around 98.1 million RMB (about $14 million USD) cash to Defendants Hanfor Capital, Hanfor Holdings, and Nuoyuan Capital during that time.

40. Upon information and belief, pursuant to the investment agreements, and as will be discussed in further detail below, some of the Plaintiffs deposited cash investments with Defendant Hengtai Securities, which held 28 million RMB (about $4 million USD) of the cash capital

invested by Plaintiffs. Defendant Hengtai Securities was designated as the capital custodian for three of Plaintiffs' investments (namely, Project #2, the Dingxin Fund; Project #3, the Dingsheng Fund; and Project #6, the Golden Kirin Project), with corresponding contractual obligations to properly maintain the funds of investors and to timely disclose suspicious cash transfers within the accounts, among other obligations. After Plaintiffs deposited the cash, Defendant Hengtai Securities was then directed by either Defendant Nuoyuan Capital or Defendant Hanfor Capital to transfer such cash to shell companies directly or indirectly controlled by Defendant Mr. Han. Defendant Hengtai Securities never disclosed these transactions to investors, including Plaintiffs, nor did Defendant Hengtai Securities question the capital managers of Defendant corporations regarding such transfers.

41. Upon information and belief, Defendants Hanfor Capital, Hanfor Holdings, and Nuoyuan Capital transferred the cash capital from Plaintiffs' investments to offshore shell companies that Defendant Mr. Han founded in the British Virgin Islands, Hong Kong, Cayman Islands, and the United States.

42. Ultimately, Defendants Mr. Han, Hanfor Capital, Hanfor Holdings, and Nuoyuan Capital failed to adhere to the stated and agreed upon terms in the above discussed investment agreements by failing to distribute the proceeds of the investments they made on behalf of Plaintiffs and failing to refund to Plaintiffs the cash capital raised.

43. Instead, Defendant Mr. Han secretly transferred investors' money to the United States through several shell companies that he incorporated in the British Virgin Islands, Cayman Islands, and other foreign countries, for his personal use. These corporations include BZ China, BZ Virgin Islands, BZ Cayman Islands, Hanfor Holdings, Hanfor Capital, HFRE, Hanfor Cayman, HF Capital, and HF Cosmopolitan.

44. To date, Plaintiffs collectively received only 7 million RMB (about $1 million USD) from Defendants.

45. Beginning at least as early as 2019, the Beijing Bureau of the China Securities Regulatory Commission (hereinafter "CSRC Beijing") launched investigations against Defendants Mr. Han, Hanfor Capital, Nuoyuan Capital, and other shell companies controlled by Defendant Mr. Han.

46. In January 2020, CSRC Beijing issued a Correction Order against Defendant Nuoyuan Capital, in which the Commission concluded that Defendants Nuoyuan Capital, Hanfor Capital, and other shell companies controlled by Defendant Mr. Han committed eight (8) violations of the Interim Measures for the Supervision and Administration of Privately Offered Investment Funds (hereinafter "Interim Measures"), namely:

    i. Failing to adhere to the principles of honesty and good faith while running a busines of private fundraising in violation of Article Three of the Interim Measures for the Supervision and Administration of Privately Offered Investment Funds.

    ii. As the asset manager of the Projects, Defendant Mr. Han failed to register the Projects after the Investment Projects completed their raising target and therefore violated the Article Eight of the Interim Measures.

    iii. The number of the investors recruited by private investment funds exceeded the number allowed by Article Eleven of the Interim Measures.

    iv. The managers of the Projects guaranteed minimum proceeds of the investment to the investors and therefore violated the Article Fifteen of the Interim Measures.

v.   Did not promote the Projects to proper investors, namely investors with certain ability to recognize, understand and undertake the investment risk and therefore violated the Article Seventeen of the Interim Measures.

vi.   Engaged in managerial activities of Privately Offered Investment Funds that involved "cash-pooling":

1.   Commingling the Investment Funds' managers' own assets and assets that the managers have access to with the Investment Funds' assets to make investment; mixing different investment funds together; commingling the cash capital with corporate assets; therefore, violated Section Two of Article Twenty-Three of the Interim Measures.

2.   Failed to conduct proper evaluation of the Projects according to certain laws and regulations at the stage of purchasing, repurchasing and did not obtain insurance, therefore violating Item Four, Section Two of Article Nine of the Interim Measures.

3.   Failed to manage the assets of different funds with the same standard level of care and therefore violated Item Two, Section Two of Article Twenty-Three of the Interim Measures.

vii.   Treating the managed assets with unequal standards of care.

viii.  Using the Private Investment Fund Assets or the authority to manage investors' assets to make transactions that benefitted the Fund Manager himself and people who are not investors, at the expense of the investors.

ix.  Failing to disclose important information regarding major investments and debts that the Private Investment Fund provided to investors.

47. Upon information and belief, Defendant Mr. Han, his proxies, and staff from shell companies under his control conducted wrongdoings and violated multiple Chinese Securities Regulation laws including, but not limited to:

i.  Knowingly presenting false ownership documents of the properties in which Defendant Mr. Han, Nuoyuan Capital and Hanfor Capital convinced Plaintiffs to invest; and

ii.  Knowingly and falsely representing that Defendants Nuoyuan Capital and Hanfor Capital had possessory title of the real properties that Defendant Mr. Han promised, through his agents at Defendant Nuoyuan Capital, would be used as collateral for the Projects; and

iii.  Knowingly, purposely, and falsely representing to Plaintiffs, among other investors, that the value of the equity shares purchased on behalf of investors would increase greatly in the near future or after the targeted companies issued their initial offering at the publicly traded stock market, and promising that the target companies would make initial offering to the public before 2021 but several companies failed to do so before 2021; and

iv.  Falsely claiming that Defendants had purchased the equity shares of companies while such deals had not happened at all; and

v.    Knowingly and purposely commingling Plaintiffs' cash capital with Defendants' corporate assets to invest and illegally transfer Plaintiffs' cash capital to shell companies controlled by Defendant Mr. Han; and

vi.    Purposely failing to disclose material shareholder and financial asset information about the Projects that could potentially affect investors' decisions; and

vii.    Illegally withholding proceeds generated by the investments and refusing to refund the initial investment back to Plaintiffs, as required by the respective investment agreements.

48. CSRC Beijing further demanded that Defendant Nuoyuan Capital correct the above-listed violations within 30 days to fully comply with the Commission's order.

49. In 2019 Yanwu Li, the general manager and the legally responsible person of Defendant Nuoyuan Capital, and other executives of Defendant Nuoyuan Capital, were arrested by Beijing Police Department and criminally indicted following investigation of the above-mentioned violations.

50. Defendants Mr. Han and Hanfor Capital were listed as defaulting debtors, and the Beijing Government issued a Consumer Restrictions Orders against them.

**Transfer of Fraudulently Obtained Corporate Funds for Personal Use**

51. In 2018 Defendant Mr. Han fled to the United States to avoid the civil and criminal prosecution against him in China and to hide the money he obtained through fraudulent acts and pretenses.

52. Upon information and belief, Defendant George Xu, acting as Defendant Mr. Han's accountant, assisted Mr. Han in hiding his ill-gotten gains, including producing and executing corporate

filings for several corporate entities controlled by Defendant Mr. Han, including Defendants HF Capital and HF Cosmopolitan.

53. Defendants Mr. Han and Xu used the companies' assets for Defendant Mr. Han's personal expenses and to purchase properties in the United States, both under his name and the names of his relatives and companions, including Defendants Ms. Ao and Ms. Feng.

54. In August 2020 Defendant Mr. Han purchased a residential penthouse condominium located at 554 Third Avenue, Unit PHA, New York, NY 10016 with Defendant Ms. Feng as joint tenants with right of survivorship for $2.19 million USD. The transaction was not financed.

55. Upon information and belief, Defendant Ms. Feng is in a romantic relationship with Defendant Mr. Han.

56. In September 2019 Defendant Mr. Han purchased a residential penthouse condominium located at 377 Rector Place, Unit PHB, New York, NY 10280 through Defendant HFRE LLC for $4.99 million USD. The transaction was not financed.

57. Defendant Mr. Han resides at 377 Rector Place, Unit PHB, New York, NY 10280 with his ex-wife, Defendant Ms. Ao, and their two children.

58. Upon information and belief, Defendants Mr. Han and Ms. Ao had a sham divorce in an effort to avoid creditors, including the Plaintiff investors.

59. Upon information and belief, both Defendants Ms. Ao and Ms. Feng cooperated with Defendant Mr. Han hiding assets in their names and are both living in properties that were purchased by or together with Defendant Mr. Han after Mr. Han fled to the United States.

