Jeffrey S. Boxer, Esq.
Madelyn K. White, Esq.
Carter Ledyard & Milburn LLP
Two Wall Street
New York, New York 10005
Tel. (212) 732-3200
Fax (212) 732-3232
Email boxer@clm.com/ white@clm.com
*Attorneys for Defendants Hanfor Holdings Co., Ltd.,*
*HF Holdings Limited, Hanfor Capital Management*
*Co., Ltd., Nuoyuan Capital Management Company*
*Ltd., BZ Industrial (CHINA), BZ Industrial*
*(Virgin Islands), BZ Industrial (Cayman Islands),*
*Hanfor (Cayman) Limited, HFRE LLC, HF Capital*
*Management Cay Inc., HF Cosmopolitan Beta L.P.,*
*Xueyuan Han, Junjun Feng, Wennan Ao and George Xu*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JING ZHANG, WEI FAN, MINGLIAN ZHANG, AND JUN ZHOU, | |
| Plaintiffs, | |
| -against- | 21-cv-01625 (GHW) (BCM) |
| XUEYUAN HAN, HANFOR HOLDINGS CO., LTD., HF HOLDINGS LIMITED., HANFOR CAPITAL MANAGEMENT CO., LTD., NUOYUAN CAPITAL MANAGEMENT COMPANY LTD., GEORGE XU, JUNJUN FENG, WENNAN AO, BZ INDUSTRIAL (CHINA), BZ INDUSTRIAL (VIRGIN ISLANDS), BZ INDUSTRIAL (CAYMAN ISLANDS), HANFOR (CAYMAN) LIMITED, HFRE LLC, HF CAPITAL MANAGEMENT CAY INC., HF COSMOPOLITAN BETA L.P., HENGTAI SECURITIES CO., LTD., JOHN DOES 1-10, JANE DOES 1-10, AND ABC-XYZ CORP. 1-10, | |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' APPLICATION FOR ATTACHMENT**

9814359.9

## TABLE OF CONTENTS

**Page(s)**

**INTRODUCTION AND PRELIMINARY STATEMENT** ......................................... 1

**STATEMENT OF FACTS** ....................................................... 1

**ARGUMENT** ........................................................................ 5

**POINT I PLAINTIFFS FAIL TO MEET THEIR HEAVY BURDEN ON A MOTION FOR AN ATTACHMENT** ......................................................... 5

    **A.  Legal Standard** ...................................................... 5

    **B.  Plaintiffs Fail to Show That CPLR 6201(3) Applies** ..................... 6

    **C.  Plaintiffs Cannot Show Probable Success on the Merits** ................ 11

    **D.  The Amount Sought to Be Attached Is Unsupported** ................... 20

**POINT II PLAINTIFFS FAIL TO MEET THEIR BURDEN TO OBTAIN A TEMPORARY RESTRAINING ORDER** ............................................. 22

**POINT III PLAINTIFFS MUST POST A BOND IF THEIR APPLICATION IS GRANTED** ........................................................................ 24

**CONCLUSION** ..................................................................... 25

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Amaranth Nat. Gas Commodities Litig.*,
    711 F. Supp. 2d 301 (S.D.N.Y. 2010) ...............................................................7, 11

*Bank Leumi Tr. Co. of N.Y. v. Istim, Inc.*,
    892 F. Supp. 478 (S.D.N.Y. 1995) ............................................................................9

*Benihana, Inc. v. Benihana of Tokyo, LLC*,
    784 F.3d 887 (2d Cir. 2015)....................................................................................22

*Brastex Corp. v. Allen Int'l, Inc.*,
    702 F.2d 326 (2d Cir. 1983).................................................................................5, 6

*Burns v. Valenza*,
    1988 N.Y. App. Div. LEXIS 7883 (1st Dep't Jan. 14, 1988)..................................22

*Buy This, Inc. v. MCI Worldcom Commc'ns, Inc.*,
    178 F. Supp. 2d 380 (S.D.N.Y. 2001)............................................................5, 6, 25

*City of New York v. Citisource, Inc.*,
    679 F. Supp. 393 (S.D.N.Y. 1988) .........................................................................11

*Clark v. Advanced Composites Grp.*,
    No. 16 Civ. 6422 (GBD), 2019 U.S. Dist. LEXIS 80639 (S.D.N.Y. May 9,
    2019) ...................................................................................................................17, 20

*DaPuzzo v. Globalvest Mgmt. Co.*,
    263 F. Supp. 2d 714 (S.D.N.Y. 2003)......................................................................14

*David L. Threlkeld & Co. v. Metallgesellschaft, Ltd.*,
    923 F.2d 245 (2d Cir. 1991)....................................................................................14

*Diesel Props Srl v. Greystone Bus. Credit*,
    631 F.3d 42 (2d Cir. 2011)......................................................................................18

*E. Fin. Corp. v. JSC Alchevsk Iron & Steel Works*,
    2009 U.S. Dist. LEXIS 23283 (S.D.N.Y. Mar. 23, 2009) ......................................15

*Ellington Credit Fund Ltd. v. Select Portfolio Serv.*,
    837 F. Supp. 2d 162 (S.D.N.Y. 2011)................................................................16, 18

9814359.9

*Fed. Deposit Ins. Corp. v. FSI Futures, Inc.*,
   No. 88 Civ. 0906 (PNL), 1991 U.S. Dist. LEXIS 14946 (S.D.N.Y. Oct. 15,
   1991) ...........................................................................................................................17

*Gen. Textile Printing v. Expromtorg Int'l*,
   862 F. Supp. 1070 (S.D.N.Y. 1994) ...................................................................6, 11

*Genesco, Inc. v. T. Kakiuchi & Co.*,
   815 F.2d 840 (2d Cir. 1987) ............................................................................14

*Hart Enters. Int'l, Inc. v. Anhui Provincial Import & Export Corp.*,
   888 F. Supp. 587 (S.D.N.Y. 1995) .....................................................................14

*Hutton v. Klabal*,
   726 F. Supp. 67 (S.D.N.Y. 1989) .......................................................................17

*Knoll v. Schectman*,
   275 F. App'x 50 (2d Cir. 2008) .........................................................................19

*Lot 42 in Office of Cnty. Clerk & Register of N.Y. Cnty., N.Y.*, No. 12-CV-4034
   (HB), 2013 U.S. Dist. LEXIS 110783, at *18 (S.D.N.Y. Aug. 6, 2013) ................17

*Lundy v. Catholic Health Sys. of Long Island Inc.*,
   711 F.3d 106 (2d Cir. 2013) .............................................................................19

*Martin Hilti Family Tr. v. Knoedler Gallery, LLC*,
   386 F. Supp. 3d 319 (S.D.N.Y. 2019) .................................................................19

*Mazurek v. Armstrong*,
   520 U.S. 968 (1997) .........................................................................................22

*Mechigian v. Art Capital Corp.*,
   612 F. Supp. 1421 (S.D.N.Y. 1985) ...................................................................20

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
   84 F.3d 560 (2d Cir. 1996) ...............................................................................15

*MFAI (Jersey) Ltd. v. Westbury Holdings, Inc.*,
   264 A.D.2d 663 (1st Dep't 1999) ......................................................................12

*Mitchell v. Fidelity Borrowing LLC*,
   34 A.D.3d 366 (1st Dep't 2006) ........................................................................24

*Moore v. Consol. Edison Co. of New York, Inc.*,
   409 F.3d 506 (2d Cir. 2005) .........................................................................22, 25

iii

*Moquinon, Ltd. v. Gliklad*,
  No. 650366/2017, 2017 N.Y. Misc. LEXIS 1498 (Sup. Ct. N.Y. County Apr.
  6, 2017) .................................................................................................................20

*Morrison v. Nat'l Australia Bank Ltd.*,
  561 U.S. 247 (2010) .............................................................................................19

*N. Shipping Funds I, LLC v. Icon Capital Corp.*,
  921 F. Supp. 2d 94 (S.D.N.Y. 2013) ....................................................................19

