UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JING ZHANG, WEI FAN, MINGLIAN ZHANG, AND JUN ZHOU,**<br><br>PLAINTIFFS,<br><br>V.<br><br>**XUEYUAN HAN, HANFOR HOLDINGS CO., LTD., HF HOLDINGS, LIMITED, HANFOR CAPITAL MANAGEMENT CO., LTD., NUOYUAN CAPITAL MANAGEMENT COMPANY LTD, GEORGE XU, JUNJUN FENG, WENNAN AO, BZ INDUSTRIAL (CHINA), BZ INDUSTRIAL (VIRGIN ISLANDS), BZ INDUSTRIAL (CAYMAN ISLANDS), HANFOR (CAYMAN) LIMITED, HFRE LLC, HF CAPITAL MANAGEMENT CAY INC., HF COSMOPOLITAN BETA L.P., HF HOLDINGS LIMITED, HENGTAI SECURITIES CO., JOHN DOES 1-10, AND ABC-XYZ CORP. 1-10,**<br><br>DEFENDANTS. | **CASE NO.: 21-cv-01625 (GHW)(BCM)**<br><br>*Document Electronically Filed*<br><br>**MEMORANDUM OF LAW IN REPLY** |

### A. Plaintiffs have demonstrated that CPLR 6201(3) applies.

N.Y. CPLR § 6201(3) provides that an order of attachment may be granted if the defendant, with intent to defraud his creditors or frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, is about to dispose of his property. Citinge *Brastex Corp. v. Allen Int'l, Inc.,* Defendants argue that Plaintiffs failed to meet the "high burden" to show the Defendants have actual intent to defraud. 702 F. 2d 326 (2d Cir. 1983). However, *Brastex Corp.* does not apply to the case at bar, as the plaintiff there was seeking a post-judgment attachment of defendant's assets.

Defendant Han's actual intent to defraud Plaintiffs is demonstrated by the false statements which he already submitted to this Court. First, Defendant Han claimed in his declaration that he has only an ownership interest in Defendant Nuoyuan Capital Management and has not had any managerial role in the company since 2017. *See* Han Decl. ¶ 13. This statement is false because to date, Defendant Han is listed as the founder and a key member of Defendant Nuoyuan Capital Management Company. *See* Exh. A. Further, in promotional pamphlets presented to investors in Dingxin Project, Defendant Han was listed as the founder and a key member of Nuoyuan Capital Management Company. *See* Fan Decl. Exh. D. Second, Defendants argue that Defendant Han came to the United States to pursue some unidentified business opportunities in 2018. *See* Han Decl. ¶ 2. Defendant Han currently is in the US on a non-immigrant O-1 visa which requires that he be employed by a U.S. employer.[1] Therefore, Defendant Han's intent for coming to the United States is clearly not to pursue business opportunities. Third, Defendant Han, offering no proof, argues that he that he left China in 2018 before the criminal investigations began, that he was not personally under investigation, and that he purchased real property using his own name. These statements are at best misleading. China does not provide the general public with access to

---

[1] See USCIS requirements of O1 https://www.uscis.gov/working-in-the-united-states/temporary-workers/o-1-visa-individuals-with-extraordinary-ability-or-achievement.

records of ongoing investigations, but Defendant Han first came to United States in September, 2018, just three months before the General Manager of Nuoyuan Capital Management Company, Yanwu Li, was arrested in Beijing, China, and criminally charged for illegally soliciting public cash deposits. *See* Zhang Aff. (Doc. 4) ¶18 and Exh. I-1. From the start, it was Defendant Han's intention to flee to the U.S., where overseas investors would have difficulty tracking his spending and business operations. Defendant Han's intent to defraud oversea investors and Plaintiffs has therefore been demonstrated by the Plaintiffs.

