L3TQzhaD

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   JIN ZHANG, et al.,

4                   Plaintiffs,

5           v.                           21 Civ. 01625 (GWH)
                                         Remote Oral Argument
6                                            and Decision

7   XUEYUAN HAN, et al.,

8                   Defendants.

9   ------------------------------x
                                         New York, N.Y.
10                                       March 29, 2021
                                         11:00 a.m.
11
    Before:
12
                        HON. GREGORY H. WOODS,
13
                                         District Judge
14
                        APPEARANCES
15
    WONG, WONG & ASSOCIATES PC
16       Attorneys for Plaintiffs
    BY:  RAYMOND H. WONG
17       PAUL A. GILMER
         NATALYA RUTCHYK
18       VICKY C. MAO

19

    CARTER LEDYARD & MILBURN LLP
20       Attorneys for Defendants
    BY:  JEFFERY S. BOXER
21       MADELYN WHITE
         MEREDITH SPELMAN
22       SARAH GANLEY

23  REID & WISE LLC
         Attorneys for Defendant Hengtai
24  BY:  MATTHEW J. SAVA
         ZHENG GAO
25       SHIYONG YE

L3TQzhaD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

L3TQzhaD

1          (The Court and all parties appearing telephonically)

2          THE COURT:  Let me begin by taking appearances from

3   each of the parties counsel here.

4          First, who is on the line for plaintiffs?

5          MR. WONG:  Raymond Wong, attorney for the plaintiff.

6          THE COURT:  Good.  Thank you very much.  And then who

7   is on the line on behalf of the defendants?

8          MR. BOXER:  This is Jeffery Boxer from Carter Ledyard

9   on behalf of all the defendants other than Hengtai Securities.

10  My colleagues Madelyn White, Meredith Spelman, and Sarah Ganley

11  are also on the line.

12         THE COURT:  Good.  Thank you very much.

13         And who is on the line on behalf of Hengtai?

14         MR. GAO:  This is Zheng Gao, attorney from Reid & Wise

15  for defendant Hengtai.  So, I think my colleague Matthew Sava,

16  and Shiyong Yi, they are supposed to appear.  So let me check

17  whether they are here.

18         MR. SAVA:  Yes.  This is Matthew Sava with Reid &

19  Wise.  With me is Zheng Gao and Shiyong Ye.

20         THE COURT:  Good.  Thank you very much.  So let me

21  begin by saying a few brief words about the rules that I would

22  like the parties to follow here.

23         At the outset, I would like everybody to please place

24  your phones on mute.  Somebody does not have their phone on

25  mute.  The person dialing in with the last four digits of 4852,

L3TQzhaD

1    for example, your line is not on mute.  That is part of the

2    reason why we are hearing reverb and background noise.  I am

3    going to ask everybody to please place your phones on mute.

4    Please keep them on mute at all times except when you're

5    addressing the Court or one of the other parties.  If you do

6    not place your phones on mute, unfortunately, that results in

7    unnecessary background noise and reverb that can make it

8    difficult for us to hear and for the court reporter to maintain

9    a record of the conversation.  So, again, please all keep your

10   phones on mute.  Keep them on mute at all times except when

11          MR. SAVA:  Your Honor.  Yes, your Honor.

12          MR. WONG:  Your Honor, I have three colleagues --

13          (Reporter interrupts)

14          THE COURT:  Yes.  First, the court reporter just

15   asked -- and I will get to in a moment -- can you please

16   identify yourself for the record.  Let me just say now, as I

17   was about to say, one of the instructions that I want everybody

18   to follow is for everybody to please state their name each time

19   that they speak.  There is a court reporter who is transcribing

20   these proceedings.  She knows what I sound like, but she does

21   not know who you are based on your voice.  So before saying

22   anything of substance in this conference, each speaker must

23   identify him or herself by name for the record.  So, for

24   example, you would say this is Mr. Smith and then proceed to

25   make your remark.

L3TQzhaD

1          So, I'm sorry, somebody was just interjecting

2     something.  Please can you identify yourself for the record?

3          MR. WONG:  This is Raymond Wong, the attorney for the

4     plaintiff.  I would like to make an oral motion to admit my

5     colleague for this conference, Natalya Rutchyk and Vicky Mao.

6          THE COURT:  Thank you.  I'm happy to take that up.

7     What do you mean by "to admit them for this conference"?  Are

8     they expected to represent one of the parties during the

9     conference?

10          MR. WONG:  They are representing the plaintiff team.

11     They try to admit in the normal process but they have trouble

12     getting their certificate of good standing, so they cannot be

13     admitted on time for this conference.  So we are following the

14     rules trying to have them admitted on an emergency basis to be

15     part of this conference.

16          THE COURT:  Thank you.  Are you expecting that either

17     of them will be addressing the Court during this conference?

18          MR. WONG:  I would expect Natalya Rutchyk to be

19     participating only.  Paul Gilmer will be the counsel on this

20     case.

21          THE COURT:  Thank you.  And Mr. Gilmer is on the line.

22     Is that right?

23          MR. GILMER:  Paul Gilmer speaking.  That is correct,

24     your Honor.

25          THE COURT:  Good.  Thank you.  So let me just decline

L3TQzhaD

1    to take up that application at this point.  I understand that

2    the formal motion is working its way through the system.  I

3    understand that lead counsel here is Mr. Gilmer, and that he is

4    prepared to address all issues.  If and to the extent that

5    either of the lawyers who you just identified must speak during

6    the conference, I invite you to renew the application, but at

7    this point I don't know that it is necessary for me to step

8    outside of the ordinary process here.  So lead counsel is on

9    the line and has entered an appearance.

10           Anything else, Mr. Wong, before I continue with my

11   introductory remarks?

12           MR. WONG:  That's it for now, your Honor.

13           THE COURT:  Thank you very much.

14           As I said at the outset, please keep your phones on

15   mute.  The second thing I wanted to say is that you should all

16   remember that this is a public proceeding.  Any member of the

17   public or press is welcome to join the conference at any time.

18   I am not monitoring whether third parties are joining the

19   conference, so please just keep that in mind.

20           Third, as I just informed you, my expectation is that

21   the parties' counsel will each represent or introduce

22   themselves each time that they speak.  So, again, if you begin

23   any remarks, please state your name before beginning any

24   substantive remarks.

25           Fourth, I'm inviting our court reporter to let us know

L3TQzhaD

1    if she has any difficulty hearing or understanding anything

2    that we have to say today.  If she asks you to do something

3    that will make it easier for her to do her job, please do it to

4    the extent that you can.

5          And, finally, I'm ordering that there be no recording

6    or rebroadcast of all or any portion of today's conference.

7          So, counsel, I scheduled this conference as a hearing

8    with respect to plaintiff's request that the Court enter an

9    order attaching certain properties of certain of the defendants

10   in this case.  I anticipate taking up that application now.

11   I've also been presented with applications to file motions to

12   dismiss a number of the allegations in the complaint,

13   substantially all of them, for a variety of bases.  So I'd like

14   to take up each of those issues.

15         I am going to propose a structure for this conference

16   which takes into account the fact that the bases for the

17   proposed motion to dismiss are also germane to the Court's

18   evaluation of the application for an attachment here because

19   the motions to dismiss as proposed challenge the viability of a

20   number of the plaintiff's causes of action and whether they can

21   be properly sustained in this court.

22         So what I would like to do is first ask if either

23   party wishes or set of parties wishes to present additional

24   evidence to the Court in connection with this application.

25   Then I hope to invite any supplemental argument from the

L3TQzhaD

1    parties with respect to certain of the issues, principally

2    whether and to what extent a sufficient showing of intent to

3    hide assets has been shown to support the request of attachment

4    order.   Then I hope to engage in a discussion regarding the

5    anticipated and pending attacks on the substantive merit of

6    plaintiff's claims, both in order to introduce our discussion

7    for motion to dismiss, but, more importantly, for purposes of

8    this conference to inform my assessment of the application for

9    an attachment order.

10                   So that is my agenda here.

11                   Let me begin first with counsel for plaintiffs.

12   Counsel, do you anticipate providing any additional evidence to

13   the Court in this proceeding beyond that which was submitted in

14   your written submissions?   Counsel for plaintiffs.

15                   MR. GILMER:  Yes. Paul Gilmer here speaking.

16                   We do have a news report.  It is currently not in a

17   submittable form because it is in Chinese pertaining to many

18   arrests that were made against Nuoyuan Capital, and we would

19   like to submit it perhaps after this appearance after it's been

20   translated so that we can use it to rebut some of the claims

21   from defendant's counsel regarding the level of the arrests and

22   the investigations that have been ongoing pertaining to fraud

23   by defendants.

24                   THE COURT:  Thank you.  So I understand that at this

25   point you're not prepared to present additional evidence to the

L3TQzhaD

1   Court in support of the application.  Is that right?

2            MR. GILMER:  That is correct, your Honor.

3            THE COURT:  Thank you.  Counsel for the defendants,

4   other than Hengtai, counsel, do you anticipate presenting

5   additional evidence to the Court in connection with this

6   hearing regarding the plaintiff's request for an order of

7   attachment?

8            MR. BOXER:  Jeffery Boxer speaking.

9            We do not anticipate presenting additional evidence.

10  Just to note that to the extent the plaintiffs have already

11  submitted documents in Chinese that they plan to use, we

12  reserve our right to object to that without translations of the

13  portions that they plan to use, but no additional evidence from

14  our end.

15           THE COURT:  Good.  Thank you very much.

16           Counsel for Hengtai, do you anticipate submitting

17  additional evidence to the court here?

18           MR. SAVA:  We do not, your Honor.

19           THE COURT:  Thank you very much.

20           I understand the evidentiary record in support of the

21  application is closed.

22           With that, I'd like to turn to a discussion of the

23  issues raised by the application.  I've reviewed all of the

24  materials that the parties have submitted on the docket to

25  date.  I've read the parties' briefing in connection with this

L3TQzhaD

1    application.  My expectation at the outset is that I am not

2    going to be considering certain of the documents that were

3    presented to the Court that, as counsel has just suggested, are

4    not in the English language.

5          For example, Exhibit 28, 29, and 30, all of which have

6    no English language translation, I'm sorry, but I can't assess

7    foreign language documents.

8          I also observed that there are affidavits submitted on

9    the docket at Docket No. 27 and at Docket No. 21, each which is

10   translated but in neither case do either of those appear to be

11   certified translations.

12         Let me just check with respect to each of those two

13   documents because I'm not considering any document written in a

14   language other than English at all here.  I can't understand

15   them, and nor do I expect the other parties to be able to do

16   so.

17         So, let me hear from counsel for plaintiffs.  Counsel,

18   again I see the translations at Docket No. 27 and Docket No.

19   21, are those certified translations?

