## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JING ZHANG, <br><br>            **PLAINTIFF,** <br><br><br>   **v.** <br><br><br> XUEYUAN HAN, HANFOR HOLDINGS CO., LTD., HF HOLDINGS LIMITED, BEIJING NUOYUAN HOLDINGS CO., HANFOR CAPITAL MANAGEMENT CO., LTD., NUOYUAN CAPITAL MANAGEMENT COMPANY LTD, JUNJUN FENG, BANG ZE INDUSTRIAL CO., LTD. (CHINA), BZ INDUSTRIAL LIMITED (VIRGIN ISLANDS), BZ INDUSTRIAL (CAYMAN ISLANDS), HANFOR (CAYMAN) LIMITED, HFRE LLC, HF CAPITAL MANAGEMENT CAY INC., and HF COSMOPOLITAN BETA L.P., <br><br>            **DEFENDANTS.** | **CASE NO.: 1:21-cv-01625-GHW** <br><br> *Document Electronically Filed* <br><br> <u>**SECOND AMENDED COMPLAINT**</u> <br><br><br><br><br><br><br><br><br><br><br><br><br> **JURY TRIAL DEMANDED** |

1

Jing Zhang ("Plaintiff"), by and through her attorneys, Wong, Wong & Associates, P.C., alleges the following against Xueyuan Han, BZ China, Hanfor Holdings, HF Holdings, Hanfor Capital, Nuoyuan Holdings, Nuoyuan Capital, Junjun Feng, BZ Industrial Limited (Virgin Islands), BZ Industrial (Cayman Islands), Hanfor (Cayman) Limited, HFRE, HF Capital Cayman, and HF Cosmopolitan (collectively, "Defendants"), upon personal knowledge and upon information and belief as to other matters, as follows:

## PARTIES

1. Plaintiff Jing Zhang (hereinafter "Ms. Zhang") is a citizen of the People's Republic of China ("China"), and a permanent resident of the United States, residing at 137 Working Ranch, Irvine, CA 92602.

2. Defendant Xueyuan Han, a.k.a. Hank Han (hereinafter "Mr. Han"), is a citizen of China, with a last known address in the United States at 377 Rector Place, Unit PHB (a.k.a. Unit #27B), New York, NY 10280, a luxury apartment purchased for $4.99 million USD. Upon information and belief, Defendant Mr. Han possesses an O-1 visa.

3. Defendant Bang Ze Industrial Co., Ltd. (China) (hereinafter "BZ China") is a company incorporated in China. Defendant Mr. Han is the 100% sole owner of BZ China.

4. Defendant Hanfor Holdings Co., Ltd. (hereinafter "Hanfor Holdings") is a company incorporated in China. The registered address of Hanfor Holdings is located at No.C2-28A03, East 3rd Ring Road North, Chaoyang District, Beijing in China. Hanfor Holdings is 100% solely owned by Defendant Mr. Han, 95% through BZ China, and 5% directly, and Defendant Mr. Han is also the founder and principal of Hanfor Holdings.

5. Defendant Hanfor (Beijing) Capital Management Co. (hereinafter "Hanfor Capital") is an asset management company incorporated in China, with their last known business address at Room

2004, Qingyundangdai Plaza, Building 9, Qingyunli Mantingfang Residential Neighborhood, Haidian District, Beijing, China. Hanfor Capital is solely owned by Defendant Mr. Han, 90% directly and 10% by Hanfor Holdings, and Defendant Mr. Han is also the founder and principal of Hanfor Capital.

6. Defendant HF Holdings Limited (hereinafter "HF Holdings") is a British Virgin Islands corporation with a registered office address located in care of registered agent AMS Trustees Limited, at Sea Meadow House, P.O. Box 116, Road Town, Tortola, British Virgin Islands. HF Holdings is owned by Defendant Mr. Han either directly or through proxies.

