Jeffrey S. Boxer, Esq.
Madelyn K. White, Esq.
Carter Ledyard & Milburn LLP
Two Wall Street
New York, New York 10005
Tel. (212) 732-3200
Fax (212) 732-3232
Email boxer@clm.com/ white@clm.com

*Attorneys for Defendants Xueyuan Han, Hanfor Holdings
Co., Ltd., HF Holdings Limited, Beijing Nuoyuan Holdings Co.,
Hanfor Capital Management Co., Ltd., Nuoyuan Capital
Management Company Ltd., Junjun Feng, Bang Ze Industrial
Co., Ltd. (China), BZ Industrial Limited (Virgin Islands), BZ
Industrial (Cayman Islands), Hanfor (Cayman) Limited, HFRE LLC,
HF Capital Management Cay Inc., and HF Cosmopolitan Beta L.P.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JING ZHANG,<br><br>         Plaintiff,<br><br>    -against-<br><br>XUEYUAN HAN, HANFOR HOLDINGS CO., LTD.,<br>HF HOLDINGS LIMITED, BEIJING NUOYUAN<br>HOLDINGS CO., HANFOR CAPITAL<br>MANAGEMENT CO., LTD., NUOYUAN CAPITAL<br>MANAGEMENT COMPANY LTD, JUNJUN FENG,<br>BANG ZE INDUSTRIAL CO., LTD. (CHINA), BZ<br>INDUSTRIAL LIMITED (VIRGIN ISLANDS), BZ<br>INDUSTRIAL (CAYMAN ISLANDS), HANFOR<br>(CAYMAN) LIMITED, HFRE LLC, HF CAPITAL<br>MANAGEMENT CAY INC., AND HF<br>COSMOPOLITAN BETA L.P.,<br><br>         Defendants. | Dkt. No. 1:21-cv-01625-GHW |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS AND TO COMPEL ARBITRATION

9814671.15

# TABLE OF CONTENTS

INTRODUCTION AND PRELIMINARY STATEMENT..............................................1

STATEMENT OF FACTS ....................................................................................1

ARGUMENT ....................................................................................................2

POINT I       THE CLAIMS MUST BE ARBITRATED ......................................2

POINT II      SUBJECT MATTER JURISDICTION IS LACKING............................6

POINT III     PLAINTIFF FAILED TO PROPERLY SERVE MOST DEFENDANTS..............7

POINT IV     THE SAC SHOULD BE DISMISSED AGAINST THE CORPORATE
DEFENDANTS FOR LACK OF PERSONAL JURISDICTION........................10

     A.      Plaintiff Failed to Establish General Jurisdiction ...................................11

     B.      Plaintiff Failed to Establish Specific Jurisdiction ...................................11

         i.       Jurisdiction Does Not Exist for Plaintiff's Breach of Contract Claims .....12

         ii.      Jurisdiction Does Not Exist for Plaintiff's Tort Claims............................13

         iii.     The Exercise of Jurisdiction Would Violate Due Process .........................14

POINT V      THE SAC SHOULD BE DISMISSED FOR FAILING TO STATE VIABLE
CLAIMS ................................................................................16

     A.      The Causes of Action for Breach of Contract Must Be Dismissed ......................16

         i.       The Alleged Failure to Provide Statements Is Not a Breach of the
Agreement ........................................................................17

         ii.      The Email Exchanges Did Not Create Binding Contracts.........................17

     B.      The Fourth Cause of Action for Unjust Enrichment Must Be Dismissed ............19

     C.      The Fifth Cause of Action for Conversion Must Be Dismissed ...........................21

     D.      The Sixth Cause of Action for Breach of Fiduciary Duty Must Be Dismissed.....24

CONCLUSION....................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AD Rendon Comm'cns, Inc. v. Lumina Ams. Inc.*, 2007 U.S. Dist. LEXIS 75625
(S.D.N.Y. Oct. 9, 2007) ..............................................................................21, 22

*Allied Dynamics Corp. v. Kennametal, Inc.*, 956 F. Supp. 2d 276 (E.D.N.Y. Sept.
4, 2013) ...............................................................................................................13

*Atlantis Info. Tech. v.CA Inc.*, 485 F. Supp. 2d 224 (E.D.N.Y. 2007)..........................25

*Barker v. Amorini*, 121 A.D.3d 823 (2d Dep't 2014) ..................................................23

*Bonkowski v. HP Hood LLC*, 2016 U.S. Dist. LEXIS 116492 (S.D.N.Y. Aug. 30,
2016) ...................................................................................................................11

*Bos. Consulting Grp., Inc. v. NCR Corp.*, 2020 U.S. Dist. LEXIS 175812
(S.D.N.Y. Sept. 24, 2020) ...................................................................................24

*Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133 (S.D.N.Y. 2000)..........9

*Citi Connect, LLC v. Local Union No. 3, IBEW*, 2020 U.S. Dist. LEXIS 185796
(S.D.N.Y. Oct. 7, 2020) ...................................................................................4, 6

*David L. Threlkeld & Co. v. Metallgesellchaft, Ltd.*, 923 F.2d 245 (2d Cir. 1991)........5

*De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65 (2d Cir. 1996) ................................13, 16

*Diesel Props. Srl v. Greystone Bus. Credit*, 631 F.3d 42 (2d Cir. 2011).....................20

*DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405 (S.D.N.Y. 2010) ...................13

*Dominguez v. B S Supermarket, Inc.*, 2016 U.S. Dist. LEXIS 167879 (E.D.N.Y.
Dec. 1, 2016)........................................................................................................9

*Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89 (2d Cir. 2006)........................8

*Ellington Credit Fund v. Select Portfolio Serv.*, 837 F. Supp. 2d 162 (S.D.N.Y.
2011) ........................................................................................................... *passim*

*Elsevier Inc. v. Grossman*, 77 F. Supp. 3d 331 (S.D.N.Y. 2015) .................................14

*F5 Capital v. Pappas*, 856 F.3d 61 (2d Cir. 2017) ........................................................6

*Filanto SpA v. Chilewich Intern. Corp.*, 789 F. Supp. 1229 (S.D.N.Y. 1992) .......2, 3, 6

9814671.15

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840 (2d Cir. 1987) .......................................3, 5

*George Moundreas & Co SA v. Jinhai Intelligent Mfg. Co*, 2021 U.S. Dist. LEXIS 9588 (S.D.N.Y. Jan. 18, 2021).......................................................................................15

*Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144 (2d Cir. 2004)...........................................3

*Hart Enters. Int'l, Inc. v. Anhui Provincial Import & Export Corp.*, 888 F. Supp. 587 (S.D.N.Y. 1995) ..............................................................................................2, 3, 4

*Heckl v. Walsh*, 122 A.D.3d 1252 (4th Dep't 2014) ...............................................................21, 23

*Henneberry v. Sumitomo Corp. of Am.*, 2005 U.S. Dist. LEXIS 7475 (S.D.N.Y. Apr. 26, 2005) .......................................................................................................24

*Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002).................................................................5

*In re Clark*, 146 A.D.3d 495 (1st Dep't 2017).......................................................................21, 23

*Int'l Diamond Impos. Inc. v. Oriental Gemco Ny, Inc.*, 64 F. Supp. 3d 494 (S.D.N.Y. 2014) ...................................................................................................8

*Int'l Minerals and Resources v. Pappas*, 96 F.3d 586 (2d Cir. 1996) ...........................................18

*Ixotic AG v. Kammer*, 2014 U.S. Dist. LEXIS 180782 (E.D.N.Y. Sept. 30, 2014).........................7

*Jubilee, Inc. v. Haslacha, Inc.*, 270 A.D.2d 34 (1st Dep't. 2000) ....................................................9

*Kerman v. Intercontinental Hotel Grp. Res. LLC*, 2021 U.S. Dist. LEXIS 46424 (E.D.N.Y. Mar. 11, 2021) ..........................................................................................11

