**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| JING ZHANG,<br><br>Plaintiff,<br><br>-against-<br><br>XUEYUAN HAN, HANFOR HOLDINGS CO., LTD., HF HOLDINGS LIMITED, BEIJING NUOYUAN HOLDINGS CO., HANFOR CAPITAL MANAGEMENT CO., LTD., NUOYUAN CAPITAL MANAGEMENT COMPANY LTD, JUNJUN FENG, BANG ZE INDUSTRIAL CO., LTD. (CHINA), BZ INDUSTRIAL LIMITED (VIRGIN ISLANDS), BZ INDUSTRIAL (CAYMAN ISLANDS), HANFOR (CAYMAN) LIMITED, HFRE LLC, HF CAPITAL MANAGEMENT CAY INC., AND HF COSMOPOLITAN BETA L.P.,<br><br>Defendants. |

Dkt. No. 1:21-cv-01625-GHW

## PLAINTIFF'S MEMORANDUM OF LAW IN

## OPPOSITION TO DEFENDANT'S MOTION TO DISMISS AND TO COMPEL

## ARBITRATION

Paul A. Gilmer, Esq.
Wong, Wong, & Associates, P.C.
150 Broadway, Suite 1588
New York, NY 10038
Tel. (212) 566-8080
Fax. (212) 566-8960

*Attorneys for Plaintiff*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 1

ARGUMENT ................................................................................................................................. 5

    A.  The Causes of Action in the Second Amended Complaint are Sufficiently Pled............... 5

        1.  Breach of Contract ................................................................................................ 5

        2.  Breach of Fiduciary Duties .................................................................................. 9

        3.  Unjust Enrichment ............................................................................................. 11

        4.  Conversion .......................................................................................................... 12

    B.  Subject Matter Jurisdiction is Proper in this Action ......................................................... 12

    C.  This Court has Personal Jurisdiction over All Defendants ............................................... 17

        1.  General Jurisdiction ........................................................................................... 17

        2.  Specific Jurisdiction ........................................................................................... 18

        3.  Due Process ......................................................................................................... 19

    D.  All Defendants were Properly Served ............................................................................... 20

    E.  The Motion for Arbitration should be Denied .................................................................. 29

        1.  Arbitration before the Beijing Arbitration Commission is de jure and de facto
            Impossible ........................................................................................................... 33

CONCLUSION ............................................................................................................................ 35

## TABLE OF AUTHORITIES

Cases ................................................................................................................................Pages

Abdullahi v. Pfizer, Inc.
    562 F.3d 163, 169 (2d Cir. 2009) .................................................................................... 4

Apple & Eve, LLC v. Yantai N. Andre Juice Co.
    610 F. Supp. 2d 226, 228 (E.D.N.Y. 2009) ................................................................. 33

Applied Energetics, Inc. v. NewOak Capital Markets
    LLC, 645 F.3d 522, 526 (2d Cir. 2011) ............................................................... 30, 31

Asahi Metal Industry Co, Ltd. v. Superior Court of California
    480 U.S. 102 (1987) ...................................................................................................... 19

Austrian Lance & Steward, P.C. v. Rockefeller Center, Inc.
    163 AD2d 125, at *128-30 (1st Dept., 1990) ............................................................... 23

Belofatto v Marsen Realty Corp.
    62 Misc 2d 922 (1970) ................................................................................................. 26

Bensadoun v. Jobe-Riat
    316 F.3d 171, 175 (2d Cir. 2003) ................................................................................ 30

Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.
    448 F.3d 573, 586 (2d Cir. 2006) ................................................................................ 11

Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co.
    189 F.3d 289, 294 (2d Cir. 1999) ................................................................................ 29

Citadel Management
    123 F. Supp. 2d 133, at *145-46 (S.D.N.Y., 2000) ................................................ Passim

Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.
    70 N.Y.2d 382, 388, (N.Y. 1987) ................................................................................ 11

Cohen v. BMW Invs. L.P.
    144 F. Supp. 3d 492 (S.D.N.Y. 2015) ........................................................................ 19

Conopco, Inc. v. Wathne Ltd.
    190 A.D.2d 587, 588 (1st Dept. 1993) .......................................................................... 7

Contractual Obligation Prods., LLC v. AMC Networks, Inc.
    2006 U.S. Dist. LEXIS 16402 (S.D.N.Y. 2006) ........................................................ 12

Dominguez v. B S Supermarket, Inc.
  2016 U.S. Dist. LEXIS 167879 (E.D.N.Y., 2016) ............................................... 25, 28

Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont
  565 F.3d 56, 63 (2d Cir.2009) ................................................................. 13

Fashion Page Ltd. v. Zurich Insurance Co
  50 N.Y.2d 265, 272-273, .......................................................................... 24

First Options of Chicago, Inc. v. Kaplan
  514 U.S. 938, 944 (1995) ............................................................................ 5

Four Seasons Hotels v. Vinnik
  127 A.D.2d 310, 317 (1st Dept. 1987) ........................................................ 7

Freedom Holdings, Inc. v. Spitzer
  357 F.3d 205, 216 (2d Cir. 2004) ............................................................... 4

Glencore Ltd. v. Degussa Engineered Carbons L.P.
  848 F. Supp. 2d 410, 421 (2d Cir. 2012) ................................................... 31

Granite Rock of Chicago v. Int'l Brotherhood of Teamsters
  130 S.Ct. 2847, 2859 (2010) .................................................................... 31

Greenfield v. Philles Records
  98 N.Y.2d 562, 569 (2002); RIS Assoc. v. N.Y. Job Dev. Auth., 98 N.Y.2d 29, 32 (2002) ...... 6

Grunblatt v. UnumProvident Corp.
  270 F. Supp. 2d 347, 352 (E.D.N.Y. 2003) ............................................... 15

Henneberry v. Sumitomo Corp. of Am.
  2005 U.S. Dist. LEXIS 7475, at *46 (S.D.N.Y. Apr. 26, 2005) ............... 10

Howsam v. Dean Witter Reynolds
  537 U.S. 79, 83, 123 S. Ct. 588, 591 (U.S. 2002). .................................... 32

In re Barbara
  7 A.D.2d 340, 343 (3rd Dept., 1959) ....................................................... 27

Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd.
  475 F. Supp. 2d 456 (S.D.N.Y. 2007) ...................................................... 18

Jeong-Suk No v. Salvation Army
  2020 U.S. Dist. LEXIS 20979 at 5, 6 (S.D.N.Y 2020) ............................ 13

JSO Assocs. v. Price, 2008
  N.Y. Misc. LEXIS 2227, *10 (N. Y. Sup. Ct., 2008) ....................................... 21, 25

Jubilee, Inc. v. Haslacha, Inc.
  270 A.d.2d 34, 34 (1st Dept., 2000) ........................................................... 23

Klos v. Polskie Linie Lotnicze
  133 F.3d 164, 168 (2d Cir. 1997) ............................................................... 32

Koch v. Christie's Intern. PLC
  699 F.3d 141, 145 (2d Cir. 2012) ............................................................... 4

Kuhlik v. Atlantic Corp .................................................................... 24, 26

Lake Constr. & Dev. Corp. v. City of New York
  211 A.D.2d 514, 515 (1st Dept. 1995) ........................................................ 7

Maalouf v. Salomon Smith Barney, Inc.
  2003 U.S. Dist. LEXIS 591 (S.D.N.Y. 2003) ............................................... 11

Manhattan Sav. Bank v. Annunziato
  268 A.D. 672, 675, (1st Dept., 1915) ........................................................ 27

Mejia v. Barile
  485 F. Supp. 2d 364, (S.D.N.Y. 2007) ...................................................... 13

MRS Prop. Invs., Inc. v. Bivona
  2021 U.S. Dist. LEXIS 84402, *7 (E.D.N.Y., 2021) .................................... 22

MWH Int'l, Inc. v. Inversora Murten, S.A.,
  2015 U.S. Dist. LEXIS 24129 (S.D.N.Y. 2015) ......................................... 17

Nouinou v. Guterres
  2020 U.S. Dist. LEXIS 198716, 2020 WL 6275021(S.D.N.Y 2020) .................. 14

One World, LLC v. Onoufriadis
  2021 U.S. Dist. LEXIS 9814 (S.D.N.Y. 2021) ........................................... 15

Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc.
  497 F. Supp. 2d 541, 557 (S.D.N.Y. 2007) .............................................. 11

Pellot v. Pellot
  305 A.D.2d 478 (2d Dept. 2003) ............................................................. 6

Perez v. Garcia
  8 Misc 3d 1002(A), 2005 NY Slip Op 50902(U), *2-*3 ............................... 22

Register.com, Inc. v. Verio, Inc.
   356 F.3d 393, 427 (2d Cir. 2004) ................................................................. 30

Guaranty Trust Co. v. York
   326 U.S. 99 (1945) ..................................................................................... 16

