Jeffrey S. Boxer, Esq.
Madelyn K. White, Esq.
CARTER LEDYARD & MILBURN LLP
Two Wall Street
New York, New York 10005
Tel. (212) 732-3200
Fax (212) 732-3232
Email boxer@clm.com/ white@clm.com

*Attorneys for Defendants Xueyuan Han, Hanfor Holdings Co., Ltd., HF Holdings Limited, Beijing Nuoyuan Holdings Co., Hanfor Capital Management Co., Ltd., Nuoyuan Capital Management Company Ltd., Junjun Feng, Bang Ze Industrial Co., Ltd. (China), BZ Industrial Limited (Virgin Islands), BZ Industrial (Cayman Islands), Hanfor (Cayman) Limited, HFRE LLC, HF Capital Management Cay Inc., and HF Cosmopolitan Beta L.P.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JING ZHANG,<br><br>                      Plaintiff,<br><br>    -against-<br><br>XUEYUAN HAN, HANFOR HOLDINGS CO., LTD., HF HOLDINGS LIMITED, BEIJING NUOYUAN HOLDINGS CO., HANFOR CAPITAL MANAGEMENT CO., LTD., NUOYUAN CAPITAL MANAGEMENT COMPANY LTD, JUNJUN FENG, BANG ZE INDUSTRIAL CO., LTD. (CHINA), BZ INDUSTRIAL LIMITED (VIRGIN ISLANDS), BZ INDUSTRIAL (CAYMAN ISLANDS), HANFOR (CAYMAN) LIMITED, HFRE LLC, HF CAPITAL MANAGEMENT CAY INC., AND HF COSMOPOLITAN BETA L.P.,<br><br>                      Defendants. | Dkt. No. 1:21-cv-01625-GHW |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
<u>DEFENDANTS' MOTION TO DISMISS AND TO COMPEL ARBITRATION</u>**

9872084.8

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT ............................................................................................................................1

    POINT I:    PLAINTIFF'S ATTEMPTS TO AVOID ARBITRATION ARE UNAVAILAING ...........................................................................................1

    POINT II:   SUBJECT MATTER JURISDICTION IS LACKING ............................................6

    POINT III:  PLAINTIFF FAILED TO PROPERLY SERVE MOST DEFENDANTS.............9

    POINT IV:  PERSONAL JURISDICTION IS LACKING OVER THE FOREIGN COMPANIES .............................................................................................10

        A.    Plaintiff Fails to Establish General Jurisdiction Over the Foreign Companies ................................................................................................10

        B.    Plaintiff Fails to Establish Specific Jurisdiction Over the Foreign Companies ................................................................................................11

        C.    The Exercise of Jurisdiction Would Violate Due Process ............................11

    POINT V:   THE SAC SHOULD BE DISMISSED FOR FAILING TO STATE VIABLE CLAIMS .............................................................................................12

        A.    The Causes of Action for Breach of Contract Must Be Dismissed ..............12

        B.    The Fourth Cause of Action for Unjust Enrichment Must Be Dismissed ................................................................................................13

        C.    The Sixth Cause of Action for Breach of Fiduciary Duty Must Be Dismissed ................................................................................................14

CONCLUSION .......................................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Alghanim v. Alghanim*,
    828 F. Supp. 2d 636 (S.D.N.Y. 2011)......................................................................................4

*Anhui Konka Green Lighting Co., Ltd. v. Green Logic LED Elec. Supply, Inc.*,
    2019 U.S. Dist. LEXIS 133549 (S.D.N.Y. Aug. 8, 2019).......................................................7, 8

*Arakawa v. Japan Network Group*,
    56 F. Supp. 2d 349 (S.D.N.Y. 1999)........................................................................................2

*Baiqiao Tang v. Wengui Guo*,
    2019 U.S. Dist. LEXIS 41513 (S.D.N.Y. Mar. 13, 2019) .......................................................7

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*,
    448 F.3d 573 (2d Cir. 2006).................................................................................................14

*Brooks v. Von Lenthe*,
    2005 U.S. Dist. LEXIS 24280 (S.D.N.Y. Oct. 21, 2005) ......................................................10

*CBS Broad. Inc. v. Jones*,
    460 F. Supp. 2d 500 (S.D.N.Y. 2006)...................................................................................13

*City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*,
    423 F. Supp. 2d 348 (S.D.N.Y. 2006)...................................................................................14

*De Jesus v. Sears, Roebuck & Co.*,
    87 F.3d 65 (2d Cir. 1996) .......................................................................................................8

*F5 Capital v. Pappas*,
    856 F.3d 61 (2d Cir. 2017).....................................................................................................6

*GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*,
    667 F. Supp. 2d 308 (S.D.N.Y. 2009)...................................................................................10

*Genesco, Inc. v. T. Kakiuchi & Co.*,
    815 F.2d 840 (2d Cir. 1987)...............................................................................................2, 3

*Grunblatt v. UnumProvident Corp.*,
    270 F. Supp. 2d 347 (E.D.N.Y. 2003) ....................................................................................8

*H.K. Huilin Int'l Trade Co., Ltd. v. Kevin Multiline Polymer Inc.*,
    907 F. Supp. 2d 284 (E.D.N.Y. 2012) ....................................................................................7