60. In 2020 Defendant Mr. Han purchased a white 2020 Rolls Royce Cullinan, with an estimated value of $330,000, of which he is the reported registrant.

61. Because Defendant Mr. Han and his associates have been making large cash transactions within the United States, while no bank accounts are known to be possessed by Defendant Mr. Han or his associates, it may be inferred that Defendant Mr. Han has large amounts of cash within the United States with which he purchases properties and pays for living expenses.

62. Upon information and belief, these purchases of real and personal property were all made by Defendant Mr. Han using money that was stolen from the investment funds, including funds from Plaintiffs' investments, and then funneled said funds into the United States.

63. Upon information and belief, Defendant Mr. Han and his associates still have large amounts of cash on the territory of the United States, as well as in bank accounts outside of the United States and in China.

64. Upon information and belief, the vast majority of the funds in these accounts was stolen from investments made into various projects, including the seven projects in which Plaintiffs invested.

65. Upon information and belief, Defendant Mr. Xu assisted Defendant Mr. Han in secretly transferring investors' money to the United States through several shell companies which he assisted Defendant Mr. Han in forming and incorporating in the British Virgin Islands, Cayman Islands, and other foreign countries for his personal use. These corporations include Defendants BZ Virgin Islands, BZ Cayman Islands, Hanfor Holdings, HFRE LLC, Hanfor Cayman, Nuoyuan Capital, HF Capital, and HF Cosmopolitan.

66. Upon information and belief, Defendants Mr. Han, Ms. Feng, and Ms. Ao, along with all of the Defendant corporations, are deliberately avoiding keeping large amounts of money in bank accounts in the United States to avoid creditors.

67. By creating shell corporations, evading creditors including Plaintiffs, and fleeing to avoid arrest for securities fraud in China, Defendant Mr. Han and his associates have demonstrated that they will likely attempt to evade any future creditors as well.

### Project #1: The Ruili Weixin Project

68. In 2017 Defendant Mr. Han, through his representatives, including a Chinese asset manager employed by him, represented to Plaintiff Ms. Zhang that Defendant Hanfor Holdings' business involved identifying targeted privately-owned companies likely to go public in the near future, and purchasing pre-IPO equity shares of these companies to generate proceeds, through the Ruili Weixin Project. They further represented that Defendant Hanfor Holdings was raising cash capital to purchase equity shares from NextEV, the parent company of NIO Inc.(hereinafter "NIO"), both corporate entities involved in the development and production of electric vehicles. The promotional materials for the Ruili Weixin Project provided to Plaintiff Ms. Zhang stated that in order to issue its initial offerings on the New York Stock Exchange (NYSE), NIO was issuing Class C series of equity shares to investors.

69. The promotional materials further provided that NIO guaranteed to issue their initial offering at the NYSE before December 31, 2021, and because the company had a great potential in the industry, the value of the equity shares of the company would increase greatly following their IPO.

70. The promotional materials provided to Ms. Zhang also stated that if NIO were unable to issue its initial offering at NYSE before 2021, NIO would repurchase the equity shares from investors at the price of the initial investment plus a calculated compound interest rate of 8% annually, such that investors were guaranteed to receive proceeds from the project.

71. In reliance on the representations from Defendant Hanfor Holdings, on July 7, 2017, Plaintiff Ms. Zhang signed an investment agreement (labelled "Subscription Agreement") with Defendant Hanfor Holdings to invest in the Ruili Weixin Project. Through the Agreement, Plaintiff Ms. Zhang purchased 2,000,000 Class B equity shares of Defendant Hanfor Holdings on July 7, 2017 for $2 million USD, with the purpose that Defendant Hanfor Holdings would use Plaintiff Ms. Zhang's cash investment to purchase NIO's Class C equity shares. Plaintiff Ms. Zhang wired the funds to a bank account as designated by Defendant Hanfor Holdings.

72. NIO made its initial offering at the NYSE on September 12, 2018. However, Plaintiff Ms. Zhang has never received any proceeds from the equity shares, nor was her initial investment ever returned.

73. Plaintiff Ms. Zhang, through intermediaries, has contacted Defendant Mr. Han multiple times since 2018, urging distribution of the proceeds or the transfer of the equity shares of NIO equal to her $2 million USD investment, made directly or through Defendant Mr. Han's proxies. Defendant Mr. Han has failed to provide Plaintiff Ms. Zhang with any explanations.

74. Upon information and belief, Defendant Mr. Han has purchased some Class C equity shares of NIO in 2017 but has refused to return any of the investment to Plaintiff Ms. Zhang, despite the IPO of NIO having been held in 2018.

75. The purchase of shares was facilitated by a shell corporation, HF Holdings Limited, a corporation registered in the British Virgin Islands.

76. Upon information and belief, HF Holdings Limited is ultimately fully dominated and controlled by Defendant Mr. Han.


**Project #2: The Dingxin Private Investment Fund**

77. In and around 2016, Defendants Mr. Han and Hanfor Capital designed and created the Dingxin Private Investment Fund (hereinafter "Dingxin Fund") with the stated purpose of recruiting investors to invest in targeted privately owned companies and corporations with the potential to make Initial Public Offerings within five years.

78. A sales team from Defendant Nuoyuan Capital presented and stated to potential investors, including Plaintiff Mr. Fan, that because the targeted companies, selected by Defendant Hanfor Capital, were either highly profitable or were leading companies in their industries, said companies were highly likely to make IPOs within a few years after which the equity shares purchased by investors would greatly increase in value. The sales team further stated that even if IPOs were not made in that timeframe, the equity shares would be repurchased at higher prices within a few years. Accordingly, investors were guaranteed to receive a minimum 8% return on their initial investment as annual proceeds within the time period that the Dingxin Fund was active, namely five years, according to the promotional material drafted by Defendant Hanfor Capital and presented to investors.

79. In reliance on these promises, on December 12, 2018, Plaintiff Mr. Fan signed an investment agreement (hereinafter "Agreement") with Defendant Nuoyuan Capital to invest 20 million RMB (about $2.9 million USD) in the Dingxin Fund.

80. The promotional pamphlet further stated that after twelve (12) months, Plaintiff Mr. Fan would have the right and opportunity to sell his shares to other investors, and that the minimum annual proceeds would be an amount equivalent to 8% of his initial cash investment.

81. The Agreement stated that Defendant Nuoyuan Capital was the capital manager of the Dingxin Fund and would manage the cash capital to make investments on behalf of Plaintiff Mr. Fan. Mr. Fan was instructed to deposit the 20 million RMB (about $2.9 million USD) cash to the

bank account held by Defendant Hengtai Securities which Defendant Nuoyuan Capital had appointed to be the Dingxin Fund's cash capital custodian.

82. According to the Agreement, Defendant Nuoyuan Capital's obligations to investors included, but were not limited to:

1) Managing the fund in an honest, trustworthy, diligent and responsible manner to generate profits for the investors;

2) Drafting investment risk disclaimers to disclose to the investors the risk associated with the proposed investments;

3) Establishing a comprehensive internal system to ensure that Plaintiff Mr. Fan's cash capital is separated from other investors' cash capital as well as the corporate assets owned by Defendant Nuoyuan Capital, receiving supervision from Plaintiff Mr. Fan and capital custodian Hengtai Securities;

4) Timely providing important financial documents such as certificates of assets or certificates of shares;

5) Preparing financial accounting reports;

6) Calculating and reporting to Mr. Fan the net value of the investment;

7) Timely disclosing information required to be disclosed in accordance with the Agreement and relevant laws and regulations, and

8) Making proceeds distribution plans and timely distributing the investment proceeds to Mr. Fan.

83. Additionally, Article 9 of the Agreement, similar to the other investment agreements, provided that, as the cash capital custodian, Defendant Hengtai Securities was obligated to disclose information relevant to the entrusted cash capital; to review and to verify the periodic reports

prepared by the capital manager, and provide written opinions on the reports; to oversee the capital manager's management and investments made on behalf of Plaintiff Mr. Fan; to refuse to follow the capital manager's orders if such orders violate the relevant laws and terms of the Agreement; and to supervise the fund's operation and the performance of the Agreement.

84. The Agreement further provided that, during the time that Defendant Nuoyuan Capital served as the asset manager, it was not permitted to use the cash capital or its position as the asset manager to make transactions benefitting itself or anyone other than Plaintiff Mr. Fan. Additionally, Defendant Nuoyuan Capital was not to engage in any activities that would damage Mr. Fan and his cash capital investment.

85. On December 12, 2018, Plaintiff Mr. Fan wired the 20 million RMB (about $ 2.9 million USD), as directed, to the custodian bank account held by Defendant Hengtai Securities, pursuant to the Agreement, to be invested in the Dingxin Fund.