*In re Nokia Oyj (Nokia Corp.) Sec. Litig.*,
  423 F. Supp. 2d 364 (S.D.N.Y. 2006) ..................................................................19

*Parker v. Robert Wallace Co. of Belfast*,
  206 A.D. 465 (1st Dep't 1923) .............................................................................21

*Perkins v. Am. Transit Ins. Co.*,
  No. 10 Civ. 5655 (CM), 2013 U.S. Dist. LEXIS 6703 (S.D.N.Y. Jan. 15,
  2013) .....................................................................................................................18

*RJR Nabisco, Inc. v. European Cmty.*,
  136 S. Ct. 2090 (2016) .........................................................................................19

*Schentag v. Nebgen*,
  No. 1:17-cv-8734-GHW, 2018 U.S. Dist. LEXIS 104065 (S.D.N.Y. June 21,
  2018) .....................................................................................................................15

*Scott v. Am. Sec. Ins. Co.*,
  572 B.R. 492 (Bankr. S.D.N.Y. 2017) ..................................................................16

*Signal Capital Corp. v. Frank*,
  895 F. Supp. 62 (S.D.N.Y. 1995) ...................................................................6, 7, 8

*Silverman v. Miranda*,
  116 F. Supp. 3d 289 (S.D.N.Y. 2015) ....................................................................9

*Skyline Steel, LLC v. PilePro, LLC*,
  No. 13-CV-8171 (JMF), 2015 U.S. Dist. LEXIS 114038 (S.D.N.Y. Aug. 27,
  2015) ...........................................................................................................6, 12, 13

*Societe Alsacienne de Banque, Zurich v. Flemingdon Dev. Corp.*,
  118 A.D.2d 769 (2d Dep't 1986) .....................................................................9, 10

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
  750 F.3d 221 (2d Cir. 2014) .................................................................................15

*Swiskey v. Palumbo*,
 No. 07-cv-6624 (PKC) (DCF), 2009 U.S. Dist. LEXIS 24832 (S.D.N.Y. Mar.
 9, 2009), *aff'd*, 377 F. App'x 39 (2d Cir. 2010) ...................................................................17

*In re Trafalgar Assocs.*,
 53 B.R. 693 (Bankr. S.D.N.Y. 1985) ...................................................................................6

*VNB N.Y., LLC v. Rapaport*,
 No. 508810/15, 2016 N.Y. Misc. LEXIS 264 (Sup. Ct. Kings County Jan. 29,
 2016) ...........................................................................................................................7, 10


**Statutes**

15 U.S.C. § 6801 et seq., ...............................................................................................8

15 U.S.C. § 6823 ...........................................................................................................8

Securities Exchange Act § 10b-5 ...................................................................................19

CPLR § 6201...........................................................................................................5, 6, 10, 11

CPLR § 6212...........................................................................................................5, 6, 24

Fed. R. Civ. P. 64 .........................................................................................................5

Fed. R. Civ. P. 9(b) ...............................................................................................16, 17, 20

## INTRODUCTION AND PRELIMINARY STATEMENT

Plaintiffs' application to attach assets of defendants[1] Xueyuan Han ("Mr. Han"), Hanfor Holdings Co., Ltd., HF Holdings, Limited, Hanfor Capital Management Co., Ltd., Nuoyuan Capital Management Company Ltd., George Xu (Mr. Xu), Junjun Feng ("Ms. Feng"), Wennan AO ("Ms. Ao"), BZ Industrial (China), BZ Industrial (Virgin Islands), BZ Industrial (Cayman Islands), Hanfor (Cayman) Limited, HFRE LLC ("HFRE"), HF Capital Management Cay Inc., and HF Cosmopolitan Beta L.P (collectively, the "Defendants"[2]) should be denied as they cannot meet their heavy burden to show that an attachment is warranted since they fail to show that any defendant has or is about to assign, dispose of, encumber, secrete, or remove property from the state with an intent to defraud creditors or that they are likely to succeed on the merits of any claims, and the amount sought to be attached is unsupported.[3]

## STATEMENT OF FACTS

Plaintiffs allege that they invested in a total of seven investment projects organized and offered by companies affiliated with Mr. Han.[4]  Amended Complaint ("Compl.") ¶¶ 30, 39; Affidavit of Jing Zhang sworn to on February 10, 2021 (the "Zhang Aff."), Ex. F.  They allegedly invested a total of approximately $14 million with Hanfor Capital, Hanfor Holdings,

---

[1] As discussed in more detail below, Plaintiffs' order to show cause is directed to all defendants, but it specifically seeks to attach assets belonging to Mr. Han, Ms. Feng, HFRE, and HF Holdings.

[2] BZ Industrial (China), BZ Industrial (Cayman Islands), and Hanfor Capital Management Co., Ltd. are not affiliated with the other Defendants, although BZ Industrial (China) may be a misnaming of a Chinese company called Bang Ze Industrial Co., Ltd. and Hanfor Capital Management Co., Ltd.  may be a misnaming of a company called Hanfor (Beijing) Capital Management Co., Ltd.   Han Decl. ¶¶ 12, 14, 16.  Similarly, Plaintiffs appear to misidentify Hanfor Holdings Co., Ltd. as a British Virgin Islands company rather than a Chinese company. Han Decl. ¶ 10.  Without waiving any rights, to the extent Plaintiffs properly named and served these entities, the arguments made herein apply equally to these entities.

[3] The Defendants appear for the limited purpose of contesting the Plaintiffs' application for an attachment and reserve all rights, including to contest service or jurisdiction.

[4] Plaintiff Jing Zhang ("Ms. Zhang") allegedly invested in one project, plaintiff Wei Fan ("Mr. Fan") allegedly invested in three projects, plaintiff Minglian Zhang ("Mr. Zhang") allegedly invested in two projects, and plaintiff Jun Zhou ("Mr. Zhou") allegedly invested in one project.  Compl. ¶ 71, 79, 102, 121, 133, 152, 170; Zhang Aff., Ex. F.

9814359.9

and Nuoyuan Capital.  Compl. ¶ 39; Zhang Aff. Ex. F.  The first investment allegedly occurred

in December 2016 when Mr. Zhang signed two investment agreements with Hanfor Capital and

agreed to invest approximately $4.3 million.  Compl. ¶ 133.  The last investment is alleged to

have occurred in December 2018 when Mr. Fan allegedly signed an agreement with Nuoyuan

Capital to invest approximately $430,000 for five years. Compl. ¶ 194.

Mr. Han is a citizen of the People's Republic of China ("China").  Until late 2018, Mr.

Han was a resident of China, and he was living in China at the time of the majority of the

investments alleged by the Plaintiffs.  *See* Declaration of Xueyuan Han dated March 18, 2021

("Han Decl."), ¶ 2.  In September 2018, Mr. Han moved to the United States to pursue various

business opportunities.  Han Decl. ¶ 2.  Indeed, as alleged by Plaintiffs, in October 2018, there

were reports in the media that one of Mr. Han's companies, Hanfor Capital, was preparing to be

listed on the NYSE.  Compl. ¶ 29.

In September 2019, about a year after Mr. Han moved to New York, HFRE purchased an

apartment in New York located at 377 Rector Place, Unit PHB.  Compl. ¶ 56.  Mr. Han signed

the purchase documents on behalf of HFRE, and thus his name appears on the publicly available

property records.  *See*, *e.g.*, Zhang Aff. Ex. J-2.

Ms. Ao is Mr. Han's ex-wife.  She is a citizen and resident of China.  *See* Declaration of

Wennan Ao dated March 19, 2021 ("Ao Decl."), ¶ 2.  Ms. Ao traveled to the United States in

December 2019 to, among other things, explore educational opportunities for their children.  Ao

Decl. ¶ 3.  She expected to stay for about three months, but her visit was prolonged due to travel

restrictions and concerns about the COVID-19 pandemic.  Ao Decl. ¶ 4.   Ms. Ao stayed in the

Rector Place apartment while she was in the United States.  Ao Decl. ¶ 6.  Ms. Ao returned to

China in early December 2020 and has not come to the United States since then.  Ao Decl. ¶ 5.