B. **Plaintiffs showed that probability of success on the merits.**

On a motion for attachment, "all legitimate inferences should be drawn in favor of the party seeking attachment." *In re Amaranth Nat. Gas Commodities Litig.*, 711 F. Supp. 2d 301, 306 (S.D.N.Y. 2010). "The decision of whether to award preliminary injunctive relief is often based on procedures that are less formal and evidence that is less complete than in a trial on the merits." *Mullins v. City of New York*, 626 F.3d 47, 51-52, 2010 U.S. App. LEXIS 23608. *11, 16 Wage & Hour Cas. 2d (BNA) 1636 (internal quotations and citations omitted).[2]

Defendants' argument that Plaintiffs failed to show probability of success on the merits necessarily fails because, in addition to Plaintiffs' complaint and Ms. Zhang's affidavit, Plaintiffs submitted as part of the reply herein additional declarations from all Plaintiffs supported by additional written evidence, including relevant investment agreements, promotional materials used by the Defendants to induce Plaintiffs to invest, and the reports provided by the Defendants

---

[2] *See, e.g., United States v. Buddhu*, No. 08 Civ. 0074, 2008 U.S. Dist., at *1 n.2 (D. Conn. June 5, 2008) ("In considering a motion for a preliminary injunction, the Court may rely on affidavits, depositions, and sworn testimony, even when they include hearsay." (citations omitted)); *Lopez Torres v. New York State Bd. of Elections*, 411 F. Supp. 2d 212, 226 n.17 (E.D.N.Y. Jan. 27, 2006) ("Plaintiffs finally raised the argument that the hearsay rule does not apply during a hearing on a motion for preliminary injunction. The issue was briefed and I ruled in their favor." (citations omitted)); *Zeneca Inc. v. Eli Lilly & Co.*, No. 99 Civ. 1452, 1999 U.S. Dist., at *2 (S.D.N.Y. July 19, 1999); *Fisher v. Goord*, 981 F. Supp. 140, 173 n.38 (W.D.N.Y. 1997) (citing cases); *SEC v. Musella*, 578 F. Supp. 425, 427-28 (S.D.N.Y. 1984) (noting that a court need not discount hearsay evidence presented in an application for a preliminary injunction if such evidence is found to be "inherently trustworthy").

demonstrating the breach of the respective investment agreements. Plaintiffs' causes of actions are likely to succeed on the merits, as their allegations are pled with particularity, detailing with specificity the fraud perpetuated by Defendants, supported by competent documentary evidence and satisfying all elements under CPLR § 6201. Therefore, based on the ample facts pled by the Plaintiffs, and with all inferences being drawn in their favor, Plaintiffs meet the applicable standard.

Defense also argues that arbitration must be done in China, citing *DaPuzzo*, and appealing to federal policy. DaPuzzo v. Globalvest Mgmt. Co., 263 F. Supp. 2d 714, 718-19 (S.D.N.Y. 2003). Interestingly, defense also cites *Anhui Provincial*, which says that "arbitration should not be compelled unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Int'l, Inc. v. Anhui Provincial Import & Export Corp., 888 F. Supp. 587, 589 (S.D.N.Y. 1995). Defendant Han argues in bad faith for arbitration in China, as he himself has already fled to the United Stated from that forum, while under criminal investigation for the equivalent of insider trading and securities fraud. Importantly, the Second Circuit has commented on the enforcement of arbitration clauses, stating, "There is a general presumption that courts, not arbitrators, decide issues of arbitrability." Telenor Mobile Commc'ns AS v. Storm LLC, 584 F.3d 396, 406 (2d Cir. 2009). Furthermore, "A mere agreement to arbitrate is not sufficient to compel arbitration; the plaintiff's claims must also fall within the scope of that agreement." Beletsis v. Credit Suisse First Boston, Corp., 2002 U.S. Dist. LEXIS 16586, *1, 2002. The case at hand contains an issue of first impression, where one party to the arbitration agreement both fled the forum, and due to impending trial, cannot be held civilly liable under the arbitration agreement. Because of this and the fact that it is ultimately the courts who decide issues of arbitrability, China does not remain the forum for the resolution of these disputes.