20         MR. GILMER:  They are not certified translations as of

21   this moment, no.  As of this moment any document that does not

22   have a translation, we are certainly not going to dispute not

23   being entered into the record.  I believe that documents we

24   have already submitted in the English language and any

25   certified translations that we have -- any certified

L3TQzhaD

| | |
|---|---|
| 1 | translations that we will provide will be in the future, but-- |
| 2 | (Reporter interrupts) |
| 3 | THE COURT:  Thank you.  Can I ask you to please read |
| 4 | back the last portion that you heard, and then, Mr. Gilmer, if |
| 5 | you don't mind, I'd like to ask you to fill in the last remarks |
| 6 | for the benefit of the record. |
| 7 | Can I ask the court reporter to please read back up to |
| 8 | that point? |
| 9 | (Complies) |
| 10 | MR. SAVA:  But I believe that the documents we filed |
| 11 | in English are more than sufficient at this moment. |
| 12 | THE COURT:  Thank you very much.  So I will be |
| 13 | considering the documents that have been submitted in the |
| 14 | English language including certified but not uncertified |
| 15 | translation of documents, so -- |
| 16 | MR. BOXER:  I'm sorry to interrupt.  It's Jeffery |
| 17 | Boxer speaking. |
| 18 | But you mentioned Docket No. 21, which is actually a |
| 19 | declaration submitted by the defendants, not the plaintiff, and |
| 20 | I would like to address that because there are Chinese language |
| 21 | exhibits attached, but there are certified English translations |
| 22 | of the portions of those exhibits that are referred to in our |
| 23 | papers. |
| 24 | THE COURT:  Thank you.  Understood.  I will be |
| 25 | considering certified translations for purposes of this |

L3TQzhaD

1    hearing.

2            MR. BOXER:  Thank you.  Thank you.

3            THE COURT:  Good.  Thank you.

4            So, let's begin.  Counsel at the outset, I've reviewed

5    your submissions with respect to the application for an

6    attachment order.  I want to engage in a conversation

7    regarding, I'll call it, the probability of success regarding

8    the claims here.  I do not think that I need additional

9    argument regarding the issues related to asserted fraudulent

10   intent.  The documents presented to the Court are relatively

11   straightforward.  So I'm going to ask with respect to that

12   category of information whether either party wishes to add

13   anything to supplement your arguments with respect to that

14   issue.

15           Again, I expect to engage in a more plenary discussion

16   regarding the probability of success on the merits with respect

17   to plaintiffs' claims momentarily, but I'd like to first invite

18   the parties to let me know if there is anything you'd like to

19   add to your written submissions with respect to the issue of

20   whether defendants are acting with intent to defraud as

21   required for the Court to find that attachment is appropriate

22   here.

23           Counsel for plaintiffs, is there anything you'd like

24   to add to your written submissions on that front?

25           MR. GILMER:  Paul Gilmer speaking here.  I believe

L3TQzhaD

1    that the submissions that we have have all been provided for

2    your Honor, especially in the amended complaint and attached

3    exhibits.  Indeed, various affidavits already speak for

4    themselves.  Thank you.

5            THE COURT:  Very good.

6            Counsel for Hengtai.

7            MR. SAVA:  Matthew Sava for Hengtai.

8            Your Honor, the plaintiffs, as we understand it, are

9    not seeking to attach any Hengtai assets and have made no

10   showing at all with respect to Hengtai.  So we don't have any

11   additional evidence to submit on that point, but believe that

12   the attachment issue is largely a non-issue with respect to

13   Hengtai.

14           THE COURT:  Very good.

15           Counsel for the remaining defendants.

16           MR. BOXER:  Jeffery Boxer.  We have no additional

17   evidence to submit on that point.

18           THE COURT:  Thank you very much.

19           So let's turn to the second principal issue on which

20   I'd like to focus for purposes of discussing the or evaluating

21   the attachment order, which is the probability of success on

22   the merits.  There are a number of issues that have been raised

23   in the parties' submissions, including in both the opposition

24   to the motion.  They're also outlined in the pre-motion

25   letters.  The first of those is the asserted failure to serve.

L3TQzhaD

1          Now, I just want to observe at the outset here that

2     only certain of the defendants' property is sought to be the

3     subject of the attachment order here.  Some of the arguments

4     that are presented by defendants' counsel in your pre-motion

5     conference request letters applies to defendants who are not

6     potentially subject to the order of attachment.

7          I would like to talk about each of the issues raised,

8     however, in a broader way.  I will ask that you identify

9     whether and to what extent each of these issues specifically

10    touches the defendants who are intended to be the subject of

11    the attachment order, but I want to engage in a plenary

12    conversation at this point regarding all of anticipated attacks

13    on the plaintiffs' allegations here, and I will take them up in

14    turn.

15         Again, with respect to each of these issues, I've read

16    the parties' briefing, and I've read the letter submissions in

17    connection with the proposed pre-motion conference letters.

18         So, let me just ask for the parties first to speak to

19    the asserted failure to serve these the complaint and other

20    documents here.  As I understand it, defendants propose to show

21    that they were not properly served because the filings here

22    were not served directly to a corporate representative for the

23    corporate defendant; that they were left for the doorman but

24    not subsequently mailed to the individual defendants; that they

25    were left with a doorman for a building, which is not

L3TQzhaD

1    Ms. Ao's -- pardon me if I'm pronouncing that wrong --

2    residence given that she's returned to China.  So I understand

3    those to be defendants' arguments regarding service.

4            Counsel for plaintiffs, let me hear from you -- let me

5    hear from you first with respect to service on the corporate

6    defendants.  Why is service on the concierge at the residence

7    of the individual -- the son of the individual defendant proper

8    service on the corporate defendants?

9            MR. GILMER:  So, under Rule 4 service is proper under

10   a corporate defendant if it is -- service is made upon one of

11   the officers; and in the case of all the corporate defendants

12   that we did serve, it was upon Mr. Han's residence, and it was

13   given to the concierge which, as we are all aware, is

14   considered to be an adult at the age of 18 in the residence,

15   and whether or not he resides is there is not an issue for the

16   Court.

17           I would argue that even though we have not directly

18   served him, first of all, that because of the piercing of the

19   corporate veil issue, in this case all these defendants are

20   properly served upon -- and with how many different defendants

21   there are, it would be an equitable result, and to the extent

22   we haven't made proper service, I would ask that we could make

23   an oral application or written application for alternative

24   service because many of the corporations that we are stating

25   are -- can have the corporate veil pierced are located in China

L3TQzhaD

1    and various locations.

2           But to a certain degree we have also served certain

3    corporate defendants personally; most notably, of course,

4    Hengtai, but also HF Holdings, which is a corporation which the

5    NIO stock was purchased under.  We had filed an affidavit of

6    service showing that we served those -- the address in the

7    British Virgin Islands directly in that case, as well as --

8    sorry -- as well as for that party they do business in New York

9    and as far as all of the corporations that do business in New

10   York, we have also served them in the Flushing address as well.

11          (Reporter inquires)

12          MR. GILMER:  As far as I'm aware, all of the

13   corporations which are doing business are New York, and I would

14   argue that all of them are doing business because Mr. Han is

15   here doing business through these corporate names.  They all

16   are registered at the Flushing address.

17          THE COURT:  Good.  Thank you.  Let me just follow up

18   on each of those things.

19          First, I understand that the individual defendant has

20   not been personally served yet, but let's focus on the service

21   on the corporate entities.  First, is it sufficient in your

22   view to serve the corporation by serving it at the residence of

23   an officer?

24          MR. GILMER:  So, I tried to review the case law, and I

25   was able to find one case in the Southern District of New York

L3TQzhaD

1   which did touch on this issue.  It did hold that I would have

2   to serve directly on the officer.  However, there were no other

3   citations of that case.  I do not have the citation in mind at

4   the moment, but I also think to the effect that the corporation

5   in this case we are seeking to pierce the corporate veil, there

6   should also be an exception made as well in this case for that

7   reason.

8             THE COURT:  Good.  Let me just pause you on that.

9   With respect to the piercing-the-corporate-veil argument,

10  counsel, in your briefing you lay out New York law on piercing

11  the corporate veil.  Why does New York law apply with respect

12  to piercing issues for these foreign companies?

13            MR. GILMER:  Well, I believe that New York law would

14  apply in part because these corporations are doing business in

15  New York.  They are -- I mean HFRE is registered in New York.

16            As far as the choice of law issue, I believe that

17  either New York or federal law, either one, would apply in this

18  case as far as piercing the corporate veil.

19            THE COURT:  I'm sorry.  Counsel for plaintiffs, just

20  to be clear, you are going to point the Court to case law that

21  states that New York law governs issues related to piercing

22  where the corporation at issue is organized and largely

23  operates in a place outside of the United States?

24            MR. GILMER:  No, in that case I do believe that

25  federal law should be -- should be the judging standard

L3TQzhaD

1   especially because these corporations are transnational.  You

2   have -- you have Mr. Han is running businesses out of New York,

3   but he is also doing business in China, so I do believe that

4   federal law would be more applicable in this case because you

5   do have an international scheme that is set up.

6            THE COURT:  Thank you.  So what precedent do you

7   expect to point me to, counsel, that supports your position

8   that a United States federal law governs internal corporate

9   governance issues with respect to corporates incorporated here

10  and in China, counsel?

11           MR. GILMER:  I do not have any cases on hand at the

12  moment.  I only have New York.

13           THE COURT:  Thank you.

14           MR. GILMER:  Sorry, your Honor.

15           THE COURT:  Thank you.  So a fundamental question

16  regarding your argument here is whether the Court applies U.S.

17  and New York law to any corporation regardless of where

18  organized or operating.  That is an argument which I understand

19  at this point is one which plaintiffs do not have legal support

20  for.

21           Counsel, the next argument that you presented in

22  support of your argument that the agencies -- the corporations

23  were properly served is that it is, in your words, an equitable

24  result.  What is the legal principle that supports the view

25  that services need not be done in a proper manner if requiring

L3TQzhaD

1    service would be inequitable?

2            MR. GILMER:  I do not have any legal principle for

3    this, your Honor.

4            THE COURT:  Thank you.  Good.  So with respect to the

5    request for alternative service, I'm happy to entertain a

6    written request for leave to undertake alternative service.  As

7    you know, one of the questions that the Court will need to

8    evaluate is whether and to what extent any diligence has been

9    made to properly effectuate service.  I would entertain any

10   such a request with the applicable law in mind.

11           The next issue that I'd like to look at are the

12   arguments with respect to lack of personal jurisdiction here;

13   that is, in New York.  I will hear from counsel for the

14   corporate defendants, that is corporate defendants other than

15   HFRE.  My understanding is that they argue that there is

16   adequate support for a 12(b)(1) motion because they do not

17   reside in or maintain any property office bank accounts or

18   employees in New York and all relevant documents and contracts

19   were executed in China by Chinese people in China, and that

20   their places of incorporation and principal places of business

21   are outside of the United States, and also that Ms. Ao is a

22   Chinese citizen and a resident there.  Let me just hear briefly

23   from counsel for corporate defendants, other than Hengtai, with

24   respect to this issue.

25           Counsel, what is the basis for this motion to dismiss

L3TQzhaD

1   for want of personal jurisdiction?