7. Defendant Beijing Nuoyuan Holdings Co., Ltd. (hereinafter "Nuoyuan Holdings") is a company incorporated in China, located at Room 2524, 25th Floor, Building 8, No. 2 East Third Ring North Road, Chayang District, China. Nuoyuan Holdings is 70% owned by Hanfor Holdings, 10% owned by Yantai Hanfu Manwei Investment Center (Limited Partnership), and 20% owned by Yantai Hanfu Manchang Investment Center (Limited Partnership). In total, through proxy corporations, Defendant Mr. Han owns at least 88.01234% of this corporation.

8. Defendant Nuoyuan Capital Management Company Ltd. (hereinafter "Nuoyuan Capital") is an asset management company incorporated in China, with their last known business address at Suite 202 Room 2011 Building 1 Fl 2, Xiangjun Beili Garden 28, Chaoyang District, Beijing, China. It is owned 75% by Nuoyuan Holdings, 15% through Yantai Hanfu Manqi Investment Center (Limited Partnership), and 10% by Yantai Hanfu Manzhao Investment Center (Limited Partnership). In total, through proxy corporations, Defendant Mr. Han owns at least 79.523755% of this corporation.

9. Defendant Junjun Feng (hereinafter "Ms. Feng") is a citizen of China, and the co-owner with Defendant Mr. Han of a luxury apartment purchased for $2.19 million USD located 554 Third Avenue, Unit PHA, New York, NY 10016, where she resides.

10. Defendant HFRE LLC (hereinafter "HFRE") is a New York limited liability company with an address listed at 39-07 Prince Street, Suite 4C, Flushing, New York 11354. HFRE is managed by Defendant Mr. Han, and upon information and belief, owned by him as well. HFRE is listed on the deed for 377 Rector Place, Unit PHB, New York, NY 10280, where Mr. Han resides.

11. Defendant BZ Industrial Limited (Virgin Islands) (hereinafter "BZ Virgin Islands") is a company incorporated in the British Virgin Islands, with a registered service address at 39-07 Prince Street, Suite 4C, Flushing, NY 11354. The sole owner of BZ Virgin Islands is Defendant Mr. Han. Mr. Han is also the chief executive officer of BZ Virgin Islands.

12. Defendant BZ Industrial Limited (Cayman Islands) (hereinafter "Defendant BZ Cayman Islands") is a company incorporated in the Cayman Islands. The sole owner of BZ Cayman Islands is BZ Virgin Islands, which is directly and wholly owned by Defendant Mr. Han. Defendant Mr. Han is also the chief executive officer of BZ Cayman Islands.

13. Defendant Hanfor (Cayman) Limited (hereinafter "Hanfor Cayman") is a company incorporated in the Cayman Islands, with a registered office address located in care of Maples Corporate Services Limited, P.O. Box 309, Ugland House, South Church Street, George Town, Grand Cayman KY1-1104, Cayman Islands. The sole shareholder of Hanfor Cayman is BZ Virgin Islands, which is directly and wholly owned by Defendant Mr. Han.

14. Defendant HF Capital Management Cay Inc. (hereinafter "HF Capital Cayman") is a company incorporated in the Cayman Islands, with registered office address located in care of Maricorp Services Ltd., P.O. Box 2075, The Strand #31, 46 Canal Point Drive, Cayman Islands.

Defendant Mr. Han is the president and director of HF Capital Cayman. HF Capital Cayman was registered to do business in New York, through an application for authority in New York in October 2020, which was executed by Mr. Han on behalf of the corporation.

15. Defendant HF Cosmopolitan Beta L.P. (hereinafter "HF Cosmopolitan") is a company incorporated in the Cayman Islands. The general partner of HF Cosmopolitan is HF Capital Cayman, of which Defendant Mr. Han is the owner and director. HF Cosmopolitan was registered to do business in New York in October 2020, through an application for authority in New York which was executed by Mr. Han on behalf of HF Capital Cayman, the general partner of HF Cosmopolitan.

## NATURE OF THE ACTION

16. This is a civil action, made against the above-listed individual and corporate Defendants, for breach of contract and of contractual obligations, conversion, unjust enrichment, and breach of fiduciary duties owed to Plaintiff.