*King County v. IKB Deutsche Industriebank AG*, 769 F. Supp. 2d 309 (S.D.N.Y. 2011) ...............................................................................................................15

*King v. Stage 29 Prods., LLC*, 2020 U.S. Dist. LEXIS 116073 (S.D.N.Y. July 1, 2020) ...................................................................................................4

*Lear v. Royal Caribbean Cruises Ltd.*, 2021 U.S. Dist. LEXIS 67784 (S.D.N.Y. Apr. 7, 2021) (Woods, J.) ..................................................................................13

*Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173 (2011) ..............................................19, 21

*Marino v. Grupo Mundial Tenedora S.A.*, 810 F. Supp. 2d 601 (S.D.N.Y. 2011) .......................24

*Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013) ....................................................10

*MBC Fin. Servs. v. Boston Merch. Fin., LLC*, 2016 U.S. Dist. LEXIS 140195 (S.D.N.Y. Oct. 4, 2016) ............................................................................................17

iii

*Metal Industry Co, Ltd. v. Superior Court of California*, 480 U.S. 102 (1987) ..........................15

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ....................14, 15, 16

*Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504 (S.D.N.Y. 2016) ....................................19

*Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507 (E.D.N.Y. 2017)........................................22, 23

*N. Shipping Funds I, LLC v. Icon Cap. Corp.*, 921 F. Supp. 2d 94 (S.D.N.Y. 2013) ....................................................................................24

*One World, LLC v. Onoufriadis*, 2021 U.S. Dist. LEXIS 9814 (S.D.N.Y. Jan. 19, 2021) .................................................................................................7

*Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597 (S.D.N.Y. 2016) ......................................10

*Pacelli v. Augustus Intelligence, Inc.*, 459 F. Supp. 3d 597 (S.D.N.Y. 2020)..........................4, 5

*PDK Labs v. Friedlander*, 103 F.3d 1105 (2d Cir. 1997)...............................................................10

*Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30 (2d Cir. 2010) ........................................10

*Porina v. Marward Shipping Co.*, 521 F. 3d 122 (2d Cir. 2008)....................................................10

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004).....................................................18

*Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110 (N.D. Cal. 2013) ..........................18

*Schentag v. Nebgen*, 2018 U.S. Dist. LEXIS 104065 (S.D.N.Y. June. 21, 2018) (Woods, J.) ................................................................................................11, 12

*Smith/Enron Cogeneration v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88 (2d Cir. 1999) ....................................................................................................2, 3

*Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221 (2d Cir. 2014) ............................11

*Spota v. White*, 2016 N.Y. Misc. LEXIS 4035 (Sup. Ct. Suffolk Cty. 2016)................................9

*Sunward Elecs. Inc. v. McDonald*, 362 F.3d 17 (2d Cir. 2004).....................................................12

*Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124 (2d Cir. 2020) (per curiam)....................................6, 7

*Tan v. SMS Inv. Group, LLC*, 2016 U.S. Dist. LEXIS 38851 (E.D.N.Y. Mar. 24, 2016) ........................................................................................................14

*United States Liab. Ins. Co. v. M Remodeling Corp.*, 444 F. Supp. 3d 408 (E.D.N.Y. 2020).......................................................................................7

iv

*Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V.*, 451 F. Supp. 2d
585 (S.D.N.Y. 2006) ...............................................................................................8

*Zorbas v. United States Trust Co. N.A.*, 48 F. Supp. 3d 464 (E.D.N.Y. 2014) .......................24, 25

**Statutes**

9 U.S.C. § 203 ...................................................................................................................................2

28 U.S.C. § 1332 ...........................................................................................................................6, 7

CPLR § 301 ......................................................................................................................................11

CPLR § 302 .........................................................................................................................12, 13, 14

CPLR § 311 ...................................................................................................................................8, 9

Fed. R. Civ. P. 4 ................................................................................................................................8

Fed. R. Civ. P. 12 ...........................................................................................................................10

## INTRODUCTION AND PRELIMINARY STATEMENT

The Second Amended Complaint (the "SAC") against the Defendants[1] should be dismissed because the contracts at issue require arbitration[2], subject matter jurisdiction is lacking, plaintiff Jing Zhang ("Plaintiff") failed to properly serve many of the Defendants, the Court lacks personal jurisdiction over most of the Corporate Defendants, and the SAC fails to state a claim.

## STATEMENT OF FACTS

Plaintiff's claims arise out of an investment in the Ruili Weixin Project pursuant to a Share Purchase Agreement dated July 7, 2017 and a Shareholders Agreement dated July 7, 2017 with defendant HF Holdings Limited. SAC ¶¶ 25-30. Pursuant to the agreements, Plaintiff purchased shares in a British Virgin Islands company which, in turn, planned to invest in a Cayman Islands company. *Id.*; Declaration of Xueyuan Han dated May 13, 2021 (the "Han Decl."), Ex. 1, Share Purchase Agreement ("SPA") at Recital A and Ex. 2, Shareholders Agreement ("SA") at Recital A, ¶ 2.1(a). Plaintiff represented at the time she executed the agreements that she was a citizen and resident of China. Han Decl. ¶ 8. The agreements provide that all claims of any type arising out of or relating to the agreements must be arbitrated in China. Han Decl. at Ex. 1, SPA at ¶ 7.10(b) and Ex. 2, SA at ¶ 13.12(b). The SAC asserts claims for breach of contract, conversion, unjust enrichment and breach of fiduciary duty arising out of Plaintiff's investment in the Ruili Weixin Project.

---

[1] The defendants are Hanfor Holdings Co., Ltd., HF Holdings Limited, Hanfor Capital Management Co., Ltd., Nuoyuan Capital Management Company Ltd., Bang Ze Industrial Co., Ltd. (China), BZ Industrial Limited (Virgin Islands), BZ Industrial (Cayman Islands), Hanfor (Cayman) Limited, HFRE LLC, HF Capital Management Cay Inc., HF Cosmopolitan Beta L.P. (collectively, the "Corporate Defendants"), Xueyuan Han ("Mr. Han") and Junjun Feng ("Ms. Feng," collectively, the "Defendants"). Beijing Nuoyuan Holdings Co. was added as a defendant in the SAC. Plaintiff does not appear to have attempted service, but the grounds for dismissal set forth herein apply equally to Beijing Nuoyuan Holdings Co.

[2] The Court should also grant the Defendants' motion to compel arbitration.

# ARGUMENT

## POINT I
## THE CLAIMS MUST BE ARBITRATED

The SAC must be dismissed and arbitration compelled because the claims all relate to an investment Plaintiff made pursuant to two agreements which require arbitration of the asserted claims before the Beijing Arbitration Commission ("BAC") in Beijing, China.  The arbitration provisions in the agreements are essentially identical and provide that:

> Any claim, dispute, or controversy, of whatever nature arising out of or relating to this Agreement, including, without limitation, any action or claim based on tort, contract, or statute (including any claims of breach), or concerning the interpretation, effect, termination, validity, performance and/or breach of this Agreement shall be referred to and finally resolved by arbitration administered by the Beijing Arbitration Commission in Beijing in accordance with its arbitration rules in effect at the date of commencement of the arbitration.  The arbitration shall be in Mandarin Chinese.

Han Decl. at Ex. 1, SPA at ¶ 7.10(b) and Ex. 2, SA at ¶ 13.12(b).

Since the agreements specify Beijing as the location for arbitration, the enforceability and applicability of the arbitration clauses is governed by the New York Arbitration Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") and Chapter Two of the Federal Arbitration Act ("FAA").  *See Filanto SpA v. Chilewich Intern. Corp.*, 789 F. Supp. 1229, 1234 (S.D.N.Y. 1992); *accord Hart Enters. Int'l, Inc. v. Anhui Provincial Import & Export Corp.*, 888 F. Supp. 587, 590 (S.D.N.Y. 1995).  This Court has jurisdiction to compel arbitration.  *See* 9 U.S.C. § 203; *Filanto SpA*, 789 F. Supp. at 1234 (The Convention's "implementing legislation also provides an independent basis of subject matter jurisdiction" over an application to compel arbitration).