Simon v. KeySpan Corp.
   694 F.3d 196, 201 (2d Cir. 2012) ................................................................. 4

Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l, Inc.
   198 F.3d 88, 90 (2d Cir. 1999) .......................................................... 29, 31

Spota v. White .......................................................................................... 22

Tagger v. Strauss Grp. Ltd. ...................................................................... 14

Transcience Corp. v. Big Time Toys, LLC
   50 F. Supp. 3d 441, 452-53 (S.D.N.Y. 2014) ........................................... 11

U.S. Bank Nat. Ass'n v. Ables & Hall Builders
   582 F. Supp. 2d 605, 606 (S.D.N.Y. 2008) (Chin, J.) ................................. 4

Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.
   517 F.3d 104, 115 (2d Cir. 2008) ................................................................. 4

Walsh v. WOR Radio
   537 F. Supp. 2d 553, 555 (S.D.N.Y. 1992) ............................................... 30

Weg v Kaufman
   159 A.D.3d 774, 777 (N.Y. App. Div. 2d Dep't 2018) ................................. 6

**Statutes**

28 U.S. Code § 1332(2) ............................................................................ 13

9 U.S.C.S. § 1 et seq ................................................................................ 29

CPLR § 308(4) .......................................................................................... 23

CPLR § 311 ............................................................................................... 20

Fed. R. Civ. P. 12(b)(6) .............................................................................. 4

Fed. R. Civ. P. 4(h)(1)(A)-(B) .................................................................... 20

**Other Authorities**

No. 129 of "Minutes of the National Civil and Commercial Trial Work Conference of the
 Courts".................................................................................................................... 34

## I.   PRELIMINARY STATEMENT

In this case, the Plaintiff, a permanent resident of the United States and resident of California, seeks the return of her investment, which has been evidenced through various documents. In their motion, Defendants have raised multiple arguments challenging the jurisdiction of this court, the sufficiency of various causes of action and of service of process. Defendants' motion also seeks to compel arbitration. However, despite Defendants' arguments to the contrary, jurisdiction is proper, the Defendants were properly served, no enforceable arbitration clauses apply to the parties' dispute, and the remaining causes of action are sufficiently pled. For these reasons, the motion to dismiss and to compel arbitration should be denied.

## II.    STATEMENT OF FACTS

Plaintiff, Jing Zhang ("Ms. Zhang"), is a permanent resident of the State of California, and a citizen of the People's Republic of China ("China"). Defendant Xueyuan Han ("Mr. Han"), who directly or indirectly owns and controls a series of corporations, most of which are shell corporations, throughout China, the British Virgin Islands, the Cayman Islands, and New York, as delineated in the Second Amended Complaint ("SAC").

Plaintiff Ms. Zhang, an unsophisticated investor with limited English-speaking ability, was approached by Mr. Han's employees in as early as 2016 and invited to invest money in investment projects crafted by Mr. Han. Mr. Han claimed that he started his career in investment management in 2006 and presented himself as a successful investor with connections to many attractive investment opportunities. By 2017 Mr. Han packaged himself as a successful investment manager, managing billions of dollars' worth of investment assets. In 2017, Ms. Zhang was approached by Mr. Han's employees from Nuoyuan Capital Management with an

offer to invest money in pre-IPO stock shares of NIO Inc., an electronic automobile company positioning itself to be the next Tesla, and expected to make an IPO in the near future in New York, and to produce a significant return on investment. In reliance on such representations and at the employees' direction, Ms. Zhang wired two million dollars from her HSBC Hong Kong account to an account in the British Virgin Islands designated by HF Holdings before any agreement was signed. These funds were intended to be used to invest in stocks of  NIO which would be traded in the New York Stock Exchange following the IPO. Later, Mr. Han's employees presented Ms. Zhang with two documents and instructed her to sign them as part of her investment. The two documents, the Class B Share Purchase Agreement ("SPA") and Shareholder Agreement ("SA"), referred to Ms. Zhang's purchase of two million Class B shares of HF Holdings Limited, worth $2,000,000.00 (two million dollars). Both agreements have Hanfor Capital's name in Chinese on the header of each page and were signed by Lu Guo as the director of HF Holdings Limited. Ms. Guo also signed the SA as the director of HF Capital Management CAY, Inc. which is Class A shareholder of HF Holdings Limited.  Both agreements are in English; Plaintiff was never provided with a Chinese translation of the agreements. The agreements were pre-signed and sent to Plaintiff by mail in or around June 2017. Plaintiff later was provided with a Confirmation of Fund Interests with a company seal reading "Hanfor (Beijing) Capital Management" in Chinese. The Confirmation of Fund Interests contained an authorized signature in English of "HF Capital Management CAY, Inc. for and on behalf of HF Holdings Limited." Plaintiff has never received any dividend for the class B shares per the SA.

Mr. Han and HF Holdings Limited never performed their obligations under the SPA and SA – they never provided any information to Ms. Zhang about her investment, including but not limited to, annual or periodic financial statements, as required by the agreements. In or around

2018 the Chinese authorities started a criminal investigation, which is still ongoing, of Mr. Han's investment companies, including Nuoyuan Capital Management and Hanfor, leading to the arrest of Nuoyuan Capital's general manager Yanwu Li. Having learned about the criminal investigations, Mr. Han fled to the U.S. four months before the arrest, and channeled Ms. Zhang's money, to the U.S. through this investment scheme. While such funds were iniitionally intended, per the parties' agreements, to be invested in New York, after Mr. Han fled from China he instead began to use the funds he channeled to the United States to fund his lifestyle and purchases of real estate in New York and luxury vehicles.

Since 2018 Ms. Zhang contacted Mr. Han multiple times, including through her agent Jun Zhou, as well as through a now former Nuoyuan Capital Management's asset manager, Ms. Ya'nan Ding who contacted Mr. Han on Ms. Zhang's behalf, inquiring about the return on her investment, and urging distribution of the proceeds or the transfer of the equity shares of NIO equal to her $2 million USD investment. Defendant Mr. Han has failed to provide Plaintiff with any explanation as to why she had not yet received the return on her investment or information regarding the same. In an email dated November 4, 2019, Mr. Han confirmed that Ms. Zhang had around 500,000 shares of NIO stock purchase with her $2 million investment and offered to transfer the stock shares to her as an alternative to satisfy his contractual obligations.  Ms. Zhang accepted the offer and later provided her stock trading account information with HSBC for the transfer as Han offered. However, Mr. Han never transferred the stock shares to Ms. Zhang's stock trading account. In an email dated June 5, 2020, Mr. Han stated that all NIO shares were sold and offered to transfer the cash proceeds to Ms. Zhang. Mr. Han asked for her bank information to complete the transfer in the same email which she provided on July 16, 2020.  Mr. Han has never transferred the cash proceeds to Ms. Zhang. In fact, after the bank information

was provided, it became apparent that Mr. Han never intended to transfer the NIO shares or the cash proceeds. Instead, by making those promises, it seems that Mr. Han was trying to obtain more time to dissipate Ms. Zhang's assets.

## III.   ARGUMENT

The SAC made a prima facie showing that defendants breached not only the Shareholder Agreement and Share Purchase Agreement, but also the subsequent two agreements established and memorialized through emails and WeChat messages.  On a motion to dismiss, the Court must assume that all of the facts alleged in the Amended Complaint are true, construe those facts in the light most favorable to Plaintiffs, and draw all reasonable inferences in favor of Plaintiffs. *See Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 169 (2d Cir. 2009); *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008); *U.S. Bank Nat. Ass'n v. Ables & Hall Builders*, 582 F. Supp. 2d 605, 606 (S.D.N.Y. 2008) (Chin, J.); *Koch v. Christie's Intern. PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  "'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.'"  *Simon v. KeySpan Corp.,* 694 F.3d 196, 201 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted)).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Simon*, 694 F.3d at 201 (quoting *Iqbal*, 556 U.S. at 678).  A complaint cannot be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 216 (2d Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

A.  **The Causes of Action in the Second Amended Complaint are Sufficiently Pled**

1.  *Breach of Contract*

As pled within the complaint, the email exchanges of the parties made manifest their intention to create two separate binding contracts, first, an agreement to transfer stock to Ms. Zhang, and subsequently to transfer the sale proceeds of stock to Ms. Zhang, both acting as executive accord agreements of the original investment contract. On page 18 of Defendants' Memorandum of Law, Defendants argue that the email exchanges did not constitute a contract, as Mr. Han's email dated November 4, 2019, was only asking about the possibility of transferring the shares.[1]  *See* Han Decl. Exh. 4.  However, as this is just the pleading stage, every positive inference must be granted to the Plaintiff that the conduct of the two parties, as memorialized by the email exchanges and other communications, constitutes an executive accord. At this stage in this action, not all communications between the parties evidencing the formation of the contracts has been presented, and additional emails and the conduct of both parties demonstrate that there was an accord between the parties.