*ImagePoint, Inc. v. JP Morgan Chase Bank, Nat'l Ass'n*,
   27 F. Supp. 3d 494 (S.D.N.Y. 2014)..................................................................................14

*Int'l Talent Group, Inc. v. Copyright Mmg't, Inc.*,
   629 F. Supp. 587 (S.D.N.Y. 1986)......................................................................................4

*Jeong-Suk No v. Salvation Army*,
   2020 U.S. Dist. LEXIS 20979 (S.D.N.Y. Feb. 4, 2020).....................................................8

*Martinez v. Bensusan*,
   2019 U.S. Dist. LEXIS 188580 (S.D.N.Y. Oct. 30, 2019).................................................2

*Matsumura v. Benihana Nat'l Corp.*,
   2007 U.S. Dist. LEXIS 37376 (S.D.N.Y. May 21, 2007) ................................................15

*Maye v. Smith Barney Inc.*,
   897 F. Supp. 100 (S.D.N.Y. 1995).......................................................................................2

*Mehler v. Teminix Int'l Co.*,
   205 F.3d 44 (2d Cir. 2000)..................................................................................................3

*Mejia v. Barile*,
   485 F. Supp. 2d 364 (S.D.N.Y. 2007).................................................................................8

*Micro Fines Recycling Owego, LLC v. Ferrex Eng'g, Ltd.*,
   2019 U.S. Dist. LEXIS 67981 (N.D.N.Y. Apr. 22, 2019)...................................................8

*MRS Prop. Invs., Inc. v. Bivona*,
   2021 U.S. Dist. LEXIS 84402 (E.D.N.Y. May 3, 2021) ....................................................9

*MWH Int'l, Inc. v. Iversora Murten, S.A.*,
   2015 U.S. Dist. LEXIS 24129 (S.D.N.Y. Feb. 11, 2015).................................................10

*Nouinou v. Guterres*,
   2020 U.S. Dist. LEXIS 198716 (S.D.N.Y. Oct. 23, 2020).................................................7

*Nouinou v. Smith*,
   2021 U.S. Dist. LEXIS 61257 (S.D.N.Y. Mar. 30, 2021)...................................................7

*One World, LLC v. Onoufriadis*,
   2021 U.S. Dist. LEXIS 9814 (S.D.N.Y. Jan. 19, 2021)......................................................7

*Quebecor World (USA), Inc. v. Harsha Assocs., L.L.C.*,
   455 F. Supp. 2d 236 (W.D.N.Y. 2006)................................................................................8

*Robinson v. Entm't One US LP*,
   2015 U.S. Dist. LEXIS 71117 (S.D.N.Y. June 2, 2015) ....................................................3

*Smith/Enron Cogeneration Ltd. v. Smith Cogeneration*,
   198 F.3d 88 (2d Cir. 1999) ................................................................................................. 3, 4

*Tagger v. Strauss Grp. Ltd.*,
   951 F.3d 124 (2d Cir. 2020) ....................................................................................................7

*TLF CBRL LLC v. Societe Generale*,
   2020 U.S. Dist. LEXIS 46861 (S.D.N.Y. Mar. 17, 2020) ................................................... 7, 8

*Vernon v. Maxwell*,
   2020 U.S. Dist. LEXIS 218073 (S.D.N.Y. Nov. 19, 2020) .....................................................7

**State Cases**

*Perez v. Garcia*,
   8 Misc. 3d 1002(A) (Sup. Ct. Bronx Co. 2005) ................................................................. 9, 10

*Spota v. White*,
   2016 N.Y. Misc. LEXIS 4035 (Sup. Ct. Suffolk Co. Oct. 28 2016) ........................................9

*Weg v. Kaufman*,
   159 A.D.3d 774 (2d Dep't 2018) ...........................................................................................13

**Federal Statutes**

9 U.S.C. § 207 ................................................................................................................................6

28 U.S.C. § 1332(a)(2) ............................................................................................................... 6, 7

Nothing in Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss and to Compel Arbitration (the "Opposition" or "Opp.") alters the conclusion that the motion should be granted because the contracts at issue require arbitration, subject matter jurisdiction is lacking, Plaintiff failed to properly serve many of the Defendants, the Court lacks personal jurisdiction over most of the Corporate Defendants[1], and the SAC fails to state a claim.

## ARGUMENT

### POINT I
### PLAINTIFF'S ATTEMPTS TO AVOID ARBITRATION ARE UNAVAILAING

Plaintiff does not dispute that her claims stem from an investment she made pursuant to written agreements containing broad arbitration provisions.  Instead, she takes the remarkable positions that (1) even though the agreements are otherwise binding, the arbitration provisions should be ignored; (2) her claims are really related to alleged breaches of informal email exchanges; (3) only HF Holdings is a party to the agreements containing the arbitration provisions; and (4) arbitration should not be compelled because the selected arbitration forum is purportedly unavailable.  None of these arguments are availing.