86. Upon information and belief, Defendant Nuoyuan Capital partnered with Defendant Hanfor Capital and formed another shell company, Yantai Hanfor Jingfei Investment Center (hereinafter "Hanfor Jingfei") while Defendant Nuoyuan Capital served as the limited partner of Hanfor Jingfei, and Defendant Hanfor Capital served as the general and managing partner. Nuoyuan Capital then transferred and commingled the cash investments raised from the investors, including Plaintiff Mr. Fan, with Hanfor Jingfei's corporate assets.

87. Upon information and belief, the Dingxin Fund eventually raised about 236.15 million RMB (approximately $33.7 million USD) from 181 investors, including Plaintiff Mr. Fan.

88. Upon information and belief, shortly after Plaintiff Mr. Fan deposited his cash investment into the capital custodian bank account, Defendant Nuoyuan Capital directed Defendant Hengtai Securities to transfer the cash to the corporate bank accounts belonging to Hanfor Jingfei.

89. The above-mentioned cash transfer allowed Defendant Hanfor Capital, as the general partner of Hanfor Jingfei, to directly access the cash invested by Plaintiff Mr. Fan.

90. Defendant Nuoyuan Capital did not disclose to Plaintiff Mr. Fan the above-mentioned cash transfer.

91. Upon information and belief, Defendant Hanfor Capital commingled the cash deposited by Mr. Fan with the cash funds raised by other private investment funds with Defendant Hanfor Capital's own corporate assets.

92. In the 2019 quarterly and annual reports provided to Plaintiff Mr. Fan by Defendant Nuoyuan Capital, there were only five recorded investments made from July 2017 to December 2017; no investment was made after Mr. Fan invested his cash to Nuoyuan Capital in December 2018.

93. Neither Defendant Nuoyuan Capital nor Defendant Hanfor Capital distributed proceeds to Mr. Fan in December 2019, as was required by the Agreement.

94. Since January 2020, Mr. Fan, contacted Defendants Nuoyuan Capital, Hanfor Capital, and Han multiple times through Mr. Zhou to inquire about the proceeds distribution and the refund of his cash investment, and to demand that they provide certificates of stock and other financial documents to verify transactions and investments. None of the above-mentioned Defendants provided any explanation regarding their defaults on the Agreement, nor did they provide any documents to prove that equity shares of the targeted companies had been purchased on behalf of Plaintiff Mr. Fan.

95. Upon information and belief, Defendant Nuoyuan Capital failed to register as Private Fund Manager with the China Securities Regulatory Commission, as required by Chinese Security Regulation Law.

96. Upon information and belief, transactions and investments made by Defendant Hanfor Capital and Hanfor Jingfei were not made to benefit Plaintiff Mr. Fan.

97. Upon information and belief, Hengtai Securities failed to disclose to Mr. Fan the cash transfer between Defendant Nuoyuan Capital and Hanfor Jingfei, thereby breaching its contractual obligations to Mr. Fan. Defendant Hengtai Securities failed to timely discover and disclose to Mr. Fan the nature of the transfer, and therefore grossly neglected its contractual obligations to monitor the cash capital and oversee capital manager's operation of the cash capital, as was required by the Agreement.

**Project #3: The Dingsheng Private Fund**

98. In and around 2017, Defendants Mr. Han and Nuoyuan Capital designed and created the Dingsheng Private Investment Fund (hereinafter "Dingsheng Fund") with the purported goal of raising cash capital from investors to buy pre-IPO equity shares of profitable pharmaceutical and healthcare companies.

99. The sales team from Defendant Nuoyuan Capital and professional asset managers from Defendant Hanfor Capital represented to potential investors that Defendant Hanfor Capital had extensive experience in identifying and investing in pre-IPO companies, and that Hanfor Capital would conduct due diligence to research the profitability of the targeted companies before purchasing the equity shares. They also represented that the targeted healthcare and pharmaceutical companies received public policy support from the Chinese government, including tax reduction and municipal administrative support, and that therefore investors were guaranteed to receive minimum annual proceeds equivalent to 8% of the initial investment amounts.

100. The promotional materials and quarterly report prepared by Nuoyuan Capital, and presented to investors, further stated that the Dingsheng Fund offered multiple exit options to investors, including IPO, repurchase of equity shares by the targeted companies, transfer of shareholder interests, and merger, to guarantee the maximum profits as well as refunds of the original investment amounts.

101. Each investor was required to sign an investment agreement (hereinafter "Agreement") where Defendant Nuoyuan Capital was appointed as the capital manager, and Defendant Hengtai Securities was designated as the capital custodian.

102. In reliance on the above-mentioned promises, on December 25, 2018, Plaintiff Mr. Fan signed an agreement with Defendant Nuoyuan Capital to invest 3 million RMB (approximately $0.43 million USD) to the Dingsheng Fund for a term of five years.

103. Relevant terms of the said Agreement provided that Defendant Nuoyuan Capital's obligations included, but were not limited to:

1) Managing the fund in an honest, trustworthy, diligent and responsible manner to generate profits for the investors;

2) Drafting investment risk disclaimers to disclose to investors the risk associated with the proposed investments;

3) Establishing a comprehensive internal system to ensure that Plaintiff Mr. Fan's cash capital would be separated from other investors' cash capital and from the corporate assets owned by Defendant Nuoyuan Capital, and receiving supervision from Plaintiff Mr. Fan and capital custodian Defendant Hengtai Securities;

4) Timely providing important financial documents such as certificates of assets or certificates of shares;

5) Drafting financial accounting reports;

6) Calculating and reporting the net value of the investment to Plaintiff Mr. Fan;

7) Timely disclosing information required to be disclosed in accordance with the Agreement and applicable laws and regulations, and disclosing the status of investments; and

8) Making proceeds distribution plans and timely distributing the proceeds to Plaintiff Mr. Fan.

104. The Agreement further provided that during time when Defendant Nuoyuan Capital served as asset manager, it was not permitted to use the cash capital or their position as the cash capital manager to make transactions benefiting itself or anyone other than Plaintiff Mr. Fan, nor to engage in any activities that would damage Plaintiff Mr. Fan and his cash capital.

105. Article 9 of the Agreement provided that, as the cash capital custodian, Defendant Hengtai Securities had obligations including but not limited to: disclosing information relevant to the entrusted cash capital; reviewing and verifying the periodic reports drafted by the capital manager, and to provide written opinion on the reports; overseeing the capital manager's management and investments made on behalf of Plaintiff Mr. Fan; refusing to follow the capital manager's orders when such orders violate the relevant laws and terms in the Agreement; and overseeing the fund's operation and performance under the Agreement.

106. After the Agreement was signed on December 25, 2018, Plaintiff Mr. Fan wired 3 million RMB (approximately $0.43 million USD) to the custodian account held by Defendant Hengtai Securities.

107. Upon information and belief, Defendant Nuoyuan Capital formed a partnership with Defendant Hanfor Capital called Yantai Hanfor Jingcheng Investment Center (hereinafter

"Hanfor Jingcheng") and subsequently transferred the cash capital raised by the Dingsheng Fund to the partnership. Defendant Hanfor Capital was the general partner of Hanfor Jingcheng, and was in charge of managing Hanfor Jingcheng's assets. Defendant Nuoyuan Capital was the limited partner of Hanfor Jingcheng.

108. Upon information and belief, after Mr. Fan transferred the cash capital to Hengtai Securities, Defendant Nuoyuan Capital did not purchase any equity shares of the targeted companies. Instead, shortly after Plaintiff Mr. Fan made his deposit, Defendant Nuoyuan Capital directed Hengtai Securities to transfer the cash capital to Hanfor Jingcheng's corporate bank account. Accordingly, Defendant Hanfor Capital obtained direct access to the funds.

109. Defendant Nuoyuan Capital did not disclose the above-mentioned cash capital transfer to Mr. Fan.

110. Upon information and belief, Defendant Hanfor Capital commingled the cash capital from Mr. Fan with cash raised from other private investment funds and transferred the said funds to shell companies controlled by Defendant Mr. Han.

111. According to the 2019 annual report, Hanfor Jingcheng purchased equity shares from five different companies from 2017 to 2018 but made no investment or purchase since August 2018.

112. Defendant Nuoyuan Capital did not distribute the annual proceeds to Plaintiff Mr. Fan in 2019, as required by the Agreement.

113. After Defendant Nuoyuan Capital defaulted on the Agreement, Plaintiff Mr. Fan, through intermediaries, contacted Defendants Nuoyuan Capital and Han to inquire regarding his investment, asking what equity shares Defendant Nuoyuan Capital had purchased and when he could receive the proceeds owed to him.

114. After receiving no constructive reply from Defendants Nuoyuan Capital or Han, Mr. Fan, through intermediaries, demanded that Nuoyuan Capital refund his initial cash investment, with no success.