2

Ms. Ao is not an officer, director, employee or agent of any of the Corporate Defendants.  Ao Decl. ¶ 9.

Plaintiffs allege that in 2020, Mr. Han purchased a Rolls Royce Cullinan and is the reported registrant of the car.  Compl. ¶ 60.

On August 3, 2020, Mr. Han and Ms. Feng jointly purchased an apartment located at 554 Third Avenue, Unit PHA, in New York, NY.  Compl. ¶ 54.  Mr. Han and Ms. Feng are business associates, and Plaintiffs allege they are in a romantic relationship.  Han Decl. ¶ 8; Compl. ¶ 12. The apartment was purchased directly in their own names and they are publicly listed as the joint owners.  *See* Zhang Aff. Ex. J-1.

Plaintiffs allege that *after* Mr. Han moved to the United States, the Beijing Bureau of the China Securities Regulatory Commission ("CSRC Beijing") launched investigations "against Defendants."  Compl. ¶ 45.  This is misleading.  On January 9, 2019, Nuoyuan Capital's general manager and other executives were arrested by the Beijing Police Department and criminally indicted.[5]  Compl. ¶ 49.  The investigation was against only Nuoyuan Capital Hangzhou Sixth Branch for "illegally soliciting public deposits."   Zhang Aff. Ex. I-1 - I-4.

Plaintiffs also allege that CSRC Beijing found that several companies affiliated with Mr. Han had violated certain provisions of the Interim Measures of Privately Offered Investment Fund and the Law of Securities and Investment Fund.  Compl. ¶ 46.  The documents submitted by Plaintiffs show that Nuoyuan Capital Management was simply ordered to "strictly comply" with the applicable regulations, "to operate and manage the Investment Fund in an honest,

---

[5] Plaintiffs also allege that Lu Guo, former President of Hanfor Holdings, fled to Australia in 2019 to escape criminal and civil charges "against her and other corporate Defendants."  *See* Zhang Aff. ¶ 38.  However, it is unclear what these charges were or how they involved "other corporate Defendants" as Plaintiffs offer no details regarding this allegation.  Notably, Lu Guo is not named in the status report regarding the investigation into Nuoyuan Capital Management which mentions other individuals who were arrested.  *See* Zhang Aff. Ex. I-2.

transparent and diligent manner," and to "submit a written report of correction within 30 days" of receipt of the decision from the CSRC Beijing.  *See* Zhang Aff. Ex. H-1

Similarly, CSRC Beijing sent a letter to an unnamed complainant stating that "[u]pon investigation," Beijing Hanfor Rongxin Asset Management Partnership, Zhongkaijing Asset Management Company, Hanfor Beijing Capital Management Company, Nuoyuan Capital Management Company, and Hanfor Asset Management Company[6] were found to have violated regulations relating to recruitment of investors, promotional materials, comingling of funds, generating of benefits to managers, and disclosure of information.  *See* Zhang Aff. Ex. H-2. However, the remedy for these violations was simply supervision by CSRC Beijing.  *See id.*

Plaintiffs also allege that Mr. Han and Hanfor Capital were listed as defaulting debtors and the Beijing Government issued Consumer Restriction Orders against them.  Compl. ¶ 50. On March 6, 2020, a notice was published that Hanfor (Beijing) Capital Management Company was "in violation of assets reporting regulation" and required to pay a debt of RMB 1,069,795.00.[7]  Zhang Aff. Ex. M.  The notice listed Mr. Han as the legally responsible person.

Finally, the Beijing No.1 Intermediate People's Court issued Orders of Consumption Restriction against Hanfor (Beijing) Capital Management Company, Hanfor Rongxin Capital Management Partnership (Limited Partner), Nuoyuan Zhengxin Pingji Company, and Hanfor Holdings Limited.[8]  Zhang Aff. Ex. M.  These orders simply require certain individuals at those entities (those who "directly relate to the payment of debt and [the] person in actual control") to refrain from engaging in "high-level consumption activities" such as purchasing first-class travel

[6] Only two of these five companies are named as defendants in the instant action.  *See* Compl. ¶¶ 5-20.
[7] At current exchange rates, this is equivalent to approximately $165,000.
[8] Only two of these four companies are named as defendants in the instant action.  *See* Compl. ¶¶ 5-20.

4

tickets, incurring "high-level consumption in hotels, nightclubs, or golf course[s]", or leasing or purchasing luxury real estate or vehicles.  *See id.*

## **ARGUMENT**

### **POINT I**
### **PLAINTIFFS FAIL TO MEET THEIR**
### **HEAVY BURDEN ON A MOTION FOR AN ATTACHMENT**

**A.    Legal Standard**

Pursuant to Fed. R. Civ. P. 64, Plaintiffs' request for an attachment is governed by New York law, specifically CPLR §§ 6201 and 6212.  In order to obtain an attachment, a plaintiff must show "by affidavit and such other written evidence," that "[1] there is a cause of action, [2] that it is probable that the plaintiff will succeed on the merits, [3] that one or more grounds for attachment provided in section 6201 exist, and [4] that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff."  CPLR § 6212(a); *Buy This, Inc. v. MCI Worldcom Commc'ns, Inc.*, 178 F. Supp. 2d 380, 382 (S.D.N.Y. 2001).  Plaintiffs rely on CPLR § 6201(3), which allows for attachment where "the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts."[9]  CPLR § 6201(3) is "designed to deal with the removal or fraudulent attempted removal of assets within the State of New York."  *Brastex Corp. v. Allen Int'l, Inc.*, 702 F.2d 326, 331-32 (2d Cir. 1983) (quoting district court opinion and finding district court's interpretation of statute "consistent with applicable principles of statutory interpretation").

"[I]t is well established that the New York attachment statutes are construed strictly against those who seek to invoke the remedy."  *Buy This, Inc.*, 178 F. Supp. 2d at 383; *accord*

---

[9] CPLR § 6201(1), (2), (4), and (5) provide alternative grounds for attachment.  However, Plaintiffs have only sought an order of attachment pursuant to CPLR § 6201(3).

*Skyline Steel, LLC v. PilePro, LLC*, No. 13-CV-8171 (JMF), 2015 U.S. Dist. LEXIS 114038, at

*5-6 (S.D.N.Y. Aug. 27, 2015) ("Because attachment is a harsh remedy, the four elements set

forth in Section 6212(a) are strictly construed in favor of those against whom attachment is

sought.") (quotation omitted).  Indeed, "the issuance of an order of attachment, even if the

statutory requirements are met, is in the discretion of the court."  *Gen. Textile Printing v.*

*Expromtorg Int'l*, 862 F. Supp. 1070, 1073 (S.D.N.Y. 1994); *accord Buy This, Inc.*, 178 F. Supp.

2d at 383.

Plaintiffs' request for an attachment must be denied because (1) they fail to show grounds

for attachment under CPLR 6201(3) since they do not demonstrate that Mr. Han, Ms. Feng,

HFRE, or HF Holdings acting with intent to defraud did (or are about to) assign, dispose of,

encumber, or secrete property, or remove it from the state,[10] (2) it is not probable that they will

succeed on the merits and they have failed to put forth sufficient evidence for their claims, and

(3) the amount requested to be subject to the attachment is unjustified.

## B.   Plaintiffs Fail to Show That CPLR 6201(3) Applies

Plaintiffs have not come close to meeting their burden to show that the Defendants, with

an actual intent to defraud, did or are about to assign, dispose of, encumber or secrete property,

or remove it from the state.  "Fraud is not lightly inferred, and the moving papers must contain

evidentiary facts – as opposed to conclusions – proving the fraud."  *Brastex Corp.*, 702 F.2d at

331 (quotation omitted); *accord In re Trafalgar Assocs.*, 53 B.R. 693, 697 (Bankr. S.D.N.Y.