Defense further states that Plaintiffs' case is not likely to be successful because the Court lacks personal jurisdiction over corporate defendants other than Defendants HFRE and Ms. Ao,

because their principal places of business, assets, and employees, are outside of the United States. However, the analysis of personal jurisdiction is very much factor-oriented. In *Licci*, the Court stated, "A defendant may be subject to personal jurisdiction in New York under N.Y. C.P.L.R. 302(a)(1) if (1) the defendant transacted business within the state; and (2) the claim asserted arises from that business activity." *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 164, 2013 U.S. App. LEXIS 21189, *2, 2013. As demonstrated by the complaint and affidavits in support of attachment, many links exist between the corporate and individual Defendants. There also have been multiple instances of Defendant Han transacting in business within the state. Defendants HF Capital Management Cay, BZ Industrial Limited and HF Cosmopolitan Beta LP are authorized to do business in New York state, and are linked to Defendant Han. Defendant Han is also the director of BZ Industrial and HF Capital Management Cay, as well as limited partner of HF Cosmopolitan Beta. *See* Han Decl. ¶¶ 15, 19, 20. Furthermore, in addition to Defendant Han's dominant roles in these companies', his physical presence in the state and performance of such duties as an officer/director/partner while these companies engaged in business transactions, would allow the court to confer jurisdiction over such companies. Defendant Han is also the director of HF Holdings Limited**,** the CEO and Chairman of Hanfor (Beijing) Capital Management Co, has indirect ownership of Nuoyuan Capital Management Company, and is the executive director of Bang Ze Industrial Co, as well as the director of Hanfor Limited. *See* Han Decl. ¶¶ 11-14, 17. Instances of Defendant Han conducting his duties associated with these companies include, but are not limited to, holding phone status conferences with the investors on several of Defendant Han's investment projects while in New York. In light of all these contacts of the companies with the forum state, under *Licci* the New York District Court has personal jurisdiction over Defendants. Specific personal jurisdiction under *Schentag* would also be satisfied as Defendant Han's declarations, activities and presence show numerous links between the forum and the controversy.

Federal courts have consistently recognized that individuals not subject to a court's personal jurisdiction but who represent essentially an alter ego of a corporate entity, can be subject to the personal jurisdiction on that basis. *See Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 432; *see also Michnovez v. Blair, LLC*, 795 F. Supp. 2d 177, 191, 2011 U.S. Dist. LEXIS 63339 *38[3]; *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (endorsing "the use of the alter-ego theory to exercise personal jurisdiction"). Here, all Defendants should be considered by the Court as a single enterprise because Defendant Han ignored the corporate form and used it to perpetuate fraud against the Plaintiffs. Defendant Han formed numerous corporate entities in different parts of the world, made them engage in various business transactions with each other, in the hope that no court would assert jurisdiction over all the companies, while ensuring that any actions like Plaintiffs' would require the joinder of all current defendants to obtain relief from the injuries suffered from Defendant Han's actions.

Defense also states that even if the Court has jurisdiction over this case, the claims for breach of contract and good faith and fair dealing are not likely to succeed because aside from Plaintiff Ms. Zhang, no other Plaintiffs attached the contracts that they alleged were breached, and this alone prevents success on the merits. Defense used *Ellington* case to argue that one has to show the terms of agreement where liability rested. Plaintiffs' response not only includes the attached contracts for the remaining Plaintiffs but also their affidavits explaining the breaches upon which liability rests in the terms of the signed and written contracts the remaining Plaintiffs had with the corporate defendants. *See* Zhou Decl., Fan Decl., and Minglian Zhang Decl.

---

[3] "That of course is the point of this entire master plan concocted by [defendant] - to create small, undercapitalized testing entities in the far corners of the world, exert pervasive control over those entities, and then to argue that consumers in states such as New Hampshire cannot recover for negligently conducted testing due to lack of personal jurisdiction. Such a system must not be sanctioned; in fact, avoidance of such injustice is the precise justification for the doctrine of disregarding "the fiction of the corporation when circumstances would lead to inequitable results[.]"(internal quotations and citations omitted).

Defendants' argument that Plaintiffs did not plead fraud perpetuated by the Defendants with particularity is without merit and counter to evidence submitted on the motion for attachment and reply herein. Plaintiffs' respective declarations provide specific details as to who made fraudulent misrepresentations, agreements have been signed, specific promises made to the Plaintiffs regarding the returns on their respective investment, including dates and other details. Plaintiff have certified to numerous facts based on personal knowledge, and provided the agreements Defendants signed with them, promotional materials Plaintiffs relied upon, and the financial reports distributed by Defendants with regard to the Plaintiffs' respective investments.