2          MR. BOXER:  Thank you, your Honor.  Jeffery Boxer

3   speaking.

4          The basis for the motion to dismiss for lack of

5   personal jurisdiction for the corporate defendants is

6   essentially as your Honor just said:  Under New York federal

7   law looks to New York State law here, with the possible

8   exception of one federal claim, which I'll discuss in a minute,

9   and so the New York long-arm statute requires a defendant to

10  have either -- the court to have either general or specific

11  jurisdiction over a particular defendant, our belief and

12  argument is that the corporate defendants, with the exception

13  of HFRE, are certainly not subject to general jurisdiction in

14  the U.S., and that the claims here do not supply specific

15  jurisdiction over these corporate defendants because they did

16  not take any action in New York, did not take any actions that

17  caused harm in New York, did not commit torts in New York or

18  meet any of the other requirements under New York's long-arm

19  statute.

20          We also expect to argue that in addition to satisfying

21  New York's jurisdictional long-arm statute, the assertion of

22  jurisdiction must satisfy due process, there must be minimum

23  required contacts so that hailing defendants into court does

24  not violate the Constitution, and we don't think that standard

25  has been met here either because these companies essentially

L3TQzhaD

1    are foreign companies doing business abroad taking investments

2    from foreign non-U.S. citizens, essentially and largely Chinese

3    citizens and residents, and that there is essentially no

4    connection to New York for those corporate defendants.

5              THE COURT:  Thank you.  That's fine.

6              I expect that you were about to address the securities

7    law jurisdiction issue.  I'll ask you to table that and we will

8    talk about that in the context of the motion to dismiss those

9    claims because of their extraterritorial limitations on

10   applications of U.S. securities laws.  I understand that

11   defendant Hengtai intends to move separately on substantially

12   the same basis.

13             Counsel for plaintiff, let me turn to you.  What is

14   the basis for plaintiff's contention that the Court has

15   jurisdiction over these entities, that is, other than HFRE and

16   Mr. Han?  Counsel, can you please point me to the factual basis

17   either in the complaint or otherwise that establishes a basis

18   for personal jurisdiction over Ms. Ao and those corporate

19   defendants?

20             MR. GILMER:  Yes.  In this case, previously I said I

21   did not have any -- any case law as far as piercing the

22   corporate veil.  I do have a case to provide now which does

23   state that in the event that it can't pierce the corporate

24   veil, that the standard for obtaining personal jurisdiction

25   over these corporations becomes much simpler because the

L3TQzhaD

1    corporations are an alter ego of the individual, which would

2    certainly be true in our case as we have alleged.

3              THE COURT:  Thank you.  I'm sorry.  So, the argument

4    is that they are an alter ego Mr. Han, and that's the sole

5    basis for the Court to find personal jurisdiction over them.

6    Is that right?

7              MR. GILMER:  That is the primary basis, but not the

8    sole basis.  Also, Mr. Han is the -- is an officer.  He is the

9    CEO of many of the other corporations, and he resides within

10   New York.  He has resided in New York since 2018.  He has been

11   doing business from here as an officer of the corporation, and

12   he has in several of the investments, especially in the

13   Dingsheng and DingSei (ph) matters, were actually made after

14   Mr. Han had moved to the United States.  So, for all of these

15   reasons, I believe that personal jurisdiction is proper.

16             As far as the Raelwei Sieg (ph) investments, that was

17   made in purchases in NIO on the New York Stock Exchange and so

18   that does largely deal with the Southern District of New York

19   as far as where the transactions were occurring in that action,

20   and so we believe that personal jurisdiction is proper for that

21   reason as well.

22             THE COURT:  Thank you.  Can you please expand on that?

23   I suggested earlier that we postpone a discussion of

24   jurisdictional issues related to securities claims, but let me

25   ask you to expand on that argument.  Why is it that that

L3TQzhaD

1    transaction gives the Court personal jurisdiction over certain

2    of defendants, and which ones?

3         MR. GILMER:  So your question is which corporations in

4    particular do the -- do the securities trades, do those allow

5    for personal jurisdiction over?  I believe it would be Hanfor

6    Holdings and HF Holdings in particular, and those were the ones

7    that were made in connection with the New York Stock Exchange,

8    and on the basis that the New York Stock Exchange is in the

9    Southern District of New York, and so if we are seeking to

10   enjoin any of the NIO shares that have been invested, that

11   would be the proper jurisdiction for those claims.

12        THE COURT:  Thank you.  Let me hear from counsel for

13   the corporate defendants on this argument counsel.

14        MR. BOXER:  Yes.  Jeffery Boxer speaking again.

15        If I understand the arguments that were just made and

16   the one that was just made, the idea is that Ms. Zhang is the

17   only one of the defendants who invested in a company that she

18   understood would be in turn purchasing shares of a company that

19   was traded on the New York Stock Exchange, and that alone

20   subjects the company that Ms. Zhang invested in to personal

21   jurisdiction in New York.  We do not believe that is the case.

22   We do not believe the case law supports the idea that investing

23   in a foreign company that in turn plans to invest in a company

24   that happens to be traded on the New York Stock Exchange is a

25   blanket submission to jurisdiction of that foreign company to

L3TQzhaD

1   the Southern District of New York.

2            THE COURT:  Thank you.

3            Counsel for plaintiff, is that indeed your argument;

4   that any company that invests in stock listed on the NYSE is

5   subject to jurisdiction in this court because it holds or is

6   traded in stock that is listed here regardless of whether or

7   not the transaction issue relates to the stock held by that

8   company?

9            MR. GILMER:  Not at all, your Honor.  We do not think

10  that personal -- or that general jurisdiction is obtainable

11  just because stock is traded.  In this case, the primary reason

12  why jurisdiction is proper in this case is because of the fact

13  that all the corporations, other than Hengtai, are in our

14  view -- and we believe that the facts suggest this are alter

15  egos of defendants Han Xueyuan.  That is the primary basis for

16  this.  And the fact that they are traded on the New York Stock

17  Exchange is just an additional factor of connections to this

18  forum, but it alone is not sufficient to establish

19  jurisdiction, your Honor.

20           THE COURT:  Good.  Thank you very much.

21           Counsel for plaintiff, what's the basis for personal

22  jurisdiction over Ms. Ao?  As I understand the assertions by

23  defendants, she does not currently reside in New York.  She

24  resides in China.  Why does this Court have personal

25  jurisdiction over her?

L3TQzhaD

1          MR. GILMER:  Based off of her affidavit or her

2     declaration, rather, she stated that she is a -- only a

3     resident in China.  However, she spent the majority of last

4     year within the United States.  Her children live in United

5     States, so -- and a party is able to have more than one

6     residence, so there is -- I believe that she does also reside

7     here especially after having spent such a long time at the

8     residence of her children, and at the very least, it would be a

9     frequent place of abode, so therefore service should be held

10    proper over Ms. Ao.

11         THE COURT:  Thank you.

12         My understanding was that she asserts she was stuck in

13    the United States because of COVID; that she'd originally

14    planned on a shorter trip.  So, counsel, how does that affect

15    your analysis?

16         MR. GILMER:  Yes.  I mean, certainly we took here at

17    that word that that may be the case, but we believe that those

18    remarks are in general self-serving as an attempt to avoid

19    jurisdiction, especially because she also stated that when

20    she -- in her declaration that when she was coming here, she

21    was looking for business opportunities, as well her children

22    are here, she was looking for educational opportunities.

23         So, you know, she -- when she came here in the first

24    place, it was before -- I believe it was before she could have

25    imagined that COVID would have happened.  Just simply because

L3TQzhaD

1    she says that is not where she would be staying and it would be

2    her residence, that does not mean it's not her frequent place

3    of abode given that her children are here.

4              THE COURT:  Thank you.  I expect that you have case

5    law that supports that position, counsel, that somebody who is

6    in the United States for a period of time, whose children live

7    here, remain subject to U.S. jurisdiction for some portion of

8    time after that?  What point in your view of the law, counsel

9    for plaintiffs, does a person stop being subject to U.S. law

10   under these circumstances?

11             MR. GILMER:  I do not have the case law right in front

12   of me.  I believe though at least for now, because she spent

13   more than half of the year within the United States, she would

14   be -- she would have been considered a resident for these

15   purposes.

16             THE COURT:  Good.  Thank you very much.

17             So let's turn to the issues related to arbitration

18   here.  The defendants have pointed me to provisions of the

19   share purchase agreements.  They intend to move to dismiss and

20   to compel arbitration on that basis.  They have pointed me in

21   particular to Article 16 of the Purchase Agreement at Docket

22   21-7, which states in sum that all disputes should first be

23   resolved through negotiation.  Then if the relevant party

24   cannot resolve the matter through negotiation, the matter

25   "shall be submitted to the Beijing Arbitration Commission and a

L3TQzhaD

```
1    award will be made in Beijing in accordance with the then

2    effective arbitration rules."

3             So, let me hear from each of the parties on this

4    issue.  First, counsel for defendants other than Hengtai, what

5    is the basis for this motion which I understand to be a motion

6    to compel arbitration and to dismiss the case.  You're not

7    requesting a stay pending arbitration.  Counsel for those

8    defendants, what's the basis for this motion?

9             MR. BOXER:  Thank you, your Honor.  Jeffery Boxer

10   speaking again.

11            Your Honor, the motion is -- the basis for the motion

12   is essentially as you just said:  Each of the plaintiffs here

13   admitted that they -- allege that they signed specific

14   agreements relating to each of the seven investments.  Each of

15   the plaintiffs bring claims based on those particular

16   investments, and in fact breaches of those particular

17   agreements, and each of those agreements contains arbitration

18   provisions that are quite clear and broad, requiring any

19   disputes relating to or arising out of those agreements to be

20   arbitrated before the Beijing Arbitration Commission in

21   Beijing, China.  The federal law we think is fairly clear that

22   those provisions are binding; that arbitration is favored; and

23   that claims that should be brought in arbitration should not be

24   heard in this or any other court.

25            THE COURT:  Thank you.  Counsel for defendants,
```

L3TQzhaD

1    counsel for plaintiff has made an argument that issues of

2    arbitrability should be resolved by the Court.  What is your

3    view regarding whether the language of these contracts empowers

4    the arbitrator to decide issues of arbitrability?

5        MR. BOXER:  So in our anticipated motion, we expect to

6    refer to the rules of the Beijing Arbitration Commission, which

7    provide that the arbitrators have the power to determine their

8    jurisdiction and arbitrability, and we expect to argue that in

9    those cases by the parties adopting those rules, they have

10   agreed to give that power to the arbitrator, not the courts.

11   But, nonetheless, if the Court had the authority to make the

12   decision, the decision in our view should still be in favor of

13   arbitration.

14       THE COURT:  Good.  Thank you very much.

15       Let me turn to counsel for plaintiffs.  Counsel, why

16   is this provision of each of the relevant purchase agreements

17   not applicable here?