17. As this Complaint will address, Defendant Mr. Han, using numerous corporations controlled and dominated by himself, induced Plaintiff to invest $2 million USD in NIO before NIO's initial public offering on the New York Stock Exchange. Once NIO's IPO occurred on September 12, 2018, Defendant Mr. Han failed to return the invested stocks despite promising to do so. It is unclear as to whether Defendant Mr. Han and his corporations made the promised investment into NIO as they claimed, whether Defendant Mr. Han did in fact ever sell the shares of NIO, and if so, what he did with the funds, which have never been returned to Plaintiff. The pattern of Defendant Mr. Han's behavior suggests that his investment opportunities are in fact a Ponzi scheme in nature.

## SUBJECT MATTER JURISDICTION AND VENUE

18. The U.S. District Court, Southern District of New York, has jurisdiction over this matter because there is complete diversity between Plaintiff and Defendants, and because the amount-in-controversy is greater than $75,000.00. 28 U.S.C. § 1332. Plaintiff demands damages in excess of the $2,000,000.00 that she invested with Defendants, as well as any profits gained or could have gained from this investment.

19. Venue is proper in the Southern District of New York because Defendants Mr. Han and Ms. Feng reside in the County of New York. 28 U.S.C. § 1391, and because Defendant Mr. Han solicited and obtained a $2 million investment from Plaintiff in China and brought the funds to the United States to acquire the NIO stock with Plaintiff's investment in New York and after failing to transfer the NIO stock to Plaintiff, Mr. Han claimed to have sold the said 500,000 shares of NIO stock in New York without Plaintiff's knowledge and consent within the district. Defendant Mr. Han directed the funds to be invested in New York from China via the Cayman Islands. After the purported unauthorized sale of the stock instead of returning the proceeds to Plaintiff, he kept the proceeds from the sale that belong to Plaintiff for his own use in New York.

## STATEMENT OF FACTS

20. Defendant Mr. Han is either the sole owner or super-majority owner of Defendants BZ Virgin Islands, BZ Cayman Islands, BZ China, Nuoyuan Holdings, Nuoyuan Capital, Hanfor Cayman, Hanfor Holdings, HF Capital Cayman, HF Cosmopolitan and other shell companies either directly or through proxies. Defendant Mr. Han is the manager of HFRE and, upon information and belief, owns and controls this corporation as well. **See Exhibit A[1]** for a chart showing

---

[1] The content of Exhibit A is based on information obtained from official government websites for corporate registration in China.

demonstrating how Defendant Mr. Han owns a majority share of, among other corporations, BZ China, Hanfor Holdings, Nuoyuan Holdings, and Nuoyuan Capital, either directly or through proxy corporations.

21. Defendant Mr. Han owns super-majority shares in Nuoyuan Holdings and Nuoyuan Capital through a complicated web of holding corporations, as detailed in **Exhibit A.** Through majority shares in three proxy corporations, namely Yantai Hanfu Manwei Investment Center (Limited Partnership) (hereinafter "Yantai Manwei"), Yantai Hanfu Manchang Investment Center (Limited Partnership), (hereinafter "Yantai Manchang"), and Yantai Hanfu Manqi Investment Center (Limited Partnership), (hereinafter "Yantai Manqi"), Defendant Mr. Han owns additional shares of Nuoyuan Holdings and Nuoyuan Capital. Yantai Manwei owns 10% of Nuoyuan Holdings, Yantai Manchang owns 20% of Nuoyuan Holdings, Yantai Manqi owns 15% of Nuoyuan Capital, and Yantai Manzhao owns 10% of Nuoyuan Capital. As a result, Defendant Mr. Han controls at least 88.01234% and 79.5% of shares in these two corporations respectively.

22. Defendant Mr. Han created his first investment company in 2006.

23. Beginning in 2016, Defendant Mr. Han designed and created numerous private investment fund projects ("Projects"), one of which Plaintiff had invested, which was the Ruili Weixin Project. The stated purpose of the Projects was to raise funds from investors and to use the raised funds as cash capital to finance various property development projects and to purchase pre-IPO equity shares of targeted companies which were recommended and promoted by Defendant Mr. Han.

24. From 2016 to 2018, Defendant Mr. Han, through companies controlled by him, recruited hundreds of investors, including Plaintiff, and raised at least 2 billion RMB (about $285 million

USD) from cash from said investors without following the proper regulations for raising capital in China.