The Convention "promotes the strong federal policy favoring arbitration of disputes, particularly in the international context."  *Smith/Enron Cogeneration v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 92 (2d Cir. 1999) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-*

2

*Plymouth, Inc.*, 473 U.S. 614, 638-40 (1985)); *accord Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 847 (2d Cir. 1987) ("emphatic federal policy in favor of arbitral dispute resolution applies with special force in the field of international commerce") (quotation omitted).

> There are four requirements for enforcement of international arbitration agreements:
>
> > (1) there must be a written agreement; (2) it must provide for arbitration in the territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it cannot be entirely domestic in scope.

*Smith/Enron Cogeneration*, 198 F.3d at 92.   A court's inquiry into whether an arbitration provision should be enforced is "very limited."   *Id.*   All a court "need do is determine if a sufficient 'agreement in writing' to arbitrate disputes exists between these parties."   *Filanto SpA*, 789 F. Supp. at 1239 (citation omitted).   "Arbitration should be compelled unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."   *Hart Enters. Int'l*, 888 F. Supp. at 589.

Here, the four-part test is easily satisfied, and arbitration should be compelled.   First, written agreements cover the investment at issue.   *See* SAC ¶¶ 30, 33; Han Decl. Exs. 1 and 2. Plaintiff does not dispute that she signed the agreements or that the agreements are binding; indeed she asserts claims for breach of these same agreements.   *See* SAC ¶¶ 60-67.   Accordingly, the parties are bound by the arbitration provisions in the agreements.   *See*, *e.g.*, *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (whether party is "bound by an arbitration clause is usually determined by looking at generally accepted principles of contract law, … in the absence of fraud or other wrongful act … a party who signs or accepts a written contract … is conclusively presumed to know its contents and to assent to them") (citations and quotation omitted).

3

Second, China is a party to the Convention and courts will compel arbitration in China. *See*, *e.g.*, *Hart Enters. Int'l*, 888 F. Supp. at 591 (entering "final judgment containing an appropriate injunction directing the parties to arbitrate in Beijing in accordance with the Convention and the contracts").  Third, the agreements are commercial as they concern an investment agreement.  *See* SAC ¶¶ 25-30.  Fourth, the agreements are not "entirely domestic" as Plaintiff is a Chinese citizen who wired investment funds to an account in the Cayman Islands (SAC ¶¶ 1, 29), and the agreements involve the purchase of shares in a British Virgin Island company.  *See* Han Decl., Ex. 1, at Recital A and Ex. 2, at Recital A, ¶ 2.1(a); SAC ¶¶ 25-30.

To the extent there are questions of arbitrability, those questions should be answered by the arbitrator.  "[T]hreshold questions of arbitrability are a matter of contract."  *King v. Stage 29 Prods., LLC*, 2020 U.S. Dist. LEXIS 116073, at *10 (S.D.N.Y. July 1, 2020) (citations omitted). The agreements here provide that disputes must be arbitrated before the BAC in accordance with its rules.  *See* Han Decl., Ex. 1, SPA at ¶ 7.10(b) and Ex. 2, SA at ¶ 13.12(b).  The BAC rules provide that "[t]he BAC, or the Arbitral Tribunal as authorized by the BAC, may determine an objection as to jurisdiction."[3]  By incorporating the BAC rules, the parties agreed to have questions of arbitrability answered by the arbitrator, not the courts.  *See Pacelli v. Augustus Intelligence, Inc.*, 459 F. Supp. 3d 597, 608 (S.D.N.Y. 2020) ("When 'parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator.") (quoting *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005)); *accord Citi Connect, LLC v. Local Union No. 3, IBEW*, 2020 U.S. Dist. LEXIS 185796, at *17 (S.D.N.Y. Oct. 7, 2020) ("incorporation of the AAA's Expedited Procedure 'clearly and

---

[3] Art. 6(4), available at [Arbitration Rules (bjac.org.cn)](Arbitration Rules (bjac.org.cn))

unmistakably' incorporates the AAA Rule delegating issues of arbitrability to the arbitrator").

Even if this Court were to address the question of arbitrability, it should determine that the claims at issue must be arbitrated. "If the allegations underlying the claims touch matters covered by the [contract with arbitration provision], then those claims must be arbitrated, whatever the legal labels attached to them." *Genesco, Inc.*, 815 F.2d at 846 (citation omitted). "[F]ederal arbitration policy requires that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *David L. Threlkeld & Co. v. Metallgesellchaft, Ltd.*, 923 F.2d 245, 248 (2d Cir. 1991) (quotation omitted). All of Plaintiff's claims stem from her investment pursuant to agreements requiring arbitration of "[a]ny claim, dispute, or controversy, of whatever nature arising out of or relating" to the agreements, including claims based on "tort, contract, or statute." Han Decl., Ex.1, SPA at ¶ 7.10(b) and Ex. 2, SA at ¶ 13.12(b). The claims here "touch matters covered by" the agreements and must be arbitrated.

Plaintiff has not disputed that she signed binding agreements with arbitration provisions that cover the claims in the SAC. Rather, Plaintiff claims that the arbitration forum is somehow unavailable due to pending criminal investigations in China and Mr. Han's presence in the U.S. *See* Plaintiff's March 24, 2021 Letter to the Court (Dkt. # 34) at 4. The question of whether the BAC cannot hear this case is a matter of procedural arbitrability that must be answered by the BAC or the arbitrator, not this Court. *See Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 85 (2002) (in absence of agreement otherwise "issues of substantive arbitrability … are for a court to decide and issues of procedural arbitrability, *i.e.*, whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide") (quoting RUAA § 6, comment 2, 7 U.L.A. at 13); *accord Pacelli*, 459 F. Supp. 3d at 610 ("absent a delegation provision, 'courts presume that parties

intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration'" (quoting *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014)); *Citi Connect, LLC*, 2020 U.S. Dist. LEXIS 185796, at *12 (questions of "procedural arbitrability," such as whether demand was "time-barred" are "for the arbitrators to decide") (quotation omitted).  Plaintiff has offered no evidence that the BAC has opined on whether it can hear these claims.  Accordingly, Plaintiff may not avoid arbitration on this basis.  Even if the Court could rule on this issue, Plaintiff has provided no evidence that Chinese law prohibits the BAC from conducting the arbitration because of an allegedly pending criminal investigation, nor has Plaintiff offered any information regarding the scope of the purported criminal investigation or why any such prohibition would apply to all of her claims.

Since the agreements are governed by the Convention and the FAA, the Court "has specific authority to order the parties to proceed to arbitration" before the BAC.  *See Filanto SpA*, 789 F. Supp. at 1241.  The SAC should be dismissed and arbitration compelled.

## POINT II
## SUBJECT MATTER JURISDICTION IS LACKING

The SAC alleges subject matter jurisdiction pursuant to 28 U.S.C. § 1332, but diversity jurisdiction is lacking.  It is well-established that "[d]iversity is lacking within the meaning of § 1332(a)(2) where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens." *F5 Capital v. Pappas*, 856 F.3d 61, 75 (2d Cir. 2017) (quotation omitted); *see also Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 126 (2d Cir. 2020) (per curiam) ("Section 1332 requires complete diversity, meaning that all plaintiffs must be citizens of states diverse from those of all defendants. Diverse parties consist of citizens of different states or citizens of a State and citizens or subjects of a foreign state." (internal quotation marks and citations omitted)); *One World, LLC v. Onoufriadis*, 2021 U.S. Dist. LEXIS

9814, at *35 (S.D.N.Y. Jan. 19, 2021) ("[T]he presence of aliens on two sides of a case destroys diversity jurisdiction, just like the presence of two citizens of the same state." (internal quotation marks and citations omitted)).