Defendants' argument that the email exchanges did not layout essential terms of the agreement is based on a misreading of the email exchanges. Federal courts apply state law applies to the questions of contract formation. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  In New York, "an email message can constitute a binding contract if it

---

[1] Defendants' footnote 13 alleges that it was unclear where Mr. Han located at the time the emails were exchanged. In his declaration, Mr. Han claimed that he moved to United States in 2018. *See* Han Decl. ¶1. All the email exchanges happened after 2019 when Mr. Han already came to the United States.  Thus, the contract is created within United States. Federal courts apply state law applies to the questions of contract formation. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Thereby the two accord agreements are governed by New York Law.

sets forth the material terms of the agreement, and contains an expression of mutual assent." *Weg v Kaufman*, 159 A.D.3d 774, 777 (N.Y. App. Div. 2d Dep't 2018). Mutual assent need not be signified in writing; "[t]he manifestation or expression of assent necessary to form a contract may be by word, act, or conduct which evinces the intention of the parties to contract." *Id.* (quotation marks omitted).

In the email dated November 4, 2019, Mr. Han explicitly admitted that "current calculation shows the client has about 500,000 shares." Mr. Han was replying an email from Ya'nan Ding, an asset manager of Nuoyuan Capital who was working as a purported agent of Ms. Zhang, to ask about the progress of NIO stock transfer which Mr. Han admitted belonged to Ms. Zhang's shares in his November 4 email. By clarifying the number of NIO shares that Ms. Zhang was entitled and confirmed as "now transfer the stocks to the client", Mr. Han accepted Ms. Zhang's offer to settle their dispute for her $2 million investment as the principal of HF Holdings. Plaintiff's implicit waiver of their ownership of the Class B shares worth two million dollars of HF Holdings in exchange of Mr. Han's promise to transfer NIO stock is the consideration of this agreement and expressed her consent by providing her brokage account number to Defendant Mr. Han in response.

In determining the rights and obligations of parties to a written instrument, courts will enforce the agreement according to its terms when the agreement "is complete, clear and unambiguous on its face." *Greenfield v. Philles Records*, 98 N.Y.2d 562, 569 (2002); *RIS Assoc. v. N.Y. Job Dev. Auth.*, 98 N.Y.2d 29, 32 (2002). The aim of the court when interpreting a written instrument is to arrive at a construction that gives fair meaning to all of its terms and provisions, and to reach a "practical interpretation of the expressions of the parties so that their reasonable expectations will be realized." *Pellot v. Pellot*, 305 A.D.2d 478 (2d Dept. 2003). Courts do so by

employing "an objective test," which "means that the manifestation of a party's intention rather than the actual or real intention is ordinarily controlling." *Four Seasons Hotels v. Vinnik*, 127 A.D.2d 310, 317 (1st Dept. 1987); *see also Conopco, Inc. v. Wathne Ltd.*, 190 A.D.2d 587, 588 (1st Dept. 1993). In determining the party's intentions, the courts look to the language and terms of the instrument at issue. *Conopco*, 190 A.D.2d at 588; *Lake Constr. & Dev. Corp. v. City of New York*, 211 A.D.2d 514, 515 (1st Dept. 1995).

Here, the plain language in Defendant Han's email dated November 4, 2019 clearly showed that he was not asking about the possibility to transfer the stock shares but to answering Ya'nan Ding's inquiry on September 5, 2019 about updates of transferring NIO shares to Ms. Zhang. More specifically, the second sentence in Han's email reads *"now transfer the stocks to the client." See* Han Decl. Exh. 4. Contrary to Defendants' argument that the email fails to show how many shares, the last line of Han's email reads "*current calculation shows the client has about 500,000 shares*" (emphasis added). *Id.* By agreeing to transfer the stocks to Ms. Zhang and further confirming the number of the stocks, Mr. Han clearly intended to be bound by this email, and made an offer of in exchange to release his contractual obligation of distributing dividend to Plaintiff and invested to NIO Inc, as evidenced by the further communication with Ya'nan Ding.

Despite the formation of this executive accord, Mr. Han breached this agreement in or around May 2020. In his email dated June 5, 2020, where Mr. Han replied to the Plaintiff's representative's inquiry regarding the NIO stock transfer that Ms. Zhang had been anticipating, Mr. Han claimed that all NIO shares had been sold without notifying or obtaining Ms. Zhang's consent. This time, Mr. Han requested an overseas bank account from Ms. Zhang to transfer the cash proceeds of the sale. *See* Zhang Decl. Exh. C. In this email, Mr. Han explicitly stated "*NIO*

*stock shares were sold about two weeks ago at the price of $3.23 per share*"; he continued as "*currently no need to have stock trading account; please gave us all the information about your overseas bank account(s) directly, we will arrange transferring cash*". *Id.* (emphasis added). The plain language in the June 5, 2020 email undisputedly showed that Mr. Han breached the agreement formed in his November 3, 2019 email after Ms. Zhang provided him with his overseas stock account information, by requesting Ms. Zhang's overseas bank account information to transfer cash proceeds from the sale.  Relying on his request on June 5, 2020 email, Plaintiff later provided an overseas bank account information to Mr. Han, accepted his offer. *See* Zhang Decl. Exh. D.

        In Mr. Han's June 5, 2020 email, Mr. Han offered to transfer the cash proceeds of the NIO shares that he admitted had belonged to Ms. Zhang, after Mr. Han breached the previous agreement to transfer the stock shares to Ms. Zhang by selling the shares. Mr. Han informed Ms. Zhang that the sales price of a NIO share was around $3.23.  The parties mutually consented that Ms. Zhang was entitled of around 500,000 stock shares of NIO stock from her $2 million investment which Han channeled to the United States, based on Mr. Han's statement made in the November 4, 2019 email.  Mr. Han manifested an unambiguous intent to transfer about $1,615,000.00 to Ms. Zhang in exchange for Ms. Zhang's agreeing to settle her claim regarding NIO shares.  Ms. Zhang later accepted this offer by providing her bank account information to Mr. Han.  *See* Zhang Decl. Exh. D. Therefore, both executive accords were clearly and unambiguously agreed to by both parties.

        As for Defendant's argument that the terms of the contract can only be modified in writing by the company, the modification *was* made through writing, namely through emails, and in his prior affirmation, Mr. Han plainly stated that he is the director of the corporation.

Furthermore, as alleged previously, Mr. Han dominates all of the corporate defendants, including HF Holdings, as made manifest through his emails wherein he demonstrates his ability to sell and transfer corporate assets unfettered by any corporate rules or governance.

### 2. *Breach of Fiduciary Duties*

As the Principal and Director of HF Holdings, which held and managed Ms. Zhang's investments, Mr. Han owed Ms. Zhang fiduciary duties under the SA and SPA.  The SPA and the SA that Ms. Zhang signed with HF Holdings do not represent an arms' length transaction for the purpose of finding fiduciary duty because Ms. Zhang wired $2 million USD prior to signing the SA and SPA, which she could not even understand.  Ms. Zhang followed all instructions given to her by Mr. Han's employees because she trusted him.

Whether someone is a sophisticated investor is a fact-specific inquiry. Ms. Zhang is an unsophisticated investor with no training or experience in finance, whereas Mr. Han has more than twenty years of experience investing millions of dollars. The fact that the agreements in question claim that she represented herself as a sophisticated investor does not make her such for this Court. Ms. Zhang at no point indicated to Mr. Han or to his agents that she was a sophisticated investor. Simply signing a document prepared by the defendants, which Ms. Zhang did not understand, that stated that Ms. Zhang was a sophisticated investor does not make it so, even after Ms. Zhang had already transferred USD $2 million previously.  Ms. Zhang signed the SA and SPA subsequent to transferring $2 million to Defendants at their urging, and signed the documents that were written in English, a language she does not understand, at their behest. A sophisticated investor is one who understands well the risks of investing, and Ms. Zhang, through her actions, has demonstrated that she is not a sophisticated investor. She merely

indicated her income exceeds certain amount.  As principal and director, Mr. Han possesses the sole decision-making power and control over HF Holdings as evidenced from his emails, in which Mr. Han promised to transfer significant assets and later funds to Ms. Zhang, which Mr. Han had conceded were assets of Ms. Zhang, without the need for any corporate action or approval. Mr. Han is the principal and director of HF Holdings, as demonstrated by his absolute authority to dispose more than USD $1 million and commit HF Holdings to the settlement with Ms. Zhang. HF Holdings thus functions as an extension or alter ego of Mr. Han. Therefore, Mr. Han breached his fiduciary duty that he owed to Ms. Zhang.