Plaintiff argues that although she has asserted claims for breach of the SPA and SA, and does not otherwise dispute the terms of these agreements, "there was no meeting of the minds regarding the portion of the agreement that compelled arbitration." Opp. at 31.  Plaintiff does not cite a single case for her argument that she can simply disclaim certain provisions of the agreements that she now finds inconvenient while seeking to enforce other provisions of those same agreements.[2]  Indeed, courts routinely reject claims that parties did not understand or agree

---

[1] Capitalized terms are used as defined in the Memorandum of Law in Support of Defendants' Motion to Dismiss and Compel Arbitration (the "Memorandum" or "Mem.") (Dkt. # 72).
[2] Plaintiff's reasons for purportedly not understanding the arbitration provisions are contradicted by her prior statements.  For instance, although Plaintiff now claims that she did not understand the SPA or SA because she does not speak or write English fluently, *see* Zhang Decl. ¶ 4, she previously submitted a lengthy affidavit in English with

1

to arbitration provisions in contracts they signed. *See*, *e.g. Martinez v. Bensusan*, 2019 U.S. Dist. LEXIS 188580, at *6-7 (S.D.N.Y. Oct. 30, 2019) ("party is under an obligation to read a document before he signs it, and cannot generally avoid the effect of a document on the ground that he did not read it or know its contents.") (internal quotation, punctuation, and alterations omitted); *Arakawa v. Japan Network Group*, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999) ("Plaintiff is bound by the agreement to arbitrate unless she can show special circumstances, such as duress or coercion, which would justify non-enforcement.") (quotation omitted); *Maye v. Smith Barney Inc.*, 897 F. Supp. 100, 108 (S.D.N.Y. 1995) ("Giving the required healthy regard to the strong federal policy favoring arbitration, an argument such as the one made by Plaintiffs that one did not have time to read an agreement before signing it must fail or else almost every arbitration agreement would be subject to an effective court challenge."); *cf Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987) ("We focus not on whether there was subjective agreement as to each clause in the contract, but on whether there was an objective agreement with respect to the entire contract."). Plaintiff cannot avoid contractual obligations by pleading ignorance. The SPA and SA contain arbitration provisions to which Plaintiff agreed. Since her claims relate to or arise out of the SPA or SA, they must be arbitrated. *See* Mem. at 2-5.

Plaintiff argues that, notwithstanding the SPA and SA, the controlling "contracts" are really two informal (and contradictory) emails between Mr. Han and people other than Plaintiff.[3]

---

no indication that it was translated for her or that she was unable to attest to the truth of the English statements in that affidavit without assistance, *see* Dkt # 48. In her declaration in opposition to the instant motion, Plaintiff claims that documents filed in this action were translated for her review, but there is no statement that the English declaration itself was translated prior to Plaintiff signing it under penalty of perjury. *See* Dkt. # 94-1. Additionally, the SAC does not allege that Plaintiff did not understand the agreements. Similarly, while Plaintiff claims that she is an "unsophisticated investor," Opp. at 1, she had the financial resources to invest $2 million in an uncertain investment venture and represented that she was both an accredited investor under the Securities Act and a qualified client under the Investment Advisors Act, *see* Han Decl. Ex. A at Attachment 2, Subscriber Qualifications.
[3] All this Court need do is determine whether there is a valid agreement to arbitrate, as any questions of arbitrability should be answered by the arbitrator. *See* Mem. at 4-5. However, Plaintiff has argued that this is a matter for the Court, and thus Defendants address those arguments here.

*See* Opp. at 29-30; 32-33.  The arbitration clauses in the SPA and SA are broad, covering all claims "arising out of or relating to" those agreements.  *See* Han Decl. at Ex. 1, SPA at ¶ 7.10(b) and Ex. 2, SA at ¶ 13.12(b).  Even assuming, *arguendo*, that the email exchanges are binding contracts (they are not), Plaintiff's claims are still governed by the arbitration clauses in the SPA and SA because the email exchanges center around the status and potential return of the investment Plaintiff made pursuant to the SPA and SA.  *See*, *e.g. Mehler v. Teminix Int'l Co.*, 205 F.3d 44, 50 (2d Cir. 2000) (agreeing that "the issue sought to be arbitrated need not constitute a breach of the contract containing the arbitration clause.  Rather, the relevant question is whether the dispute '*arises out of*' or '*relates to*' that contract.") (emphasis in original); *Robinson v. Entm't One US LP*, 2015 U.S. Dist. LEXIS 71117, at *17 (S.D.N.Y. June 2, 2015) ("Courts have routinely concluded that arbitral agreements may cover separate agreements or contracts that relate to the substance of the agreement containing the arbitral clause."); *accord Smith/Enron Cogeneration Ltd. v. Smith Cogeneration*, 198 F.3d 88, 99 (2d Cir. 1999) (rejecting argument that claims predating signing of arbitration agreement were outside scope of agreement because "the arbitration clause … does not contain any temporal limitation, [thus] the relevant inquiry is whether SCI's claims 'relate to any obligation or claimed obligation under' the 1994 Agreement, not when they arose.").