115. Transactions and investments made by Defendant Nuoyuan Capital and Yantai Hanfor Jingcheng Investment Center were not intended to and did not benefit Plaintiff Mr. Fan.

116. Upon information and belief, Defendant Hengtai Securities failed to disclose to Plaintiff Mr. Fan the cash transfer between Defendant Nuoyuan Capital and Hanfor Jingcheng, thereby breaching its contractual obligation to Plaintiff Mr. Fan. Additionally, the above-mentioned cash transfer was not an investment made on behalf of Plaintiff Mr. Fan, but a money laundering action to transfer the cash between two companies controlled by the same individual. Thus, the transfer was not permitted by the Agreement. Defendant Hengtai Securities failed to timely discover and disclose to Plaintiff Mr. Fan the nature of the transfer, grossly neglecting its contractual obligations to monitor the cash capital and oversee the capital manager's operation of the cash capital.

### Project #4: The Hanfor New Industry Project

117. In and around 2015, Defendants Mr. Han and Hanfor Capital designed and created Hanfor New Industry Private Investment Fund. The stated purpose of the fund was to generate cash capital from qualified investors to purchase the pre-IPO equity shares of targeted companies.

118. Defendants Mr. Han and Hanfor Capital represented to interested investors that the companies he and his team identified would have great potential to generate profits and the value of equity shares would increase greatly within a few years, because Defendant Mr. Han and his employees of Defendant Hanfor Capital had extensive experience in asset management,

investment and stock trading. They further represented that investors were guaranteed to receive minimum proceeds equal to 9% of their initial cash investment for every year within the time during which the investors entrusted their cash to Defendant Hanfor Capital.

119. Investors were required to sign a partnership agreement (hereinafter "Partnership Agreement") with Defendant Hanfor Capital to form a partnership corporation called Xinyu Hanjia Investment Center (hereinafter "Xinyu Hanjia"). Defendant Hanfor Capital would serve as the general and managing partner of Xinyu Hanjia, and investors would be limited partners. Pursuant to the Partnership Agreement, investors were required to deposit cash to a certain bank account, as directed by Defendant Hanfor Capital.

120. Article 2, Clause 4 of the Partnership Agreement provided:

> The purpose of forming such partnership is to use the general partner's professional skills and experience to invest in companies by purchasing equity shares or other investments permitted by law and this Agreement, as well as to make investments with other Private Investment Funds or Private Capital Funds. The general partner shall manage the operation of the investment including identifying qualified Investment Projects, risk control, and exit options based on its extensive experience of investment and risk control to generate good proceeds for investors.

121. In reliance on the above-mentioned promises and representations, on November 23, 2018, Plaintiff Mr. Fan signed an investment agreement (hereinafter "Agreement"), in which Defendant Hanfor Capital transferred its equity shares of Xinyu Hanjia to Plaintiff Mr. Fan at the price of 16.1 million RMB (approximately $2.3 million USD).

122. According to the 2019 and 2020 annual reports issued by Defendant Hanfor Capital to investors, the Hanfor New Industry Fund only made four (4) investments from October 2015 to March 2016. There were no new investments or purchases of equity shares made after March 2016.

123. Upon information and belief, Defendants Mr. Han and Hanfor Capital commingled Plaintiff Mr. Fan's cash investment with their own personal and corporate cash assets and wired the cash to offshore shell companies founded by Defendant Mr. Han in the British Virgin Islands and in the Cayman Islands.

124. Plaintiff Mr. Fan did not receive any annual proceeds, as was required by the Partnership Agreement signed in 2019.

125. Following Defendant Hanfor Capital's default on the Agreement, Plaintiff Mr. Fan, through intermediaries, made numerous attempts, with no success, to contact Defendants Hanfor Capital and Han, and their representatives to inquire about the proceeds payments and a refund of his initial cash investment.


**Project #5: The Delin Project**

126. In 2016, Defendants Mr. Han and Hanfor Capital created the Hanfor Real Estate Investment Project, also known as the Shanghai Delin Apartment Project (hereinafter "Delin Project").

127. The Delin Project was created with the stated purpose of renovating the Delin Apartments, located at 71 North Sichuan Road, Sichuan North Road, Hongkou District, Shanghai, China, and renting out apartments to tenants.

128. The promotional materials drafted by Defendant Hanfor Capital and presented to investors stated that, because of the location of the Delin Apartments, and the professional qualifications and financial and asset management experience of Defendant Mr. Han and his team from Defendant Hanfor Capital, this investment would be low risk, and high proceeds would be guaranteed. The promotional materials further stated that the annual proceeds of the investment would likely reach 9% of the initial cash investment.

129. Interested investors were required to sign an investment agreement (labelled "Partnership Agreements") with Defendant Hanfor Capital, and to then transfer cash to bank accounts designated by Defendant Hanfor Capital, to become limited partners of a partnership with Defendant Hanfor Capital. The agreements further provided that Defendant Hanfor Capital would serve as the asset manager of the cash capital to manage the fund and invest in the Delin Project on behalf of investors.

130. From July 2016 to May 2017, the Delin Project raised 681 million RMB (about $97.3 million USD) from limited partners and investors, including Plaintiff Mr. Zhang, who made an initial investment of 30 million RMB (about $4.3 million USD) in the Delin Project.

131. The employees of Defendants Mr. Han and Hanfor Capital made a PowerPoint presentation to Mr. Zhang in December 2016 where they stated that the Shanghai Moshuo Investment Company (hereinafter "Shanghai Moshuo") was the actual possessory title holder of the target property for the Delin Project. The presentation further stated that Shanghai Moshuo had already agreed to pledge all of the company's equity shares in the property to Defendant Hanfor Capital in exchange for the cash capital Defendant Hanfor Capital would raise from investors, thereby rendering Defendant Hanfor Capital the possessory title holder of the Delin Apartments. Defendant Hanfor Capital further represented that Shanghai Moshuo would also invest cash into the partnership with Plaintiff Mr. Zhang and Defendant Hanfor Capital as cash collateral to secure the cash capital from Plaintiff Mr. Zhang.

132. The employees of Defendants Mr. Han and Hanfor Capital further represented to Plaintiff Mr. Zhang that, because Defendant Hanfor Capital was the indirect possessory title holder of the target property, the Delin Apartments, if the Delin Project failed to generate sufficient profit to pay the promised investment proceeds including Plaintiff Mr. Zhang's initial investment of

30 million RMB, Defendant Hanfor Capital would grant ownership of the apartments to Plaintiff Mr. Zhang, such that the apartments in the Delin property would function as real property collateral for Plaintiff Mr. Zhang's investment in the Delin Project.

133. Relying on these false promises and presentations, on December 14 and 15, 2016, Plaintiff Mr. Zhang signed two investment agreements (hereinafter "Agreements") with Defendant Hanfor Capital, each labeled "Partnership Agreement," to form two partnerships corporations, namely the Yantai Manyang Investment Center (hereinafter "Manyang Center") and the Yantai Manyi Investment Center (hereinafter "Manyi Center"). Through the Agreements, Mr. Zhang agreed to invest 30 million RMB (about $4.3 million USD) in total, to purchase equity shares in the above-mentioned partnership corporations, thereby becoming the limited partner of the Manyang Center and of the Manyi Center for one year.

134. The stated purpose of the Manyang Center and the Manyi Center partnerships was to use the cash capital invested by Plaintiff Mr. Zhang to invest in real estate development projects to generate proceeds.

135. The Agreements further stated that the limited partners of Manyang Center and Manyi Center are entitled to annual proceeds distributions, which were promised to equal 9% of the limited partners' initial investment, for each of the partnerships. The Agreements also stated that if the generated proceeds were insufficient to provide the agreed-upon distributions to limited partners, then the limited partners would legally be entitled to the partnerships' cash assets to make such distributions.

136. The Agreements designated Defendant Hanfor Capital as the general partner and managing partner of the Manyang Center and of the Manyi Center, thereby imposing on them various

duties owed to limited partners and investors. Specifically, Article 4 of each of the Agreements stated that Hanfor Capital's obligations included, but were not limited to, the obligations to:

1) Abide by and comply with all relevant laws and regulations, and act in an honest, diligent and responsible manner;

2) Manage and protect the assets of the partnership corporations;

3) Have a thorough understanding of the investment risks taken upon by the partnership corporations;

4) Be unlimitedly liable for the debt incurred by said partnership corporations, and

5) Other obligations required by laws, administrative regulations, and the said Partnership Agreements.

137. Additionally, Article 13 of each of the Agreements provided for the required disclosure of information to limited partners and investors, and that the managing partner had a duty to guarantee that the information disclosed was true, accurate, and complete.