1985) (intent to defraud "is not lightly inferred; it must be supported by evidentiary facts as

---

[10] Although Plaintiffs have filed the attachment application with respect to all of the Defendants, the property sought to be attached is alleged to belong to Mr. Han, Ms. Feng, HFRE, and HF Holdings.  Accordingly, Plaintiffs must show an intent to defraud with respect to these specific defendants.  *See, e.g.*, *Signal Capital Corp. v. Frank*, 895 F. Supp. 62, 65 (S.D.N.Y. 1995) (denying motion for attachment as to two individual defendants because plaintiff failed to show requisite intent to defraud as to those defendants and denying motion without prejudice as to third defendant to allow plaintiff to present more evidence as to that defendant).  Nonetheless, Plaintiffs fail to show that *any* Defendant intended to defraud creditors by assigning, disposing of, encumbering, or secreting property.

opposed to mere conclusions.").  All that Plaintiffs offer in support of their motion for an attachment are generic allegations that Defendants engaged in an "ongoing and continuing fraud that strongly indicates that they will dispose of assets or money owed to Defendants," as "indicated by their prior behavior, wherein they have evaded arrest and illegally commingled and transferred business funds to personal bank accounts."  *See* Mot. at 11 (citing Zhang Aff. ¶ 12). However, these generic allegations are insufficient as they do not support a finding of "'actual fraud,' that is, a transfer made with actual intent to hinder, delay, or defraud creditors."  *Signal Capital Corp.*, 895 F. Supp. at 65.

As an initial matter, although Plaintiffs allege generally that Mr. Han transferred investors' money to shell companies which he controls to use for his personal expenses, *see* Am Compl. ¶ 65; Zhang Aff. ¶ 21, Plaintiffs fail to put forth any actual evidence that Mr. Han converted funds belonging to Plaintiffs.  Accordingly, these allegations should be disregarded on the motion for an attachment as "[t]he moving papers must contain evidentiary facts, as opposed to conclusions, proving the fraud."  *VNB N.Y., LLC v. Rapaport*, No. 508810/15, 2016 N.Y. Misc. LEXIS 264, at *12 (Sup. Ct. Bronx County Jan. 29, 2016) (quoting *Benedict v. Browne*, 289 A.D.2d 433 (2d Dep't 2001)).  The only evidentiary facts submitted by the Plaintiffs are that Mr. Han moved to the United States, HFRE and (separately) Mr. Han and Ms. Feng purchased property in the United States, and there were investigations into several companies in China. These do not meet Plaintiffs "high" burden of proving an attachment is warranted.  *See In re Amaranth Nat. Gas Commodities Litig.*, 711 F. Supp. 2d 301, 305 (S.D.N.Y. 2010) ("Plaintiffs' burden of proving the right to an attachment is 'high.'  The New York attachment statutes are construed strictly against those who seek to invoke the remedy.") (quotation omitted).

7

Plaintiffs' allegations are particularly lacking with respect to Ms. Feng. Plaintiffs essentially allege only that Ms. Feng is "in a romantic relationship" with Mr. Han and that they are joint owners of an apartment. *See* Compl. ¶ 12. Although Plaintiffs also allege that Ms. Feng "cooperated" with Mr. Han to hide assets, *see* Compl. ¶¶ 59, 239, they offer no allegations of how she "cooperated" or what she actually did, much less evidence to support their claim. Unless Ms. Feng had "actual knowledge" that Mr. Han was purchasing the apartment and thus transferring assets to her with "an intent to frustrate a judgment," Plaintiffs have failed to show an intent to defraud on Ms. Feng's behalf. *See Signal Corp.*, 895 F. Supp. at 65 ("even if [individuals] were directors of Enterprises while it was fraudulently conveying assets, that fact does not establish actual knowledge on the part of these two directors or an intent to frustrate a judgment").

Plaintiffs also allege on information and belief that Mr. Han and Ms. Feng "are deliberately avoiding keeping large amounts of money in bank accounts in the United States to avoid creditors." Compl. ¶ 66. They offer no supporting evidence, and it is unclear how they have any basis for this allegation since information concerning individual, personal bank accounts is generally protected from disclosure under various agreements and laws, including the Gramm-Leach-Bliley Act. *See* 15 U.S.C. § 6801 et seq.[11]

As to Mr. Han, HFRE, and HF Holdings, Plaintiffs' allegations are essentially that Mr. Han controls HFRE and HF Holdings, that Mr. Han fled China to avoid investigation and has hidden his assets in the United States, and that the Rector Place apartment is on the market. *See* Zhang Aff. ¶¶ 17, 19, 20. These allegations quickly fall apart since (1) Mr. Han moved to the United States *before* the alleged investigations; (2) Plaintiffs offer nothing to support their claim

---

[11] Indeed, the Gramm-Leach-Bliley Act makes it a criminal offense to obtain a third-party's financial information through pretext. *See* 15 U.S.C. § 6823.

that Mr. Han personally was the subject of any of investigation; and (3) Mr. Han has purchased property *in his own name* in the United States and thus did not try to "hide" his assets.[12] "Affidavits containing allegations raising a mere suspicion of an intent to defraud are insufficient. It must appear that such fraudulent intent really existed in the defendant's mind." *Societe Gen. Alsacienne de Banque, Zurich v. Flemingdon Dev. Corp.*, 118 A.D.2d 769, 773 (2d Dep't 1986) (quotation omitted). "The mere removal or assignment or other disposition of property is not grounds for attachment … Plaintiffs must also establish that Defendants moved these accounts with the intent to frustrate the enforcement of a judgment." *Silverman v. Miranda*, 116 F. Supp. 3d 289, 311-12 (S.D.N.Y. 2015) (quotation omitted).

The bulk of the evidence put forth by Plaintiffs in support of their argument that there was an intent to defraud consists of investigatory proceedings in China. Plaintiffs point to an investigation against the Shenzhou Branch of Nuoyuan Capital Management Co. for "illegally soliciting cash deposits," but Mr. Han's name does not appear in any of the documents submitted by Plaintiffs and they fail to show that he was a target of that investigation. *See* Zhang Aff. Exs. I-1 - I-4. Although Plaintiffs allege that Mr. Han "fled" China to avoid investigation, he moved to the U.S. *before* the investigations began. *Compare* Han Decl. ¶ 2 *with* Zhang Aff. Exs. H, I, M. Additionally, Mr. Han's explanation as to why he moved to the U.S. and purchased property in New York is credible and refutes any suggestion of fraud. This stands in stark contrast to *Bank Leumi Trust*, a case cited by Plaintiffs, where the court noted that a "defendant is entitled to a presumption of innocence," but that the "court is not required to give credence to a story so inherently impossible as to leave no doubt that it is not true." *Bank Leumi Tr. Co. of N.Y. v. Istim, Inc.*, 892 F. Supp. 478, 483 (S.D.N.Y. 1995) (quotation omitted).

---

[12] In addition, the Rector Place apartment is no longer on the market. Han Decl. ¶ 5.

9

The insufficiency of Plaintiffs' allegations of fraud is readily apparent when compared to the cases cited by Plaintiffs where courts did find an intent to defraud sufficient to support an attachment.  For example, in *Societe Alsacienne*, the court found attachment was warranted where the defendant had (1) knowingly presented a check with insufficient funds, (2) falsely stated that the check was rejected because it had the wrong account number and should be re-presented even though the defendant had closed all accounts at that bank, (3) refused to respond to communications, and (4) tried to remove funds after the ex parte attachment order was entered. *Societe Alsacienne*, 118 A.D.2d at 773.  Similarly, in *VNB N.Y., LLC*, an intent to defraud was shown where the plaintiff presented evidence that the defendants had transferred property for no consideration after notices of default were sent and admitted that they had transferred property to avoid other creditors.  2016 N.Y. Misc. LEXIS 264, at *12-13. Additionally, in *VNB N.Y.*, the court noted that the transactions in issue had "numerous badges of fraud", including a family relationship between the parties, quick transfer after notices of default, no proof of consideration, and an inability to pay known claims.  *Id.* at *13.