Regarding the unjust enrichment claim, Defendants state that because there are contracts that exist for said agreements, it is therefore impossible to simultaneously have a claim for unjust enrichment. While such claims generally cannot prevail together, unjust enrichment claims should not be dismissed at this time because there are often issues of fact as to whether the contract in question covers all of the alleged claims, in addition to being able to plead them alternatively. This notion is well founded in the Second Circuit, as prominent case law indicates that although Plaintiffs may not ultimately recover under both breach of contract and unjust enrichment claims, courts in this Circuit routinely allow plaintiffs to plead such claims in the alternative. *Transcience Corp. v. Big Time Toys*, LLC, 50 F. Supp. 3d 441, 452, 2014 U.S. Dist.[4] Therefore, because it is well founded that both claims can be plead alternatively, and because the claims do not completely overlap, neither the claim for breach of contract nor unjust enrichment should be dismissed.

Defendants' argument that Plaintiffs did not meet the burden for breach of fiduciary duty because Plaintiffs engaged in an arms-length transaction and are sophisticated investors are generic, conclusory, and unsupportive by any facts from the declarations submitted. The argument the

---

[4] Additionally, the Court in *Transcience Corp.* states, "citing Maalouf and Rule 8(a) of the Federal Rules of Civil Procedure for the principle that plaintiff may plead breach of contract and unjust enrichment claims alternatively despite defendant's contention that a valid and enforceable contract governed the dispute." *Id*.

fiduciary duty breach claim is duplicative of the breach of contract claim likewise fails. The contracts themselves established that some of the parties were to be limited partners, and granted rights that go beyond the general contracts, including duties of disclosure, access to financial information, and against commingling of assets. This type of relationship created a level of trust higher than the initial contract, one of continual trust, to ensure that the Plaintiffs' capital is well-maintained and segregated. A further relationship was layered onto the contractual relationship that went beyond the initial contractual obligations, creating a fiduciary duty to the Plaintiffs, that was subsequently breached, culminating in economic damages in the millions of dollars.

Defense also claims that the 10b-5 claim will fail, citing the *Morrison* case to argue that such a claim can only be based on transactions in securities on domestic exchanges and transactions. *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 130 S. Ct. 2869 (2010). This case's issues differ greatly from the facts in the *Morrison*,[5] as Plaintiff Ms. Zhang is an American permanent resident, and the securities at issue, such as those pertaining to NIO, a company publicly traded on the New York Stock Exchange, were purchased by Defendant Han (a legal resident of the U.S.) using funds converted from Plaintiffs. Conversely, in *Morrison*, Australian residents and citizens sued National Australia Bank, a foreign defendant, for misconduct on an exchange in Australia. This kind of case became known as a "foreign-cubed" litigation, and the Court adopted a "transactional" test, focused on whether the *purchases and sales* of securities occurred in the United States. *Id*. In *In re UBS Sec. Litig.*, the Supreme Court stated, "the transactional test incorporates the presumption against extraterritoriality and thus avoids the "probability of incompatibility with the applicable laws of other countries." *In re UBS Sec. Litig.*, 2011 U.S. Dist. LEXIS 106274, *10-11, 2011. Since Defendant Han, a U.S. visa holder, used converted funds of

---

[5] In *Morrison*, the issue that was resolved was whether section 10(b) provided a cause of action for foreign plaintiffs suing foreign and American defendants for their misconduct in connection with securities traded on foreign exchanges. *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 130 S. Ct. 2869 (2010).

Plaintiff Ms. Zhang, a U.S. permanent resident, and others, to buy securities listed on the N.Y. Stock Exchange, the transaction occurred within the United States and is therefore not a foreign-cubed case, but one aptly under the jurisdiction of the Securities and Exchange Act of 1934.