18       MR. GILMER:  Your Honor, we believe that this is a

19   case of first impression.  The reason, quite frankly, why these

20   claims have not been brought in China is because our clients

21   have attempted to bring these claims in China, but because of

22   ongoing criminal investigations, they have not been able to

23   proceed in the arbitration court.  As a result, the arbitration

24   courts cannot move on the claims because the defendant,

25   specifically Han Xueyuan, is located within the United States,

L3TQzhaD

1   and so the criminal action is not proceeding, but it also has

2   not gone away, so we are simply unable to get any -- my client

3   is unable to obtain any sort of relief in the location where

4   arbitration is -- has been selected.

5          Furthermore, we would say that when those clauses were

6   put in there, it was done fraudulently because the defendant

7   knew that he was planning to be able to evade the jurisdiction

8   of the court by being able to leave China, and so therefore it

9   was obtained fraudulently for that reason as well.

10         THE COURT:  I'm sorry.  Give me just a moment.

11   Counsel for plaintiffs, just briefly, I just want to confirm

12   what I understand you to have just said.  Is it your assertion

13   to the Court that the plaintiffs did submit this matter to the

14   Beijing Arbitration Commission?

15         MR. GILMER:  I believe that they attempted to do so

16   through a law firm, and they were unable to submit it.  I could

17   get further details certainly.  I do have some reports that I

18   can submit as exhibits that would back up this claim.

19         THE COURT:  Thank you.

20         So, to be clear, is it your assertion to the Court

21   that the plaintiffs submitted this matter to the Beijing

22   Arbitration Commission and the Beijing Arbitration Commission

23   declined to pursue it because of the asserted criminal

24   proceedings against Mr. Han there?

25         MR. GILMER:  No, your Honor.  Actually, it was that

L3TQzhaD

1    they attempted to retain service to file such a claim, but the

2    law firms there said that there was no prospect in doing so

3    because of a criminal investigation.  So it never even got to

4    the phase of being able to submit it because the law firm

5    stated that it was -- it would be fruitless.

6              THE COURT:  Thank you.  To be clear, they did not

7    submit it to the Bejing Arbitration Commission.  Is that

8    correct?

9              MR. GILMER:  That is correct.

10             THE COURT:  Thank you.

11             Instead, as I understand the proffer, they chose not

12   to do so on the basis that some advice rendered by counsel that

13   that forum -- sorry -- let me just finish the thought.  My

14   understanding is that they chose not to the pursue a proceeding

15   in the Bejing Arbitration Commission because of advice that

16   that forum would not be amenable or a convenient place for the

17   action to take place resulting in the action proceeding here.

18             Is there any more information regarding this issue

19   that I should be aware of in considering both the anticipated

20   motion and the application for attachment?

21             MR. GILMER:  Yes, your Honor.  I've submitted that

22   it's not where they chose not to; that the law firm told them

23   they couldn't.  It's that they are unable to.  It is an issue

24   where they are -- you know, Black Letter Law, they are not able

25   to submit it because of the ongoing criminal investigation.

L3TQzhaD

1              THE COURT:  Thank you.

2              I'm sorry.  The ongoing criminal investigation against

3    whom?

4              MR. GILMER:  It does -- well, that is part of the

5    issue is that within China, who is being criminally

6    investigated is not an open matter.  It's not disclosed.

7    Primarily, it is against Nuoyuan Capital, but it is also

8    against Han Xueyuan as well, and he has already been indicted

9    for insider trading in China, for example, in connection with

10   these investigations.

11             THE COURT:  Thank you.  Fine.

12             Counsel, any other arguments related to the

13   arbitrability issue here?  You've heard counsel for defendants

14   assert that under the arbitral rules of the Bejing Arbitration

15   Commission issues of arbitrability are reserved for the

16   arbitrator.  Do you have any information for the Court with

17   respect to that issue?

18             MR. GILMER:  I do not, your Honor.

19             THE COURT:  Thank you.  Very good.

20             Counsel for corporate defendants for Hengtai, anything

21   else on this issue at this time?

22             MR. BOXER:  Jeffery Boxer, your Honor.

23             Just to add that we can address some of the issues

24   that were first raised by plaintiff's counsel just now, which

25   we're hearing about for the first time, including that they

L3TQzhaD

1    claim to have attempted to start arbitration, in more detail

2    once we explore it further.  We are a little confused about how

3    a Chinese law firm can say you can't file an arbitration when

4    there's an investigation pending, but they've also said that

5    the investigations are secret or confidential.  It's not clear

6    who the investigations are against or how broad a prohibition,

7    if any, that would result in.  So we can address all of those

8    once we have been able to give it more attention.

9             THE COURT:  Fine.  Thank you very much.

10            So, counsel for plaintiff, you described this as an

11   issue of first impression.  What is the, I'll call it,

12   governing principal that would lead the Court not to apply this

13   provision of the parties' agreements because of the constraints

14   that you have described?  In other words, that there are

15   limitations on the chosen forum to certify a party.  Why would

16   that lead the Court not to enforce the parties' agreement

17   regarding choice of forum, especially in light of the Supreme

18   Court's decisions in *Green Tree* and the like?  Counsel?

19            MR. GILMER:  I believe there are several cases what

20   stand for the matter that if there has been a party that -- if

21   there has been an issue that cannot be litigated elsewhere,

22   then if one jurisdiction has significant connections to the

23   matter, and it is in a place where some, at least, you know,

24   for busy reasons or subject matter reasons and personal

25   jurisdiction is obtained, then it can proceed in that

L3TQzhaD

1    jurisdiction.  And it essentially is an equitable argument that

2    to hold otherwise would mean that this party would not be able

3    to be held liable in any other jurisdiction.

4              THE COURT:  Thank you.  So if a foreign country does

5    not provide a litigant with the relief that they seek, then the

6    United States courts become the *de facto* backstop for those

7    foreign jurisdictions' deficits.  I look forward to seeing the

8    case law that supports that proposition.

9              MR. GILMER:  Well --

10             THE COURT:  Let me turn to counsel for defendants

11   regarding the *forum non conveniens* argument.  Counsel for the

12   corporate defendants, why do you argue that the Southern

13   District of New York is not a convenient forum for the conduct

14   that you seek.

15             MR. BOXER:  Jeffery Boxer again, your Honor.

16             So, our views on *forum non conveniens* are a couple of

17   things:  One, the vast majority of documents, witnesses,

18   underlying events are either in Chinese or in China.  That

19   said, we have been looking at the plaintiffs' cases and we may

20   choose to revisit the *forum non conveniens* aspect of our

21   anticipated motion.

22             THE COURT:  Thank you.  Good.  There are a number of

23   issues there.  You note many of the documents were written in

24   Chinese.  At least two of the plaintiffs are foreign residents.

25   You suggested there may be difficulty in conducting discovery

L3TQzhaD

1   here.  In any event, I look forward to evaluating any motion

2   brought on this basis, if one is brought.

3          So, let's turn to the issues related to asserted

4   failure to state a claim both under Rule 8 and in particular

5   under Rule 9(b) with respect to the fraud claims under Rule

6   10b-5 and civil RICO, which plaintiff asserts applies to these

7   transactions, which appear to have largely occurred outside of

8   the United States.

9          Let me hear from counsel for defendants.  Counsel,

10  what's the basis for your anticipated motions to dismiss for

11  failure to state a claim, particularly with respect to the

12  federal causes of action that is the civil RICO and securities

13  fraud claims.  Counsel?

14         MR. BOXER:  Thank you.  Jeffery Boxer again.

15         As your Honor noted, one prong of that anticipated

16  motion to dismiss is for failure to plead fraud with required

17  particularity and that applies to both the federal claims as

18  well as the state law fraud claims.  We think that we will be

19  able to show that the law requires real specificity in terms of

20  pleading these types of claims.  If there was something, a

21  material misrepresentation that was made, the plaintiffs need

22  to plead exactly who made it, when it was made, what was false

23  about it.  And the pleading to date fails to do that.  The

24  pleading contains generalities of, you know, defendants are

25  lumped together as a large group of a dozen or so defendants,

L3TQzhaD

1      or people acting on their behalf said these things.

2                There's no specificity about who said them.  There's

3      no specific connection to any particular defendant, which we

4      believe is required for a fraud or securities fraud claim of

5      this type.  There is no specificity about exactly when the

6      statements were made.  So we think that alone requires

7      dismissal on failure to plead fraud with particularity grounds.

8                As already mentioned, and I don't know that you want

9      me to discuss it again, the federal claims we think have issues

10     of extraterritorial application of U.S. law under, for example,

11     the *Morrison* Supreme Court case where the investments and

12     injuries all took place outside of the United States in a

13     foreign country pursuant to meetings and discussions that were

14     held outside of the United States and documents that were

15     signed in a foreign language that confirm that the plaintiff

16     investors at the time were residing in a foreign country, and

17     were investing in foreign companies does not allow for a

18     securities fraud or civil RICO case in the United States.

19                THE COURT:  Thank you.

20                Counsel for plaintiff, let me turn to you first on

21     these federal causes of action.  Can you address first the

22     extraterritoriality concerns that have been articulated by

23     counsel for defendants?  What's the basis for you to seek to

24     apply federal RICO and securities fraud laws to these

25     transactions?  Counsel for plaintiffs?

L3TQzhaD

1          MR. GILMER:  Paul Gilmer speaking.

2          First of all, the investment of the New York stock has

3     never been returned to my client, I believe that that is the

4     basis for the securities fraud in the first place.

5          As far as the RICO claim, Mr. Han has been within the

6     United States since 2018, and as stated previously, he is the

7     alter ego of these corporations, and he has been holding

8     investor meetings.  He's been talking to many people, including

9     our clients, from the United States, either directly or

10    indirectly, and phone and emails and holding investor meetings.

11    So we believe that is the basis for why these claims are not

12    extraterritorial

13         THE COURT:  Thank you.  I'm sorry, to be clear, with

14    respect to the RICO claim, what wire communications within the

15    United States occurred in connection with the asserted fraud?

16    I understand that you're saying that he has since moving here

17    communicated by phone and email from New York.  How is that

18    tethered to the alleged fraud?

19         MR. GILMER:  Because he has been communicating -- I

20    don't have the specific communications in front of me at the

21    moment, but he has been communicating with regards to the fact

22    that several of the investments he is trying to stall in terms

23    of not paying back investments.  He has sent out several emails

24    which we can attach as exhibits after this call, where he is

25    attempting to assure investors that their investments are still

L3TQzhaD

1    going to be repaid, when in fact, according to our allegations,

2    they will not be.

3           THE COURT:  Thank you.  Did any of these

4    communications take place prior to the date of the relevant

5    investments, counsel?

6           MR. GILMER:  I believe that -- I do not believe that

7    any of them were made prior to, only subsequent to the

8    investment.  So there is the initial signing, but several --

9    I'd have to check it.  I believe several of them may be before

10   certain amounts of money were invested but after the agreements

11   were made.  I'd have to check on that very issue though.

12          THE COURT:  Thank you.

13          Of course, the Supreme Court and Second Circuit have

14   spoken to this issue in *RJR Nabisco* case and the *Elsaca* case in

15   our circuit.  It's very clear that wire fraud does not have an

16   extraterritorial reach and can only be applied to domestic

17   conduct.