### Ruili Weixin Project

25. In May 2017, Plaintiff was approached by a capital manager named Ya'nan Ding, an employee of the Qingdao branch of Nuoyuan Capital, which is a subsidiary owned 100% by Nuoyuan Capital. Ms. Ding provided promotional material to the Plaintiff concerning the Ruili Weixin Project, which detailed how Defendant corporations were raising money for Class C series equity for NIO in advance of NIO's initial offerings on the New York Stock Exchange (NYSE).

26. Ya'nan Ding further represented on behalf of Defendant Mr. Han that Hanfor Holdings sought cash capital from investors to purchase equity shares from NextEV, the parent company of NIO Inc. (hereinafter "NIO"), both corporate entities involved in the development and production of electric vehicles, and that they would charge a management fee from those who invested.

27. The promotional materials further provided that NIO was guaranteed to issue their initial offering on the New York Stock Exchange before December 31, 2021, and stated that because the company had a great potential in the industry, the value of the equity shares of the company would increase greatly following their IPO.

28. The promotional materials provided to Plaintiff also stated that if NIO were unable to issue its initial offering at NYSE before 2021, NIO would repurchase the equity shares from investors at the price of the initial investment plus a calculated compound interest rate of 8% annually, such that investors were guaranteed to receive profit from the project.

29. Plaintiff was directed to wire $2 million USD to a bank account designated by Ya'nan Ding in the Cayman Islands under Defendant Mr. Han's direction prior to the signing of any contracts for the Ruili Weixin Project, and she did.

30. On July 7, 2017, and with the understanding that Defendant HF Capital Cayman, acting as fund manager, would subsequently use Plaintiff's cash investment to purchase NIO's Class C equity shares, Plaintiff signed a Shareholder Agreement concerning investment in the Ruili Weixin Project, as well as a Class B Share Purchase Agreement.

31. These agreements were pre-signed by Lu Guo on July 5, 2018, who was the Chief Financial Officer of Nuoyuan Capital at the time that the Shareholder Agreement was signed, but Luo Guo signed instead on behalf of "HF Holdings Limited" and HF Capital Cayman.

32. It is unclear whether the "HF Holdings Limited" in the Shareholder Agreement refers to HF Holdings, the corporation registered in the British Virgin Islands, or Hanfor Holdings, the corporation registered in China.

33. Subsequent to signing these agreements, Ya'nan Ding provided Plaintiff a certificate issued by Defendant titled as Confirmation of Fund Interests, which stated that Plaintiff had invested $2 million dollars in HF Holdings, the British Virgin Islands corporation, on July 7, 2017. **See Exhibit B** for the Confirmation of Fund Interests.

34. On this Confirmation of Fund Interests certificate above the signature line, a corporation designated in Chinese as Hanfor Capital, a corporation based on Beijing, is translated into English using the name for HF Capital Cayman. It is not clear whether the use of a different corporate name in English and Chinese was done intentionally, or if it was a typo showing sloppiness.

35. In addition, on the Confirmation of Fund Interests certificate states that the representative of Hanfor Capital/HF Capital Cayman is signing the document on behalf of HF Holdings, a British Virgin Islands corporation. Essentially, this document makes three defendant corporations appear to be one.

36. Plaintiff wired the $2 million to the Cayman Islands as Mr. Han directed, and the money was claimed to have been received as the certificate by a British Virgin Islands company, and it appears that the $2 million  was then later sent at the direction of Mr. Han to be invested in New York in NIO.

37. NIO made its initial offering at the NYSE on September 12, 2018.


**Criminal Investigation on Han's Companies**

38. Beginning at least as early as 2019, the Beijing Bureau of the China Securities Regulatory Commission (hereinafter "CSRC Beijing"), among other provincial-level investigatory bodies in China, launched investigations against Defendant Mr. Han as well as other shell companies controlled by Mr. Han, especially Nuoyuan Capital, the largest of the corporations controlled by Defendant Mr. Han, which has over 1300 employees.