The SAC alleges that Plaintiff is a Chinese citizen currently residing in California. SAC ¶ 1. As a Chinese citizen, Plaintiff is considered an alien for purposes of diversity jurisdiction. *See Tagger*, 951 F.3d at 125 (28 U.S.C. § 1332(a)(2) "does not confer diversity jurisdiction where a permanent resident alien sues a non-resident alien"); *One World, LLC*, 2021 U.S. Dist. LEXIS 9814, at *35 ("A lawful permanent resident domiciled in a state is not a citizen of that state—he is an alien for purposes of diversity jurisdiction."). The SAC alleges that all but one of the Defendants are foreign citizens.[4] SAC ¶¶ 2-15; *see also* Han Decl. ¶¶ 2, 11-22. Because there are aliens on both sides of the dispute, diversity jurisdiction is lacking, and the SAC must be dismissed for lack of subject matter jurisdiction.

## POINT III
## PLAINTIFF FAILED TO PROPERLY SERVE MOST DEFENDANTS

The SAC should be dismissed against nine of the Corporate Defendants[5] pursuant to Rule 12(b)(5) for insufficient service of process.  "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (citation

---

[4] The SAC alleges that HFRE LLC ("HFRE") is a New York limited liability company that "is managed by Defendant Mr. Han, and upon information and belief, owned by him as well." SAC ¶ 10; *see also id.* ¶ 56.  This is insufficient to plead HFRE's citizenship for purposes of diversity jurisdiction. *See United States Liab. Ins. Co. v. M Remodeling Corp.*, 444 F. Supp. 3d 408, 410 (E.D.N.Y. 2020) ("In pleading an LLC's citizenship, the identity and citizenship of each member has to be specifically alleged."); *Ixotic AG v. Kammer*, 2014 U.S. Dist. LEXIS 180782, at *47-48 (E.D.N.Y. Sept. 30, 2014) (complaint failed to allege diversity where plaintiff did not establish citizenship of members of defendant limited liability company).  At any rate, as discussed above, diversity is lacking even if HFRE is a New York resident.

[5] The nine Corporate Defendants are: (1) Hanfor Holdings Co., Ltd., (2) Beijing Nuoyuan Holdings Co., (3) Hanfor Capital Management Co., Ltd., (4) Nuoyuan Capital Management Company Ltd., (5) Bang Ze Industrial Co., Ltd. (CHINA), (6) BZ Industrial (Cayman Islands), (7) BZ Industrial Limited (Virgin Islands), (8) HF Capital Management Cay Inc., and (9) HF Cosmopolitan Beta L.P.

omitted).  Plaintiff bears the burden of proving proper service.  *Int'l Diamond Impos. Inc. v. Oriental Gemco Ny, Inc.*, 64 F. Supp. 3d 494, 506 (S.D.N.Y. 2014) (on Rule 12(b)(5) motion, "Plaintiff must prove the sufficiency of service.").  "[D]efective service [cannot] be ignored on the mere assertion that a defendant had 'actual notice.'" *Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V.*, 451 F. Supp. 2d 585, 589 (S.D.N.Y. 2006) (quotation omitted).

As relevant here, a corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" or "in the manner prescribed by Rule 4(e)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A)-(B).  Rule 4(e)(1) permits service by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Under New York law, "personal service upon a corporation . . . shall be made by delivering the summons. . . upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service."  CPLR § 311(a)(1).

Plaintiff apparently attempted to serve Hanfor Capital Management Co., Ltd., Nuoyuan Capital Management Company Ltd., Bang Ze Industrial Co., Ltd. (CHINA), and BZ Industrial (Cayman Islands) by leaving a copy of the Summons and Complaint with the doorman at 377 Rector Place, Mr. Han's previous residence. [6]  Even assuming that Mr. Han is an officer, director, managing or general agent of each of these Defendants, neither Rule 4(h) nor New York law allow service of a corporation by leaving the pleadings with a doorman at the residence of a corporate representative, as "service envisioned under CPLR 311(a)(1) is in-hand delivery to one

---

[6] Plaintiff has not filed an affidavit of service reflecting purported service on these entities.

8

of the specified corporate officers." *Spota v. White*, 2016 N.Y. Misc. LEXIS 4035, at *6 (Sup. Ct. Suffolk Cty. 2016); *see also Jubilee, Inc. v. Haslacha, Inc.*, 270 A.D.2d 34, 34 (1st Dep't. 2000) (service on corporation "required hand delivery to one of its officers, directors or other persons specified in CPLR 311(a)."); *Citadel Mgmt., Inc. v. Telesis Trust, Inc.*, 123 F. Supp. 2d 133, 145 (S.D.N.Y. 2000) (Service on corporation "should be by hand delivery. . . and is not proper where process is served upon the doorman or concierge of the corporation's building."). Thus, Plaintiff has not served the Foreign Defendants for whom she left copies of the pleadings with a doorman.

Plaintiff attempted to serve BZ Industrial Limited (Virgin Islands), HF Capital Management Cay Inc., and HF Cosmopolitan Beta L.P. at the office of George Xu, an accountant. *See* Declaration of George Xu, dated May 13, 2021 ("Xu Decl.") ¶ 3. Mr. Xu is not a director, manager, partner, officer, or employee of any of these entities. *See id.* ¶ 4. Thus, Plaintiff did not properly serve these Defendants as required under Rule 4(e)(1), (h) or CPLR 311. *See Dominguez v. B S Supermarket, Inc.*, 2016 U.S. Dist. LEXIS 167879, at *14 (E.D.N.Y. Dec. 1, 2016) (plaintiff did not properly serve corporate defendant by handing the pleadings to a person at its registered address because "[t]here has been no evidence presented to demonstrate that [the person] was either 'an officer, director, managing or general agent, or cashier or assistant cashier' as required by Fed. R. Civ. P. 4(e)(1). . . , nor has plaintiff shown that [the person] was an 'agent authorized by appointment of law' [as required by CPLR 311].").

Lastly, Plaintiff filed an affidavit asserting that Hanfor Holdings Co., Ltd. was served at an address in the British Virgin Islands (*see* Dkt. 44), but Hanfor Holdings Co., Ltd. is alleged to be a Chinese company with its registered address in Beijing, China. SAC ¶ 4. Service on a

9

Chinese company with a registered address in China by delivering the summons and complaint to a P.O. Box address in the British Virgin Island is insufficient.[7]

Accordingly, the SAC against these nine Corporate Defendants should be dismissed for insufficient service of process.

## POINT IV
## THE SAC SHOULD BE DISMISSED AGAINST THE CORPORATE DEFENDANTS FOR LACK OF PERSONAL JURISDICTION

The SAC should be dismissed against all of the Corporate Defendants except for HFRE (the "Foreign Companies") pursuant to Rule 12(b)(2) for lack of personal jurisdiction.  On a motion to dismiss under Rule 12(b)(2), the plaintiff bears the burden of making a *prima facie* showing that jurisdiction exists. *See Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34-35 (2d Cir. 2010).  The Court must undertake a two-step analysis: (1) whether there is a statutory basis for personal jurisdiction over a defendant, and (2) whether exercising personal jurisdiction is consistent with due process under the Constitution.  *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 129 (2d Cir. 2013); *see Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 605 (S.D.N.Y. 2016). Where, as here, a federal court sits in diversity, the court looks to the forum state's laws on jurisdiction. *See PDK Labs v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997).