Defendant cites *Henneberry v. Sumitomo Corp. of Am.*, 2005 U.S. Dist. LEXIS 7475, at *46 (S.D.N.Y. Apr. 26, 2005), which states, "[T]here is generally no fiduciary relationship between sophisticated parties involved in an arm's length transaction." However, shareholder agreements are demonstrably *not* arm-length transactions, as by investing in Defendants' corporations, the profits of the corporation benefit both parties. Paragraph 2.1(b)(iii) of Defendants' Exh. 2 [Document 70-2] states that HF Holdings, and therein all directors, including Mr. Han, have a duty to "consider the best corporate and financial structure of the Company for the benefit of the Shareholders as a whole."  "It is well settled that both before and after a corporation comes into existence, its promoter acts as the fiduciary of that corporation and its present and anticipated shareholders" Roni LLC v. Arfa, 74 A.D.3d 442, 444, 903 N.Y.S.2d 352 (N.Y. App. Div. 2010)  As principal and director of HF Holdings, who in fact dominates this corporation, Mr. Han owes Ms. Zhang multiple fiduciary duties.  Ms. Zhang is an individual with no training or experience in finance, whereas Mr. Han has more than twenty years of experience of investing. Thus, Mr. Han and all corporate defendants involved in this action breached their fiduciary duties that they owed to Plaintiff.

3. *Unjust Enrichment*

If this Court finds that there is no enforceable agreement between the parties, Plaintiff should be permitted to maintain her claim for unjust enrichment.  "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir. 2006) (internal citation omitted).  As stated above, Plaintiff provided Defendants with USD $2 million, for which she has not received nor seen any return.  Defendants have been able to use the Plaintiff's investment for their own benefit.  Therefore, Plaintiff asks the Court to hold that Plaintiff is deserving of restitution.

Alternatively, Plaintiff should be able to maintain claims for breach of contract and for unjust enrichment.  "The theory of unjust enrichment lies as a quasi-contract claim. It is an obligation the law creates *in the absence of any agreement*." Id. (italics in original) (internal citation omitted).  Although the New York Court of Appeals has held that the "existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter", Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388, (N.Y. 1987), courts in the Second Circuit "routinely allow plaintiffs to *plead* such claims in the alternative." Transcience Corp. v. Big Time Toys, LLC, 50 F. Supp. 3d 441, 452-53 (S.D.N.Y. 2014). See Maalouf v. Salomon Smith Barney, Inc., 2003 U.S. Dist. LEXIS 591 (S.D.N.Y. 2003) (noting that plaintiff is allowed to plead both contract and quasi-contract claims even though he may only recover on one such ground); Orange Cnty. Choppers, Inc. v. Olaes Enters., Inc., 497 F. Supp. 2d 541, 557 (S.D.N.Y. 2007) (citing Maalouf and Rule 8(a) of the Federal Rules of Civil Procedure for the principle that

plaintiff may plead breach of contract and unjust enrichment claims alternatively despite

defendant's contention that a valid and enforceable contract governed the dispute); Contractual

Obligation Prods., LLC v. AMC Networks, Inc., 2006 U.S. Dist. LEXIS 16402 (S.D.N.Y. 2006)

(observing that the argument that quasi-contract claim was barred as duplicative of contract

claim was "misguided at the pleading stage"). Transcience, 50 F. Supp. at 453.  In *Transcience*,

this Court refused to dismiss the claim for unjust enrichment during the pleading stage. Id.[2]

Because litigation is still in the pleadings stage, Ms. Zhang should still be allowed to

maintain separate causes of action for breach of contract and for unjust enrichment.  Although

Ms. Zhang may not recover for both causes of action, she should be permitted to maintain both

claims until it is time for trial.  See Transcience, 50 F. Supp. at 453; Maalouf, 2003 U.S. Dist.

LEXIS at 591.

    *4.  Conversion*

Plaintiff withdraws the claim of conversion.

**B.  Subject Matter Jurisdiction is Proper in this Action**

In this case, federal jurisdiction is proper based on diversity jurisdiction, as per 28 USC §

1332, despite Defendants' claims to the contrary. Defendants' conclusion that Ms. Zhang should

---

[2] But see Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586-87 (2d Cir. 2006) (dismissing an unjust enrichment claim because such a claim cannot be pled in the alternative when there is a "valid and enforceable contract governing ... [the] subject matter"); ImagePoint, Inc. v. JPMorgan Chase Bank, Nat. Ass'n., 27 F. Supp. 3d 494, 516 (S.D.N.Y. 2014), objections overruled sub nom. ImagePoint, Inc. v. JPMorgan Chase Bank, 27 F. Supp. 3d 494 (S.D.N.Y. 2014) ("In circumstances where the parties dispute whether there is an enforceable written contract at all ... Rule 8(d)(2) of the Federal Rule of Civil Procedure permits a plaintiff to plead claims for breach of contract and, in the alternative, claims for ... unjust enrichment ... However, where there is a valid and enforceable contract between the parties, and the subject matter of the unjust enrichment claim is covered by the contract the unjust enrichment claim must be dismissed.") (internal citations omitted).

be considered as a citizen of China, and therefore not a citizen of any state for purposes of jurisdiction, is an incorrect analysis of law in the Second Circuit. Ms. Zhang is a permanent resident within the United States, as demonstrated in the attached affirmation, which qualifies her as a citizen of her state of residence, California. See *Mejia v. Barile*, 485 F. Supp. 2d 364, (S.D.N.Y. 2007) ("an alien who has established legal permanent residence, i.e., obtained a 'green card' can be considered a 'citizen' of an American state."); citing *Chan v. Mui*, No. 92 Civ. 8258, at 5 (S.D.N.Y. Oct. 20, 1993). Defendants' contention that Ms. Zhang at one point resided in China is irrelevant, as Ms. Zhang was a lawful permanent resident of California at the time this action commenced, and a party's domicile is assessed as of the date a lawsuit is filed. *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 63 (2d Cir.2009) (to determine diversity jurisdiction "it must be determined whether at the time the present action was commenced there was diversity jurisdiction").

In 2011, 28 U.S. Code § 1332(2) was amended to read "jurisdiction existed in suits between citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State." Furthermore, the deeming clause, which stated that "an alien admitted to the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled" was removed. Nevertheless, since 2011, aliens who are permanent residents of a state have continued to be recognized as citizens of the state where they are permanent residents, for diversity purposes, by courts within this district. See Jeong-Suk No v. Salvation Army, 2020 U.S. Dist. LEXIS 20979 at 5, 6 (S.D.N.Y 2020). "Under 28 U.S.C. § 1332(a), when foreign citizens are parties, diversity is present when

the action is between 'citizens of a State and citizens or subjects of a foreign state.' A lawful permanent resident alien is considered a citizen of the American state where he or she is domiciled, and diversity is lacking when an American citizen and a lawful permanent resident alien are domiciled in the same state." Id.

However, *Tagger v. Strauss Grp. Ltd.*, cited by the Defendants, states that "28 U.S.C. § 1332(a)(2) does not confer diversity jurisdiction where a permanent resident alien sues a non-resident alien." 951 F.3d 124, (2d Cir. 2020). The case provides little guidance as to the scope of its application, as it relied almost exclusively on legislative history, rather than fact patterns and holdings, for precedent on this issue. The broad reading of *Tagger* suggested by Defendants, that having resident aliens in a case against any alien destroys diversity, is an overly broad reading that contradicts the language of the diversity statute, which allows for a suit between "citizens of a State and citizens or subjects of a foreign state" and between "citizens of different States in and in which citizens or subjects of a foreign nations are additional parties," both of which contemplate the possibility of aliens on both side of a case, especially in light of the rule regarding lawful permanent residents. The idea that simply having aliens on both sides of case destroys diversity is in direct opposition to the language of 28 U.S.C. § 1332.

Furthermore, since the 2011 amendment, and even since the *Tagger* decision, courts in the Southern District of New York have continued to analyze permanent resident aliens as being citizens of New York for purposes of diversity. See Nouinou v. Guterres, 2020 U.S. Dist. LEXIS 198716, 2020 WL 6275021(S.D.N.Y 2020), a decision dated October 23, 2020, more than half a year after the *Tagger* decision, continuing to consider lawful permanent resident aliens to be citizens of the state in which they are domiciled for diversity purposes: "Plaintiff alleges that she is married to a U.S. Citizen and has been admitted to permanent residence in the United States

14

and lives in New York. It therefore appears from these allegations that for diversity purposes, Plaintiff is a citizen of New York."

In this case, Ms. Zhang is plainly a permanent resident in California, and Mr. Han is plainly a resident of New York state for purposes of diversity. He has resided within New York with his family since 2018. His organizations in China face criminal investigations back in China. Junjun Feng, too, has resided in New York these past three years. He has registered a corporation in New York, and registered two other corporations to do business in New York. Therefore, in this case one alien, a resident of California, is suing residents of New York, together with foreign corporations, all dominated by Mr. Han and acting his alter egos, which he controls from New York. The sufficiency of the piercing the corporate veil, being a fact-based inquiry, is not subject to this motion to dismiss, and therefore must be presumed for the purposes of this jurisdictional analysis. See Grunblatt v. UnumProvident Corp., 270 F. Supp. 2d 347, 352 (E.D.N.Y. 2003).