"In determining whether a particular claim falls within the scope of the parties' arbitration agreement, we focus on the factual allegations in the complaint rather than the legal causes of action asserted."  *Genesco*, 815 F.2d at 846.  The alleged email agreements relate to the status and potential return of Plaintiff's investment – an investment indisputably governed by the SA and the SPA.  *See* SAC ¶¶ 42-45; 49; 69-77.  Accordingly, claims relating to the emails must also be arbitrated.  *See Robinson*, 2015 U.S. Dist. LEXIS 71117, at *18 ("Because the issues

3

raised by this alleged separate oral contract 'touch matters' covered by the parties [employment agreement] …those claims must be arbitrated, whatever the legal labels attached to them.'") (quoting *Genesco*, 815 F.2d at 846) (alterations in original, additional quotation omitted); *Int'l Talent Group, Inc. v. Copyright Mmg't, Inc.*, 629 F. Supp. 587, 592 (S.D.N.Y. 1986) ("arbitration clause applies to 'any and all proceedings relation [sic] to the subject matter hereof.' Thus, even if they are separate, the hardware contract would be subject to the arbitration provision in the 'software contract' if it relates to the subject matter of the 'software contract.'").

Plaintiff also argues that only HF Holdings signed the SA and SPA, and thus she need not arbitrate her claims against the other defendants. *See* Opp. at 33. This conveniently ignores that Plaintiff has asserted a claim for breach of the SA and SPA against other defendants and thus has taken the position that other defendants *are bound* by the agreements. *See* SAC ¶¶ 63-67. Also, many of Plaintiff's assertions are premised on her position that all Defendants must be treated as one and the same. *See* SAC ¶¶ 53-59; Opp. at 15, 17. Plaintiff should not be allowed to try to treat the Defendants as one when it is convenient for her, but then argue that they are distinct entities when it is inconvenient for her. Moreover, courts will "estop a signatory from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *Smith/Enron Cogeneration Ltd.*, 198 F.3d at 98 (quotation omitted); *accord Alghanim v. Alghanim*, 828 F. Supp. 2d 636, 648-49 (S.D.N.Y. 2011) (signatory estopped from denying obligation to arbitrate with non-signatory where complaint did "not materially distinguish between" signatory and non-signatory defendants and non-signatory was not a stranger to agreements). Plaintiff's claims against the non-signatories are intertwined with the SPA and SA, and she is estopped from avoiding arbitration.

4

Finally, Plaintiff claims that the selected arbitral forum is purportedly unavailable due to an ongoing Chinese criminal matter and Mr. Han's presence in the United States.  First, as explained in Defendants' Memorandum (and undisputed by Plaintiff), questions of procedural arbitrability should be addressed by the BAC, not the Court.  *See* Mem. at 5-6.  Plaintiff provides no evidence that the BAC has addressed whether it is prevented from hearing Plaintiff's claims due to an ongoing criminal matter or Mr. Han's presence in the U.S., and therefore arbitration cannot be avoided based on the alleged lack of availability of the selected forum.

Second, Plaintiff's arguments as to the purported unavailability of the BAC are misplaced.  Plaintiff argues that Chinese law precludes civil lawsuits based on the "same fact with a criminal suspect or criminal defendant as the defendant," and that Plaintiff is prevented from arbitrating her claims "[d]ue to the ongoing criminal investigation and prosecution of Defendant Han and his companies."  Opp. at 33-34.  In support, Plaintiff only offers an excerpt from Section 129 of the "Minutes of the National Civil and Commercial Trial Work Conference of the Courts" of China ("Section 129") which states that a court shall decline to accept a civil lawsuit based on the "same fact" as an ongoing criminal investigation and instead should transfer the materials to the court that is hearing the criminal case.  *See* Opp. at 33-34.  Plaintiff provides no explanation or competent evidence as to what the complete Section 129 says, what the National Civil and Commercial Trial Work Conference of the Courts is, whether the excerpt from the minutes of that conference is equivalent to a binding statute or rule, how the guidance in this excerpt is interpreted, what happens to the civil lawsuit if it is transferred to the court hearing the criminal case, or how courts determine whether a civil case is based on the "same fact" as a pending criminal case.  Plaintiff has pointed to no connections between the alleged criminal action and this case except that some of the Defendants are the same.  Ultimately, Plaintiff has

5

nothing to support her argument that there are ongoing criminal investigations based on the "same fact" as her claims or that she is prevented from pursuing civil remedies in China. Indeed, Chinese law does not prevent the arbitration from moving forward. To the contrary, numerous Chinese courts have ordered similar lawsuits in China to be arbitrated and have not dismissed the claims due to any criminal investigation. *See* Reply Declaration of Xueyuan Han dated June 11, 2021 at ¶¶ 2-6 and Exs. A-D.

Similarly, Mr. Han's presence in the United States does not render the BAC unavailable. Plaintiff has offered no support for her arguments that Mr. Han is the "only source" of relevant information or that the BAC does not have the power to compel his testimony. *See* Opp. at 34. Finally, although Plaintiff complains that Mr. Han allegedly moved assets to the United States, *see* Opp. at 34, there is nothing to prevent her from seeking to enforce an arbitration award issued by the BAC in the United States. *See* 9 U.S.C. § 207.

## POINT II
## SUBJECT MATTER JURISDICTION IS LACKING

Plaintiff fails to refute the well-established proposition that "[d]iversity is lacking within the meaning of § 1332(a)(2) where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens." *F5 Capital v. Pappas*, 856 F.3d 61, 75 (2d Cir. 2017) (quotation omitted). Instead, Plaintiff maintains that diversity jurisdiction exists even though she is a citizen of China and all but one of the Defendants are foreign citizens (SAC ¶¶ 1-15) because she is a permanent resident alien residing in California. *See* Opp. at 13. This conclusion is based on an incorrect interpretation of precedent in this Circuit and misstatements of law.