138. Article 13 of each of the Agreements further provided that the scope of information requiring disclosure included the following:

1) Agreements regarding the Private Investment Funds (including the Partnership Agreement itself, Partnership Admission Agreement, Risk Disclaimer and relevant Amendments);

2) Promotional documents such as recruiting booklets;

3) Important terms and/or clauses defining parties' major rights and obligations;

4) Investments made by the Private Investment Funds;

5) Information regarding assets and debts of the Private Investment Fund;

6) Information regarding investment proceeds distributions;

7) Private Investment Funds' costs and expenses and arrangement of commissions;

8) Potential conflicts of interest;

9) Major litigations, arbitrations involving the Private Investment Funds, the Funds' assets, or custodian operations; and

10) Other important information required to be disclosed by the China Security Regulatory Committee and Assets Management Association of China that could impact investors' legal interests.

139. According to both Agreements, Plaintiff Mr. Zhang, as the limited partner of the two Partnerships, is entitled to receive proceeds generated from his initial investment as a return on investment of the cash capital invested one year after the signing of the Agreements, with the proceeds equaling 9% of his initial investment. Accordingly, Plaintiff Mr. Zhang was entitled to receive 32.7 million RMB (about $4.7 million USD) after the first year.

140. To date, more than four years have passed. Plaintiff Mr. Zhang has only received 4.04 million RMB (about $0.58 million USD), which is significantly less than the return promised in the Agreements.

141. Upon information and belief, Shanghai Moshuo was not the title holder of the Delin Apartments in December 2016 as it was stated in the promotional materials shown to Plaintiff Mr. Zhang. The actual title holder of the said property was a corporation called the Shanghai Hongying Company, which is, upon information and belief, not otherwise related to the Defendants in this case. Defendant Hanfor Capital made false presentation and promises in the promotional documents they presented to Plaintiff Mr. Zhang.

142. As early as November 2015, Shanghai Moshuo pledged approximately 68.5% of its equity shares to a Chinese citizen, 20% to a Shanghai corporation, and approximately 11.5% to a shell company controlled by Defendant Mr. Han. Upon information and belief, the above-mentioned Chinese citizen is Defendant Han's proxy.

143. Upon information and belief, Shanghai Moshuo purchased the Delin Apartments in July 2017. On August 15, 2017, the Chinese citizen mentioned above, believed to be a proxy of Defendant Mr. Han, then pledged all of the 68.5% Shanghai Moshuo equity shares he owned to another

shell company controlled by Defendant Mr. Han. This transfer rendered Defendant Mr. Han the actual major shareholder of Shanghai Moshuo. The said transfer was never disclosed to Plaintiff Mr. Zhang or other investors.

144. The above-mentioned transaction poses a conflict of interest, because Defendant Mr. Han held actual control of and was also the final beneficiary of Defendant Hanfor Capital. Therefore, Defendants Mr. Han and Hanfor Capital breached the fiduciary and disclosure duties owned to Plaintiff Mr. Zhang as Plaintiff Mr. Zhang's asset manager.

145. Following Defendants Mr. Han and Hanfor Capital's failure to adhere to the terms of the Agreements, Plaintiff Mr. Zhang, through his intermediaries, contacted Defendant Mr. Han and his representatives through Mr. Zhou numerous times to inquire about the return of the initial investment but received no response.


**Project #6: The Golden Kirin Project**

146. In and around 2018, Defendants Mr. Han and Hanfor Capital created a new private investment project called the Golden Kirin Private Investment Project (hereinafter "Golden Kirin Project") to finance a new real estate development project located in Guangdong Province, China, known as the Bihai Yinhu Project (hereinafter "BHYH Project").

147. The stated purposes of the Golden Kirin Project were to recruit qualified investors and to raise cash capital to finance the BHYH Project.

148. In the presentation of the project made by Defendant Hanfor Capital to the investors, including Plaintiff Mr. Zhang, Defendant Hanfor Capital promised that the investors who invested more than 5 million RMB (approximately $0.7 million USD) into the Golden Kirin Project would be guaranteed to receive annual proceeds over the course of two years, and that

the initial investment would be refunded at the end of two years, when the BHYH Project was completed.

149. Defendant Hanfor Capital further promised that the annual proceeds would be in the amount of 8.8% of the initial cash capital invested, plus a floating income equal to 20% of the profits generated by the investments.

150. In and around 2018, the sales team from Defendant Nuoyuan Capital approached Plaintiff Mr. Zhang and pitched the Golden Kirin Project to him. In addition to the above-mentioned promise of a guarantee fixed annual investment income and additional floating income, the sales representatives further stated that Defendant Hanfor Capital had already obtained the permission and other necessary permits from the local government to develop the land where the BHYH project was located and indicated that they had an ownership interest in the property.

151. The sales team promised that if the BHYH project failed to generate sufficient profits for investors, investors were entitled to take ownership of the properties built by the BHYH project.

152. In reliance on the assurances made by Defendants Mr. Han and Hanfor Capital and their agents, Plaintiff Mr. Zhang signed an investment agreement (hereinafter "Agreement") with Defendant Nuoyuan Capital on April 26, 2018, to invest 5 million RMB (about $0.7 million USD), to subscribe to the Golden Kirin Project.

153. The Agreement instructed Plaintiff Mr. Zhang to deposit the 5 million RMB (about $0.7 million USD), to a bank account held by Defendant Hengtai Securities, which was appointed by Defendant Nuoyuan Capital to be the cash capital custodian. The Agreement further stated that Defendant Nuoyuan Capital was the manager of the Golden Kirin Project and would manage the cash capital on behalf of Plaintiff Mr. Zhang.

154. According to the Agreement, Defendant Nuoyuan Capital's obligations as the capital manager of the Golden Kirin Project, included, but were not limited to:

    1)  Managing the Fund in an honest, trustworthy, diligent, and responsible manner;

    2)  Drafting investment risk disclaimers to disclose risks to investors associated with the promised investments;

    3)  Implementing a comprehensive internal system to ensure that Plaintiff Mr. Zhang's cash capital is separated from other investors' cash capital and from the corporate assets owned by Defendant Nuoyuan Capital, allowing for supervision by Plaintiff Mr. Zhang and the capital custodian Hengtai Securities;

    4)  Timely providing important financial documents such as certificate of assets or certificate of shares;

    5)  Drafting financial accounting reports;

    6)  Calculating and reporting the net value of the investment to Plaintiff Mr. Zhang;

    7)  Timely reporting information that is required to be disclosed pursuant to the Agreement and relevant laws and regulations, including disclosing the status of the investment; and

    8)  Making and adhering to a proceeds distribution plan to timely distribute the proceeds to Plaintiff Mr. Zhang.

155. The Agreement further provided that while Defendant Nuoyuan Capital served as capital manager, it should not use the cash capital or the advantage of managing the cash capital to make transactions benefiting itself or anyone other than Plaintiff Mr. Zhang. Additionally, the Agreement stated that Defendant Nuoyuan Capital should not engage in any activities that would cause damages to Plaintiff Mr. Zhang and to his cash capital.

156. Relevant clauses in Article 9 of the Agreement provided that, as the cash capital custodian, Hengtai Securities had obligations, including but not limited to:

    1)  Disclosing information relevant to the entrusted cash capital;

    2)  Reviewing and verifying the periodic report drafted by the capital manager and providing written opinion on the reports;

    3)  Supervising the capital manager's management and investments made on behalf of Plaintiff Mr. Zhang, and refusing to accept the capital manager's order when such order violates the relevant laws and terms in the Agreement; and

    4)  Supervising the project's operation and the performance of the Agreement.

157. Upon information and belief, Defendant Nuoyuan Capital did not invest in the BHYH Project on behalf of Plaintiff Mr. Zhang, nor did they obtain the relevant permits and permissions from the local government to develop the land identified in the promotional materials. Instead, acting as the capital manager of the Golden Kirin Project, Defendant Nuoyuan Capital used the cash capital raised from investors, including Plaintiff Mr. Zhang, as its own corporate assets in order to partner with Defendnat Hanfor Capital and formed another shell company, the Tibet Yuefengyuan Company (hereinafter "Tibet Company) to subscribe equity shares of the company operating the BHYH project.

158. Nuoyuan Capital did not disclose the above-mentioned actions to Plaintiff Mr. Zhang, thereby breaching fiduciary duties owed to him as the capital manager of the Golden Kirin Project.