In contrast, here, there is no allegation that any property was sold or transferred for no consideration.  Instead, Defendants are accused of *purchasing* real property in New York City for fair market value in arms' length transactions.  *See* Zhang Aff. ¶¶ 25-27.[13]  This alone removes Mr. Han's alleged conduct from the purview of CPLR § 6201(3) which allows for attachment only where the defendant "has assigned, disposed of, encumbered or secreted property, or removed it from the state" to frustrate a judgment or creditors.  Quite simply, Mr. Han has not disposed of or secreted any property.  Although one of the apartments is owned by

---

[13] Although Plaintiffs also point to the fact that the Rector Place apartment was listed for sale, *see* Zhang Aff. ¶ 39, it was listed in October 2020 (well before this action was commenced) and delisted on February 27, 2021 due to market conditions.  Han Decl. ¶ 5.

10

an LLC (as is not infrequent in property transactions), Mr. Han signed the purchase documents

and thus his name appears in the publicly available documents, and the other apartment is owned

in Mr. Han's own name (jointly with Ms. Feng).  *See* Zhang Aff. Exs. J-1, J-2.  Purchasing an

apartment and having it publicly listed in one's own name certainly does not show an intent to

"conceal [] property or to place it beyond the reach of the Court's judgment."  *City of New York*

*v. Citisource, Inc.*, 679 F. Supp. 393, 397 (S.D.N.Y. 1988).

Plaintiffs fail "to advance any probative evidentiary facts that defendant[s] [have]

disposed or [are] about to dispose of any property to frustrate a potential judgment, or to flee the

jurisdiction of the Court."  *Gen. Textile Printing Processing Corp. v. Expromto Int'l*, 862 F.

Supp. 1070, 1074 (S.D.N.Y. 1994).  Nor have Plaintiffs shown that Defendants[14] possess "any

intent to defraud," and thus an order of attachment is unwarranted.  *Id.*

## C.  Plaintiffs Cannot Show Probable Success on the Merits

In order to show a probability of success on the merits, Plaintiffs must "demonstrate that

it is more likely than not that [they] will succeed on [their] claims and must show proof stronger

than that required to make a prima facie case."  *In re Amaranth Nat. Gas Commodities Litig.*,

711 F. Supp. 2d at 306 (quotation omitted).  In order to obtain an attachment, a plaintiff must

---

[14] As noted above, the property Plaintiffs seek to attach is alleged to belong to Mr. Han, Ms. Feng, HFRE, and HF Holdings.  To the extent Plaintiffs may claim that they seek to attach assets of other Defendants, they have failed to show that *any* Defendant intended to defraud creditors by assigning, transferring, encumbering, secreting or removing assets from the state.  For example, Plaintiffs' attachment papers do not meet their burden regarding Mr. Xu, who is mentioned only once in Plaintiffs' supporting affidavit when Ms. Zhang makes a generic allegation "on information and belief" that Mr. Xu diverted the Plaintiffs' funds.  Zhang Aff. ¶ 21.  Plaintiffs do not even attempt to describe what he did, much less provide the required evidence of these types of actions.  Nor do they identify any of Mr. Xu's personal property that he assigned, transferred, encumbered, secreted or removed from the state.  This is because Mr. Xu is an accountant who prepared tax returns for Mr. Han and several related companies and has not taken any steps to help Mr. Han or any other defendant transfer property.  Xu Decl. ¶¶ 2-3.  Similarly, Ms. Zhang's affidavit does not contain any allegations of intent to defraud by Ms. Ao.  The Plaintiffs do not even identify any property Ms. Ao owns in the state, much less property that she has or plans to transfer, assign, encumber, secrete or remove from the state.  The only mentions of Ms. Ao in the Zhang affidavit are incorrect assertions that her divorce from Mr. Han was a sham and that she resides at the Rector Place apartment and an allegation that she does not have a bank account in the U.S. (which, if true, would not be unusual for a citizen and resident of China).  *See* Zhang Aff. ¶¶ 26, 40; Ao Decl. ¶¶ 2, 12-13.  None of this is sufficient to show the intent to defraud required by CPLR 6201(3).

establish "by affidavit or other competent written evidence, that there is a cause of action …

upon which it is likely to succeed on the merits."  *Skyline Steel, LLC*, 2015 U.S. Dist. LEXIS

114038, at *6.  As discussed below and in Defendants' pre-motion to dismiss letter to the Court

(a copy of which is attached as Exhibit A to the March 19, 2021 Declaration of Jeffrey S. Boxer

(the "Boxer Decl.")), Plaintiffs failed to show probability of success on the merits.

The only evidence Plaintiffs submitted in support of their application for an attachment is

the affidavit from Ms. Zhang.  However, Ms. Zhang only claims to have been a party to one of

the seven investment projects at issue, *see* Compl. ¶¶ 187-209; Zhang Aff., Ex. F., and thus any

statements in her affidavit relating to the other investment projects are hearsay, lack evidentiary

value, and are insufficient to support a motion for an attachment.  *See Skyline Steel, LLC*, 2015

U.S. Dist. LEXIS 114038, at *8 (plaintiff failed to meet burden for attachment where "there is no

affidavit on personal knowledge or other competent written evidence demonstrating a likelihood

of success on the merits of any of the claims"); *accord MFAI (Jersey) Ltd. v. Westbury Holdings,

Inc.*, 264 A.D.2d 663, 663 (1st Dep't 1999) ("plaintiff's attorney's hearsay statements and the

allegations in the complaint, unsupported by any documentary evidence" are insufficient to show

merits of claim on motion for attachment).  Additionally, although Ms. Zhang attached

promotional materials and a share purchase agreement for the one project in which she allegedly

invested, *see* Zhang Aff. Exs. C, D, she provides no such documents for the other six

investments.

The only documents Plaintiffs put forth relating to the other six investments are records

ostensibly showing transfers from Mr. Fan and purchases of shares by Mr. Zhang.  *See* Zhang

Aff., Exs. B-1 - B-3.  However, these records do not meet Plaintiffs' evidentiary burden as there

is no explanation as to how Ms. Zhang has any knowledge regarding the other Plaintiffs'

personal bank records.  More importantly, at most, these documents show that Mr. Fan and Mr. Zhang invested in certain companies and nothing in these documents reflect any breach of contract or fraud or otherwise support Plaintiffs' allegations.  Accordingly, claims relating to the six investment projects for which Ms. Zhang is not alleged to have been a party cannot support the motion for an attachment as Plaintiffs have failed to offer an "affidavit on personal knowledge or other competent written evidence demonstrating a likelihood of success on the merits" as to these claims.  *Skyline Steel, LLC*, 2015 U.S. Dist. LEXIS 114038, at *8.

In addition, Plaintiffs cannot succeed on their claims before this Court because their claims must be arbitrated rather than adjudicated in this forum.  All of Plaintiffs' claims arise out of or relate to their alleged investments in seven different projects.  Plaintiffs assert that each of those investments is governed by an agreement that the investing Plaintiff executed at the time of the investment.  Each of those agreements contains a broad arbitration clause requiring arbitration before the Beijing Arbitration Commission in Beijing, China.  For example, the agreements governing the one investment by Ms. Zhang provide that "[a]ny claim, dispute, or controversy, of whatever nature arising out of or relating to this agreement, including, without limitation, any action or claim based on tort, contract, or statute (including any claims of breach) . . . shall be referred to and finally resolved by arbitration administered by the Beijing Arbitration Commission in Beijing . . . in Mandarin Chinese."  Zhang Aff., Ex. D, Share Purchase Agreement at ¶ 7.10(b) and Shareholders Agreement at ¶ 13.12(b).  The agreements governing the other investments on which Plaintiffs' claims are based also have arbitration provisions requiring arbitration before the Beijing Arbitration Commission in China.  Han Decl. ¶¶ 25, 29, 33, 36, 39, 43, 47.[15]

---

[15] Although Plaintiffs allege they invested in seven projects, the Defendants have been unable to find records reflecting any investment by Mr. Fan in the Hanfor New Industry Project.  Han Decl., ¶ 35.