The Defendant further argues that because there was no domestic injury to property, a civil RICO claim will also fail on the merits. In order to succeed on a civil RICO claim, four elements must be proven: a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation. Further, the pattern of racketeering activity must consist of two or more predicate acts of racketeering. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 109, 2013 U.S. In the case at bar, Defendant Han as well as the other corporate defendants and their agents all engaged in conduct to compel the Plaintiffs to invest in various projects in order to eventually convert these funds for their own use. Failure to return on investment, the lack of the disclosure of important financial records, and the mingling of the Plaintiffs' assets all were part of the illicit activity on behalf of the Defendants that, contrary to what the Defendants argue did involve a domestic injury, that of lost profits on the securities purchased from NIO. Because of this pattern of racketeering activity going on for several years involving many projects, harming domestic interests of the Plaintiffs, a RICO civil law claim reflects that what precedent establishes is necessary to recover on the basis of such a claim.

C. **The amount to be attached is supported.**

Every remedy "is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment," but a Federal statute governs to the extent it applies. *Fed.R.Civ.P. 64(a)*. This includes attachment which is governed by CPLR § 6201. *Fed.R.Civ.P. 64(b); CPLR § 6201*. Any debt or property against which a money judgment may be enforced as provided in section 5201 is subject to attachment.

*CPLR § 6202*. This includes any property that could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment. *CPLR § 5201(b)*. Attachment is available only upon a specification of damages, and such damages must be shown with reasonable certainty to justify taking a defendant's property in advance of adjudication. *Moquinon, Ltd. v. Gliklad*, 2017 N.Y. Misc. LEXIS 1498, at *14 (Sup. Ct. N.Y. County Apr. 6, 2017). Because attachment is a form of seizure of property in a specified amount, damages should be made out in that amount. *Id.*

Plaintiffs have demonstrated that Defendants will conceal or are about to conceal property and have acted or will act with the intent to defraud Plaintiffs, or to frustrate the enforcement of a judgment that might be rendered in the Plaintiffs' favor. *See* Zhang Aff. [Document 4]; see also *Hume*, 137 A.D.3d. at 1081. In her Affidavit and in the related documents, Ms. Zhang alleges how she and the other Plaintiffs invested their money with Defendant Han and his companies, including representations made to her by Defendants that HF Holdings Limited would invest her money in NIO stock. However, Defendant Han and his companies have reneged on their promises. Defendants owe Plaintiffs nearly $46,000,000.00. Defendants seek an attachment in the amount of $32,082,840.05. The amount to be attached will cover some of the Plaintiffs' losses.

Furthermore, attachment is necessary because of Defendant Han's efforts to escape justice. Defendant Han has evaded Ms. Zhang's and other Plaintiffs' attempts to contact him and to recover her investments. Defendant Han fled to the United States in 2018 to avoid charges after the Beijing Bureau of the China Securities Regulatory Commission launched investigations him and his companies in 2019. It is necessary for the Court to attach the aforementioned properties so that Defendant Han does not liquidate his assets, abscond, and deny Plaintiffs an opportunity to recover.

    **D. Plaintiffs' application for a temporary restraining order is moot.**

Pursuant to this Court's February 24, 2021 Order [Document 8], the Plaintiffs' application for an *ex parte* temporary restraining order was denied. Therefore, no response to the Defendants' Point II is necessary because the Court rendered the Plaintiffs' application moot.

### E. **Defendants miscalculated the amount to be attached.**

The Court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the Court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. *Fed.R.Civ.P. 65(c)*. The Court has wide discretion to set the amount of a bond, even to dispense with the bond requirement where there has been no proof of likelihood of harm. *Corning, Inc. v. PicVue Elecs., Ltd.*, 365 F.3d 156, 158 (2d Cir. 2004) (internal citations omitted). The amount of bond is to be based upon the projected losses of the party against whom the attachment is sought, not, as Defendants argue, the value of the assets to be attached. Defendants proffered no evidence of their intent to sell the assets sought to be restrained.[6] The Defendants also have not justified the amount of the bond amount suggested in their Opposition. Since the Defendants are not expected to lose the value of any of these items while the preliminary injunctive relief is in place, the bond to be posted should be minimal as allowed by law.

### CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's order to show cause for attachment.

Dated: March 30, 2021

                                               /s/ Paul A. Gilmer_____
                                               Paul A. Gilmer, Esq.
                                               WONG, WONG & ASSOCIATES, P.C.
                                               *Attorneys for Plaintiff*

---

[6] Instead, Defendant Han stated he does not intend to sell Penthouse # 1 at this time. *See* Han Decl. (Doc. 21) ¶ 5.