18          Counsel, you referred to the investment in the NIO

19   stock as the basis for the securities fraud claims.  Counsel

20   for plaintiff, can you expand on those remarks?

21          MR. GILMER:  Yes.  So, the initial investment was made

22   by the company HF Holdings Limited, which is a corporation that

23   is based in the British Virgin Islands.  And so the initial

24   investment agreement which was made in English, it was --

25   essentially what would happen is that the HF Holdings and

L3TQzhaD

1    Hanfor Holdings would both act as managers for the stock that

2    was to be purchased in the United States on behalf of the

3    plaintiff who in this case is Jin Zhang.  However, instead of

4    acting as a manager for the stock, they simply purchased a

5    large amount of stock and then my client has seen nothing of it

6    since then.  And this was through a parent company called

7    NDXTEZ, N-D-X-T-E-Z, and so on that basis we believe that there

8    was fraud that occurred involving U.S. investment because this

9    corporation stated it would act as a manager for the fund and

10   has failed to do so and has failed to provide any accounting

11   for where the funds have been after they were purchased in the

12   United States.

13          THE COURT:  Thank you.  Just to be clear, the

14   plaintiffs did not directly invest in U.S. securities.  Is that

15   right?

16          MR. GILMER:  They entered into an agreement to

17   directly invest in American securities, but the actual

18   investment was being done by other corporations on their

19   behalf.  That's what the agreement stated is that they would

20   invest in this NIO stock.

21          THE COURT:  Thank you.  Again, I look forward to

22   seeing the case law that supports this position; in other

23   words, that a person that invests in an investment manager

24   company, which is in turn going to invest in U.S. securities is

25   engaged in a U.S. securities transaction by virtue of that

L3TQzhaD

 1    investment in that foreign country -- sorry -- foreign

 2    country-based company.  Again, I very much look forward to

 3    seeing the case law that supports a non-frivolous argument in

 4    support of this.

 5            Let me turn to the state law claims.  At the outset,

 6    counsel for plaintiff, you state a number of causes of action

 7    under New York State law; for example, for breach of fiduciary

 8    duty and otherwise.  Counsel intends to move to dismiss those

 9    for a variety of bases, which I will turn to in a moment, but

10    counsel for plaintiff, I would like to turn to you at the

11    outset to understand the choice of law issue here.  Why does

12    New York law govern any of these claims?

13            So, for example, I understand these to be not New York

14    law-governed documents.  So why would the New York law breach

15    of the duty of good faith and fair dealing apply to them?  I

16    understand these to be non-U.S. companies.  Why does New York

17    law apply to breach of fiduciary duty claims with respect to

18    those companies?

19            Counsel for plaintiffs, why are you asking the Court

20    to apply New York law to non-New York law governed documents,

21    and why are you asking the Court to apply New York law to

22    internal government's issues with respect to entities organized

23    outside of this state, indeed, in foreign countries.  Counsel

24    for plaintiffs?

25            MR. GILMER:  I think the most general argument would

L3TQzhaD

just be that Han is in New York, that most of his corporate

assets are contained in New York for at least the NIO

investment, and in general there is a good faith and fair

dealing that is attributed to every contract I believe in

pretty much every jurisdiction, which would include China as

well.

THE COURT:  Thank you.  So, to be clear, you're

asking -- are you bringing a claim for breach of the duty of

good faith and fair dealing under New York law with respect to

these foreign law governed documents or have you signed the

complaint under Rule 11 asserting that there is an equivalent

claim under foreign law, which I assume would require prior

research before -- regarding the underlying law before

presenting it to the Court.  Counsel for plaintiffs?

MR. GILMER:  We would certainly do any underlying

research that would be necessary under Rule 11 to bring it

before the Court.

THE COURT:  Good.  Thank you.

So what's the relevant law that governs breach of the

duty of good faith and fair dealing with respect to the

contracts at issue here?

MR. GILMER:  I do not have it with me presently.

THE COURT:  Thank you.

So, counsel, what is the relevant law that governs the

breach of fiduciary duty claims with respect to breach of

L3TQzhaD

1    fiduciary duty, as I understand it, that is representative of

2    these corporate entities which are organized, and, as I

3    understand it, largely operate outside of the United States.

4    What law are you asking the Court to apply with respect to

5    those claims?

6              MR. GILMER:  I believe that we would be asking for

7    them to apply New York laws based off of the principle that Han

8    Xueyuan has been acting as the principal of all of these

9    organizations.  He's been located in the United States since

10   2018, and the fiduciary duties that have been breached had been

11   while he was located in this country.  And as --

12             THE COURT:  Thank you.

13             So, counsel, what's the case law that you expect to

14   point me to on that issue?  Let me just make it very clear.

15   Certain of these are entities that are organized outside of the

16   United States -- the Caribbean, for example.  Why is it that

17   the issue of whether or not a director of that entity has acted

18   in accordance with their fiduciary duty is governed by New York

19   law rather than the law of the jurisdiction of organization of

20   the entity?  Counsel.

21             MR. GILMER:  I do not have such law with me at this

22   moment.  To the degree we can apply law from other

23   jurisdictions, I will bring such law with me, your Honor, when

24   we are arguing the full motion on these claims.

25             THE COURT:  Thank you.

L3TQzhaD

1          Let me turn to counsel, first for the defendant other

2     than Hengtai.  Counsel, what can you tell me about the

3     anticipated motions with respect to the state law claims which,

4     as I understand it, are asserted to be claims under New York

5     law, which I think we just established counsel for plaintiffs

6     does not have the case law in hand supporting the proposition

7     that the equivalent claims should be governed by New York law

8     given applicable conflict principles.

9          Counsel for defendants, what can you tell me about

10     your anticipated motions to dismiss these claims?  Counsel?

11          MR. BOXER:  Yes, your Honor.  Jeffery Boxer again.

12          So we anticipate moving to dismiss what we call the

13     state law claims, everything other than the two federal claims,

14     on a variety of grounds.  There is the assumption that seems to

15     have been made previously by the plaintiffs that New York law

16     would apply, and we do expect to challenge that, particularly

17     as it relates to contract claims or claims arising out of

18     events that happened in China among Chinese residents in

19     Chinese or British Virgin Islands companies relating to

20     contract that have choice of law provisions, all of which are

21     providing for a forum of law other than New York or the United

22     States, and also even if somehow New York law did apply, simply

23     because Mr. Han was present in the United States for the last

24     year or two, that they failed to state a claim even under New

25     York law for breach of contract, breach of the duty of good

L3TQzhaD

1    faith, fair dealing or any of the other state law claims that

2    they assert.  And we see no evidence that the laws of the

3    British Virgin Islands or China support similar claims in the

4    same way New York law would do.

5             THE COURT:  Good.  Thank you very much.

6             Counsel for plaintiff, I will invite you to consider

7    carefully the allegations that you purport to bring under New

8    York State law with an eye towards relevant conflict principles

9    and questions of whether or not the internal governments of

10   foreign country companies is properly evaluated under New York

11   law, flip the tables and ask yourselves whether you believe

12   that a New York corporation's officer's fiduciary duties are

13   governed by Chinese law when an officer happens to be located

14   there.  That is the position that you are taking here.  And,

15   again, any position taken before the Court must be not

16   frivolous or supported by a non-frivolous basis in order for it

17   to be justified under Rule 11.  Just a note that there are

18   substantial questions regarding the nature of certain of these

19   allegations and whether or not they're supported by

20   non-frivolous basis and law.

21            In that regard, let me turn to the civil conspiracy to

22   commit fraud claim.  Counsel for plaintiff, defendants have

23   suggested that they anticipate moving to dismiss that claim

24   because New York does not recognize such a claim.  What is your

25   position regarding that issue?

L3TQzhaD

1          MR. GILMER:  To the degree that is an accurate

2     statement, we certainly would amend that complaint to get rid

3     of civil conspiracy, if that is the case.

4          THE COURT:  Good.  So, I hope that the parties will

5     engage deeply with the relevant legal principles as this case

6     is developing to ensure that documents and arguments presented

7     to the Court are supported by applicable law.

8          Thank you very much, counsel.  What I would like to do

9     is suggest we take a very short break, about a five-minute

10    break just to give me the opportunity to collect my thoughts,

11    having heard your arguments.  Then I will come back and rule on

12    the issues presented here.

13         Counsel for Hengtai before I do that, let me turn back

14    to you.  I've invited the other corporate defendants' counsel

15    to remark on each of these issues.  I did that thinking that it

16    would be an efficient way to proceed, but I don't want to

17    deprive you of the opportunity to make any remarks with respect

18    to any of the issues presented here.  So before we take this

19    short recess, is there anything that you would like to add with

20    respect to any of the substantive arguments that we've just

21    discussed?

22         MR. SAVA:  Matthew Sava for Hengtai.

23         I concur with Mr. Boxer's arguments.  The only

24    additional points I would make that are specific to Hengtai:

25    On personal jurisdiction, plaintiff's counsel acknowledged that

L3TQzhaD

1    they were not alleging the alter ego basis for jurisdiction

2    against Hengtai, and so there is really no basis whatsoever for

3    personal jurisdiction against Hengtai.  The project number one

4    allegations relating to New York Stock Exchange are

5    inapplicable to Hengtai.  They are not alleged to have been

6    involved in that transaction.  Hengtai has no presence in New

7    York.  At no time acts at all giving rise to any of the claims

8    here, according to plaintiffs own allegations.

9              On the arbitration issue, we would agree that the

10   arbitrator is the proper party to determine arbitrability.  In

11   any event, the claims against Hengtai are two.  There are

12   breach of contract claims and breach of fiduciary duty claims.

13   Those claims directly arise out of the contract.  The breach of

14   contracts claims by definition arise from the contracts that

15   have the arbitration provisions, and the fiduciary duty claims

16   as alleged against Hengtai, which Hengtai denies, are alleged

17   by plaintiffs to arise out of the contract.  They allege in the

18   complaint that the fiduciary duties were created by the

19   contract.  So those claims are inarguably within scope of the

20   arbitration provision.

21             The argument that a parallel criminal proceeding bars

22   an arbitration, even if that's correct, which we are advised

23   it's not correct, but even if that was correct, it has nothing

24   to do with Hengtai.  Hengtai is not the subject of any criminal

25   investigation in China.  And so, if the plaintiffs truly had

L3TQzhaDa

1    claims against Hengtai, those claims are required by the

2    contract they signed to be submitted to arbitration in Beijing.

3         And otherwise we concur with all of Mr. Boxer's

4    arguments.

5         THE COURT:  Good.  Thank you very much.

6         Let me turn back briefly to counsel for plaintiffs

7    regarding Hengtai's arguments.  I will just invite comment in

8    particular regarding the last of those remarks.  Counsel for

9    plaintiffs, can I just hear from you regarding what the basis

10   is for your assertion that the arbitration provision does not

11   apply to Hengtai?