39. Yanwu Li, who was the CEO of Nuoyuan Capital, the largest of the corporations controlled by Defendant Mr. Han, as well as an executive in numerous other corporations controlled by Mr. Han, was arrested in January 2019, on the charge of illegally soliciting funds from the public in China, work which he had performed on behalf of Defendant Mr. Han. Upon information and belief, he is still under the custody of the Chinese government.

40. Defendant Mr. Han moved to the United States in 2018 as a preemptive move to avoid being arrested as part of the investigation against his own corporations.

41. Upon information and belief, Defendant Mr. Han was fined 600,000 yuan for insider trading in December 2020 by the China Securities Regulatory Commission after a finding of illegal activities.

**Agreements between Plaintiff and Defendant Post-Criminal Investigation**

42. After the arrest of Mr. Li and the criminal investigation began against Defendant Mr. Han's company, Plaintiff, having serious concerns about her investment with Defendant, through intermediaries, including Ms. Ding, has contacted Defendant Mr. Han multiple times, seeking a return on her investment, despite the fact that the stock value had a low value. Plaintiff proposed to take a transfer of the NIO stock to her stock trading account to settle the dispute despite the risk.

43. In response to an email inquiry from Ya'nan Ding dated May 13, 2019 about the NIO stock transfer, Defendant Mr. Han stated that he was making sure the transfer of the NIO stocks to Plaintiff would happen, and he would assist in doing so. Ms. Ding then forwarded this email to Plaintiff.

44. On November 4, 2019, Defendant Mr. Han wrote in an email to Ya'nan Ding, who was then still an employee of Mr. Han, to forward the information to Plaintiff agreeing that he would transfer Plaintiff's stock shares in NIO, in excess of 500,000 shares, which were publicly traded in New York, to her right away in response to Plaintiff's request for a transfer of her stock shares, and this email was then forwarded to Plaintiff.

45. On June 5, 2020 Defendant Mr. Han, in an email to Jun Zhou, an agent of Plaintiff, stated that all of the NIO shares invested on the New York Stock Exchange in the Ruili Weixin project had been sold two weeks prior, for the value of $3.23 per share, and that Mr. Han would transfer the proceeds to Plaintiff. This was in response to a June 3, 2020 email from Plaintiff's

representative inquiring as to why the shares were still not received by Plaintiff in her stock trading account which was provided to Han many months ago.

46. Prior to selling the NIO stock, Defendant Mr. Han did not seek permission of even inform Plaintiff that he would sell Plaintiff's 500,000 plus shares of NIO stock which he had agreed to transfer to her for many months.

47. It is unclear whether Defendant Mr. Han actually sold the NIO stock shares or not. No documentation of sale was ever provided to Plaintiff, and Plaintiff has not received the proceeds of the alleged sale. As a matter of fact, Defendant Mr. Han has never provided any transaction records for the acquisition or disposition of the NIO stocks.

48. In the last year, the share of NIO shares has been as high as $62/share, which means that the shares could have been sold for as much as $32 million if they were not sold by Mr. Han without Plaintiff's permission or if they had been transferred to Plaintiff as agreed to.

49. Plaintiff never received any return of her $2 million investment from Defendants, neither receiving the NIO shares as promised by Defendant Mr. Han, nor by cash proceeds after these shares were sold without Plaintiff's consent or approval.

50. In August 2020 Defendant Mr. Han purchased a residential penthouse condominium located at 554 Third Avenue, Unit PHA, New York, NY 10016 with Defendant Ms. Feng as joint tenants with right of survivorship for $2.19 million USD. The transaction was a cash deal and not financed.

51. In September 2019 Defendant Mr. Han purchased a residential penthouse condominium located at 377 Rector Place, Unit PHB, New York, NY 10280 through Defendant HFRE LLC for $4.99 million USD. The transaction was also a cash deal and not financed.

52. Defendant Mr. Han resided at 377 Rector Place, Unit PHB, New York, NY 10280 with his family.

## PIERCING THE CORPORATE VEIL

53. As stated above, Defendant Mr. Han is the majority or sole owner of all Defendant companies, including BZ China, Hanfor Holdings, BZ Virgin Islands, BZ Cayman Islands, HFRE LLC, Nuoyuan Capital, Hanfor Cayman, HF Capital Cayman, HF Cosmopolitan and other shell companies either directly or through proxies.