Jurisdiction may be established on the basis of either specific or general jurisdiction. General jurisdiction "is based on a defendant's general business contacts with the forum, and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts," while specific jurisdiction exists "in a suit arising out of or related to the defendant's contacts with the forum."  *Porina v. Marward Shipping Co.*, 521 F. 3d 122, 128 (2d Cir. 2008) (internal quote and citations omitted).  Neither general nor specific jurisdiction exists

---

[7] Defendants are not aware of any attempt to serve Beijing Nuoyuan Holdings Co.

over the Foreign Companies, and the assertion of jurisdiction is inconsistent with due process.

### A.   Plaintiff Failed to Establish General Jurisdiction

Plaintiff cannot establish general jurisdiction because she cannot show that the Foreign Companies are "at home" in New York.  A company is subject to general jurisdiction pursuant to CPLR 301 if it "has engaged in such a continuous and systematic course of doing business in New York that a finding of its presence in New York is warranted."  *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014) (internal quotations and citations omitted).  The Foreign Companies are incorporated and maintain their principal places of business overseas.  Han Decl. ¶¶ 11-22; *see also* SAC ¶¶ 3-8, 11-15.  The Foreign Companies do not maintain a physical presence in New York, because they do not own or lease property, maintain offices or bank accounts, or have employees in New York. *Id.*[8]  Plaintiff cannot show that the Foreign Companies have such a continuous and systematic presence that they are subject to general jurisdiction in New York.

### B.   Plaintiff Failed to Establish Specific Jurisdiction

Plaintiff cannot show that the Foreign Companies are subject to specific jurisdiction. Specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Schentag v. Nebgen*, 2018 U.S. Dist. LEXIS 104065, at *42 (S.D.N.Y. June 21, 2018) (Woods, J.) (quotations omitted).  Specific jurisdiction exists under New York's long-arm statute when a claim arises against a non-domiciliary who "(1) transacts any business within the state or contracts anywhere to supply goods or services in

---

[8] BZ Industrial Limited (Virgin Islands), HF Capital Management Cay Inc., and HF Cosmopolitan Beta L.P. are authorized to do business in New York (SAC at ¶¶ 12-15), but that is not a submission to general jurisdiction. *See Bonkowski v. HP Hood LLC*, 2016 U.S. Dist. LEXIS 116492, at *8 (S.D.N.Y. Aug. 30, 2016); *Kerman v. Intercontinental Hotel Grp. Res. LLC*, 2021 U.S. Dist. LEXIS 46424, at *11 (E.D.N.Y. Mar. 11, 2021) (authorization to do business does not elevate defendant's "relationship with New York to the level of 'essentially at home.'").

the state; or (2) commits a tortious act within the state. . .; or (3) commits a tortious act without

the state causing injury to person or property within the state, or (4) owns, uses or possesses any

real property [in New York]."  CPLR 302(a). None of these provisions apply here.

*i.*     <u>Jurisdiction Does Not Exist for Plaintiff's Breach of Contract Claims</u>

Under CPLR 302(a)(1), New York may exercise jurisdiction over a foreign defendant

who "purposely availed himself of the privilege of conducting activities within New York and

thereby invoked the benefits and protections of its laws." *Schentag*, 2018 U.S. Dist. LEXIS

104065, at *48-49 (quotation omitted).  The Second Circuit has outlined the following factors to

be evaluated when determining if a defendant in a breach of contract claim transacts business in

New York:

> (i) whether the defendant has an on-going contractual relationship with a New York
> corporation; (ii) whether the contract was negotiated or executed in New York and
> whether, after executing a contract with a New York business, the defendant has visited
> New York for the purpose of meeting with parties to the contract regarding the
> relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether
> the contract requires franchisees to send notices and payments into the forum state or
> subjects them to supervision by the corporation in the forum state."

*Sunward Elecs. Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004).

None of these factors support a finding that the Foreign Companies transact business in

New York.  Plaintiff alleges that she resides in California, and the SAC is devoid of any

allegation that any Foreign Company has an on-going contractual relationship with a New York

company.  The contracts at issue were not negotiated or executed in New York since Plaintiff is a

Chinese citizen who confirmed she resided in China at the time of the contracts and now alleges

that she resides in California, and the contracting Defendant is a British Virgin Islands company

with no offices or employees in New York.  Han Decl. ¶ 8; SAC ¶ 1.  The choice of law clauses

in the agreements provide that they are governed by the laws of the British Virgin Islands and

12

require arbitration of disputes before the BAC.  Han Decl. ¶ 7.  Plaintiff alleges no facts to

support a finding that her claims arise from the Foreign Companies' transactions in New York.

<em>ii.</em>   <u>Jurisdiction Does Not Exist for Plaintiff's Tort Claims</u>

Plaintiff cannot establish long arm jurisdiction for her tort claims under CPLR 302(a)(2)

or 302(a)(3).[9] *See Allied Dynamics Corp. v. Kennametal, Inc.*, 956 F. Supp. 2d 276, 294

(E.D.N.Y. Sept. 4, 2013) ("A plaintiff's cause of action 'arises from' a defendant's New York

activities when those activities are 'substantially proximate to the alleged unlawful acts.'")

(quotations and citation omitted); *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d

405, 418 (S.D.N.Y. 2010) ("New York courts and the Second Circuit have consistently

interpreted 302(a)(2) jurisdiction narrowly, and have held that to qualify for jurisdiction under

this subsection, a defendant's act or omission must have occurred within the State." (internal

quotations and citations omitted)).

Plaintiff fails to establish jurisdiction under CPLR 302(a)(2) because she does not

identify any allegedly tortious actions taken by any Foreign Companies in New York.  Instead,

Plaintiff seems to rely on her contention that the corporate veil should be pierced, but this fails

since the SAC simply alleges that Mr. Han controls the corporate entities and asserts a vague

"belief" that he has used the companies to hide funds.  *See* SAC ¶¶ 53-59.  This is insufficient

since a complaint must include "specific facts or circumstances" to support a claim for piercing

the corporate veil.  *See, e.g.*, *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996).

As a result, Plaintiff cannot demonstrate that any of the Foreign Companies committed a tort

within New York and jurisdiction cannot be established under CPLR 302(a)(2).  *Lear v. Royal*

---

[9] "Although the New York Court of Appeals has held that 302(a)(1) is not limited to actions in contract, 302(a)(2) and 302(a)(3) are considered the more appropriate provisions for tort actions." *DirecTV Latin Am., LLC v. Park 610, LLC*, 691 F. Supp. 2d 405, 418 (S.D.N.Y. 2010) (citation omitted).

13

*Caribbean Cruises Ltd.*, 2021 U.S. Dist. LEXIS 67784, at *27 (S.D.N.Y. Apr. 7, 2021) (Woods, J.) ("Physical presence of Defendants in New York at the time the tortious act occurred is necessary to establish jurisdiction under Section 302(a)(2).").

Similarly, jurisdiction does not lie under CPLR 302(a)(3) since Plaintiff alleges that she is a Chinese citizen residing in California, thus conceding she is located outside of New York, and any injury would have occurred outside of New York. *See Affiliated FM Ins. Co. v. Kuehne + Nagel, Inc.*, 328 F. Supp. 3d 329, 340 (S.D.N.Y. 2018) ("Section 302(a)(3) covers only injuries that are direct and not remote or consequential, and the suffering of economic damages in New York is insufficient, alone, to establish a direct injury in New York for § 302(a)(3) purposes.") (internal quotations and citations omitted); *see also Tan v. SMS Inv. Group, LLC*, 2016 U.S. Dist. LEXIS 38851, at *33 (E.D.N.Y. Mar. 24, 2016) ("Courts determining whether there is injury in New York sufficient to warrant § 302(a)(3) jurisdiction must generally apply a situs-of-injury test, which asks them to locate the original event which caused the injury.") (internal quotations and citations omitted).  Consequently, Plaintiff has no basis to establish jurisdiction under CPLR 302(a)(3). [10]

### iii.   The Exercise of Jurisdiction Would Violate Due Process

Asserting jurisdiction over the Foreign Companies would violate due process.  To satisfy due process, defendants must have minimum contacts with the forum and the exercise of jurisdiction must be reasonable.  *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 573 (2d Cir. 1996).  As outlined above, except for the fact that three of the Foreign Companies are authorized to do business in New York, Plaintiff has alleged *no contacts* between the Foreign

---

[10] The Foreign Companies are not subject to personal jurisdiction under CPLR 302(a)(4) since they are not alleged to own, use, or possess any real property in New York. *See generally* SAC; *Elsevier Inc. v. Grossman*, 77 F. Supp. 3d 331, 346 (S.D.N.Y. 2015) (to assert jurisdiction based on ownership of property in New York, there must be "a relationship between the property and the cause of action sued upon.") (quotations and citations omitted).