Therefore, this case is distinguishable from Tagger v. Strauss. In Tagger, the corporate defendant Strauss is an Israeli corporation that could not be said to reside in any state in the United States, which contrasts with this case, where Mr. Han and Ms. Feng reside in the United States, and all of the corporations are owned and dominated by Mr. Han. A plain reading of *Tagger* states that only when a resident alien sues non-resident alien with no connection to any state in the U.S., will diversity not exist. Therefore, One World, LLC v. Onoufriadis, 2021 U.S. Dist. LEXIS 9814 (S.D.N.Y. 2021), which states that "[a] lawful permanent resident domiciled in a state is not a citizen of that state - he is an alien for purposes of diversity jurisdiction" interprets Tagger too broadly. To date, it is the only case to analyze the *Tagger* decision beyond mere citation, and it diverges from opinions continuing to treat lawful permanent resident aliens

as citizens of their state of domicile for diversity purposes. This case is clearly distinguishable from the case at hand.

Furthermore, *Tagger* itself raises constitutional concerns. The decision to limit non-citizens' access to diversity jurisdiction raises issues of equal protection, as non-citizen's concerns that would necessitate federal jurisdiction are the same as those of citizens, e.g. freedom from local bias, which can exist regardless as to whether parties lawfully in the U.S. are naturalized American citizens or permanent residents. See Guaranty Trust Co. v. York, 326 U.S. 99 (1945). Secondly, *Tagger*, which cites no cases to support the broad principle for which Defendants cite it, instead overly relies on legislative history in reaching its decision to deem *Tagger* as a non-citizen in that case, despite being a permanent resident in the United States. Nothing in the legislation's decision to remove the deeming clause stated that permanent residents could be deemed non-citizens for purposes of diversity jurisdiction, a principle which could have simply legislated as such if that were the intention.

 While the identity of HFRE's ownership cannot at this stage be proven to be only Xueyuan Han, by information available to plaintiff, it can be easily inferred. Mr. Han already stated in his statement in opposition to attachment that he is "the president of the managing member of HFRE LLC." And that "HFRE LLC owns the apartment in which I lived at 377 Rector Place." Therefore, it is clear by a preponderance of the evidence that Mr. Han controls this corporation, and diversity is maintained. There is no lack of due diligence on Plaintiff's part, as definitive proof of identity of HFRE LLC's owners will remain hidden unless Mr. Han is forced to reveal them. To the extent that further proof of Mr. Han's ownership is demanded to grant diversity jurisdiction, limited discovery should be permitted to Plaintiff so that the identity of HFRE's members may be made clear. It would be inequitable for the Defendants to be

16

allowed to obscure their corporate party's status so as to avoid diversity when the overwhelming preponderance of the evidence clearly demonstrates that HFRE is dominated by Mr. Han.

C. **This Court has Jurisdiction Over All Defendants**

1. *General Jurisdiction*

Jurisdiction in this case is proper based on both general and specific jurisdiction. As stated above, general Personal Jurisdiction over both Mr. Han and Ms. Feng is proper in the New York, as they both have resided within the state for three years, Mr. Han's children attend school in New York, and due to criminal investigation against Mr. Han, he is unable or unwilling to return to China to face prosecution there.

Moreover, jurisdiction over the defendant corporations based on jurisdiction is properly pled, as specific facts are alleged that would give rise to having the corporate veil being pierced, whereby Mr. Han is the alter-ego of these corporations, and jurisdiction would be proper in any district where jurisdiction over Mr. Han has been obtained for this matter. As stated above, piercing the corporate veil, being a fact-based inquiry, is not subject to this motion to dismiss. See Grunblatt v. UnumProvident Corp., 270 F. Supp. 2d 347, 352 (E.D.N.Y. 2003).

Under New York law, alter ego analysis for purposes of establishing jurisdiction and piercing the corporate veil analysis are identical. MWH Int'l, Inc. v. Inversora Murten, S.A., 2015 U.S. Dist. LEXIS 24129 (S.D.N.Y. 2015). In the Second Amended Complaint, it was specifically alleged that Mr. Han not only owned a majority share in all defendant corporations, but it was also demonstrated that Mr. Han was using these corporate structures to funnel purported investments into the United States, and then his own personal bank accounts in the United States and elsewhere. Therefore, facts have been specifically pled which should give rise to liability on this alter-ego basis, and general jurisdiction should be established. Furthermore,

17

"this standard is relaxed where the alter ego theory is used not to impose liability, but merely to establish jurisdiction." Int'l Equity Invs., Inc. v. Opportunity Equity Partners, Ltd., 475 F. Supp. 2d 456 (S.D.N.Y. 2007)

## 2.  *Specific Jurisdiction*

Even if general jurisdiction could be granted under the alter-ego basis, New York's long-arm statute grants specific jurisdiction when a claim arises against a non-domiciliary who "(1) transacts any business within the state or contracts anywhere to supply goods or services in the state; or (2) commits a tortious act within the state. . .; or (3) commits a tortious act without the state causing injury to person or property within the state, or (4) owns, uses or possesses any real property [in New York]." In this case, the contractual matter that is being litigated does grant specific jurisdiction for the matter at hand. As stated in the Second Amended Complaint, "Defendant Mr. Han, using numerous corporations controlled and dominated by himself, induced Plaintiff to invest $2 million USD in NIO before NIO's initial public offering on the New York Stock Exchange." Later in the complaint, the jurisdictional basis for specific jurisdiction over the causes of action was further explained. "Defendant Mr. Han solicited and obtained a $2 million investment from Plaintiff in China and brought the funds to the United States to acquire the NIO stock with Plaintiff's investment in New York and after failing to transfer the NIO stock to Plaintiff, Mr. Han claimed to have sold the said 500,000 shares of NIO stock in New York without Plaintiff's knowledge and consent within the district. Defendant Mr. Han directed the funds to be invested in New York from China via the Cayman Islands. After the purported unauthorized sale of the stock instead of returning the proceeds to Plaintiff, he kept the proceeds from the sale that belong to Plaintiff for his own use in New York." Representatives of HF Holdings, Hanfor Holdings, and HF Capital Cayman signed agreements which ratified the

transfer of $2 million into New York. This transfer was memorialized in the Confirmation of Fund Interests certificate.

Furthermore, since the transaction was made to send the funds into New York, Plaintiff Mr. Han has remained within the jurisdiction, where he has conducted business on behalf of the corporations, and has even negotiated an accord and satisfaction and other business with regards to this action in the jurisdiction. "New York courts have found that 'using electronic and telephonic means to project [oneself] into New York to conduct business transactions" is enough to satisfy the long-arm statute.'" Cohen v. BMW Invs. L.P., 144 F. Supp. 3d 492 (S.D.N.Y. 2015), *citing* Deutsche Bank Sec., Inc. v. Montana Bd. of Investments, 7 N.Y.3d 65, 71, 850 N.E.2d 1140, 818 N.Y.S.2d 164 (N.Y. Ct. App. 2006). Therefore, the long-arm statute is satisfied in this case. Furthermore, Defendants never state that they do not have any bank accounts within the subject forum, either.

### 3.   *Due Process*

Furthermore, the Defendants argue that, based on the five Asahi factors, asserting due process on the Defendants would violate due process. The five factors of *Asahi* [*Metal Industry Co, Ltd. v. Superior Court of California*, 480 U.S. 102 (1987) are "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." However, as previously stated above, the corporate parties are all alter-egos of Defendant Mr. Han, and he has at least controlling shares of every corporate defendant and he is either the sole owner or the sole director of all corporate defendants. He has resided in New York for the past

three years. The issue being litigated in this case involves the transfer of $2 million into the subject forum by Defendant of Plaintiff's investmenet. Therefore, Defendant's claim that these foreign corporations would place any undue burden on the them are unavailing. This jurisdiction, in fact, imposes the fewest burdens on the defendant corporations, given that the owner of the corporations in fact resides within the subject forum and has been conducting business, including the subject of this action, from this jurisdiction since at least 2018.


### D.  <u>All Defendants were Properly Served</u>

Plaintiff properly served all Defendants in this matter. As Defendants correctly state, the Federal Rules provide that service on a corporation may be properly made "by delivering summons and complaint to an officer, managing agent, or any other agent authorized by appointment or by law to receive service of process" or in the manner prescribed by Rule 4(c)(1) for serving an individual." Fed. R. Civ. P. 4(h)(1)(A)-(B). Furthermore, Rule 4(c)(1) permits service on a corporation in accordance with state law for service in the state in which the district court is located or where service is made. New York law provides that "service upon a corporation…shall be made by delivering the summons…upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." CPLR § 311.