Plaintiff's status as a permanent resident alien residing in California does not alleviate the jurisdictional defects in the SAC. Courts in this Circuit have repeatedly observed that diversity

6

is lacking where, as is the case here, one party is a foreign citizen who is a lawful permanent resident and at least one of the opposing parties is also a foreign citizen. *See Tagger v. Strauss Grp. Ltd.*, 951 F.3d 124, 127 (2d Cir. 2020) (per curiam); *Nouinou v. Smith*, 2021 U.S. Dist. LEXIS 61257, at *8 (S.D.N.Y. Mar. 30, 2021); *One World, LLC v. Onoufriadis*, 2021 U.S. Dist. LEXIS 9814, at *35-36 (S.D.N.Y. Jan. 19, 2021); *Vernon v. Maxwell*, 2020 U.S. Dist. LEXIS 218073, at *4 (S.D.N.Y. Nov. 19, 2020); *TLF CBRL LLC v. Societe Generale*, 2020 U.S. Dist. LEXIS 46861, at *1-2 (S.D.N.Y. Mar. 17, 2020); *Anhui Konka Green Lighting Co., Ltd. v. Green Logic LED Elec. Supply, Inc.*, 2019 U.S. Dist. LEXIS 133549, at *11 (S.D.N.Y. Aug. 8, 2019); *Baiqiao Tang v. Wengui Guo*, 2019 U.S. Dist. LEXIS 41513, at *13 n.2 (S.D.N.Y. Mar. 13, 2019); *H.K. Huilin Int'l Trade Co., Ltd. v. Kevin Multiline Polymer Inc.*, 907 F. Supp. 2d 284, 289 (E.D.N.Y. 2012).

The cases cited in the Opposition do not undermine the Second Circuit's decision in *Tagger*, nor are they inconsistent with subsequent cases holding that legal permanent resident aliens are not considered citizens for diversity purposes in actions between foreign citizens or where on one side there are citizens and aliens and on the other side there are aliens. Rather, the cases Plaintiff cited hold that a legal permanent resident alien can be considered a citizen of an American state in "an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States *and are domiciled in the same State*." 28 U.S.C. § 1332(a)(2) (emphasis added). In other words, a lawful permanent resident alien can be a resident of the state in which he or she lives only when an opposing party is a citizen of that same state. None of the cases cited by Plaintiff hold that diversity exists in an action between a legal permanent resident alien and a citizen of a foreign state.[4]

---

[4] *See Nouinou v. Guterres*, 2020 U.S. Dist. LEXIS 198716, at *13-15 (S.D.N.Y. Oct. 23, 2020) ("It is unclear, however, if Plaintiff may be able to invoke the Court's diversity jurisdiction. Diversity of citizenship exists between

7

Plaintiff alleges that the Defendants are foreign citizens.[5] SAC ¶¶ 2-15. Mr. Han and Ms. Feng residing in New York does not change that they are foreign citizens for diversity purposes. *See Anhui Konka Green Lighting Co., Ltd.*, 2019 U.S. Dist. LEXIS 133549, at *11. Even if Plaintiff could show that the Corporate Defendants are alter egos of Mr. Han—and she cannot—they would take on Mr. Han's Chinese citizenship "as an additional domicile for jurisdictional purposes."[6] *Grunblatt v. UnumProvident Corp.*, 270 F. Supp. 2d 347, 352 (E.D.N.Y. 2003) ("[A] jurisdictional alter ego analysis does not extend diversity jurisdiction by allowing a non-diverse corporation to assume the citizenship of its out-of-state alter ego; it merely adds an additional domicile for jurisdictional purposes." (internal quotation marks omitted)).

Since Plaintiff is an alien for diversity purposes and all but one of the Defendants—if not all of the Defendants—are foreign citizens, Plaintiff failed to establish diversity and the action must be dismissed for lack of subject matter jurisdiction.

---

citizens of a State and citizens or subjects of a foreign state or between citizens of different States in which citizens of a foreign state are additional parties. Diversity is lacking within the meaning of these sections where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens.") (internal punctuation omitted); *Jeong-Suk No v. Salvation Army*, 2020 U.S. Dist. LEXIS 20979, at *5-6 (S.D.N.Y. Feb. 4, 2020) (noting "diversity is lacking when an American citizen and a lawful permanent resident alien are domiciled in the same state" and concluding "Plaintiff fails to allege sufficient facts to establish his own citizenship and the citizenship of Defendant"); *Mejia v. Barile*, 485 F. Supp. 2d 364, 367 (S.D.N.Y. 2007) (pre-2011 28 U.S.C. § 1332 amendments decision holding that foreign plaintiff's New York domicile did not affect subject matter jurisdiction in an action against a New York citizen where foreign plaintiff was not lawfully admitted permanent resident alien).