159. Upon information and belief, the company operating the BHYH project, the Yuehaifeng Corporation, had debts more than its assets. In February 2018, the corporation announced that it had stopped regular operations to reconstruct its financial assets. At that time, it was highly possible that the projects the company operated would halt or would not be completed because

of the company's unstable financial condition. Defendant Nuoyuan Capital did not disclose the said company' unstable financial condition to Plaintiff Mr. Zhang when they solicited the cash capital. To the contrary, in the promotional material drafted by Defendant Hanfor Capital, Defendant Nuoyuan Capital falsely represented that the BHYH project had a great potential to generate high income because companies involved in the project were highly qualified and extremely experienced in the real estate construction business.

160. Upon information and belief, in May 2018, the above-discussed company announced that it planned to re-purchase its equity share owned by Defendant Mr. Han's shell company, the Tibet Company, through a cash deal. In June 2018, the said company announced that its board of directors approved the repurchase of its equity shares owned by the Tibet Company at the price of approximately 545 million RMB (about $77.9 million USD). In July 2018, the said company announced that its board of directors cancelled the cash repurchase of the said equity shares. On August 30, 2019, a Chinese online public database operated by the Chinese government showed that the said equity shares were to be sold to a different company at the price of 170 million RMB (about $24.3 million USD). Neither Defendant Nuoyuan Capital nor Defendant Hanfor Capital disclosed the said transaction and the announcements to Plaintiff Mr. Zhang.

161. The Agreement with Plaintiff Mr. Zhang stated that the term of the investment is two (2) years, and that Plaintiff Mr. Zhang would receive annual proceeds in the equivalent of 8.8% from 5 million RMB invested (about $0.7 million USD), as well as a refund of the said 5 million RMB by April 2020, for a total of approximately 5.8 million RMB (approximately $0.8 million USD) owed to Plaintiff Mr. Zhang by the end of two years.

162. To date, more than two years have passed since the Agreement was signed, yet Plaintiff Mr. Zhang has recovered only 2 million RMB from his investment.

163. Upon information and belief, shortly after Plaintiff Mr. Zhang deposited 5 million RMB in cash into the custodian account held by Defendant Hengtai Securities, the cash was then transferred to Defendant Hanfor Capital. Defendant Hengtai Securities failed to timely determine and disclose the nature of the transfer. Defendant Hengtai Securities grossly neglected its contractual obligation to monitor the cash capital and to supervise the capital manager's operation of the cash capital invested by Plaintiff Mr. Zhang.

164. Plaintiff Mr. Zhang, through his intermediaries, contacted Defendant Mr. Han and his representatives multiple times to inquire about the refund of his initial investment and distribution of proceeds, and demanded that Defendants Mr. Han and Nuoyuan Capital provide certificates of shares of the company operating the BHYH project, but Defendants Mr. Han and Nuoyuan Capital have never provided any documents showing that Plaintiff Mr. Zhang's cash capital was used to purchase the equity shares of the above-mentioned company, nor did they disclose the net value of the investments made on behalf of Plaintiff Mr. Zhang, despite the requirements of the Agreement. Instead, Defendants Mr. Han and Nuoyuan Capital would always find excuses and make up reasons why they could not at that time provide Plaintiff Mr. Zhang with a full return plus promised proceeds on his investment in the time frame promised in the Agreement.

### Project #7: The Wentai Huying Project

165. In and around 2017, Defendant Mr. Han and Hanfor Capital designed and formed the Wentai Huying Project (hereinafter "Wentai Project").

166. Upon information and belief, in 2017, Defendant Mr. Han founded a shell company in Shenzhen, China called Guotai Hengtong International Financial Service Company (hereinafter "Guotai International") to operate the Wentai Project.

167. Defendant Mr. Han directed the sales team from another shell company controlled by Defendant Hanfor Capital to reach out to potential investors and to promote the Wentai Project. The stated purpose of the Wentai Project was to raise cash capital from qualified investors to purchase debt securities of targeted companies for a period of twelve (12) months.

168. The sales team from the said shell company represented to investors that Guotai International was the beneficiary of debt securities from many companies. The sales team further represented that all of those companies were well-established, with corporate assets valued more than their debts, and that these companies were willing to use their corporate assets as collateral in the event that they fail to honor their debts. Therefore, the investors' risk would be minimal.

169. The sales team further stated that the proceeds of this investment would be 9.5% of the initial cash investment.

170. In reliance on the above-described promises, on August 13, 2018, Plaintiff Mr. Zhou signed a subscription agreement (hereinafter "Agreement") with Guotai International serving as the issuer and Defendant Nuoyuan Capital as the investment counsel.

171. Relevant clauses of the Agreement stated that Guotai International, the issuer of the Wentai Project, guaranteed that the information about the Wentai Project was true and accurate, and that Guotai International must disclose all information that might impact the investors' decisions. The Agreement further stated that Defendant Nuoyuan Capital, as the investment counsel, shall not knowingly overstate the profitability of the targeted companies, and shall

advise investors in an honest and trustworthy manner. Additionally, the Agreement stated that Guotai International shall manage the funds and invest on behalf of investors in an honest and trustworthy manner.

172. Upon information and belief, Defendant Nuoyuan Capital did not disclose that Guotai International was another shell company founded by Defendant Mr. Han.

173. Article 5 of the Agreement also stated that the Nanning Longsheng Trade Company (hereinafter "Nanning Longsheng") would be the "Third Party Guarantor" of the Wentai Project, such that, if Guotai International was unable to repurchase the debt securities from Plaintiff Mr. Zhou, Nanning Longsheng would be liable for the payment and debts incurred by Guotai International.

174. Upon information and belief, Nanning Longsheng is another shell company controlled by Defendants Mr. Han and Hanfor Capital. This company did not have financial ability or assets to act as a Guarantor of the Wentai Project. Defendant Nuoyuan Capital did not disclose this information to Plaintiff Mr. Zhou.

175. Toward the end of 2019, Defendant Nuoyuan Capital informed Plaintiff Mr. Zhou that the companies owing money to Guotai International notified Defendant Nuoyuan Capital that they were unable to honor their debt. As a result, Guotai International was unable to pay the 9.5% proceeds to Plaintiff Mr. Zhou and did not refund his cash investment.

176. To date, Plaintiff Mr. Zhou has not received his initial investment or any of the investment income promised by Defendants Mr. Han and Hanfor Capital in the Agreement for the Wentai Project.

**PIERCING THE CORPORATE VEIL**

177. As stated above, Defendant Mr. Han is the sole owner of Defendants BZ China, BZ Virgin Islands, BZ Cayman Islands, Hanfor Holdings, Hanfor Capital, HFRE LLC, Hanfor Cayman, Nuoyuan Capital, HF Capital, HF Cosmopolitan and other shell companies either directly or through proxies. Defendant Mr. Han is the majority shareholder of Defendant Nuoyuan Capital, and upon information and belief, holds the remaining shares through proxies. Therefore, Defendant Mr. Han is de facto the sole shareholder of Defendant Nuoyuan Capital.

178. Defendant Mr. Han has regularly violated corporate norms and formalities by taking hundreds of millions of yuan invested in Defendant Nuoyuan Capital and transferring it, unbeknownst to the investors, to other companies wholly owned by him, set up in New York, in the British Virgin Islands, and in the Cayman Islands.

179. Many of these corporations, such as Defendants BZ Virgin Islands, BZ Cayman Islands, Hanfor Holdings, Hanfor Cayman, HF Capital, and HF Cosmopolitan are based in the British Virgin Islands or the Cayman Islands, and are believed to be proxy corporations belonging to Defendant Mr. Han, where he has hidden funds that were fraudulently obtained by him, and by entities he controls, from investors in the 7 projects specified above.

180. BZ China is a shell company based in China wholly owned by Defendant Mr. Han.

181. HFRE LLC is a shell company based in New York wholly owned by Defendant Mr. Han.

182. Defendant Mr. Han, as a majority shareholder of Defendant Nuoyuan Capital and sole owner of Defendant Hanfor Capital, had the means to dominate and control Defendants Nuoyuan Capital and Hanfor Capital, and did in fact do so. He would not have been able to fraudulently transfer the assets away from Defendants Nuoyuan Capital and Hanfor Capital otherwise.

183. Furthermore, Chinese authorities have already determined that Defendant Mr. Han has been defrauding investors and commingling funds. The Court in this case should also rule likewise.

184. Because it is clear that these corporations are all dominated by Defendant Mr. Han, the corporate veil should be pierced, and these corporations should be treated as alter egos of Defendant Mr. Han.

## FIRST COUNT:
## BREACH OF CONTRACT

185. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

186. Since December 2016 Plaintiffs altogether signed eight contracts with Defendants Mr. Han and Hanfor Capital to invest money in various projects, totaling 98.1 million RMB (about $14 million USD).

### i. Project #1: The Ruili Weixin Project

187. In Project #1, Plaintiff Ms. Zhang purchased 2,000,000 Class B equity shares of Hanfor Holdings on July 7, 2017 for $2 million USD. Hanfor Holdings was raising cash capital to purchase equity shares of NIO.