Federal policy "unequivocally encourages arbitration as an alternative means of dispute resolution," and "[t]his bias in favor of arbitration is even stronger in the context of international business transactions." *DaPuzzo v. Globalvest Mgmt. Co.*, 263 F. Supp. 2d 714, 718-19 (S.D.N.Y. 2003) (quotation omitted).  Since all of Plaintiffs' claims arise out of or are related to the investment agreements, they must be arbitrated, and Plaintiffs cannot succeed on their claims in this Court. *See Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987) ("If the allegations underlying the claims touch matters covered by the [contract with arbitration provision], then those claims must be arbitrated, whatever the legal labels attached to them." (citation omitted)); *accord David L. Threlkeld & Co. v. Metallgesellschaft, Ltd.*, 923 F.2d 245, 248 (2d Cir. 1991) ("federal arbitration policy requires that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" (quotation omitted); *Hart Enters. Int'l, Inc. v. Anhui Provincial Import & Export Corp.*, 888 F. Supp. 587, 589 (S.D.N.Y. 1995) ("Arbitration should be compelled unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." (quotation omitted)).  Thus, Plaintiffs fail to meet their burden of proving probability of success in this Court because all their claims are subject to arbitration and this case should be dismissed.

Moreover, the Plaintiffs cannot show that they are likely to succeed on their claims because the Court lacks personal jurisdiction over the Corporate Defendants (other than HFRE) and Ms. Ao.  All of these Corporate Defendants were incorporated and have their principal places of business outside of the U.S. and Ms. Ao is a Chinese citizen and resident.  Han Decl. ¶¶ 10-15, 17-20; Ao Decl. ¶ 2.  None of these Defendants own or lease any property in the United States, and they do not have any offices, bank accounts, or employees in the United States.  *Id*. The events about which Plaintiffs complain took place outside of the United States:  The

14

Plaintiffs resided in China when they entered into each investment contract, the investments were made through Chinese banks in China, and the contracts are in Chinese, were executed in China, and provide for resolution of disputes in arbitration in China. Han Decl. ¶¶ 23-48; Zhang Aff. ¶ 9, Ex. D.  Accordingly, Plaintiffs cannot show that these Defendants are subject to general or specific personal jurisdiction in this Court or that the assertion of jurisdiction would be consistent with due process.[16]  *See Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (to demonstrate general jurisdiction, plaintiff must show defendant "has engaged in such a continuous and systematic course of doing business in New York that a finding of its presence in New York is warranted.") (internal quotations and citations omitted); *Schentag v. Nebgen*, No. 1:17-cv-8734-GHW, 2018 U.S. Dist. LEXIS 104065, at *41-42 (S.D.N.Y. June 21, 2018) (no specific jurisdiction over a defendant absent a showing by plaintiff of "an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."); *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 573 (2d Cir. 1996) (assertion of personal jurisdiction does not satisfy due process standards unless the defendants have minimum contacts with the forum and the exercise of jurisdiction is reasonable); *E. Fin. Corp. v. JSC Alchevsk Iron & Steel Works*, 2009 U.S. Dist. LEXIS 23283, at *20-21 (S.D.N.Y. Mar. 23, 2009) (finding that since defendant only held two meetings in New York, the relevant contracts were executed in Ukraine, and neither party was a New York corporation, exercising personal jurisdiction over the defendant would offend traditional notions of fair play and substantial justice.).

---

[16] Plaintiffs also failed to properly serve the summons and complaint or the attachment papers on all Defendants. *See* Han Decl. ¶ 7; Ao Decl. ¶¶ 5-6; Xu Decl. ¶¶ 4-6.  Notably, Plaintiffs have not filed or submitted any documents reflecting purported service of process on any Defendants.

Even if they could proceed in this Court, Plaintiffs still have not met their burden of showing probability of success on the merits of any of their claims.  Plaintiffs fail to show they are likely to succeed on their claims for breach of contract and breach of the duty of good faith and fair dealing implied in those contracts.  With the exception of one investment by Ms. Zhang, Plaintiffs do not attach the contracts that they allege were breached.  Nor do they identify or quote any specific provisions of any contracts that allegedly were breached.  This alone prevents them from demonstrating likelihood of success on the merits.  *See Ellington Credit Fund Ltd. v. Select Portfolio Serv.*, 837 F. Supp. 2d 162, 189 (S.D.N.Y. 2011) ("stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract") (quotation omitted); *Scott v. Am. Sec. Ins. Co.*, 572 B.R. 492, 535 (Bankr. S.D.N.Y. 2017) ("to survive a motion to dismiss a breach of contract claim …[the plaintiff] must set forth the terms of the agreement upon which liability is predicated) (quotation omitted).  In addition, Plaintiffs did not enter into any contracts with the Defendants whose assets they seek to attach, thus they are not likely to succeed on the merits of the contract claims against those Defendants since they were not parties to any of the contracts at issue and are not subject to jurisdiction in this Court.[17] Compl., ¶¶ 71, 79,102, 121, 133, 152, 170; Han Decl. ¶¶ 23-48.

Plaintiffs have not met their burden of showing a probability of success on the merits of their fraud and conspiracy to commit fraud claims.  Plaintiffs have not pled fraud with the specificity required by Rule 9(b) for each of these claims, and the Zhang affidavit does not provide any evidentiary support for a fraud claim.  At most, the pleading and affidavit assert that

---

[17] Plaintiffs entered into contracts only with HF Holdings Limited, Nuoyuan Capital Management Company, Ltd., and Hanfor (Beijing) Capital Management Company, Ltd.  Compl. ¶ 71, 79, 102, 121, 133, 152, 170; Han Decl. ¶¶ 23, 27, 31, 35, 37, 41, 45.  Nuoyuan Capital Management Company, Ltd., and Hanfor (Beijing) Capital Management Company, Ltd. are incorporated under the laws of China, and HF Holdings Limited is incorporated under the laws of the British Virgin Islands.  Han Decl. ¶¶ 11-13.

16

unidentified individuals who allegedly represented one or more of the Corporate Defendants told the plaintiffs that they would receive guaranteed returns on their investments.  Compl., ¶¶ 78, 68-70, 99, 118, 132, 148-50, 168-69; Zhang Decl. ¶ 5.  The Plaintiffs fail to identify who made these statements or when precisely they were made, as is required to prevail on a fraud claim.  *Swiskey v. Palumbo*, No. 07-cv-6624 (PKC) (DCF), 2009 U.S. Dist. LEXIS 24832, at *22 (S.D.N.Y. Mar. 9, 2009) (plaintiff must "specify the statements [that he claims] were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements."), *aff'd*, 377 F. App'x 39 (2d Cir. 2010) (citation omitted); *Clark v. Advanced Composites Grp.*, No. 16 Civ. 6422 (GBD), 2019 U.S. Dist. LEXIS 80639, at *52-53 (S.D.N.Y. May 9, 2019); *Lot 42 in Office of Cnty. Clerk & Register of N.Y. Cnty., N.Y.*, No. 12-CV-4034 (HB), 2013 U.S. Dist. LEXIS 110783, at *18 (S.D.N.Y. Aug. 6, 2013) (allegations that fraudulent representations occurred "during or about the summer of 2008" insufficient under Rule 9(b)); *Fed. Deposit Ins. Corp. v. FSI Futures, Inc.*, No. 88 Civ. 0906 (PNL), 1991 U.S. Dist. LEXIS 14946, at *9 (S.D.N.Y. Oct. 15, 1991).  Similarly, Plaintiffs do not demonstrate that the alleged statements were anything more than expressions of hope of future outcomes, not statements of fact.  *Hutton v. Klabal*, 726 F. Supp. 67, 71 (S.D.N.Y. 1989) ("Generally a cause of action for fraud 'cannot be based upon a statement of future intentions, promises or expectations which were speculative or an expression of hope at the time when made, rather than an assumption of fact.'" (quoting *Roney v. Janis*, 77 A.D.2d 555, 557 (1ˢᵗ Dep't 1980)).  Moreover, to the extent that Plaintiffs' allegations are based on information and belief, *see, e.g.*, Compl. ¶¶ 36, 159, 172, "[t]he general rule is that allegations of fraud may not be based on 'information and belief.'"  *Hutton*, 726 F.