12        MR. GILMER:  My understanding is that because the

13   entire matter of the investments is being investigated

14   criminally, every aspect is not subject to arbitration.  I can

15   certainly confirm that with my climate and their Chinese

16   counsel as well to see if that is correct or not.

17        THE COURT:  Very good.  Thank you very much.

18        Counsel, thank you very much for your arguments.  Let

19   me propose that we take a short recess until, say, 12:30.  Then

20   I will come back and hope to deliver my decision.  I'll place

21   you all on mute.  Don't hang up.  But please place your devices

22   on mute.  Let's plan to start promptly 5 minutes from now at

23   12:30.  Thank you all very much.

24        (Recess)

25        THE COURT:  Is counsel for plaintiff on the line?

L3TQzhaDa

1          MR. GILMER:  Yes, your Honor.

2          THE COURT:  Good.  Thank you very much.

3          Is counsel for Hengtai on the line?

4          MR. SAVA:  Yes, your Honor.

5          THE COURT:  Thank you.  Again, please identify

6    yourself just for the sake of the record.  So, actually, that

7    was Mr. Gilmer for plaintiffs.

8          Who is speaking for defendant, Hengtai?

9          MR. SAVA:  Matthew Sava.

10         THE COURT:  Good.  Thank you.

11         Counsel for the remaining defendants.

12         MR. BOXER:  Yes.  It's Jeff Boxer.  We are here.

13

14         THE COURT:  Good.  Thank you very much.  So thank you

15   very much for your participation in the discussion that we just

16   had regarding the anticipated motion to dismiss and also the

17   application for the order of attachment.

18         I'm going to rule on each of those issues now

19   beginning with the application for the order of attachment.

20   Please place your phones on mute as I get through my analysis

21   of the order of attachment and then turn to discussion of

22   schedule for the pre-motion conference.

23   So, let me begin with:

24         I. Introduction

25         I have scheduled this hearing to discuss Plaintiffs'

L3TQzhaDa

application for an order of attachment and to discuss

Defendants' requests for a pre-motion conference on their

proposed motions to dismiss.  As an initial note, on March 26,

2021, the parties informed the Court that Plaintiffs had filed

on the public docket a document containing sensitive

information about defendant Mr. Han.  The Court has

provisionally sealed the document and requested that the Clerk

strike that exhibit from the docket.

As I said earlier, the Court has reviewed the

materials submitted by the parties on the docket.  I am

considering all of the English-language documents and also the

certified translations of documents that have been presented to

the Court in foreign languages.  The Court assumes the parties'

familiarity with the underlying facts.  I am prepared to rule

on Plaintiffs' application for an order of attachment, and I

will do so orally.

II. Background

Between December 2016 and December 2018, Plaintiffs

entered into eight Investment Agreements with defendant Xueyuan

Han and defendant companies Hanfor Capital, Hanfor Holdings,

and Nuoyuan Capital. Am. Compl. ¶ 39; Zhang Aff. Ex. F.

Plaintiffs have invested more than 98.1 RMB (about $14 million

USD), but claim that they never received any proceeds from the

equity shares, nor were their initial investments ever

returned, despite contacting Mr. Han. Am. Compl. ¶ 73, 94, 113,

L3TQzhaDa

125, 145, 164.  Plaintiffs allege that Defendants transferred
their investment funds into a shell company and commingled the
cash investments from the investors with the shell company's
corporate assets, and that Mr. Han has converted the funds for
his personal use.  *Id.* at 14.

For example, and particularly relevant to Plaintiffs'
application, is HF Holdings, Limited ("HF Holdings"), which is
wholly owned by Mr. Han.  Plaintiffs assert that HF Holdings
acquired 2,574,003 Class C Shares of NIO Inc. for consideration
of $10 million USD in or around April 2017.  This purchase was
made on behalf of investors in Mr. Han's projects, pursuant to
the investment agreement entered into as part of the Ruili
Weixing Project.  Through that project, Defendants promised to
purchase on behalf of investors shares of NIO, Inc., a
corporate entity involved in the development and production of
electric vehicles, in order to provide proceeds to investors.


Plaintiffs allege that Mr. Han fled to the United
States in 2018 to avoid being arrested by Chinese legal
authorities. *Id.*  In 2019, the China Securities Regulation
Commission Beijing Bureau launched investigations into Nuoyuan
Capital Management Company Ltd. for illegally soliciting public
cash deposits. Dkt. No. 27 ¶ 11.  A representative from Nuoyuan
Capital was arrested.  On December 29, 2020, the Chinese
Securities Regulatory Commission (hereinafter "CSRC") issued an

L3TQzhaDa

administrative penalty decision against Mr. Han, finding that

he had engaged in insider trading. Dkt. No. 27 ¶ 12; 27-5.  In

response, Mr. Han maintains that he moved to the United States

in September 2018 to "pursue various business opportunities."

Han Decl. ¶ 2, and the complaint alleges that in October 2018,

there were reports in the media that Hanfor Capital was

preparing to be listed on the New York Stock Exchange. Am.

Compl. ¶ 29.  In September 2019, Mr. Han purchased the Rector

Place property, a residential penthouse condominium, for $4.99

million.  In August 2020, Mr. Han purchased the Third Avenue

property, a residential penthouse condominium, for $2.19

million.  Mr. Han is also the registrant of a 2020 Rolls Royce

Cullinan, which was purchased in 2019 and is valued at

$330,000.

On February 24, 2021, Plaintiffs initiated this

action, seeking the promised returns on their investments, and

assert that Defendants owe Plaintiffs nearly $46 million. *Id.*

Plaintiffs have brought nine causes of action, including claims

for breach of contract, breach of the duties of good faith and

fair dealing, fraud, unjust enrichment, conversion, civil

conspiracy to commit fraud, breach of fiduciary duties,

violation of Rule 10b-5 of the Securities and Exchange Act of

1934, and conspiracy to violate the federal civil RICO statute,

18 U.S.C. 1962. See Am. Compl.  Along with their complaint,

Plaintiffs moved ex parte for a temporary restraining order and

L3TQzhaDa

an order of attachment.  The Court denied Plaintiffs' ex parte
application for a temporary restraining order because the
application failed to satisfy Fed. R. Civ. P. 65's requirement
that "the movant's attorney certify in writing any efforts made
to give notice and the reasons why it should not be required."
No such affidavit was attached to Plaintiffs' application.
Thus, the Court denied the request, directed Plaintiffs to
serve the application and the Court's order on Defendants, and
set a briefing schedule and hearing date for the application
for the order of attachment. On February 25, 2021, Plaintiffs
amended their complaint.

    Plaintiffs seek an order of attachment for (1) Mr.
Han's Rector Place apartment; (2) Mr. Han and Ms. Feng's Third
Avenue apartment; (3) Mr. Han's Rolls Royce; and (4) the
2,574,003 Class C Shares of NIO Inc., held by HF Holdings.  See
Mot. at 5.  So, on March 19, 2021, Defendants Xueyuan Han ("Mr.
Han"), Hanfor Holdings Co. Ltd., HF Holdings Limited, Hanfor
Capital Management Co. Ltd., Nuoyuan Capital Management Company
Ltd., George Xu (Mr. Xu), Junjun Feng ("Ms. Feng"), Wennan AO
("Ms. Ao"), BZ Industrial (China), BZ Industrial (Virgin
Islands), BZ Industrial (Cayman Islands), Hanfor (Cayman)
Limited, HFRE LLC ("HFRE"), HF Capital Management Cay Inc., and
HF Cosmopolitan Beta LP opposed Plaintiffs' application to
attach their assets and requested a pre-motion conference to
discuss their proposed motion to dismiss the amended complaint.

L3TQzhaDa

Dkt. Nos. 19-25. The Court granted Defendants' request for a
pre-motion conference and informed the parties that they should
be prepared to discuss the proposed motion during today's
hearing.  Dkt. No. 26.  On March 23, 2021, Plaintiffs submitted
a reply in support of their application for an order of
attachment.  Dkt. Nos. 27-31.  On March 24, 2021, Defendant
Hengtai Securities Co. Ltd. ("Hengtai") requested a pre-motion
conference to discuss its proposed motion to dismiss.  Dkt. No.
32.  The Court granted Hengtai's request for a pre-motion
conference and informed the parties that they should be
prepared to discuss the proposed motion during today's hearing.
Dkt. No. 33.

III. Legal Standard

Fed. R. Civ. P. 64 authorizes a federal court to issue
an order of attachment pursuant to the law of the state in
which the district court sits.  In New York, the issuance of an
attachment order is governed by New York's Civil Practice Law
and Rules ("CPLR") 6201 and 6212.

Under CPLR 6212, "on a motion for an order of
attachment, or for an order to confirm an order of attachment,
the plaintiff shall show, by affidavit and such other written
evidence as may be submitted, (1) that there is a cause of
action, (2) that it is probable that the plaintiff will succeed
on the merits, (3) that one or more grounds for attachment
provided in Section 6201 exist, and (4) that the amount

L3TQzhaDa

demanded from the defendant exceeds all counterclaims known to

the plaintiff." N.Y. CPLR 6212(a). In addition to determining

whether a statutory ground for attachment exists, and whether

the applicant has established a likelihood of success on the

merits, a court must determine whether the remedy "'is needed

to secure payment or obtain jurisdiction,' and it retains

discretion only to the extent that these determinations require

weighing of evidence and also in balancing competing

considerations." *Mishcon de Reya N.Y. LLP v. Grail*

*Semiconductor, Inc.*, 2011 WL 6957595, at *3 (S.D.N.Y. Dec. 28,

2011) (internal quotation marks omitted) (quoting *Cap. Ventures*

*Int'l v. Republic of Argentina,* 443 F.3d 214, 222 (2d Cir.

2006). "There must be more than a showing that attachment

would, in essence, be 'helpful.'" *VisionChina Media Inc., v.*

*Shareholder Representative Svrs., LLC,* 967 N.Y.S.2d 338, 346

(N.Y. App. Div. 2013) (quoting *Founders Ins. Co. v. Everest*

*Nat'l Ins. Co.*, 839 N.Y.S.2d 474, 474 (N.Y. App. 2007)).

　　　　Attachment is a "drastic remedy" that may unfairly

prejudice defendants, particularly when requested *ex parte* at

the inception of litigation. *Plaintiff Funding Holding, Inc.*

*v. Carrera*, 2017 WL 7411183, at *2 (E.D.N.Y. Feb. 6, 2017)

(citing *Northeast United Corp. v. Lewis*, 26 N.Y.S.3d 810, 812

(N.Y. App. Div. 2016); *General Textile Printing & Processing*

*Corp. v. Expromtorg Int'l Corp.*, 862 F. Supp. 1070, 1073

(S.D.N.Y. 1994) ("Attachment is a harsh remedy, and should not

L3TQzhaDa

be lightly granted by the court.")). "[A]ttachment deprives the

defendant of the use and enjoyment of property at an extremely

embryonic stage of the litigation[,] . . . long before the

defendant's liability to the plaintiff is established." *Buy*

*This, Inc., v. MCI Worldcom Comms., Inc.*, 178 F. Supp. 2d 380,

383 (S.D.N.Y. 2001) (citation omitted).  Thus, "[a]n order of

pre-judgment 'attachment should issue only upon a showing that

drastic action is required for security purposes.'" *Adler v.*

*Solar Power, Inc.*, 2019 WL 2210661, at *3 (S.D.N.Y. May 22,

2019) (quoting *Bank of China, New York Branch v. NBM L.L.C.*,

192 F. Supp. 2d 183, 188 (S.D.N.Y. 2002)). The moving party

"bears a heavy burden in attempting to establish its right to

an attachment . . . because 'New York attachment statutes are

construed strictly against those who seek to invoke the

remedy.'"  *Rechnitz v. Kutner*, 2020 WL 3051498, at *6 (E.D.N.Y.