54. Many of these corporations, such as Defendants BZ Virgin Islands, Hanfor Cayman, HF Capital Cayman, and HF Cosmopolitan are based in the British Virgin Islands or the Cayman Islands, and are believed to be proxy corporations belonging to Defendant Mr. Han, where he has hidden funds that were illegally obtained by him, and by entities he controls, from investors. These corporations are the entities that Mr. Han instructed investors like Plaintiff to send money to, but the transfer information is not transparent.

55. BZ China, Nuoyuan Capital, Nuoyuan Holdings, and Hanfor Capital are corporations based in China. Defendant Mr. Han has 80% to 100% majority shares of these corporations, either directly or in combination of his shares with holding corporations.

56. HFRE LLC is a shell company based in New York wholly owned by Defendant Mr. Han.

57. None of the corporate defendants have board members listed other than Defendant Mr. Han. Many of the corporations owned by Defendant Mr. Han, including BZ China and the three Yantai corporations owned by Mr. Han have no employees. Nuoyuan Capital and Hanfor Capital, which have 1436 and 317 employees respectively, also do not have a board, in compliance with corporate formalities for corporations, and only two executives each without

these corporations if it is obvious that not corporate formalities are followed, and that they are all Han's alter ego.

58. Furthermore, through interactions with Defendant Mr. Han, it is clear that there are no corporate formalities that are followed by Mr. Han or any Defendants. When Plaintiff requested that Ya'nan Ding transfer stock funds to her, Mr. Han simply told Mr. Ding that he could do so, and did not mention any corporate boards or in what corporation's name these funds would be transferred from.

59. Because it is clear that these corporations are all majority owned and dominated by Defendant Mr. Han, and Defendant Mr. Han has been hiding behind these corporate entities, and he has been treating these corporations as his own personal property. The corporate veil should be pierced, and these corporations should be treated as alter egos of Defendant Mr. Han, and Defendant Mr. Han should be held individually liable for the actions of these corporations.

## FIRST COUNT:
## BREACH OF CONTRACT

60. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

61. Plaintiff invested $2 million with Defendant Han and the defendant corporations in July 2017.

62. The purpose of this investment, as stated by Ya'nan Ding, a representatives of Nuoyuan Capital and Defendant Mr. Han, was to use the private equity as cash capital for Defendant Mr. Han to invest in equity shares of NIO during the initial public offering.

63. The investment of cash was ratified in two contracts signed by Plaintiff and representatives of Mr. Han, namely Hanfor Holdings, HF Holdings, Hanfor Capital, and HF Capital Cayman (hereafter "signatory corporations.").

64. As per paragraph 8.2 of the Shareholder's Agreement, "The Company shall calculate and allocate Distributable Investment Proceeds, first to all Shareholders in proportion to their respective Subscription Amount until each Shareholder has received its respective investment principal, and then the remaining proceeds shall be allocated [to Class B shareholders] as follows:" "Eighty percent (80%) to the Class B Shareholders pro rata to their respective Subscription Amount."

65. However, despite this clause, Defendant Mr. Han, who claims to have sold all of Plaintiff's investment, has failed to provide any dividends to Plaintiff. Therefore, Mr. Han or the signatory corporations are in violation of their contractual obligations.

66. As per paragraph 10.1 of the Shareholder's Agreement, "The Company will provide to each Class B Shareholder, as soon as practicable but in any event no later than 120 days after the end of each financial year, being 31 December of each year, a profit and loss statement and balance sheet for the Company." However, no such report has been given since August 1, 2019.

67. Therefore, Defendant Mr. Han and the signatory corporations are in violation of their contractual obligations.

## SECOND COUNT:
## BREACH OF CONTRACT

68. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

69. After Defendant Han's corporations were criminally investigated and Mr. Li's arrest, upon Plaintiff's request, Defendant Mr. Han, through email stated, several times his agreement to transfer Plaintiff's investment in NIO stocks of over 500,000 shares back to her, but never did so.