14

Companies and New York.  Plaintiff alleges the corporate veil should be pierced, but as discussed above, that is incorrect.  Accordingly, Plaintiff cannot establish that the Foreign Companies have sufficient minimum contacts with New York, and jurisdiction over the Foreign Companies would be unreasonable and a violation of due process.

Courts "apply the five-factor test of *Asahi* [*Metal Industry Co, Ltd. v. Superior Court of California*, 480 U.S. 102 (1987)] to assess whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice."  *Metro. Life*, 84 F. 3d at 573 (quotation omitted).  These factors are "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies."  *George Moundreas & Co SA v. Jinhai Intelligent Mfg. Co*, 2021 U.S. Dist. LEXIS 9588, at *26 (S.D.N.Y. Jan. 18, 2021) (quotation omitted).

These factors confirm that the exercise of jurisdiction over the Foreign Companies would be unreasonable.  The exercise of jurisdiction over the Foreign Companies would impose significant burdens on them because they do not maintain any property, offices, or employees in New York (or even the United States).  Han Decl. ¶¶ 11-22.  Being forced to defend a litigation in a foreign country, when they are not alleged to have taken any actions in that jurisdiction, would place an undue burden on the Foreign Companies. *See King County v. IKB Deutsche Industriebank* AG, 769 F. Supp. 2d 309, 321 (S.D.N.Y. 2011) (exercising personal jurisdiction over defendants who live in Germany "would impose upon [them] an undue burden in terms of travel, expense, and time.")

The agreements at issue have no bearing on New York and thus New York has limited, if any, interest in adjudicating this case. *See Metro. Life*, 84 F. 3d at 574 (Vermont had "absolutely no interest" in a dispute where acts occurred in Texas, Missouri, and Florida).  Plaintiff's allegations arise out of an alleged investment in which she wired funds to the Cayman Islands, and the governing contracts were executed in China, involve the purchase of shares in a British Virgin Island company which would invest in a Cayman Islands company, and require arbitration of disputes in China. Han Decl., ¶¶ 5-7; SAC ¶ 29.  Although Plaintiff claims that she resides in California, *see* SAC, ¶ 1, she represented that she was a citizen and resident of China when she signed the contracts. Han Decl., ¶ 8.  Since witnesses and evidence are most likely to be in China, New York would not result in the most efficient resolution.  Finally, Plaintiff has not identified any social policies that support exercising jurisdiction in New York.

**POINT V**
**THE SAC SHOULD BE DISMISSED FOR FAILING TO STATE VIABLE CLAIMS**[11]

### A.    The Causes of Action for Breach of Contract Must Be Dismissed

The SAC's claims for breach of contract must be dismissed in whole or in part for failure to state a claim because it (1) has not alleged an actual breach; and (2) fails to allege a binding contract.  Ultimately, all of the breach of contract claims should be dismissed except for a claim that HF Holdings failed to pay dividends under the Shareholders Agreement.

---

[11] For many of the causes of action, Plaintiff has not specified against *which* defendant that particular cause of action is being asserted, instead appearing to rely on her claim that the corporate veil should be pierced.  However, Plaintiff has failed to state a claim for piercing the corporate veil as the SAC merely alleges a vague "belief" that Mr. Han used some of the corporate defendants to hide funds and the bald assertion that corporate formalities are not followed. *See* SAC ¶¶ 54, 58.  A plaintiff must "come forward with the showing of actual domination required to pierce the corporate veil," and fails to meet that burden where "the pleadings are devoid of *any* specific facts or circumstances" to support conclusory allegations.  *See De Jesus*, 87 F.3d at 70.  Plaintiff has failed to meet that burden, and accordingly has failed to state a claim for piercing the corporate veil.

16

i.      <u>The Alleged Failure to Provide Statements Is Not a Breach of the Agreement</u>

Plaintiff alleges two breaches of the Shareholders Agreement by HF Holdings – a failure to pay dividends and a failure to provide profit and loss statements. *See* SAC ¶¶ 65, 66. However, the Shareholders Agreement states that the Company will provide "a profit and loss statement and balance sheet for the Company, *unless the Directors determine that the annual accounts for a particular year or years need not be provided*." Han Decl., Ex. 2, SA at ¶ 10.1 (emphasis added). Thus, whether to provide annual profit and loss statements rests within the discretion of the Directors. Since Plaintiff has not alleged that the Directors abused their discretion by allegedly not providing annual profit and loss statements, Claim One must be dismissed to the extent that it is premised on any such failure.[12]

ii.      <u>The Email Exchanges Did Not Create Binding Contracts</u>

Plaintiff's second and third claims allege that after entering into the Shareholders Agreement, Plaintiff and another Defendant (presumably Mr. Han) entered into contracts whereby Mr. Han promised to (1) transfer stock to Plaintiff, *see* SAC ¶¶ 68-73, and (2) transfer the proceeds of the sale of stock to Plaintiff, *see id.* ¶¶ 74-77. Not only are these claims inconsistent, as Mr. Han could not deliver both the shares and the cash proceeds of the sale of the shares, but these informal email exchanges did not give rise to any legally binding obligations and do not comply with the Shareholders Agreement's requirement that any amendments require the written consent of HF Holdings.[13]

---

[12] If the Court concludes that the agreements do not require arbitration and Plaintiff's claims can proceed in this forum, then claims for breach of the agreements may be asserted only against the signatories to the agreements and should be dismissed against the other Defendants.

[13] It is unclear what law Plaintiff asserts applies to Claims Two and Three, or where Plaintiff or Mr. Han were located at the time the emails were exchanged, but Plaintiff alleges that she resides in California and Mr. Han is currently residing in New York. The Shareholders Agreement is governed by British Virgin Islands ("BVI") law. *See* Han Decl. Ex. 2, SA ¶ 13.11. BVI law, in turn, looks to English law. *See MBC Fin. Servs. v. Boston Merch. Fin., LLC*, 2016 U.S. Dist. LEXIS 140195, at *13 (S.D.N.Y. Oct. 4, 2016) (citing Virgin Is., The Common Law

9814671.15

The SAC's second claim is based on the allegation that "[b]y agreeing in the email dated November 4, 2019 to transfer Plaintiff's stock shares in NIO to her, Defendant Mr. Han created a contractual obligation to transfer Plaintiff's NIO stock shares held by Defendant on her behalf to Plaintiff." *Id.* ¶ 72.  The SAC's third claim is based on the allegation that an email from Mr. Han on June 5, 2020 that the NIO shares "had been sold two weeks prior," and that "Mr. Han would transfer the proceeds to Plaintiff" constituted a binding contract. *Id.* ¶ 45.  Neither of these emails created a binding contract, nor are they supported by independent consideration.