Contrary to Defendants' contentions, service on the corporate defendants was properly made. With regard to the corporate defendants Hanfor Capital Management Co,, Ltd., Nuoyuan Capital Management Company Ltd., Bang Ze Industrial Co., Ltd. (China), BZ Industrial (Cayman

Islands), and Hanfor Holdings Co., Ltd.[3], service was properly made on the doorman of Defendant Mr. Han's residence. The Federal Rules and CPLR clearly provide that service upon a corporation may be properly made by serving an officer, managing agent, director, managing agent, general agent, or any other agent of a corporation. Under CPLR § 311, a corporation need not follow any particular formality when appointing an agent for receipt of process. *JSO Assocs. v. Price*, 2008 N.Y. Misc. LEXIS 2227, *10 (N. Y. Sup. Ct., 2008), citing *Fashion Page, Ltd. v. Zurich Ins. Co.*, 50 NY2d 265, 272 (N. Y., 1980). If a person exercises judgment and discretion on behalf of a corporation, he may be a "managing agent" for purposes of receiving process, regardless of his formal title. *JSO Assocs.*, 2008 N.Y. Misc. LEXIS 2227, at *10, citing *Daniels v. King Chicken & Stuff, Inc.*, 35 AD3d 345 (2nd Dept., 2006). Mr. Han is unquestionably an "officer, director, managing or general agent…authorized by appointment or law to receive service" for each of these corporations. Mr. Han acknowledged in his affidavit (Dkt. No. 70) that he is the Chairman and C.E.O. of Hanfor Capital Management Co., Ltd., that he has an ownership interest in Nuoyuan Capital Management Company Ltd., that he is the executive director of Bang Ze Industrial Co., Ltd. (China), and that he is the Chairman of the board of the directors for Hanfor Holdings Co., Ltd. Defendant Mr. Han is also wholly owns and is the chief executive officer of BZ Industrial (Cayman Islands).

Furthermore, New York case law provides that service upon a doorman at the residence of the party to be served, is deemed sufficient, especially, as in this case, "when a process server is not permitted to proceed to the actual apartment by the doorman or some other employee…In

---

[3] To the extent that Defendants object to service upon Hanfor Holdings Co., Ltd. at the British Virgin Islands address, service is proper when made upon an officer or agent authorized to accept service, as discussed, and the affidavit of service indicate that service was made at a corporate address upon such an agent. Regardless, Defendant's objections to service on that Defendant at that address are moot, as proper service was also made upon Hanfor Holdings at Mr. Han's residence, as discussed, despite that fact that Defendants failed to list Hanfor Holdings among the corporations served at Mr. Han's residence for which they claim service was improper.

such cases the doorman becomes all the more suitable as a repository of the papers he is in effect the only accessible party. MRS Prop. Invs., Inc. v. Bivona, 2021 U.S. Dist. LEXIS 84402, *7 (E.D.N.Y., 2021), citing F.I. DuPont, Giore Forgan & Co. v. Chen, 41 N.Y.2d 794, 797 (1977), 131 Main St. Assocs. v. Manko, 897 F. Supp. 1507, 1525 (S.D.N.Y. 1995), Three Crown Ltd. P'ship v. Caxton Corp., 817 F. Supp. 1033, 1051 (S.D.N.Y. 1993) (internal quotations omitted). The affidavits of service for each of these parties—namely, Bang Ze Industrial Co., Ltd. (China), BZ Industrial (Cayman Islands), Hanfor Capital Management Co, Hanfor Holdings Co., Ltd, Ltd., and Nuoyuan Capital Management Company Ltd.—clearly state that the doorman denied the process server access to Mr. Han within the building, but that the doorman accepted the papers, and that copies of the papers were subsequently mailed to Defendant Mr. Han at the same address (Dkt. Nos. 73, 74, 77, 81, 90, respectively). Mr. Han acknowledges that he resided at that address at the date of service, and no objection is made by the Defendants as to the sufficiency of service of Mr. Han himself.

The case law that the Defendants rely on to support their contention as to the insufficiency of service upon the doorman of an officer or director of a corporation to be served actually supports the Plaintiff's claim that service was proper. Furthermore, not one case cited involved service upon the residence of the corporate officer found to be insufficient. Unlike in this case, *Spota v. White* involved attempted service on a corporation by way of the "nail and mail" method provided for in CPLR § 308(4). 2016 N.Y. Misc. LEXIS 4035, at *6 (2016). Furthermore, *Spota v. White* relied for authority on cases similarly unlike the instant matter, where service was attempted on a corporation through "nail and mail," or where the service was made on the concierge of the Defendant's business address, rather than the residence of a corporate officer, or where service contained other unrelated procedural defects. *See, e.g.,* Perez v. Garcia, 8 Misc 3d

1002(A), 2005 NY Slip Op 50902(U), *2-*3, and case cited therein. To the extent that the opinion there suggests that CPLR § 311 "envisioned" service by hand delivery, such language is merely dicta, inessential to the court's holding, which involved only the attempt to use CPLR § 308(4) to serve a corporate defendant, as was not done in this case. The Federal Rules and CPLR mention only "delivery" to a corporation's agent or officer, and nowhere specify that the same must be in person or in-hand delivery.

In *Jubilee, Inc. v. Haslacha, Inc.*, also cited by Defendants, service on the doorman was held to be improper because the order to show cause initiating the action specifically included a directive requiring hand delivery to the defendant. 270 A.d.2d 34, 34 (1st Dept., 2000). The court there found that service was improper because it was not made in accordance with the court's directive, rather than due to the requirements of CPLR § 311, which was cited in that opinion only for list of corporate agents who could be served. Additionally, this case also involved service upon the doorman of the building in which corporation to be served maintained an office rather than the corporate officer's personal residence, and likewise relied on precedent containing similar fact patterns, unlike those in this case, holding that service left with the receptionist at an office location, was generally held to be improper. However, in *Austrian Lance & Steward, P.C. v. Rockefeller Center, Inc.*, cited for precedent in *Jubilee*, the Appellate Division reversed the lower court order finding service to be inadequate, and held that service on the receptionist at the office of corporate defendant was sufficient to meet the requirements of CPLR § 311 for service on a corporation when there is evidence that a person authorized to accept service has resisted service, and that leaving process in their general vicinity was sufficient. *See Austrian Lance*, 163 AD2d 125, at *128-30 (1st Dept., 1990), and cited cases. Here, service was not made on an office receptionist, nor was service attempted by "nail and

mail." Rather, service was attempted on Defendant Mr. Han directly. When the doorman refused access to the building, service was then made on the doorman at Mr. Han's residence, who identified himself as authorized to accept service on Mr. Han's behalf. Furthermore, while the doorman accepted service, Mr. Han himself has resisted service, having moved out of his residence shortly following the filing of papers in this action and is presently concealing his current whereabouts in the New York.

  *Citadel Management v. Telesis Trust*, the third case cited by Defendants on this issue, likewise indicates that service was in fact proper upon the listed defendant corporations, and that sufficient notice had been provided. In that case service on a corporate defendant was made upon the doorman of an individual defendant who was also an officer of the defendant corporation. The District Court there stated that "when a process server serves someone who does not have express authorization to accept service for a corporation, service is nonetheless proper under CPLR § 311 if it is made **in a manner which, objectively viewed, is calculated to give the corporation fair notice of the suit, and that a corporation has been given fair notice when the process server has diligently attempted to comply with § 311**. Citadel Management, 123 F. Supp. 2d 133, at *145-46 (S.D.N.Y., 2000), citing Kuhlik v. Atlantic Corp. Inc., 112 F.R.D. 146, 148 (S.D.N.Y., 1986), Fashion Page Ltd. v. Zurich Insurance Co., 50 N.Y.2d 265, 272 (N.Y., 1980). Furthermore, the court there added that because the individual and corporate defendant share the same attorney, that also presumptively put the corporate defendant on notice that the Plaintiff was attempting to include the corporation as a defendant, as is the case here. Citadel Management, 123 F. Supp. 2d 133, at *146, citing Gleason v. McBride, 869 F.2d 688, 693 (2d Cir. 1989)