[5] Plaintiff suggests that Defendant HFRE LLC should also be considered a foreign citizen since she alleges Mr. Han—a citizen of China—is a member. Opp. at 16. *Cf. TLF CBRL LLCI,* 2020 U.S. Dist. LEXIS 46861, at *2 ("The Complaint alleges that defendant…is a citizen of France. If one of the members of the plaintiff LLC…is a foreign citizen, then there would be aliens on two sides of the case and the Court would not have diversity jurisdiction."). In any event, diversity is lacking even if HFRE were a resident of New York, and the Court should reject Plaintiff's request for discovery concerning the identity of HFRE's members (*see* Opp. at 16) because such discovery would have no effect on the resolution of the Motion to Dismiss.

[6] Plaintiff wrongly contends that piercing the corporate veil is "a fact-based inquiry, [and] is not subject to this motion to dismiss, and therefore must be presumed for the purposes of this jurisdictional analysis." Opp. at 15. Courts dismiss claims where, as is here, "the pleadings are devoid of *any* specific facts or circumstances" to support conclusory allegations. *De Jesus v. Sears, Roebuck & Co.*, 87 F.3d 65, 70 (2d Cir. 1996); *see also Micro Fines Recycling Owego, LLC v. Ferrex Eng'g, Ltd.*, 2019 U.S. Dist. LEXIS 67981, at *5 (N.D.N.Y. Apr. 22, 2019); *Quebecor World (USA), Inc. v. Harsha Assocs., L.L.C.*, 455 F. Supp. 2d 236, 244 (W.D.N.Y. 2006).

## POINT III
## PLAINTIFF FAILED TO PROPERLY SERVE MOST DEFENDANTS

Plaintiff argues that she properly served nine of the Corporate Defendants by serving the doorman at Mr. Han's residence or an unidentified individual at the office of George Xu, an accountant who has worked for Mr. Han or some of the Corporate Defendants.[7] Plaintiff wrongly assumes that the rules for serving an individual in his or her individual capacity are the same as the rules for serving an individual as an officer or director of a corporation to effect service on that corporation. To the contrary, service on a corporate representative must be made by in-hand delivery. *See* Mem. at 8-9. Plaintiff attempts to rebut this by citing cases in which service was made on a doorman at the recipient's residence, but those cases involve service on defendants *in their individual capacity* under CPLR 308(2), not service on corporations. *See, e.g., MRS Prop. Invs., Inc. v. Bivona*, 2021 U.S. Dist. LEXIS 84402 (E.D.N.Y. May 3, 2021) (cited by Plaintiff and upholding service on individual *in individual capacity*).

Plaintiff tries to distinguish *Spota v. White*, 2016 N.Y. Misc. LEXIS 4035, at *6 (Sup. Ct. Suffolk Co. Oct. 28 2016), by arguing that the cases on which it relied (like *Perez v. Garcia,* 8 Misc. 3d 1002(A) (Sup. Ct. Bronx Co. 2005)) are inapposite because they involved attempts to serve a corporate representative by "leave and mail" instead of by serving a doorman or accountant. Opp. at 22-23. *Perez*, however, held that service by "leave and mail" was sufficient to confer jurisdiction over an individual defendant but not over a corporate defendant because "[s]ervice on a corporation may not be made in accordance with the substitute methods of service authorized for the personal service of process on individuals. . . [and] service envisioned under CPLR § 311(a)(1) upon a corporate officer is in-hand service upon the specified officer."

---

[7] Mr. Xu has never been, an officer, director, manager, general partner, employee or agent of those Corporate Defendants and is not authorized to accept service on their behalf. *See* Declaration of George Xu (Dkt. # 71) at ¶ 4.

9

*Perez*, 8 Misc. 3d 1002(A). Plaintiff cannot serve the Corporate Defendants by serving the doorman at Mr. Han's residence or anyone at Mr. Xu's accounting office.

## POINT IV
## PERSONAL JURISDICTION IS LACKING OVER THE FOREIGN COMPANIES

### A. Plaintiff Fails to Establish General Jurisdiction Over the Foreign Companies

Plaintiff's assertion that there is general jurisdiction over the Foreign Companies because the corporate veil should be pierced, and Mr. Han treated as their alter ego fails. *See* Opp. at 17. Whether the corporate veil of a foreign corporation should be pierced is governed by the law of the place of incorporation, here, the British Virgin Islands, the Cayman Islands, or China. *See MWH Int'l, Inc. v. Iversora Murten, S.A.,* 2015 U.S. Dist. LEXIS 24129 at *28-30 (S.D.N.Y. Feb. 11, 2015) ("under New York choice of law principles, the law of the state of incorporation determines when the corporate form will be disregarded.") (quoting *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (alterations omitted)). Plaintiff makes no attempt to demonstrate that Mr. Han may be treated as an alter ego of any Foreign Company under the law of that Foreign Company's place of incorporation. This alone is fatal to Plaintiff's alter ego argument.

Even if New York law applied, Plaintiff still fails to demonstrate that she is entitled to pierce the corporate veil. Plaintiff does not identify the standard she must meet to pierce the corporate veil or any case law supporting her claim. Instead, Plaintiff asserts that a corporate veil analysis is a "fact-based inquiry" that is "not subject to this motion to dismiss." Opp. at 17. Plaintiff misstates the law since "conclusory allegations of an alter ego are insufficient to survive a motion to dismiss." *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 324 (S.D.N.Y. 2009); *see also Brooks v. Von Lenthe*, 2005 U.S. Dist. LEXIS 24280, at *33-34 (S.D.N.Y. Oct. 21, 2005) (dismissing claim where plaintiff failed to address many of the factors the Second Circuit held are relevant when determining if the corporate veil should be pierced).