188. The purpose of these investments, as the representatives of Defendant Hanfor Holdings represented to Plaintiff Ms. Zhang , was to raise cash capital to purchase equity shares of NIO.

189. Despite NIO going public at the NYSE on September 12, 2018, Defendants Mr. Han and Hanfor Holdings have not provided any return on investment to Plaintiff Ms. Zhang, in violation of their contractual obligations.

### ii. Project #2: The Dingxin Fund

190. In Project #2, Plaintiff Mr. Fan invested 20 million RMB (about $2.9 million USD) in the Dingxin Fund on December 12, 2018 by transferring the money to Defendant Nuoyuan Capital,

with a promise of 9% yearly return, and Defendant Nuoyuan Capital promised to invest the money in companies that were about to have their IPOs.

191. After Plaintiff Mr. Fan transferred the investment funds to Defendant Hengtai Securities, pursuant to the Agreement, the funds were then transferred to Defendant Hanfor Capital's corporate accounts, without disclosure of such transfer to Mr. Fan.

192. Therefore, under the terms of the contract, Mr. Fan should have received 1.6 million RMB (about $0.2 million USD) yearly until 2023, when his entire investment should be returned to him.

193. Instead, Defendant Nuoyuan Capital failed to make any return on Mr. Fan's investment, and Defendants Mr. Han and Nuoyuan Capital are therefore in breach of their contractual obligations.

### iii. Project #3: The Dingsheng Private Fund

194. In Project #3, Plaintiff Mr. Fan invested 3 million RMB (approximately $0.43 million USD) into the Dingsheng Private Fund by transferring the money to the custodian account held by Defendant Hengtai Securities on or after December 25, 2018, for a period of five years.

195. As part of the agreement, Defendant Hengtai Securities was to invest in specific projects, which would be managed by Defendant Nuoyuan Capital.

196. However, upon information and belief, such investments were never made, and therefore Defendant Mr. Han, Defendant Nuoyuan Capital, and Defendant Hengtai Securities breached the agreement.

197. To this date, no return on investment has been made for this project, and therefore Defendants Mr. Han and Hengtai Securities are in breach of their contractual obligations.

### iv. Project #4: The Hanfor New Industry Project

198. In Project #4, Plaintiff Mr. Fan signed an investment agreement according to which Mr. Fan invested 16.1 million RMB (approximately $2.3 million USD) on November 13, 2018 into a fund owned by Defendants Mr. Han and Hanfor Capital. In exchange, Plaintiff Mr. Fan was to receive annual proceeds.

199. Plaintiff Mr. Fan did not receive the annual proceeds in 2019, as the Partnership Agreement required.

200. Defendants Mr. Han and Hanfor Capital thereby violated their contractual obligations.

### v. Project #5: The Delin Project

201. In Project #5, Plaintiff Mr. Zhang invested more than 30 million RMB (about $4.3 million USD) and signed two contracts with Defendants Mr. Han and Hanfor Holding, which contractually obligated Defendants Mr. Han and Hanfor Holding to make a return of 32.7 million RMB (approximately $4.7 million USD) within one year.

202. To date, more than four years have passed, and Plaintiff Mr. Zhang only received 4.04 million RMB (approximately $0.58 million USD), far from what he should have received in accordance with the applicable agreement. Therefore, Defendants Mr. Han and Hanfor Holding are in breach of their contractual obligations.

### vi. Project #6: The Golden Kirin Fund

203. In Project #6, Mr. Zhang invested 5 million RMB, with a promise of a return on investment of 8.8% yearly, with all money returned by April 2020, for a total return on investment of 5.88 million RMB (approximately $900,000 USD).

204. After Mr. Zhang transferred the investment funds to Defendant Hengtai Securities, pursuant to the Agreement, the funds were then transferred to Defendant Hanfor Capital's corporate accounts, without disclosure of such transfer to Mr. Zhang.

205. To date, nearly eight months after payment was due, Mr. Zhang only received 2 million RMB (about $0.29 million USD), far from what he should have received per the Agreement. Therefore, Defendants Mr. Han and Hanfor Holdings are in breach of their contractual obligations.

### vii. Project #7: The Wentai Huying Project

206. In Project #7, Plaintiff Mr. Zhou signed a subscription agreement with Guotai International, a proxy company of Defendant Mr. Han, that promised 9.5% return on investment.

207. At the end of 2019, representatives of Defendant Nuoyuan Capital informed Plaintiff Mr. Zhou that they were unable to honor their debt securities to Guotai International, and that therefore Guotai International was unable to pay the 9.5% proceeds to Plaintiff Mr. Zhou.

208. So far, no return on investment has been made for this project.

209. Therefore, Guotai International and Defendant Nuoyuan Capital, as well as Defendant Mr. Han, have anticipatorily breached the agreement.

### SECOND COUNT:

### VIOLATION OF CONTRACTUAL OBLIGATIONS OF GOOD FAITH AND FAIR DEALING

210. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

211. Every contract contains an implied covenant of good faith and fair dealing, regardless of whether explicitly stated in the contract, whereby it is implied or understood that each party to the contract must act in good faith and deal fairly with the other party in performing or enforcing the terms of the contract.

212. Upon information and belief, Defendants Mr. Han, Hanfor Capital, Nuoyuan Capital, and other corporate Defendants entered into the respective investment contracts listed in First Count with no intention of ever investing in the manner specified in the contracts, thereby acting in bad faith.

213. Furthermore, Defendants' failure to pay back investors as specified and required by the contracts shows that they continued to act in bad faith.

## THIRD COUNT:
### FRAUD

214. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

215. Defendants Mr. Han and Hanfor Capital specifically promised with regard to all seven investment projects that the investors' funds would be invested in the projects as specified in the contracts and provide a return on investment in a timely manner.

216. These seven investment projects are: the Ruili Weixin Project, the Dingxin Fund, the Dingsheng Fund, the Hanfor New Industry Project, the Delin Development Project, the Golden Kirin Fund, and the Wentai Huying Project.

217. At the time that the respective agreements with regard to the investment projects were signed, Defendant Mr. Han and his proxy companies already intended to defraud the Plaintiff investors, among others. From the outset of the investments, many of the projects specified in the agreements either never existed, or were managed in such a way that it was impossible to provide a timely return on investment, and the Defendants involved in the investment agreements, including Mr. Han and his proxies, failed to take basic steps to invest the funds provided by the Plaintiffs, and failed to comply with basic regulations, as follows.

218. In Project #2, the Dingxin Project, as stated above, Defendant Nuoyuan Capital failed to register as Private Fund Manager with the China Securities Regulatory Commission, as required by Chinese Security Regulation Law, thus demonstrating intent to not perform the contracts associated with that project from the very beginning.

219. In Project #4, the Hanfor New Industry Fund, the project only made four (4) investments from October 2015 to March 2016, and made no new investments or purchases of equity shares made after March 2016, despite promising to invest greater funds on behalf in investors.

220. Additionally, Defendant Mr. Han and his proxy companies made false representations to the Plaintiffs regarding the Defendants' ownership of the assets or their control over such.

221. In Project #5, Plaintiff Mr. Zhang agreed to invest his money into the Delin Project, relying on the promise of employees of Hanfor Capital to pledge their possessory interest in the building, via Shanghai Moshuo, a purported co-investor, as collateral for the project, despite the fact that Mr. Han and his companies did not have an ownership stake in the property that Mr. Han and his associates claimed to intend to invest in 2016. Furthermore, Defendant Mr. Han did not disclose his interest in Shanghai Moshuo and the conflict that it caused.

222. In Project #6, the Golden Kirin Project, there is no indication that Defendant Nuoyuan Capital invested in the BHYH Project on behalf of Plaintiff Mr. Zhang, or that they obtained the necessary permits and permissions from the local government to develop the land identified in the promotional materials. Instead, acting as the capital manager of the Golden Kirin Project, Defendant Nuoyuan Capital used the cash capital raised from investors, including Plaintiff Mr. Zhang, as its own corporate assets in order to partner with Defendant Hanfor Capital and formed another shell company, the Tibet Yuefengyuan Company (hereinafter "Tibet Company), to subscribe equity shares of the company operating the BHYH project.

223. In Project #7, the Wentai Huying Project, the "Third Party Guarantor" named in the Agreement, Nanning Longsheng, never had sufficient funds to act as a guarantor, and thus it is clear that Mr. Han and his associated companies intended to defraud the Plaintiffs from the outset, at the time the relevant investment agreements were entered into.