17

Supp. at 71. In light of this, Plaintiffs cannot demonstrate that they are likely to succeed on their fraud claim.

Plaintiffs have not met their burden of showing a probability of success on the merits of their conversion and unjust enrichment claims. Plaintiffs concede that each investment about which they complain is governed by a valid contract. Where a contract governs a particular transaction, a plaintiff cannot succeed on a conversion or unjust enrichment claim. *See*, *e.g.*, *Diesel Props S.R.L. v. Greystone Bus. Credit*, 631 F.3d 42, 54 (2d Cir. 2011) (affirming district court's dismissal of unjust enrichment claim "[i]n light of the agreements among the parties."); *Ellington Credit Fund v. Select Portfolio Serv.*, 837 F. Supp. 2d 162, 204 (S.D.N.Y. 2011) ("A conversion claim may only succeed, however, if a plaintiff alleges wrongs and damages distinct from those predicated on a breach of contract."); *id.* at 202-3 (unjust enrichment claim "ordinarily can be maintained only in the absence of a valid, enforceable contract," and dismissing claim since "existence of a valid and binding contract governing the subject matter at issue in a particular case *does* act to preclude a claim for unjust enrichment even against a third party non-signatory to the agreement") (quotations omitted).

Plaintiffs have not met their burden of showing a probability of success on the merits of their breach of fiduciary duty claim. Plaintiffs assert that the investment contracts they entered into created a fiduciary duty (Compl. ¶ 242), but nothing in those contracts imposes a fiduciary obligation on the parties to those contracts. To the contrary, the agreements were arms' length contracts between sophisticated parties.[18] The Plaintiffs' breach of duty allegation is duplicative of their breach of contract claim, and the law is clear that no fiduciary obligation is imposed in these circumstances. *Perkins v. Am. Transit Ins. Co.*, No. 10 Civ. 5655 (CM), 2013 U.S. Dist.

---

[18] Each plaintiff confirmed that he or she was a qualified investor at the time of each investment. Han Decl. ¶ 49.

18

LEXIS 6703 at *29 (S.D.N.Y. Jan. 15, 2013) (claim for breach of fiduciary duty "must be dismissed as duplicative of a breach of contract claim if the parties owe each other no duty independent of the contract itself."); *N. Shipping Funds I, LLC v. Icon Capital Corp.*, 921 F. Supp. 2d 94, 105 (S.D.N.Y. 2013) (to maintain breach of fiduciary duty claim, plaintiff must allege that "apart from the terms of the contract, the parties created a relationship of higher trust than would arise from their contracts alone, so as to permit a cause of action for breach of fiduciary duty independent of the contractual duties.").

Plaintiffs have not met their burden of showing a probability of success on the merits of their claims for violation of Rule 10b-5 and civil RICO. All of the underlying events alleged by plaintiffs, including the investments themselves, took place outside of the United States. Han Decl. ¶¶ 23-48.  Moreover, plaintiffs do not allege a domestic injury to their business or property. *See Martin Hilti Family Tr. v. Knoedler Gallery, LLC*, 386 F. Supp. 3d 319, 344-45 (S.D.N.Y. 2019) ("[W]here a plaintiff suffers an injury to tangible property—including money—absent some extraordinary circumstance, the injury is domestic if the plaintiff's property was located in the United States when it was stolen or harmed…."). Neither RICO nor Rule 10b-5 can be applied extraterritorially under these circumstances. *See*, *e.g.*, *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 267 (2010) (holding that § 10b-5 of the Exchange Act only applies to "transactions in securities listed on domestic exchanges, and domestic transactions in other securities"); *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2111 (2016) ("Section 1964(c) requires a civil RICO plaintiff to allege and prove a domestic injury … and does not allow recovery for foreign injuries.").  In addition, Plaintiffs' RICO claim alleging wire fraud as the predicate act and Plaintiffs' Rule 10b-5 claim must be plead with specificity, and, as discussed above, Plaintiffs have failed to do so. *See Lundy v. Catholic Health Sys. of Long Island*

19

*Inc.*, 711 F.3d 106, 119 (2d Cir. 2013); *Knoll v. Schectman*, 275 F. App'x 50, 51 (2d Cir. 2008); *In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 391-91 (S.D.N.Y. 2006).

Finally, for many of their claims, the Plaintiffs simply lump the Defendants into a group and allege that all Defendants took certain actions.  *See, e.g.,* Compl. ¶¶ 212-13, 224, 257.   This is insufficient to demonstrate that the Plaintiffs are likely to succeed on their claims against each relevant Defendant as is required for an attachment.  *Clark v. Advanced Composites Grp.*, 16 Civ. 6422 (GBD), 2019 U.S. Dist. LEXIS 80639, at *53 (S.D.N.Y. May 9, 2019) ("The requirements of Rule 9(b) are 'not satisfied by a complaint in which defendants are clumped together in vague allegations.'" (quoting *Polar Int'l Brokerage Corp. v. Reeve*, 108 F. Supp. 2d 225, 237 (S.D.N.Y. 2000))); *Mechigian v. Art Capital Corp.*, 612 F. Supp. 1421, 1429 (S.D.N.Y. 1985) ("[P]laintiff does not specifically allege the extent or nature of each defendant's involvement in the fraud, but rather simply refers to 'defendants' collectively. This is insufficient under Rule 9(b).").[19]

## D.   The Amount Sought to Be Attached Is Unsupported

The request for attachment should be denied because Plaintiffs fail to support their claimed damages amount.   "It is well settled that attachment is available only upon a specification of damages, and such damages must be shown with reasonable certainty to justify taking the defendant's property in advance of adjudication."  *Moquinon, Ltd. v. Gliklad*, No. 650366/2017, 2017 N.Y. Misc. LEXIS 1498, at *14 (Sup. Ct. N.Y. County Apr. 6, 2017).

---

[19] For example, it is not clear which claims in the Amended Complaint are actually asserted against Mr. Xu, Ms. Ao or Ms. Feng, and Plaintiffs' attachment papers do not provide any actual evidence that any of them breached any contract, committed any tort or violated any statute.  To the contrary, the Plaintiffs' attachment papers barely mention Mr. Xu, Ms. Ao and Ms. Feng.  *See* Zhang Aff. ¶ 21 (generic assertion on information and belief that Mr. Xu assisted Mr. Han in transferring assets), ¶¶ 26, 40 (incorrectly asserting that Ms. Ao's divorce from Mr. Han was a sham and that she resides at the Rector Place apartment and claiming she does not have a U.S. bank account) and ¶¶ 22-23, 40 (asserting that Ms. Feng and Mr. Han jointly own an apartment and are in a romantic relationship). Nothing in the Plaintiffs' application for an attachment identifies any valid claim against these Defendants, and Plaintiffs fail to demonstrate that they are likely to succeed on any claims against Mr. Xu, Ms. Ao or Ms. Feng.

20

Plaintiffs seek an order of attachment for $17,510,000 in assets comprised of (1) the Rector Place apartment (purchased for $4,990,000); (2) the Third Avenue apartment (purchased for $2,190,000); (3) the car (valued at $330,000); and (4) 2,574,000 Class C Shares of NIO Inc., held by HF Holdings (valued at $10,000,000).  *See* Mot. At 5.  However, Plaintiffs appear to be using different values for the NIO shares depending on the argument they are making.  In their motion for an attachment, they claim that the 2,574,000 NIO shares are valued at $10,000,000. *See* Mot. at 14.  However, in Ms. Zhang's affidavit where she discusses the losses Plaintiffs allegedly incurred, she claims these same shares are worth $161.75 million.  Zhang Aff. ¶ 12.