June 8, 2020) (quoting *Nat'l Audubon Soc., Inc. v. Sonopia*

*Corp.*, 2009 WL 636952, at *2 (S.D.N.Y. Mar. 6, 2009)).

    IV. Discussion

    I assume without holding that Plaintiffs have

satisfied the first requirement of Section 6212(a) — that there

is a cause of action.  Their initial complaint was filed on the

same day as the application for the attachment.  Defendants

have argued that many of the asserted causes of action are not

viable, but I need not resolve those issues in order to

evaluate the application here.  Section 6212(a) requires that

L3TQzhaDa

the amount demanded from a respondent exceed all counterclaims

known to a petitioner.  N.Y. CPLR § 6212(a).  Defendants have

not asserted any counterclaims against Plaintiffs at this time,

nor do they raise any arguments as to this element in their

opposition.  Accordingly, I assume that this element is also

satisfied.  Therefore, I will focus my Section 6212(a) analysis

on the remaining two requirements: that there exists statutory

grounds for the attachment, and that Plaintiffs can demonstrate

a likelihood of success on the merits.

    a. Grounds for Attachment

    A petitioner seeking confirmation of an attachment

order must demonstrate that a ground for attachment under N.Y.

CPLR § 6201 exists.  See N.Y. CPLR 6212(a).  Plaintiffs assert

that N.Y. CPLR § 6201(3) applies here.  That section provides

that an order of attachment may be granted when "the defendant,

with intent to defraud his creditors or frustrate the

enforcement of a judgment that might be rendered in plaintiff's

favor, has assigned, disposed of, encumbered or secreted

property, or removed it from the state or is about to do any of

these acts[.]"

    "To determine whether attachment for security purposes

is justified, it is necessary to examine subsection (3) of

§ 6201.  Under CPLR § 6201(3), 'it is incumbent upon

[plaintiff] to demonstrate that the defendant is acting with

intent to defraud'" *Philatelic Found. v. Kaplan*, 1986 WL 5629,

L3TQzhaDa

at *4 (S.D.N.Y. May 9, 1986), abrogated on other grounds by *Aramony v. United Way of Am.*, 969 F. Supp. 226 (S.D.N.Y. 1997); see also *Computer Strategies v. Commodore Business Machines,* 105 A.D.2d 167, 172, 483 N.Y.S.2d 716, 721 (2d Dep't 1984) (mere removal or assignment or other disposition of property not grounds for attachment absent an actual showing of fraudulent intent) reh'g denied, 110 A.D.2d 743, 488 N.Y.S.2d 616 (2d Dep't 1985). "'removal, assignment, or other disposition of property is not a sufficient ground for attachment; fraudulent intent must be proven, not simply alleged or inferred, and the facts relied upon to prove it must be fully set forth in the moving affidavits.'" *Encore Credit Corp. v. LaMattina,* 2006 WL 148909, at *3 (E.D.N.Y. Jan. 18, 2006) (quoting *Abacus Fed. Sav. Bank v. Lim,* 8 A.D.3d 12, 778 N.Y.S.2d 145 (1st Dep't 2004)). Because "[f]raud is not lightly inferred," Plaintiff's "moving papers must contain evidentiary facts as opposed to conclusions proving the fraud." *Encore Credit Corp.,* 2006 WL 148909, at *3; *Brastex Corp. v. Allen Int'l, Inc.,* 702 F.2d 326, 331–32 (2d Cir. 1983). "Affidavits containing allegations raising a mere suspicion of an intent to defraud are insufficient." *Strategic Growth Int'l, Inc. v. RemoteMDx, Inc.,* 2008 WL 4179235, at *8 (S.D.N.Y. Sept. 10, 2008). Rather, "[i]t must appear that such fraudulent intent really exists in the defendant's mind." *Encore Credit Corp.,* 2006 WL 148909, at *3.

L3TQzhaDa

1    "Because 'fraudulent intent is rarely susceptible to

2    direct proof,' courts in the Second Circuit have examined

3    whether allegedly suspicious transactions exhibit 'badges of

4    fraud' that give rise to a sufficient inference of intent." *DLJ*

5    *Mortg. Cap., Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 320

6    (E.D.N.Y. 2009) (quoting *In re Kaiser*, 722 F.2d 1574, 1582 (2d

7    Cir. 1983)). "The existence of several badges of fraud can

8    constitute clear and convincing evidence of actual intent" to

9    defraud creditors.  *In re MarketXT Holdings Corp.*, 376 B.R.

10   390, 405 (Bankr. S.D.N.Y. 2007) (citation omitted). Among the

11   badges that courts consider are:

12        "(1) [T]he lack or inadequacy of consideration; (2)

13   the family, friendship or close associate relationship between

14   the parties; (3) the retention of possession, benefit or use of

15   the property in question; (4) the financial condition of the

16   party sought to be charged both before and after the

17   transaction in question; (5) the existence or cumulative effect

18   of a pattern or series of transactions or course of conduct

19   after the

20   incurring of debt, onset of financial difficulties, or pendency

21   or threat of suits by creditors; and (6) the general chronology

22   of the events and transactions under inquiry."

23        *CF 135 Flat LLC v. Triadou SPV N.A.*, 2016 WL 5945912,

24   at *10 (S.D.N.Y. June 24, 2016) (quoting *In re Kaiser*, 722 F.2d

25   at 1582-83).  "While the presence or absence of any particular

L3TQzhaDa

badges of fraud is not determinative in finding fraudulent intent, 'the presence of multiple indicia will increase the strength of the inference.'" *Allstate Ins. Co. v. Mirvis*, 2018 WL 4921631, at *5 (E.D.N.Y. Sept. 4, 2018) (citation omitted).

Plaintiffs' application has failed to support a sufficient inference of fraud.  In their opening brief, Plaintiffs conclude that this element is satisfied because Defendants have engaged in ongoing fraud, have evaded arrest, and illegally commingled and transferred business funds to personal bank accounts, and therefore Defendants will continue to act with the intent to defraud Plaintiffs to frustrate any judgment that might be rendered in the Plaintiff's favor.  See Dkt. No. 5 at 11–12.  Plaintiffs provided limited briefing to support their argument, but the Court understands Plaintiffs' arguments to rely on the following facts:  Mr. Han moved to the United States, he purchased two high-value properties without financing one of them and put it up for sale, and there were investigations into the defendant companies in China after Mr. Han moved.  These facts alone do not demonstrate that CPLR § 6201(3) applies, particularly where Defendants have provided a plausible explanation for the timing of those events and the Rector Place apartment is no longer on the market. Han Decl. ¶ 5.

Plaintiffs provide slightly more briefing in their

L3TQzhaDa

1    reply and argue that Mr. Han's intent to defraud is

2    demonstrated by the false statements submitted to the Court in

3    his opposition.  However, the evidence submitted by Plaintiffs

4    does not necessarily prove Mr. Han's statements are false.  For

5    example, Plaintiffs argue that, because Defendant Han is in the

6    United States on a non-immigrant O-1 visa (which requires that

7    he be employed by a U.S. employer), he cannot be here "pursuing

8    business opportunities" as he claims.  This argument does not

9    support Plaintiffs' position; the fact that Defendant Han

10   obtained a visa from a US employer supports the inference that

11   he came to the United States to pursue business opportunities.

12   And, that explanation makes logical sense, particularly in

13   light of the allegation by Plaintiffs that Mr. Han moved to the

14   United States at around the time that his company was rumored

15   to go public on the NYSE — another clear "business

16   opportunity."  Plaintiffs further argue that based on the

17   timing of Mr. Han's move to the United States, it must have

18   been his intention to flee before the investigations in China

19   began because he departed just three months before the General

20   Manager of Nuoyuan Capital Management Company was arrested.

21   But as Plaintiffs have stated, China does not provide the

22   public access to records of ongoing investigation and Mr. Han

23   moved the year before.  Plaintiffs further point to the China

24   Securities Regulatory Commission's penalty against Mr. Han for

25   insider trading as evidence that he fled.  The document

L3TQzhaDa

describing the penalty states that it was issued in 2020, two

years after Mr. Han had moved to the United States.  Plaintiffs

have not provided any evidence that Mr. Han had advance notice

of the investigations, such that he would have had an incentive

to flee the country.  And, as Defendants point out, Mr. Han

purchased the properties in New York using his own name, albeit

in one case through a separate investment vehicle.  This

profoundly undermines Plaintiffs' arguments that he is trying

to hide Plaintiffs' funds or to secrete it outside of New York.

Instead, it appears that Mr. Han is investing in New York.

There is no evidence that he is secreting evidence outside of

New York or that he intends to do so.

        Furthermore, one of the properties that Plaintiffs

seek to attach is co-owned by Ms. Feng.  Plaintiffs have not

adequately demonstrated that Ms. Feng had an intent to defraud.

As the basis for their assertion that Ms. Feng cooperated with

Mr. Han to convert Plaintiffs' assets, Plaintiffs allege that

Ms. Feng and Mr. Han are in a romantic relationship.  They do

not provide any additional information regarding Ms. Feng's

alleged intent to defraud investors that would support an order

of attachment.

        Plainly, the evidence presented is not sufficient to

establish that the defendants have or are about to, dispose of

or remove property from New York State, as required by the

statute.  Plaintiffs are required to demonstrate more than "a

L3TQzhaDa

mere suspicion of an intent to defraud," and they failed to do so here. *Strategic Growth Int'l, Inc. v. RemoteMDx, Inc.*, 2008 WL 4179235, at *8 (S.D.N.Y. Sept. 10, 2008). It is again, important to emphasize that the burden in this context lies with Plaintiffs, and that they must support their position with evidence, not allegations. Plaintiffs have not presented sufficient evidence that Defendants whose assets are sought to be attached disposed of or secreted property from the state with the intent to defraud or frustrate creditors, or that they are about to do so. Based on the arguments made by Plaintiffs and the evidence presented in support of their application, the Court cannot conclude that the requirement for statutory grounds for the attachment has been satisfied.