70. Plaintiff requested that the stock shares be transferred despite the fact that they had a low value, despite the risk involved, and Defendant Mr. Han agreed to do so.

71. Despite specifically requesting that Plaintiff provide a stock trading account to Mr. Han in the he never transferred any stock shares into this account.

72. By agreeing in the email dated November 4, 2019 to transfer Plaintiff's stock shares in NIO to her, Defendant Mr. Han created a contractual obligation to transfer Plaintiff's NIO stock shares held by Defendant on her behalf to Plaintiff.

73. However, to this date, Mr. Han has failed to transfer these stock shares, and in fact has claimed to have sold these stock shares, and thus is in violation of his contractual duties.

## THIRD COUNT:
## BREACH OF CONTRACT

74. On June 5, 2020 Defendant Mr. Han, in an email to Jun Zhou, an agent of Plaintiff, stated that all of the NIO shares invested on the New York Stock Exchange in the Ruili Weixin project had been sold two weeks prior, for the value of $3.23 per share, and that Mr. Han would transfer the proceeds to Plaintiff.

75. By promising to transfer the proceeds of the alleged sale of Plaintiff's NIO stock shares held by Defendants on Plaintiff's behalf, Defendant Mr. Han created a contractual obligation to transfer the proceeds of the sale of NIO stock held on Plaintiff's behalf.

76. In the June 5 email, Mr. Han specifically requested that Plaintiff provide an overseas cash account, to which he promised he would transfer the proceeds of the sale, but failed to do so.

77. However, to this date, Mr. Han has failed to transfer the proceeds of the stock shares, and thus is in violation of his contractual duties.

## FOURTH COUNT:
## UNJUST ENRICHMENT

78. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

79. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

80. Plaintiff invested $2 million with Defendant Mr. Han and the corporate defendants to purchase shares of NIO prior to the initial public offering.

81. Defendant Mr. Han claimed that he had sold the NIO shares that belong to Plaintiff. Plaintiff has not received any proceeds from any defendant, neither the shares nor the proceeds of the sale, and Defendant Mr. Han has not provided any funds to Plaintiff.

82. Therefore, Defendant has been unjustly enriched.

**FIFTH COUNT:**
**CONVERSION**

83. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

84. Plaintiff invested $2 million in Defendant Mr. Han and his corporations.

85. Defendant Mr. Han appropriated Plaintiff's assets by failing to transfer the NIO shares to Plaintiff, or to return the proceeds after he claims the shares were sold.

86. Instead, Defendant Mr. Han transferred these funds to himself and corporations that he entirely dominated, as well as Defendant Ms. Feng, and, upon information and belief, used these funds to purchase the properties located at 377 Rector Place, Unit PHB (a.k.a. Unit #27B), New York, NY 10280, and 554 Third Avenue, Unit PHA, New York, NY 10016.

87. Presently, upon information and belief, Defendant Ms. Feng lives in a property which was purchased with money illegally transferred from China to New York, including funds that are the rightful property of Plaintiff.

## SIXTH COUNT:
## BREACH OF FIDUCIARY DUTIES

88. Plaintiff re-alleges and incorporates by reference all allegations in all preceding paragraphs as if fully set forth herein.

89. Plaintiff invested $2 million into Defendant Mr. Han and his companies, and this reliance created a fiduciary duty owed to Plaintiff by Defendant Mr. Han, as well as by the various companies under his control, including HF Holdings, Hanfor Holdings, HF Capital Cayman, and Nuoyuan Capital, hereinafter the "corporate fiduciaries."

90. Defendant Mr. Han and the corporate fiduciaries breached their fiduciary duties by failing to handle the funds provided by Plaintiff in a way that is consistent with fiduciary duties to avoid self-dealing and competition. These duties also include the duties of care, loyalty, good faith, and disclosure.

91. Defendant Mr. Han and the corporate fiduciaries failed to place the best interests of Plaintiff above their own interests by engaging in a course of conduct that benefited themselves to the detriment of Plaintiff.

92. Defendants Mr. Han and the corporate fiduciaries breached these duties owed to Plaintiff. Defendants provided no return on investment and have refused to return any investment made by Plaintiff.