"Under both New York and English law, a contract is formed when all of the contracting parties express an intent to be bound and where all of the essential terms of the agreement have been spelled out."  *Int'l Minerals and Resources v. Pappas*, 96 F.3d 586, 593 (2d Cir. 1996); *accord Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) ("To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound." (quotation omitted)); *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1142 (N.D. Cal. 2013) ("To allege the existence of a contract, a plaintiff must plead mutual asset, sufficiently definite contractual terms, and consideration.").  The email exchanges upon which Plaintiff relies do not show any intent to be bound, nor do they spell out the essential terms of the agreement as they do not specify, *inter alia*, how many shares or how much money would be transferred or when the transfer would occur.  *See* Han Decl., Ex. 4.

Copies of the exchanges are not attached to or quoted in the SAC, although an uncertified translation of the November 4, 2019 email exchange was attached to Plaintiff's affidavit in support of her application for an attachment (Docket # 48, Ex. G-1).  The certified translation of the November 4, 2019 email attached to Mr. Han's declaration shows that Mr. Han was asking

---

(Declaration of Application) Act (Cap 13)). In any event, this Court need not engage in a choice of law analysis because Plaintiff fails to allege the existence of a binding contract under the law of any relevant jurisdiction.

about the possibility of transferring the shares given their share price at that time.[14]  *See* Han Decl. Ex. 4.  An inquiry about the possibility of transferring shares at their current price is far from a definite, binding agreement to transfer the shares.  In addition, to the extent that Plaintiff is claiming that the email exchanges constitute new contracts, they are lacking in consideration.  Accordingly, the emails did not create binding contractual obligations.

These claims must be dismissed even if the emails could constitute agreements. Plaintiff alleges that the emails require that she receive shares or cash that she claims she is owed as a result of her investment.  That investment is governed by the Shareholders Agreement which contains explicit provisions regarding distributions and dividends (*see*, *e.g.*, Han Decl., Ex. 2, SA at ¶ 3.1(b)), so the alleged email agreements would constitute amendments of the Shareholders Agreement.  Amendments to the Shareholders Agreement must be made with the "written consent" of "the Company."  *See* Han Decl., Ex. 2, SA at ¶ 12.  Since Plaintiff fails to allege that HF Holdings Limited consented to the amendments in writing, they are ineffective and the provisions in the Shareholders Agreement regarding distributions and dividends control, and Claims Two and Three must be dismissed.

### B.    The Fourth Cause of Action for Unjust Enrichment Must Be Dismissed

The Fourth Cause of Action asserts a claim for unjust enrichment. To prevail on this claim under New York law,[15] a plaintiff must establish: "(1) the defendant benefitted; (2) at the plaintiff's expense; and (3) equity and good conscience require restitution." *Minnie Rose LLC v. Yu*, 169 F. Supp. 3d 504, 521 (S.D.N.Y. 2016); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011).  "Unjust enrichment is a quasi-contractual claim that 'ordinarily can be maintained only in the absence of a valid, enforceable contract.'" *Ellington Credit Fund v. Select*

---

[14] Mr. Han has been unable to locate a copy of the purported June 5, 2020 email exchange.  Han Decl. ¶ 9.
[15] Plaintiff previously asserted that New York law applies to her tort claims. *See* Docket # 59 at 39-41.

*Portfolio Serv.*, 837 F. Supp. 2d 162, 202 (S.D.N.Y. 2011) (quoting *Ohio Players, Inc. v. Polygram Records, Inc.*, 2000 U.S. Dist. LEXIS 15710, at *4 (S.D.N.Y. Oct. 27, 2000)).

Where, as here, a contract governs a transaction, a plaintiff cannot succeed on an unjust enrichment claim.  *See*, *e.g.*, *Diesel Props. Srl v. Greystone Bus. Credit*, 631 F.3d 42, 54 (2d Cir. 2011) (affirming dismissal of unjust enrichment claim "[i]n light of the agreements among the parties."); *Ellington Credit Fund*, 837 F. Supp. 2d at 203 ("[T]he existence of a valid and binding contract governing the subject matter at issue in a particular case *does* act to preclude a claim for unjust enrichment" (quotations omitted)). The SAC readily admits that Plaintiff seeks return of an investment she made pursuant to a Shareholders Agreement and a Share Purchase Agreement. *See* SAC ¶¶ 17, 30, 42, 49, 80-81. Accordingly, since the underlying transaction is governed by these agreements, Plaintiff cannot succeed on her claim for unjust enrichment.

Even if there were no governing contracts, the SAC still fails to state a claim for unjust enrichment. The SAC alleges that HF Holdings invested in NIO, consistent with the relevant agreements, and subsequently sold NIO shares which Plaintiff claims "belong" to her pursuant to the investment agreements. *See id.* ¶¶ 30, 33, 36, 80-81. The SAC then leaps to the conclusion that because Plaintiff has not received "any proceeds from any defendant, neither the shares nor the proceeds of the sale,…. Defendant has been unjustly enriched." *Id.* ¶¶ 81-82.[16] This is undermined by the SAC's admission that Plaintiff does not know whether the shares exist or were even sold.  *See id.* ¶¶ 17, 47. The SAC's conclusory allegations are insufficient to establish that any Defendant was unjustly enriched at Plaintiff's expense. "Without sufficient facts,

_____

[16] It is not entirely clear against which of the Defendants Plaintiff brings this claim. The SAC alleges "Defendant has been unjustly enriched," but does not specify to which of the 14 Defendants Plaintiff is referring. *See* SAC ¶ 82. This is another reason why this claim should be dismissed.

conclusory allegations that fail to establish that a defendant was unjustly enriched at the expense of a plaintiff warrant dismissal." *Mandarin Trading Ltd.*, 16 N.Y.3d at 183.

### C.    The Fifth Cause of Action for Conversion Must Be Dismissed

To establish a claim for conversion under New York law,[17] a plaintiff must demonstrate: "(1) the property subject to conversion is a specific identifiable thing; (2) plaintiff had ownership, possession or control over the property before its conversion; and (3) defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *AD Rendon Comm'cns, Inc. v. Lumina Ams. Inc.*, 2007 U.S. Dist. LEXIS 75625, at *12 (S.D.N.Y. Oct. 9, 2007) (quoting *Moses v. Martin*, 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004)). Where the property is money, a conversion claim exists only if there is a specific, identifiable fund and an obligation to return or otherwise treat that specific fund in a particular manner. *In re Clark*, 146 A.D.3d 495, 496 (1st Dep't 2017); *Heckl v. Walsh*, 122 A.D.3d 1252, 1254-55 (4th Dep't 2014). Moreover, a conversion claim cannot be maintained where a contract governs the transaction. *See AD Rendon Comm'cns, Inc.*, 2007 U.S. Dist. LEXIS 75625, at *12-13 ("[E]ven if a plaintiff meets all of the elements of a conversion claim, the claim will be dismissed if it is duplicative of a breach of contract claim."). In other words, "[a] conversion claim may only succeed…if a plaintiff alleges wrongs and damages distinct from those predicated on a breach of contract." *Ellington Credit Fund,* 837 F. Supp. 2d at 204.

Plaintiff's conversion claim is duplicative of her breach of contract claims. In determining whether a claim for conversion is duplicative of a breach of contract claim, "courts look both to the material facts upon which each claim is based and to the alleged injuries for

---

[17] Plaintiff previously asserted that New York law applies to her tort claims. (*See* Docket # 59 at 39-41).

which damages are sought." *Ellington Credit Fund, LTD.*, 837 F. Supp. 2d at 204 (quotation omitted).  Plaintiff's claims for breach of contract and conversion are based on the same facts: Plaintiff's alleged investment and Defendants' purported failure to compensate or reimburse Plaintiff in accordance with the investment agreements. *See* SAC ¶¶ 61, 65, 69-77, 84-85. Furthermore, the SAC fails to establish conversion damages that are distinct from breach of contract damages, as both claims essentially seek reimbursement for Plaintiff's investment. *See, e.g.*, *id.* ¶¶ 65, 71-73, 77, 85. Courts have dismissed conversion claims in similar circumstances. *See, e.g.*, *Ellington Credit Fund, LTD*, 837 F. Supp. 2d at 204 (dismissing conversion claim where "the same facts make up the breach of contract and conversion claims" and plaintiffs "ha[d] not established any conversion damages distinct from the breach of contract claim"); *AD Rendon Comm'cns., Inc.*, 2007 U.S. Dist. LEXIS 75625, at *14-15 (dismissing conversion claim where "the same facts make up [plaintiff's] contract claim and conversion claim" and "both the conversion and breach of contract claims seek redress for virtually the same damages").