With regard to the corporations served at the corporate address in Queens, namely BZ Industrial Limited (Virgin Islands), HF Capital Management Cay Inc., and HF Cosmopolitan Beta L.P., service was likewise proper. The address at which these three corporations were served, the office of George Xu, is the Department of State's registered address for process service for all three corporations. While Mr. Xu states in his affidavit that he is not an employee or agent of these corporations at this time, he makes no claims as to whether he or any employee or worker at his office (which is the registered business address of these three corporations) was such an agent at the time process was served. Instead, he admits that he at one point served as the agent of these entities or their directors, having been the one to file and sign the applications for the authorizations for the corporations to do business in New York (*see* Dkt. No. 71). Furthermore, beyond Mr. Xu's claim that he himself was not an employee or agent of the corporations at least as of May 13, 2021, Defendants offer no reason to indicate that the individual served at the corporations' address was not a general agent authorized to accept process, as is affirmed in the affidavits of service (Dkt. Nos. 74, 75, 83, 84). Case law cited by Defendants again involves differing circumstances, involving service upon an individual who was claimed in affidavits not to be an authorized agent, and where, after an opportunity and direction from the court to present testimony as to the sufficiency service, and the Plaintiff failed to present further evidence contradicting the defendant's testimony that the individual served was not a general agent. Dominguez v. B S Supermarket, Inc., 2016 U.S. Dist. LEXIS 167879 (E.D.N.Y., 2016). As noted above, under CPLR § 311, a corporation need not follow any particular formality when appointing an agent for receipt of process. JSO Assocs. v. Price, 2008 N.Y. Misc. LEXIS 2227, at *10, citing Fashion Page, Ltd. v. Zurich Ins. Co., 50 NY2d 265, 272 (1980). As the Court of Appeals has stated, "Reliance may be based on the corporate

employees to identify the proper person to accept service. In such circumstances, if service is made in a manner which, objectively viewed, is calculated to give the corporation fair notice, the service should be sustained." <u>Fashion Page</u>, 50 N.Y.2d 265, 272-273, citing <u>McDonald v. Ames Supply Co.</u>, 22 NY2d 111 (2d Dept., 1966); <u>Belofatto v Marsen Realty Corp.</u>, 62 Misc 2d 922 (1970). Similarly, in *Kuhlik v. Atlantic Corp.*, the court stated, "The process server is not privy to internal corporate procedures…was not required to make further inquiry but rather was entitled to rely on the receptionist's representation of authority." 112 F.R.D. 146, at *7. Furthermore, even if the individual served was not a general agent, service upon her at that address was still proper under CPLR § 3111 since, as noted above, "when a process server serves someone who does not have express authorization to accept service for a corporation, service is nonetheless proper under CPLR § 311 if it is made in a manner which, objectively viewed, is calculated to give the corporation fair notice of the suit." <u>Citadel Management</u>, 123 F. Supp. 2d 133, at *145-46, citing <u>Kuhlik</u>, 112 F.R.D. 146, at 148.

Defendant's counsel states in a footnote (Dkt. 72, p.10, n.7) that Defendants are not aware of any attempt to serve Beijing Nuoyuan Holdings, Co., the party added in the Second Amended Complaint. This comment is made in bad faith, as diligent efforts were made to affect such service, of which Plaintiff's counsel is well aware.  Service was attempted on Defendants' counsel at his law firm's address. Upon arrival, the process server spoke to a female employee who called Defendants' counsel, Mr. Jeffery Boxer, and then told the process server, at Mr. Boxer's direction, that his firm does represent the Defendant, Beijing Nuoyuen Holdings Co., Ltd. (Dkt. No. 92). Defendant's counsel does represent that party, as the Motion to Dismiss prepared by Defendants' counsel was submitted on behalf of that defendant as well (*see, e.g.,* Dkt. No. 72, p.1). This is a clear evasion of service. Plaintiff also attempted to serve the new

corporate party through service pursuant to Rule 4 upon Defendant Mr. Han, who acknowledged in his affidavit that he serves as the executive director of that corporation (Dkt. No. 70, p.5). Such service was ultimately unsuccessful (Dkt. No. 93), as Mr. Han fled from his prior address after the commencement of this action, and no longer resides there, and has concealed his whereabouts from the Plaintff. One who consciously renders personal service impossible, as in in the case of Beijing Nuoyuan Holdings Co., Ltd., cannot then complaint that the service was not complete. In re Barbara, 7 A.D.2d 340, 343 (3rd Dept., 1959) ("public policy forbade that [the party] be advantaged by his own willful and obstructive acts in prevention of what had then become the purely technical gesture of delivery").

"The object of all service of process is said to be to give notice to the party on whom service is made, that he may be aware of and may resist what is sought of him, and it is a general rule that any service must be deemed sufficient which renders it reasonably probable that the party proceeded against will be apprised of what is going on against him, and have an opportunity to defend." Manhattan Sav. Bank v. Annunziato, 268 A.D. 672, 675, (1st Dept., 1915), citing Hiller v. Burlington & M. R. R. Co., 70 N.Y. 223, 227 (N.Y., 1877). Each of the parties about which Defendants' contest the sufficiency of service had actual notice of this action, as well as the opportunity to respond, as they have done. Defendant's argument that defective service cannot be ignored on the mere assertion that defendants had actual notice is largely irrelevant, as proper service was made, and sufficient notice provided. In this case there is far more than the sort of "mere assertion" referred to in case law cited by Defendants. Defendant Mr. Han, who acknowledged his control and management of the vast majority of the corporate Defendants, together with his counsel and the counsel for the remaining Defendants, as well as Mr. Xu, have all had timely knowledge of and access to the filings in this case, as well as adequate opportunity

to respond and state their positions. Therefore, service was sufficient for all Defendants in this case, as they all share the same attorney, and received actual and sufficient notice, and opportunity to respond. Even if the Court were to find any procedural defects in the service upon any of the Defendants for which such issues were raised, sufficient notice to the parties should be acknowledged, and Plaintiff's diligent efforts at service and notice be deemed sufficient in this case. The court in *Dominguez* reiterated and emphasized the validity of this proposition, stating that "courts have recognized that the fundamental purpose of service is to give a defendant notice of the claims against them…to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections," adding that "At its core, this standard is one of reasonableness. Thus, courts will deem valid efforts outside the bounds of Rule 4 where a defendant has actual notice of the documents." Dominguez v. B S Supermarket, Inc., 2016 U.S. Dist. LEXIS 167879, at *8-*9, citing Burda Media, Inc. v. Blumenberg, No. 97 CV 7167, 2004 U.S. Dist. LEXIS 8804, 1t *6-*7 (S.D.N.Y., 2004).

Additionally, as already noted, the court in *Citadel* held that "service is proper under CPLR § 311 if is made in a manner which, objectively viewed, is calculated to give the corporation fair notice of the suit." Citadel Management, 123 F. Supp. 2d 133, at *145-46, citing Kuhlik, 112 F.R.D. 146, at 148. The court reasoned that because the individual and corporate defendant shared the same attorney in that case, that also put the corporate defendant on notice that the Plaintiff was attempting to include the corporation as a defendant. Citadel Management, 123 F. Supp. 2d 133, at *146, citing Gleason v. McBride, 869 F.2d 688, 693 (2d Cir., 1989). Therefore, even if, despite actual notice to Defendants, this Court were to find that further service is needed to meet the requirements of CPLR § 311, opportunity for any further service necessary upon Defendants' counsel or any other alternative method necessary should be granted. Defendants

will suffer no prejudice if Plaintiff is granted leave to re-serve. <u>Gleason v. McBride</u>, 869 F.2d

688, at 693.


### E.  <u>The Motion for Arbitration should be Denied</u>

"The Convention on the Recognition and Enforcement of Foreign Arbitral Awards

(Convention) and the implementing provisions of the Federal Arbitration Act, 9 U.S.C.S. § 1 et

seq, set forth four basic requirements for enforcement of arbitration agreements under the

Convention: (1) there must be a written agreement; (2) it must provide for arbitration in the

territory of a signatory of the convention; (3) the subject matter must be commercial; and (4) it

cannot be entirely domestic in scope." *Smith/Enron Cogeneration Ltd. P'ship v. Smith*

*Cogeneration Int'l, Inc.*, 198 F.3d 88, 90 (2d Cir. 1999).

"In determining whether a particular dispute is arbitrable, a court must engage in a two-

part inquiry: it must decide (1) whether the parties agreed to arbitrate, and if so, (2) whether the

scope of that agreement encompasses the asserted claims." *Chelsea Square Textiles, Inc. v.*

*Bombay Dyeing & Mfg. Co.*, 189 F.3d 289, 294 (2d Cir. 1999).

The matter before this Court involves four agreements – the SA and the SPA and the two

subsequent accords involving the NIO shares and/or proceeds. The first two agreements were

entered into by HF Holdings Limited and Ms. Zhang in 2017 after her purchase of the 2,000,000

of Class B shares of HF Holdings Limited. The third and fourth agreement (NIO Agreement) are

comprised of the emails and WeChat correspondence from 2019 and 2020 between the principal

of HF Holdings Limited Mr. Han and Ms. Zhang (through Nuoyuan Capital's employee Ms.

Ya'nan Ding and Mr. Jun Zhou, Ms. Zhang's agent) resolving the dispute between Ms. Zhang

and Defendants Han and HF Holdings Limited. In the two NIO accord agreements, Mr. Han

agreed to settle Ms. Zhang's claims under the SA and the SPA on behalf of HF Holdings Limited by transferring the NIO shares to her stock trading account first, and then, by transferring the proceeds from the sale of such to her account. See SAC ¶¶ 42-45; see Plaintiff's Declaration and attached exhibits.