Since Plaintiff does not even attempt to meet her burden of showing that the corporate veil should be pierced, Plaintiff fails to demonstrate general jurisdiction over the Foreign Companies.

### B. Plaintiff Fails to Establish Specific Jurisdiction Over the Foreign Companies

Plaintiff alleges specific jurisdiction exists under New York's long-arm statute because she invested "$2 million USD in NIO before NIO's initial public offering on the New York Stock Exchange." Opp. at 18. However, Plaintiff admits that she invested not in NIO but in a British Virgin Islands company and that she wired money from her Hong Kong account to an account in the British Virgin Islands. *See* Opp. at 2. Thus, Plaintiff did not buy shares in NIO on the New York Stock Exchange; rather, she purchased shares *in HF Holdings* which is incorporated under the laws of the British Virgin Islands. *See* Han Decl. at ¶ 12. In addition, Plaintiff provides no support for the idea that investing in a foreign company that intended to invest in a publicly traded company on the New York Stock Exchange renders the company (much less its affiliates) subject to specific jurisdiction in New York. Plaintiff fails to meet her burden of establishing specific jurisdiction over the Foreign Companies.[8]

### C. The Exercise of Jurisdiction Would Violate Due Process

Plaintiff argues that asserting jurisdiction over the Foreign Companies would not violate due process because Mr. Han is the alter ego of those corporations and resides in New York. As discussed above, Plaintiff failed to demonstrate that Mr. Han is an alter ego of any of the Foreign Companies. That Mr. Han resides in New York does not mean that all other witnesses and evidence are also in New York and that it is an appropriate forum. To the contrary, Plaintiff's Opposition shows that her claims against the Foreign Companies have little or no connection to

---

[8] Plaintiff's assertion that "Defendants never state that they do not have any bank accounts within the subject forum" (Opp. at 19) is incorrect. *See* Han Declaration at ¶¶ 11-18, 20-22 (confirming that the Foreign Defendants do not own or lease property, maintain offices **or bank accounts**, or have employees in New York.)

11

New York.  For example, Plaintiff highlights the importance of witnesses like Jun Zhou and Ya'nan Ding (*see* Zhang Declaration at ¶¶ 6, 8), but Mr. Zhou is a citizen and resident of China, *see* Dkt. 1 at ¶ 4, and Ms. Ding is an employee of the Qingdao branch of Nuoyuan Capital in China, *see* SAC at ¶ 25.  Plaintiff is incorrect to broadly conclude that this forum places the fewest burdens on the Foreign Companies simply due to Mr. Han's presence in New York.

## POINT V
## THE SAC SHOULD BE DISMISSED FOR FAILING TO STATE VIABLE CLAIMS

### A.  The Causes of Action for Breach of Contract Must Be Dismissed

Defendants demonstrated that the email exchanges do not constitute contracts because they fail to spell out all of the essential terms of the alleged agreement.[9]  *See* Mem. at 18-19.  Plaintiff relies on inferences and speculation, and asks the Court to imagine language that is not there.  Plaintiff claims that the November 4, 2019 email was supported by consideration due to "Plaintiff's implicit waiver of their [sic] ownership of the Class B shares worth two million dollars of HF Holdings in exchange of Mr. Han's promise to transfer NIO stock."  Opp. at 6.  However, the emails contain no such consideration – there is no suggestion (implicit or not) that Plaintiff was waiving ownership of Class B shares in exchange for NIO stock.  *See* Han Decl. Ex. 4.[10]  Similarly, Plaintiff argues that Mr. Han offered "to release his contractual obligation of distributing dividend [sic] to Plaintiff and invested [sic] to NIO Inc.," *see* Opp. at 7, but this is sheer speculation as there is nothing in the brief email exchange to support this interpretation.

Plaintiff's efforts to portray the June 2020 email exchange as a binding contract also rest on speculation and conjecture.  Although Plaintiff claims "Mr. Han manifested an unambiguous

---

[9] Plaintiff does not respond to the portion of the Memorandum demonstrating that the first claim for breach of contract for alleged failure to provide profit and loss statements fails to state a claim.  *See* Mem. at 17.
[10] Plaintiff attached translations of the email exchanges to her declaration, but the certificate of translation refers to a singular unspecified document, and thus it is unclear what document or documents it pertains to.  Accordingly, the Court should disregard the translations attached to Plaintiff's declaration.

12

intent to transfer about $1,615,000.00 to Ms. Zhang in exchange for Ms. Zhang's agreeing to settle her claim regarding NIO shares," *see* Opp. at 8, she has not shown this "unambiguous intent" and simply alleged that Mr. Han informed her that the shares had been sold for $3.23 per share and he would transfer the proceeds, *see* SAC ¶ 74.  There is no allegation that Mr. Han promised to transfer a sum certain or that he did so in exchange for Plaintiff settling a claim.