224. As a result of Defendant Mr. Han's and his proxy companies' false representations and assurances, which Plaintiffs relied upon to their detriment, Plaintiffs have suffered and will continue to suffer monetary damages, due to Mr. Han and his companies' failure to pay back the vast majority of the money invested, or the promised return.

**FOURTH COUNT:**
**UNJUST ENRICHMENT**

225. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

226. Plaintiffs made investments with the understanding that the funds would be invested by Defendant Mr. Han and the companies under his control, and the understanding that there would be a return on investment as promised.

227. To the extent that any return on investment is not contractually due or that no contractual obligation was created, Defendants Mr. Han, Ms. Ao, and Ms. Feng were all unjustly enriched at the expense of the Plaintiffs.

228. This enrichment was at the Plaintiffs' expense because the money was transferred to the Defendants with the understanding that it would be invested in various projects that would provide a reliable return on investment, based on Defendant Mr. Han and his companies' prior reputation as a reliable investment vehicle.

229. Therefore, all investments made by the Plaintiffs should be returned to them with interest due as promised in each respective case.

## FIFTH COUNT:
## CONVERSION

230. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

231. The shares of the companies that were purchased on behalf of the Plaintiffs were the Plaintiffs' property .

232. Defendants Mr. Han and Hanfor Capital appropriated these shares by failing to invest in them as they were contractually obligated to do and failing to return the money they failed to invest into shares.

233. Instead, Defendant Mr. Han transferred these funds to himself and corporations that he entirely dominated, as well as Defendants Ms. Ao and Ms. Feng.

234. Presently, Defendants Ms. Ao and Ms. Feng live in the properties that were purchased, upon information and belief, with money that was illegally transferred from China, and in part is the rightful property of Plaintiffs.


## SIXTH COUNT:
## CIVIL CONSPIRACY TO COMMIT FRAUD

235. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

236. Defendants Mr. Han, Hanfor Holdings, and Mr. Xu conspired to use funds invested, by the Plaintiffs and other investors, in the many investment projects, for Defendant Mr. Han's personal expenses and to purchase properties in the United States, both under Defendant Mr. Han's name and under the names of his relatives and companions, including Defendants Ms. Ao and Ms. Feng.

237. Defendant Mr. Xu also assisted Defendant Mr. Han in secretly transferring Plaintiffs' money to the United States through several shell companies that Defendant Mr. Han incorporated in the British Virgin Islands, Cayman Islands, and other foreign countries for Defendant Mr. Han's personal use.

238. By doing so, both Defendants Mr. Xu and Mr. Han are in violation of 18 U.S. Code § 1957, which forbids engaging in monetary transactions in criminally derived property of a value greater than $10,000 and derived from specified unlawful activity, including fraud.

239. Defendant Mr. Xu was assisted by Defendant Ms. Feng in violating 18 U.S. Code § 1957, as they have also had property placed in her name to hide the assets fraudulently obtained by Defendants Mr. Han and Hanfor Holding.

240. Therefore, Defendants Mr. Han, Hanfor Holdings, Mr. Xu, Ms. Ao, and Ms. Feng all conspired to violate 18 U.S. Code § 1957, to the detriment of Plaintiffs.


### SEVENTH COUNT:
### BREACH OF FIDUCIARY DUTIES

241. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

242. Each of the eight investment contracts created a fiduciary duty owed to Plaintiffs by Defendant Mr. Han, as well as by the various companies under his control, including Defendants Nuoyuan Capital, Hanfor Capital, and Hengtai Securities.

243. These duties obligate Defendant Mr. Han and the Defendant companies to invest the funds provided by Plaintiffs in a way that is consistent with the duty of fair dealing and the duties to avoid self-dealing and competition. These duties also include the duties of care, loyalty, good faith, and disclosure.

244. Defendants Mr. Han, Nuoyuan Capital, Hanfor Capital, and Hengtai Securities breached these duties owed to Plaintiffs. Defendants provided minimal return on investment and have refused to return more than a small amount of the investments provided by Plaintiffs.

245. Furthermore, Defendants Mr. Han, Nuoyuan Capital, Hanfor Capital, and Hengtai Securities engaged in self-dealing behind Plaintiffs' backs by putting the funds into their own projects and earning a profit, while failing to provide returns or profits to Plaintiffs.

246. Defendants Mr. Han, Nuoyuan Capital, Hanfor Capital, and Hengtai Securities violated the duty of disclosure, as they are obligated to communicate all relevant and material information that they know, and that pertains to the scope of their agency, but failed to properly notify Plaintiffs of their failure to invest as promised in the agreements.

247. As a result, Defendants Mr. Han, Nuoyuan Capital, Hanfor Capital, and Hengtai Securities have breached multiple fiduciary duties owed to Plaintiffs under the eight different contracts, harming Plaintiffs.

### EIGHTH COUNT:
### VIOLATION OF RULE 10B-5 OF THE SECURITIES AND EXCHANGE ACT OF 1934

248. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

249. Pursuant to Rule 10b-5 of the Securities and Exchange Act of 1934, it is illegal for anybody to directly or indirectly use any measure to defraud, make false statements, omit relevant information, or otherwise conduct business operations that would deceive another person in the process of conducting transactions involving stock and other securities.

250. As stated above, Defendants Mr. Han, Hanfor Capital and Nuoyuan Capital made multiple materially deceptive and false statements to induce Plaintiffs to invest in seven different investment projects, to the Plaintiffs' detriment.

251. In reliance on such material misrepresentations and assurances from Defendants, including Defendant Mr. Han, Plaintiffs signed investment agreements with Defendants.

252. Instead of investing the Plaintiff's funds, Defendants Mr. Han, Hanfor Capital, and Nuoyuan Capital took Plaintiffs' investment money and used it for their personal purposes, and falsely claimed that this money had in fact been invested as promised, when in fact the promised investments had not been made.

253. Therefore, Defendants Mr. Han, Hanfor Capital and Nuoyuan Capital have violated Rule 10b-5 of the Securities Exchange Act of 1934.


**NINTH COUNT**
**CONSPIRACY TO VIOLATE FEDERAL CIVIL R.I.C.O., 18 U.S.C. § 1962**

254. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs as if fully set forth herein.

255. Defendant Mr. Han, and all corporate defendants of this case, both individually and as proxies of Defendant Mr. Han, knowingly, willfully, and unlawfully conspired to facilitate a scheme which included the operation or management of a R.I.C.O. enterprise as per U.S.C. § 1964(c)-(d) through a pattern of racketeering activity as alleged above.

256. Plaintiffs allege that conduct, and the conduct of each Defendant named herein, constitutes racketeering as set forth in 18 U.S.C. § 1964(c). Specifically, Congress has defined "racketeering" to include wire fraud, or committing fraud by means of electronic transmissions over wire, as defined by 18 U.S.C. § 1343.

257. Defendants engaged in multiple instances of wire fraud. Defendant Mr. Han directed his fraudulent businesses through Internet services for the purpose of furthering an investment scheme, as detailed in the Fifth Count of this Complaint.

258. The investment scheme created by Defendant Mr. Han and his associates entails multiple fraudulent investment schemes over a period of at least two years, wherein high interest investment returns were promised to hundreds of investors.

259. In fact, as detailed above, these investment schemes were created for the deliberate purpose of defrauding investors. The agents of the corporate defendants running the funds, including Defendants Nuoyuan Capital, Hanfor Capital, and Hanfor Holdings made promises to investors to invest in funds but deliberately chose not to do so, or invested but failed to provide any records of investment. Instead, the funds invested were commingled with Defendant Mr. Han's personal funds and his associates' personal funds, and otherwise hidden overseas.

260. At least one investment, the Ruili Weixin Project, was promised by agents of Defendant Hanfor Holdings to invest in funds located in the United States, namely in NIO, before its IPO, and upon information and belief, actually did so. Like every other scheme in this complaint, no return on investment was ever made.

261. As a result of the investment scheme in the Ruili Weixin Project, directed by Defendant Mr. Han and carried out by his associates and his companies, both those listed as parties and others known and unknown, Defendants have failed to return more than $14 million of invested funds, $2 million of which was invested by Plaintiffs. The failure of Defendant Mr. Han and his associates and his companies to return the invested funds has resulted in damages to Plaintiffs worth approximately $32.35 million.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

A. Award compensatory, consequential, exemplary and punitive damages to Plaintiff,

including interest, in an amount to be determined at trial;

B. Rescission of the agreements;

C. Award attorneys' fees and costs to Plaintiffs; and

D. Grant to Plaintiffs such other relief as is just and proper.

**Jury Trial Demand**

Plaintiffs demand trial by jury on issues so triable.

**Wong, Wong & Associates, P.C.**
*Attorneys for Plaintiffs*

**By: /s/ )  Paul A. Gilmer, Esq.**
**Date: 2/23/2021**