Additionally, Plaintiffs have not provided evidence of any losses.  Plaintiffs allege they invested a total of $14 million with Defendants, *see* Compl. ¶ 39, and that they have received approximately $1 million in return, *see* Zhang Aff. ¶ 14.  As an initial matter, only Ms. Zhang has submitted an affidavit and thus there is no competent evidence as to the investments to which she was not a party.  Even accepting Plaintiffs' representations regarding the amounts they invested, they have still failed to provide evidence of their losses.

Plaintiffs claim that they were promised certain returns on their investments, including $14.68 million on the six investments in which Ms. Zhang did not participate.  *See* Zhang Aff. ¶¶ 13, 15; Zhang Aff. Ex. F.  However, as explained above, they have not put forth any evidence in support of that claim since they have failed to provide the investment agreements and Ms. Zhang (the only plaintiff who provided an affidavit) was not a party to those agreements.  Accordingly, Plaintiffs have failed to put forth any competent evidence as to (1) amounts invested; (2) promised returns on investment; or (3) amounts due for those six investment projects.  Any claimed damages relating to these six projects have not been proven to the certainty required to support an attachment. *See Parker v. Robert Wallace Co. of Belfast*, 206 A.D. 465, 466 (1st

21

Dep't 1923) ("While the proof of cause and damage need not be as direct and positive in affidavits for an attachment as is required on the trial, there must be something more than an assertion of 'approximate damage' to justify the warrant."); *accord Burns v. Valenza*, 1988 N.Y. App. Div. LEXIS 7883 (1st Dep't Jan. 14, 1988) (limiting amount of attachment to "amount [which] is based upon specific documentary evidence").

### POINT II
### PLAINTIFFS FAIL TO MEET THEIR BURDEN TO OBTAIN A TEMPORARY RESTRAINING ORDER

Plaintiffs' application for a temporary restraining order restraining the sale of the apartments, car, and stock was previously denied by the Court (*see* February 24, 2021 Order (Docket # 8)), and there is no basis to alter that decision.  A temporary restraining order is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis and citation omitted).  "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005).  To obtain a temporary restraining order, a plaintiff must show (1) "a likelihood of success on the merits or … sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor"; (2) a likelihood of "irreparable injury in the absence of an injunction"; (3) "that the balance of hardships tips in the plaintiff's favor"; and (4) that the "public interest would not be disserved." *Benihana, Inc. v. Benihana of Tokyo, LLC*, 784 F.3d 887, 894-95 (2d Cir. 2015) (internal citations omitted).  Just as Plaintiffs have failed to meet their burden to obtain an attachment, so too have they failed to show that "extraordinary circumstances" warrant a temporary restraining order.

9814359.9

As discussed above, Plaintiffs' claims lack merit and therefore Plaintiffs cannot demonstrate likelihood of success on the merits and fail to satisfy the first prong for a temporary restraining order.  Even if Plaintiffs did have colorable claims, a temporary restraining order still would not be warranted.  Plaintiffs claim that a temporary restraining order is necessary because there "is precedent for Defendants dissipating their assets in the past, and no reason to doubt that they would continue to do so in the future."  *See* Mot. at 14.  This is essentially the same argument they made in support of their motion for an attachment.  However, as discussed above, there is no precedent that Defendants have dissipated their assets.  Defendants are not accused of hiding or transferring assets for no consideration, rather Mr. Han is accused of moving to the United States (before the commencement of any investigation in China) and purchasing property for fair market value using his own name.  Since there is no evidence that Defendants have dissipated assets in the past, Plaintiffs have failed to show the possibility of irreparable injury absent a temporary restraining order.

Since Plaintiffs have failed to show either a likelihood of success on the merits or irreparable harm absent an injunction, the Court need not reach the other two elements and should not grant a temporary restraining order.  However, Plaintiffs' claim that Defendants will not suffer any harm from a temporary restraining order because the NIO stock "is not expected to drop in value," *see* Mot. at 14, has already been shown to be incorrect as the stock was valued at $62.84 a share as of the date of Zhang's affidavit, *see* Zhang Aff. ¶ 13; Boxer Decl. Ex. B, but had declined to $49.11 when the motion for an attachment was filed on February 24, 2021, *see* Boxer Decl. Ex. B, and closed at $41.63 on March 18, 2021, *see id*.  Thus, the stock has already lost approximately 1/3 of its value and Defendants could be harmed if a temporary restraining order was entered preventing them from selling the stock.

Finally, Plaintiffs argue that the public interest favors injunctive relief because otherwise Defendants "will once again be able to evade the victims of their fraudulent enterprise."  *See* Mot. at 14.  However, there is no indication that Defendants have ever evaded, or attempted to evade, these alleged "victims."  Indeed, in the letter from the CSRC Beijing to the unnamed complainant regarding complaints against some of the Defendants in February 2020, the CSRC advised that a petition to "retrieve and refund" assets was "not within [CSRC Beijing's] scope of supervision," and the complainant was advised "to resolve the issues through mediation, arbitration or litigation channels."  Zhang Aff. Ex. H-2.  There is no indication that this was ever done, and no evidence put forth suggesting that Defendants have evaded a lawfully issued judgment.  Accordingly, Plaintiffs' argument that the public interest favors a temporary restraining order is unpersuasive.

### POINT III
### PLAINTIFFS MUST POST A BOND IF THEIR APPLICATION IS GRANTED

Plaintiffs' application for an attachment or a temporary restraining order must be denied for the reasons discussed above.  If, however, the Court grants Plaintiffs' application, then any attachment or restraining order should be conditional on the Plaintiffs' posting a significant undertaking.  *See* CPLR § 6212(b).  At the very least, Plaintiffs should be required to post a bond for the full value of the NIO shares before any attachment or restraining order becomes effective.  The amount of the bond required under CPLR § 6212(b) is determined by the amount "sufficient to pay defendant damages, including attorneys' fees, in the event … that plaintiff [is] found not entitled to an attachment."  *See Mitchell v. Fidelity Borrowing LLC*, 34 A.D.3d 366, 367 (1st Dep't 2006).  Here, Plaintiffs seek an order of attachment regarding the NIO Shares which were valued at $161.75 million at the time Zhang executed her affidavit, *see* Zhang Aff. ¶ 12, but those shares are now worth only $107.15 million based on the March 18, 2021 closing

price.  *See* Zhang Aff. ¶¶ 10, 12, Boxer Decl. Ex. B.  If Defendants are prevented from selling

the shares, the damages could be significant given the market volatility as evidenced by the

shares losing approximately a third of their value since the date of Zhang's affidavit.  Plaintiffs

should be required to post a bond equal to the current value of the shares.

<u>**CONCLUSION**</u>

A plaintiff's task in proving an attachment is warranted is "particularly daunting because

it is well established that the New York attachment statutes are construed strictly against those

who seek to invoke the remedy."  *Buy This, Inc.*, 178 F. Supp. 2d at 383 (citation omitted).

Where a plaintiff seeks money damages, "injunctions are unavailable except in extraordinary

circumstances."  *Moore*, 409 F.3d at 510.  For all of the foregoing reasons, Plaintiffs fail to meet

their burden to show that the requirements for an attachment are present or that extraordinary

circumstances justify a temporary restraining order.  Defendants respectfully request that the

Court deny Plaintiffs' application for an attachment and temporary restraining order, and award

Defendants such other and further relief as the Court deems just and proper.

Dated: March 19, 2021                    CARTER LEDYARD & MILBURN, LLP


                                         By: _/s/ Jeffrey S. Boxer_____
                                            Jeffrey S. Boxer
                                            Madelyn K. White
                                         2 Wall Street
                                         New York, NY 10005
                                         (212) 732-3200
                                         boxer@clm.com
                                         white@clm.com