This alone is sufficient to deny Plaintiffs' application. *Nat'l Audubon Soc., Inc. v. Sonopia Corp.*, 2009 WL 636952, at *4 (S.D.N.Y. Mar. 6, 2009). The Court will nonetheless turn to a discussion of Plaintiffs' probability of success on the merits, as that is a consideration here, although, again, the denial of the attachment can be granted on the basis that I just described alone.

b. Probability of Success on the Merits

"Probability of success on the merits for purposes of an order of attachment requires that the moving party demonstrate that it is more likely than not that it will succeed on its claims and must show proof stronger than that

L3TQzhaDa

required to make a prima facie case." *Musket Corp. v. PDVSA Petroleo, S.A.*, 512 F. Supp. 2d 155, 160 (S.D.N.Y. 2007) (citations omitted) (emphasis added); see also *DLJ Mortg. Cap., Inc.*, 594 F. Supp. 2d at 319 (same). "The movant must make that showing 'by affidavit and such other written evidence as may be submitted.'" *Skyline Steel, LLC v. PilePro, LLC*, 2015 WL 5076695, at *3 (S.D.N.Y. Aug. 27, 2015) (quoting *Buy This, Inc. v. MCI Worldcom Commc'ns, Inc.*, 178 F.Supp.2d 380, 382 (S.D.N.Y. 2001)). "In assessing whether a plaintiff can show a probability of success on the merits, 'the court must give the plaintiff the benefit of all the legitimate inferences that can be drawn from the facts.'" *Silverman Partners, L.P. v. First Bank*, 687 F. Supp. 2d 269, 293 (E.D.N.Y. 2010) (quoting *Monteleone v. Leverage Grp.*, 2008 WL 4541124, at *6 (E.D.N.Y. Oct. 7, 2008)); see also *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004) (same).

Now, I am not going to discuss all of the various bases that have been argued here.  I will simply state that for purposes of this decision that Plaintiffs have not shown a probability of success on the merits for a number of reasons. I will set aside for now the substantial arguments raised by Defendants regarding whether or not the Court has personal jurisdiction over these Defendants.  There is a very substantial series of questions related to those issues.

L3TQzhaDa

Instead, I will focus briefly on other issues, beginning

briefly with the Defendants' intended arguments regarding the

effect of the arbitration provision.

As I have already described, Article 16 of the

Purchase Agreements as I understand it reads that:

"All disputes arising from the Agreement and related

to the Agreement should first be resolved through friendly

negotiation between the relevant parties.  If the relevant

parties cannot resolve the matter through negotiation, the

matter shall be submitted to the Beijing Arbitration

Commission, and an award will be made in Beijing in accordance

with the then effective arbitration rules."  Dkt. No. 21-7 at

7.

"Whether one can be bound by an arbitration clause is

usually determined by looking at generally accepted principles

of contract law."  *Gold v. Deutsche Aktiengesellschaft,* 365

F.3d 144, 149 (2d Cir.2004); see also *Bell v. Cendant Corp.*,

293 F.3d 563, 566 (2d Cir.2002)  ("[T]he ultimate question of

whether the parties agreed to arbitrate is determined by state

law.").  Pursuant to these principles, "a party is bound by the

provisions of the contract that [s]he signs, unless [s]he can

show special circumstances that would relieve h[er] of such an

obligation."  *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840,

845 (2d Cir. 1987).

Now, I'm not reaching a final conclusion regarding

L3TQzhaDa

1    these issues.  The documents are not governed by New York law,

2    but they appear on their face to mandate the arbitration of

3    matters arising in connection with these agreements in the

4    Beijing Arbitral Tribunal based on the evidence presented,

5    which is really very extremely limited, regarding the Chinese

6    Arbitral panel's asserted inability to take up this issue,

7    which is the only substantive basis that has been presented

8    here for why this arbitration provision cannot be enforced.  I

9    have not been presented with enough to conclude that Plaintiffs

10   have a substantial or a probability of success on the merits

11   with respect to these claims.  As counsel for Hengtai pointed

12   out, they are not the subject of any criminal proceedings.

13   Counsel for plaintiff has not pointed me to foreign law that

14   supports their argument.  There is insufficient evidence for me

15   to conclude that this arbitral provision which would be

16   anything but fully enforced.  Counsel for Defendants have

17   asserted on the record here that the Arbitral Tribunal's rules

18   dedicate issues of arbitrability to the arbitrator.  I do not

19   have information on that point from counsel for Plaintiffs, so

20   I accept that proffer for these purposes.  Given that, at this

21   point I can't concluded that Plaintiffs have established a

22   probability of success on the merits with respect to their

23   claims in this court because of the apparent strength of

24   Defendant's arguments related to the enforceability of the

25   arbitration clause.  Again, I am not reaching an ultimate

L3TQzhaDa

1    conclusion regarding this issue at this time.  I am merely

2    evaluating the probability of success for purposes of

3    evaluating the request for attachment.

4

5         Again, I will not take up the substantial issues

6    regarding subject matter jurisdiction.  Instead, I will talk

7    briefly about the anticipated motion to dismiss the federal

8    causes of action.  The Defendants are seeking to dismiss the

9    RICO claim and the Securities Exchange Act claims.  At this

10   point based on the evidence presented to the Court, I cannot

11   find Plaintiffs have demonstrated a probability of success on

12   the merits with respect to those claims, in large part because

13   there is very little – essentially no – evidence of any

14   territorial conduct that would bring this series of occurrences

15   within the scope of those statutes. Extraterritorial

16   application of RICO and the securities laws are clear issues

17   that have been discussed by the Supreme Court and Second

18   Circuit many times.  I have not yet seen or heard arguments or

19   evidence from Plaintiffs that leads me to conclude that they

20   have a probability of success of showing that the underlying

21   transactions here have sufficient nexus to the United States.

22   I note that should those claims be dismissed, that the Court

23   does not have, it appears, subject matter jurisdiction over

24   this case if the federal claims were to go away.  This also

25   leads me to conclude that Plaintiffs have not shown the burden

L3TQzhaDa

1    of probability of success here.

2            Similarly, I will not address each of the – I'll call

3    it – "state law" claims because I simply observe that it is not

4    certain that these claims are governed by New York State law as

5    opposed to the applicable law of the relevant jurisdiction in

6    which the transactions or contracts were entered into or where

7    the relevant corporations are incorporated.

8            So, for those reasons I can conclude for these

9    purposes that Plaintiffs have not demonstrated a sufficient

10   probability of success on the merits, and, as a result, that

11   contributes to my conclusion that the order of attachment

12   should be denied.

13           Again, I emphasize that my evaluation of the

14   probability of success on the merits is limited to the

15   arguments and evidence presented here. I am not deciding now as

16   a matter of law that with certainty that these claims cannot

17   proceed.  That is an issue that I will evaluate as we look at

18   these motions to dismiss.  And it is to that topic that I will

19   now turn.

20           So, counsel for Defendants, other than counsel for

21   Hengtai, we've discussed the bases for the proposed motions,

22   which I understand to be a combination of motions to be brought

23   under Rule 12(b)(1) and 12(b)(6).  When would you propose to

24   bring those motions?

25           MR. BOXER:  Your Honor, it's Jeff Boxer speaking.

L3TQzhaDa

1    Depending on the schedule set by the Court, we would anticipate

2    if we could have perhaps two additional weeks to prepare it,

3    then we would be ready to go forward.

4              THE COURT:  Very good.

5              Counsel for Hengtai?

6              MR. SAVA:  Yes, two weeks would be sufficient for us

7    since -- this is Matthew Sava.

8              THE COURT:  Good.  Thank you very much.

9    So the motions themselves will be due then on or around, let's

10   call it, April 14.

11             Counsel for Plaintiffs, the default rule for these

12   purposes is that the opposition would be due in about three

13   weeks.  Is that sufficient time for you here?

14             MR. GILMER:  So, I actually have a question first.  In

15   your Rule D, you say if a motion to dismiss is filed, a

16   Plaintiff has a right to amend its pleadings within 21 days

17   pursuant to Rule 15(a)(1)(B).  However, in this case since we

18   have already amended once as of right, I was not sure how to

19   interpret the rule, how it would work in this case.  Would we

20   be permitted to amend our complaint once again prior to the

21   motion to dismiss would be heard?

22             THE COURT:  So there are two threads of that that I

23   would like to deal with separately.  First, Rule 15(a)(1)

24   provides a party the opportunity to amend their complaint once

25   as of right.  If you've already burned up your amendment as of

1  right prior to responding to the motion to dismiss, then my

2  individual rules do not give you another life.  If you've used

3  your amendment as of right previously not in response to a

4  motions, my rules do not give rise to another, I'll call it,

5  bite at the apple.  So, the rules will govern whether or not

6  you're entitled to amend the complaint again in response to the

7  motion to dismiss.  My individual rules don't provided guidance

8  on that question.

9        The second question is whether you would have the

10  ability to amend the complaint prior to a motion to dismiss

11  being filed.  On that front, we would be operating under Rule

12  15(a)(2), and any amendment would need to happen with either

13  leave of the Court or the consent of all parties.  And if you

14  are requesting leave to amend the complaint, I would invite

15  conversation about that issue now.

16        Is that the request, counsel for Plaintiffs?

17        MR. GILMER:  I do not at this moment have -- I would

18  certainly welcome an opportunity based off of our discussion to

19  have the chance to amend the complaint once again.  I have not

20  previously discussed this with Mr. Wong.  I don't know if he

21  has any opinion on this, if he is still present.

22        THE COURT:  Thank you.  Let me do this:  I am going to

23  leave the motion schedule as I'm about to set it, and I would

24  ask that you do this:  If you want to talk about a potential

25  amendment to the complaint prior to the motion to dismiss, the

L3TQzhaDa

1   motion to dismiss will be due by the 14th.  Any opposition will

2   be due no later than three weeks following service of the

3   motion.  Any reply will be due no later than one week following

4   service of the opposition.

5       If you, counsel for Plaintiffs, wish to amend the

6   complaint prior to the filing of the motion, I invite you to

7   confer about the topic with lawyers for the Defendants.  If the

8   parties are able to agree that an amendment is warranted, you

9   should write the Court and let me know that.  If you all agree,

10  then the rules say I don't need to approve it.  If you don't

11  agree, then you should let me know that you're seeking the

12  Court's leave to file an amended complaint.

13      Because I expect that the defendants will begin

14  working promptly on their motion, I'm going to ask that any

15  such conference happen no later than close of business

16  tomorrow, so that the Defendants don't expend unnecessary

17  energy.  My expectation is that unless the parties let me know

18  by the end of the week that an amendment is anticipated, then

19  the schedule will remain as it is.

20      Good.  Anything else from anyone before we adjourn

21  this conference?

22      First, counsel for Plaintiffs.

23      MR. GILMER:  Nothing further, your Honor.

24      THE COURT:  Good.  Thank you.

25      Anything further, counsel for Hengtai?

L3TQzhaDa

1             MR. SAVA:  No thank you, your Honor.

2             THE COURT:  Good.  Thank you.

3             Counsel for the remaining defendants?

4             MR. BOXER:  Jeff Boxer.  Nothing further, your Honor.

5     Thank you.

6             THE COURT:  Good.  Thank you all.  This proceeding is

7     adjourned.

8             (Adjourned)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25