93. Furthermore, Defendant Mr. Han and the corporate fiduciaries engaged in self-dealing behind Plaintiff's back by selling off shares of NIO without information Plaintiff or seeking her approval, and then failing to provide any return on investment as obligated.

94. Defendant Mr. Han and the corporate fiduciaries violated the duty of disclosure, as they are obligated to communicate all relevant and material information that they know, and that pertains to the scope of their agency, but failed to properly notify Plaintiff of their failure to invest as promised in the agreements, and has failed to provide any investment reports since August 1, 2019, despite being obligated to provide such yearly profit and loss statements in accordance with 10.1 of the shareholder's agreement.

95. As a result, Defendant Mr. Han have breached multiple fiduciary duties owed to Plaintiff, and thereby caused harm to Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Award compensatory, consequential, exemplary and punitive damages to Plaintiff, including interest, in an amount to be determined at trial;

B. Rescission of the agreement;

C. Award attorneys' fees and costs to Plaintiff; and

D. Grant to Plaintiff such other relief as is just and proper.

## Jury Trial Demand

Plaintiff demands trial by jury on issues so triable.

Wong, Wong & Associates, P.C.
*Attorneys for Plaintiff*

By:  /s/  Valerie Wong, Esq.

Date: April 19, 2021

# Exhibit A



Xueyuan Han
Owns 100% Shares
BANG ZE INDUSTRIAL CO., LTD
Owns 5% Shares
Owns 95% Shares
Owns 90% Shares
HANFOR HOLDINGS CO., LTD.
Owns 10% Shares
HANFOR (BEIJING) CAPITAL MANAGEMENT CO. LTD.
Owns 92.04% Shares
Owns 1% Shares
YANTAI HANFU MANWEI INVESTMENT CENTER (LIMITED PARTNERSHIP)
Owns 70% Shares
Owns 0.9308% Shares
Owns 10% Shares
BEIJING NUOYUAN HOLDINGS CO., LTD.
Owns 42.6109% Shares
Owns 20% Shares
Owns 3.88% Shares
YANTAI HANFU MANCHANG INVESTMENT CENTER (LIMITED PARTNERSHIP)
Owns 75% Shares
Owns 85.55% Shares
Owns 1% Shares
Owns 15% Shares
YANTAI HANFU MANQI INVESTMENT CENTER (LIMITED PARTNERSHIP)
NUOYUAN CAPITAL MANAGEMENT COMPANY LTD
Owns 100% Shares
Owns 10% Shares
YANTAI HANFU MANZHAO INVESTMENT CENTER (LIMITED PARTNERSHIP)
NUOYUAN CAPITAL MANAGEMENT COMPANY LTD, QINGDAO BRANCH

Exhibit B

# 基 金 份 额 确 认 书

## Confirmation of Fund Interests

尊敬的 _张静_ 女士（身份证号：_370205196812185586_）：

您好！
本公司作为 _睿利蔚鑫私募股权投资基金 1 号 – HF Holdings Limited_（一家英属维京群岛公司） （ 以下简称"本基金"）的基金管理人特做出如下确认：
您已成功认购本基金美元 _贰佰万_ 元对应的基金份额，依法成为本基金份额的持有人。
特此确认！

Dear Ms. **JING,ZHANG** ( ID No.: 370205196812185586 )

As the fund manager of _Ruiliweixin Private Equity Investment Fund I - HF Holdings Limited (A British Virgin Island Corporation)_ (the "Fund"), we hereby confirm that:
your subscription to the Fund of U.S. Dollars _TWO MILLIONS_ is accepted, and the corresponding interests are protected by the laws.

汉富（北京）资本管理有限公司
**HF Capital Management CAY, Inc.**
_For and on behalf of_
**HF Holdings Limited**

证书编号 Certificate No.: **1708080001**

（本证书仅为对基金份额的确认，具体权利义务请以本基金相关合同为准）

( This certificate is only to confirm your fund interests, please refer to the relevant agreements of the Fund for corresponding rights and obligations )

_Authorized Signature(s)_

二零一七年八月七日
August 07, 2017