The conversion claim must be dismissed even if it were not duplicative of the breach of contract claims, as the SAC fails to adequately allege the required elements of conversion. The SAC does not sufficiently allege that Plaintiff had ownership, possession or control over the NIO shares or any funds stemming from the purported improper sale of the shares. *See Mumin v. Uber Techs., Inc.*, 239 F. Supp. 3d 507, 537-38 (E.D.N.Y. 2017) (dismissing conversion claim where plaintiffs "ha[d] not alleged that they had ownership, possession, or control of their gratuities before their alleged conversion"). To the contrary, the SAC alleges that Plaintiff invested $2 million in the Ruili Weixin Project—not NIO—pursuant to a Shareholders Agreement and Share Purchase Agreement, receiving in exchange an interest in HF Holdings Limited and entitling her to Distributive Investment Proceeds, which interest she still has. *See* SAC ¶¶ 30, 32-33, 36, 64,

22

84. In other words, Plaintiff's ownership interest was in, and continues to be in, HF Holdings Limited, not the NIO shares or funds relating to the alleged sale of said shares. Similarly, because Plaintiff fails to sufficiently allege that she had ownership, possession or control over this property, she cannot establish that Defendants exercised unauthorized dominion over it.

The SAC also fails to allege that the purportedly converted property is "capable of being identified as if they were specific chattel." *Mumin*, 239 F. Supp. 3d at 537-38; *see also Clark*, 146 A.D.3d at 496 ("[A] conversion claim was not stated since there are no allegations that the money given to the [defendants] by decedent was specifically identifiable, was obligated to be returned, or otherwise treated in a particular manner."); *Heckl*, 122 A.D.3d at 1255 ("[T]he sums allegedly converted here do not constitute the type of specific, identifiable fund that would support a conversion cause of action."). It is not clear what property Defendants allegedly converted. The SAC alleges that "Mr. Han appropriated Plaintiff's assets by failing to transfer the NIO shares to Plaintiff, or to return the proceeds after he claims the shares were sold." SAC ¶ 85. At the same time, however, the SAC provides almost no details or information with respect to the NIO shares allegedly converted and, in fact, concedes that Plaintiff is not sure whether the shares exist or were sold. *See id.* ¶¶ 17, 47. And while Plaintiff alleges that Mr. Han used her assets to purchase properties in New York City, the SAC offers no plausible basis to conclude that the properties were purchased using Plaintiff's property, instead relying on speculation. *See id.* ¶¶ 86-89. At best, Plaintiff asserts an alleged obligation to be reimbursed for her investment, which is not a viable conversion claim. *Mumin*, 239 F. Supp. 3d at 538 n.20; *see also Barker v. Amorini*, 121 A.D.3d 823, 825 (2d Dep't 2014) ("[M]ere right to payment cannot be the basis for a cause of action alleging conversion since the essence of a conversion cause of action is the unauthorized dominion over the thing in question." (internal quotes and citations omitted)).

23

**D.      The Sixth Cause of Action for Breach of Fiduciary Duty Must Be Dismissed**

To establish a breach of fiduciary duty claim under New York law,[18] a plaintiff must

show: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages

resulting therefrom."  *N. Shipping Funds I, LLC v. Icon Cap. Corp.*, 921 F. Supp. 2d 94, 101

(S.D.N.Y. 2013).  Plaintiff does not adequately allege that a fiduciary duty exists between herself

and any of the Defendants.  Plaintiff asserts only that she invested money with one or more of

the Defendants and "that this reliance created a fiduciary duty." SAC ¶ 89. The SAC does not

specify what "reliance" it refers to. "New York law is clear that a conventional business

relationship, without more, does not become a fiduciary relationship by mere allegation."

*Ellington Credit Fund, LTD.*, 837 F. Supp. 2d at 194 (quotation omitted); *see also Zorbas v.*

*United States Trust Co. N.A.*, 48 F. Supp. 3d 464, 479 (E.D.N.Y. 2014) ("By their nature, arms-

length commercial transactions ordinarily do not involve relationships defined by the New York

courts as fiduciary.") (citation omitted).  A "higher level of trust than is normally present

between those involved in an arm's-length business transaction" is required to establish a

fiduciary relationship.  *Bos. Consulting Grp., Inc. v. NCR Corp.*, 2020 U.S. Dist. LEXIS 175812,

at *7 (S.D.N.Y. Sept. 24, 2020).  Plaintiff, who confirmed that she was a sophisticated investor

(*see* Han Decl., Ex. 3 at 2-1), alleges that she entered into an arm's length investment

transaction, and that does not give rise to a fiduciary duty. *See Henneberry v. Sumitomo Corp. of*

*Am.*, 2005 U.S. Dist. LEXIS 7475, at *46 (S.D.N.Y. Apr. 26, 2005) ("[T]here is generally no

fiduciary relationship between sophisticated parties involved in an arm's length transaction.")

---

[18] Plaintiff previously asserted that New York law applies to this claim even though the Foreign Defendants are not New York companies. (*See* Docket # 59 at 40-41)**.**  The Foreign Defendants are incorporated under the laws of China, the Cayman Islands or the British Virgin Islands (SAC ¶¶ 3-15), and this claim should be dismissed because the SAC does not allege that the Foreign Defendants could or do owe Plaintiff a fiduciary duty under the laws of their countries of incorporation.  *See Marino v. Grupo Mundial Tenedora S.A.*, 810 F. Supp. 2d 601, 607 (S.D.N.Y. 2011) ("New York applies the internal affairs doctrine to claims for breach of fiduciary duty and, thus, applies the law of the state of incorporation to such claims.")

Additionally, there is no fiduciary duty when a contract governs the subject matter absent special circumstances. *See Zorbas*, 48 F. Supp. 3d at 478-79 ("[N]ormally where there is a contract between the parties, no fiduciary duty beyond the terms of the contract will be found."). Plaintiff's breach of fiduciary duty claim is based on Defendants' alleged handling of Plaintiff's investment, including purported failures to transfer NIO stock, provide a return on Plaintiff's investment, and provide disclosures allegedly required by the investment agreements. *See* SAC ¶¶ 89-95.  These allegations are duplicative of the breach of contract claims, and thus the breach of fiduciary duty claim should be dismissed.  *See Atlantis Info. Tech. v.CA Inc.*, 485 F. Supp. 2d 224, 232 (E.D.N.Y. 2007) ("Even if the Court were to find that the Plaintiff adequately pleaded the existence of a fiduciary relationship, the Court nevertheless would grant the motion to dismiss because the breach of fiduciary duty claim is based upon the same allegations contained in the first count of the amended complaint to recover damages for breach of contract.").

## **CONCLUSION**

The Defendants respectfully request that the Court grant their motion to dismiss and to compel arbitration and grant such other and further relief as is just and equitable.

Dated: New York, New York
       May 14, 2021

Respectfully submitted by,

CARTER LEDYARD & MILBURN LLP

By: ____*/s/ Jeffrey S. Boxer*_____
       Jeffrey S. Boxer
       Madelyn K. White
Two Wall Street
New York, New York 10005
Tel. (212) 732-3200
Fax (212) 732-3232
Email boxer@clm.com/ white@clm.com

*Attorneys for Defendants*

25