The SPA and the SA contain arbitration clauses,while the subsequent agreements do not. Because an agreement to arbitrate must explicitly be made in writing, the first requirement is not satisfied under Chapter 2 and the New York Convention for the two subsequent agreements. While a contract itself does not have to be in writing, the FAA specifically requires that the arbitration provision  be in writing. *Walsh v. WOR Radio*, 537 F. Supp. 2d 553, 555 (S.D.N.Y. 1992). "If there is any issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citing 9 U.S.C. § 4). Therefore, the NIO Agreements are not governed by the New York Convention and Chapter 2 of the FAA and Defendants' request to compel arbitration must necessarily fail.

An agreement to arbitrate must also comply with the requirements of the state law as to the formation of contracts. "In deciding whether a contractual obligation to arbitrate exists, courts should generally apply state-law principles that govern the formation of contracts." *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 526 (2d Cir. 2011) (internal quotations omitted).  Like any other agreement in New York, it requires an offer, acceptance, consideration, mutual assent, and intent to be bound. *See Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004). None of the elements are present under the circumstances with regard to the arbitration. Therefore, there was no agreement to arbitrate any disputes arising out of the NIO Agreements, and this Court should not impose such upon the parties.

Defense argues by making broad generalizations that arbitration must also be done in the People's Republic of China ("China"), citing *Smith/Ehron Cogeneration v. Smith Cogeneration Intl'l, Inc.*, proclaiming the strong federal policy in favor of arbitration. *Smith/Enron Cogeneration Ltd. P'ship v. Smith Cogeneration Int'l*, Inc., 198 F.3d 88, 99  (citation omitted). "However, the FAA's presumption of arbitrability does not apply where (as here) the issue is the threshold one of whether the parties entered into a binding agreement to arbitrate at all." *Glencore Ltd. v. Degussa Engineered Carbons L.P.*, 848 F. Supp. 2d 410, 421 (2d Cir. 2012). The presumption does not arise because policy considerations cannot substitute a requirement for an agreement between the parties to that effect. *Granite Rock of Chicago v. Int'l Brotherhood of Teamsters*, 130 S.Ct. 2847, 2859 (2010).  As Supreme Court further stated in *Granite Rock of Chicago*, "arbitration is strictly a matter of consent." *Id.* at 2857 n.5.  "The presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 526 (2d Cir. 2011) (citations omitted). Here, Defendant Han and Ms. Zhang did not agree to arbitrate the dispute arising of the transfer of the NIO stock – in writing or orally.  Therefore, the presumption of arbitrability does not apply in this case.

The SA and the SPA were signed by Ms. Zhang subsequent to wiring money at the instruction of the Defendants, and written in English, a language that the Plaintiff does not speak, and thus she was unaware that they contained arbitration clauses. Although these agreements are in writing and contain arbitration clauses, there was no meeting of the minds regarding the portion of the agreement that compelled arbitration, and therefore it is unenforceable. Furthermore, the arbitration clauses cannot be imputed or incorporated into the entirely new agreements made by Defendant Han and Ms. Zhang – the NIO Agreements. The emails and

31

WeChat messages that the NIO Agreements consist of did not show any indication of the parties'

intention to be bound by the arbitration clause from the two previous agreements. The Supreme

Court stated that "arbitration is a matter of contract and a party cannot be required  to submit

to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter*

*Reynolds*, 537 U.S. 79, 83, 123 S. Ct. 588, 591 (U.S. 2002). "The fundamental objective

of contract interpretation is to give effect to the expressed intentions of the parties.  When

interpreting the meaning of a contract, it is the objective intent of the parties that controls." *Klos*

*v. Polskie Linie Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997) (internal citations omitted). Because

there was no express or implied intention to arbitrate the new agreement, Defendants' motion to

compel arbitration should be denied.

All four agreements in question relate to Ms. Zhang's investment in HF Holdings

Limited, but they do not have equal importance and weight in the parties' dispute. The two NIO

Agreements are significant, because the majority of Ms. Zhang's allegations center around

Defendant Han's obligations under the subsequent NIO accord agreements, which significantly

altered the parties' obligations and performance under the SA and SPA. The Second Amended

Complaint asserts six causes of actions, four of which are based on the subsequent NIO

Agreements. The Second, Third, Fourth, and Fifth Counts arise under the NIO Agreements and

thus are not subject to arbitration. Only two causes of action - First Count (Breach of Contract)

and Sixth Count (Breach of Fiduciary Duties) -  relate to the SA and the SPA. Moreover, the

parties' dispute concerning the SA and the SPA cannot be resolved without consideration of the

NIO Agreements. Therefore, Ms. Zhang's claims should be litigated in this Court.

Further, because the NIO Agreements were made in accord of Defendants' obligations

under the SA and SPA in New York, they superseded the SA and SPA, making the controlling

agreements in this litigation. Therefore, this Court should enforce the NIO Agreements by denying Defendants' motion to compel arbitration.

Furthermore, only Ms. Zhang and Defendant HF Holdings Limited signed the SA and SPA which subjects them to the arbitration clause. There is no written agreement to arbitrate with the remaining individual and corporate defendants in this matter, as they are not parties to these agreements and cannot be compelled to arbitrate. Therefore, the claims asserted by Ms. Zhang in the SAC against all other defendants clearly fall out of the arbitration clause and cannot be submitted to the Beijing Arbitration Commission.

1. *Arbitration before the Beijing Arbitration Commission is de jure and de facto Impossible.*

The court should not enforce an arbitration clause if the agreement to arbitrate is incapable of being performed. *Apple & Eve, LLC v. Yantai N. Andre Juice Co.*, 610 F. Supp. 2d 226, 228 (E.D.N.Y. 2009) (citing 9 U.S.C. §201 (Article II of the Convention)).

The arbitration cannot proceed before BAC until criminal proceedings in China against Defendant Han and his company are concluded. Section 129 of Minutes of the National Civil and Commercial Trial Work Conference of the Courts of the People's Republic of China titled "Procedural Handling of Public-Stakeholder Economic Crimes and Civil and Commercial Cases" in relevant part states as follows:

> For a civil lawsuit filed by the victim on the same fact with a criminal suspect or criminal defendant as the defendant, the people's court shall rule not to accept it, and transfer the relevant materials to the investigation

agency, procuratorial agency, or the people's court that is hearing the criminal case.

*See No. 129 of "Minutes of the National Civil and Commercial Trial Work Conference of the Courts"[4].*

Due to the ongoing criminal investigation and prosecution of Defendant Han and his companies, Ms. Zhang cannot arbitrate her claims for breach of the SA and SPA before the Beijing Arbitration Commission, as all civil remedies are suspended. Therefore, the arbitration is impossible, and this litigation should proceed with full force before this Court.

The arbitration in Beijing is also impossible not only legally, but physically as well. Defendant Han unilaterally fled the forum that was originally selected (China) to the United States in September 2018, preventing the arbitration of Ms. Zhang's claims. Before leaving China he first channeled Ms. Zhang's money to New York through his various shell companies in January 2018 per the SA and SPA, thus effectively precluding any possibility of recovery for Ms. Zhang in China. Defendant Han was well aware that proper arbitration before BAC is not possible in his absence because he is a director of HF Holdings Limited with personal knowledge of the matter. See Han Decl. ¶12. Mr. Han is the mastermind behind the Ruili Weixin project which he designed and implemented. He micromanaged  the project and is the only source of knowledge as to what truly transpired in the project. Since the BAC does not have power to compel Mr. Han's testimony while he is in the United States, Ms. Zhang cannot proceed with the arbitration in the absence of such as well.

---

[4] See  http://www.court.gov.cn/zixun-xiangqing-199691.html  for original version of the statute in Chinese. See http://www.lawinfochina.com/display.aspx?id=31806&lib=law for English translation of the same statute.

Defendant Han will not return to China to avoid and for the fear of criminal prosecution. After receiving insider information on impending criminal investigation of his companies, Mr. Han fled China in September 2018, 4 months before said criminal investigation led to Yanwu Li's arrest in January 2019 and has not visited China ever since. Mr. Han moved his children to the United States where they attend school which shows his intent to stay in the U.S. permanently.

For reasons stated above the motion to compel arbitration should be denied.


## IV.    CONCLUSION

For the foregoing reasons, it is respectfully submitted that Defendants' motion to dismiss should be denied in its entirety.


Dated: New York, New York
June 4, 2021



Respectfully submitted,

By:_____/s/_____
Paul A. Gilmer, Esq.

Supervised by Valerie Wong
Wong, Wong, & Associates, P.C.
*Attorneys for Plaintiff*

150 Broadway, Suite 1588
New York, NY 10038
Tel. (212) 566-8080
Fax. (212) 566-8960