Emails can constitute binding contracts, but to do so they must contain all of the material terms of the parties' agreement.  The cases cited by Plaintiff do not suggest otherwise.  In *Weg v. Kaufman*, 159 A.D.3d 774 (2d Dep't 2018), cited by Plaintiff, the court found that the email was *not* a contract because "the email in question fails to set forth the material terms of a partnership agreement." *Id.* at 777.  Here, the emails do not set forth material terms such as the number of shares or amount of money to be transferred, when the transfer was to be made, or what consideration was being offered for the alleged promise to transfer shares or money.  Plaintiff's request that the Court speculate and add words and terms which are not present should be rejected.  Since Plaintiff has failed to allege that the emails contain all of the essential terms or that they were objectively supported by consideration, Counts Two and Three alleging breach of these purported agreements must be dismissed.  *See* Mem. at 17-19.

**B.     The Fourth Cause of Action for Unjust Enrichment Must Be Dismissed**

Plaintiff contends that her unjust enrichment claim should survive even though it is duplicative of her breach of contract claims because it is plead in the alternative. Opp. at 11-12. The alternative pleading rules only allow an unjust enrichment claim to proceed "where there is a question as to the validity or enforceability of a contract." *CBS Broad. Inc. v. Jones*, 460 F. Supp. 2d 500, 506 (S.D.N.Y. 2006). Where there is no dispute that a valid contract exists, an unjust enrichment claim may not be pled in the alternative and must be dismissed. *Id.* (dismissing

13

unjust enrichment claim where neither side contested existence or validity of contract); *see also Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586-87 (2d Cir. 2006) (unjust enrichment claim cannot be pled in the alternative when there is a "valid and enforceable contract governing ... [the] subject matter").

Plaintiff entered into the SPA and SA and does not contest their validity. *See* SAC ¶¶ 30, 63. Plaintiff's unjust enrichment claim is premised on her investment which was made pursuant to those agreements. *See* SAC ¶¶ 17, 30, 42, 49, 80-82; Opp. at 11. Since there are valid and enforceable agreements covering the subject matter of Plaintiff's claim for unjust enrichment, the claim must be dismissed.[11] *ImagePoint, Inc. v. JP Morgan Chase Bank, Nat'l Ass'n*, 27 F. Supp. 3d 494, 516 (S.D.N.Y. 2014) ("[W]here there is a valid and enforceable contract between the parties, and the subject matter of the unjust enrichment claim is covered by the contract the unjust enrichment claim must be dismissed." (internal quotation marks omitted)).

**C.     The Sixth Cause of Action for Breach of Fiduciary Duty Must Be Dismissed**

Plaintiff argues that the Defendants owed her a fiduciary duty because the SPA and SA were not part of an arm's length transaction and she is not a sophisticated investor.  *See* Opp. at 9-10.  Fiduciary duty claims against companies and their directors are governed by the law of the place of incorporation.  *See City of Sterling Heights Police & Fire Ret. Sys. v. Abbey Nat'l, PLC*, 423 F. Supp. 2d 348, 363 (S.D.N.Y. 2006) (English law governed claim for breach of fiduciary duty under the internal affairs doctrine because the defendant was incorporated in England). Plaintiff does not address whether or to what extent a fiduciary duty exists under the laws of the Corporate Defendants' places of incorporation.  This renders Plaintiff's argument moot.

---

[11] Additionally, Plaintiff's conclusory allegations are insufficient to state a claim for unjust enrichment.  *See* Mem. at 20-21.  In opposition, Plaintiff merely repeats the same insufficient allegations without support. *See* Opp. at 11.

14

This claim must be dismissed even if New York law applied. Plaintiff asserts that she is owed a fiduciary duty because she is an unsophisticated investor. *See* Opp. at 9. Plaintiff does not provide the standard or elements for a breach of fiduciary duty claim or for determining who is a sophisticated investor. Regardless, Plaintiff affirmed in the SPA and SA that she is a sophisticated investor. *See* Han Decl. at Ex. 3, p. 2-1. Plaintiff asks the Court to ignore her prior representations that she is a sophisticated investor because she claims not to have understood the agreements (*see* Opp. at 9), but (as discussed above) Plaintiff is presumed to have read the contracts and accepted their terms. Plaintiff is similarly mistaken in claiming that the Corporate Defendants owe her a fiduciary duty because she is a shareholder of HF Holdings. *Matsumura v. Benihana Nat'l Corp.*, 2007 U.S. Dist. LEXIS 37376, at *10 (S.D.N.Y. May 21, 2007) ("under New York law, a corporation does not have fiduciary duties to its shareholders.") (quoting *Gates v. BEA Assoc., Inc.*, 1990 U.S. Dist. LEXIS 15299, at *6 (S.D.N.Y. Nov. 13, 1990)).

## CONCLUSION

The Defendants respectfully request that the Court grant their motion to dismiss and to compel arbitration and grant such other and further relief as is just and equitable.

Dated: New York, New York
June 11, 2021

Respectfully submitted by,

CARTER LEDYARD & MILBURN LLP

By: *Jeffrey Boxer*
Jeffrey S. Boxer
Madelyn K. White
Two Wall Street
New York, New York 10005
Tel. (212) 732-3200
Fax (212) 732-3232
Email boxer@clm.com/ white@clm.com

*Attorneys for Defendants*

15

9872084.8